Thomas M. McDermott
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SANDS NORTH, INC., d/b/a FANTASIES ON 5TH AVENUE, an Alaskan Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| MUNICIPALITY OF ANCHORAGE, ALASKA, an Alaskan Municipal Corporation, | ) ) ) |
| Defendant. | ) ) |

U.S. District No. 3:05-cv-00256 (TMB)

## MEMORANDUM IN SUPPORT OF
## MUNICIPALITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I.    **Introduction**

In this lawsuit, Plaintiff Sands North, Inc. raises a host of constitutional challenges

to the Municipality's adult entertainment ordinance, Anchorage Municipal Code (AMC)

10.40.050. Sands North challenges the ordinance on its face, rather than as applied, thus

its claims are amenable to resolution without trial. In particular, the five claims discussed below are ripe for summary judgment.

Paragraph 32 of Sands North's Complaint alleges AMC 10.40.050 "bans and or unlawfully infringes on constitutionally protected dance entertainment". As the Municipality understands it, this claim is primarily aimed at AMC 10.40.050.A.e., which requires a separation of four feet between dancers and patrons in adult cabarets (the "buffer zone"). The purpose of the buffer zone is to prevent nude dancers and patrons from touching each other, which is not constitutionally protected conduct. Accordingly, the buffer zone provision is subject to low-level scrutiny, and it passes that test.

Paragraph 36 of the Complaint raises an equal protection claim, based on the fact that licensed alcohol establishments are exempt from the definition of "adult cabaret" in AMC 10.40.050.A. This exemption does not affect a fundamental right or a suspect class, so it is subject to low-level scrutiny. The exemption has a legitimate basis. Alcohol establishments are already regulated by the State Alcoholic Beverages Control Board, and the Municipality's regulation of such establishments would be redundant. This is sufficient to survive the low-level scrutiny that applies.

Paragraph 33 of the Complaint alleges that the definition of "specified sexual activities" in 10.40.050.A is unconstitutionally vague and/or overbroad. Although vagueness and overbreadth are technically two separate claims, these claims both fail for similar reasons. The definition of "specified sexual activities" is sufficiently clear for a reasonable person to understand what conduct is prohibited. There is no question that the

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 2 of 34

provision applies to Plaintiff's business, even if it might be vague in some other circumstance.  Any vagueness or overbreadth that does exist can be cured by a narrowing construction of the ordinance, or by severing those provisions that cannot be saved by a narrowing construction.

Paragraph 38 of the complaint alleges that the prohibition in AMC 10.40.050 against broadcasting of adult entertainment violates the Commerce Clause of the United States Constitution.  (Actually Sands North's theory is based on "dormant commerce clause" doctrine, *See,* Sands North's Motion for TRO, at Docket # 17.)  This argument is a misconception.  The dormant commerce clause prohibits state and local laws that benefit in-state economic interests by burdening out-of-state competitors.   AMC 10.40.050 does not benefit in-state economic interests nor does it burden out-of-state competitors.

When these five claims are reviewed in light of the facts and the applicable law, it is clear that the Municipality is entitled to summary judgment to each one.

## II.   Background

### A.   AMC 10.40.050 was originally derived from established case law.

Although Sands North only recently challenged the Municipality's adult entertainment ordinance, the ordinance has existed since at least 1993, when the Assembly enacted AO 93-157(S-6).  Exhibit 1.  AO 93-157(S-6) was explicitly modeled after an ordinance that was upheld in *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585, at 595 (E.D.Wis. 1988).  AM 1022-93 describing the legislative intent of

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 3 of 34

AO 93-157.  Exhibit 2.  Like the ordinance in *Delafield*, AO 93-157(S-6) was intended to counteract the secondary effects of sex-oriented businesses.   In AO 93-157(S-6) the Assembly found:

> Whereas, adult businesses have been determined, by court accepted independent studies, to produce secondary impacts on surrounding land uses.  The impacts include a decline in property values, and increase in the level of criminal activity including prostitution, rape, and assaults in the vicinity of these types of enterprises . . .

Exhibit 1.

In October 2005, the Assembly amended the adult entertainment ordinance, in AO 2005-139.  Exhibit 3.  New provisions added by AO 2005-139 include the four foot buffer zone; the prohibition against engaging in "specified sexual activities"; and the prohibition against broadcasting.   Exhibit 3.   These amendments were enacted in response to the Assembly's concerns about lap dancing.

**B.     The core conduct at issue in this case is the practice of lap dancing, which involves direct physical contact between patrons and nude dancers.**

**1.     Findings from Municipal Assembly hearings**.

The recent amendments in AO 2005-139 were enacted in response to concerns about the practice of lap dancing.  Testimony at Assembly hearings showed that lap dancing involves direct physical contact between patrons and nude dancers.   This fostered concerns about sexual conduct involving dancers and patrons, as well as other criminal or harmful activities.

Jennifer Johnson, a former employee at Fantasies, described lap dancing:

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 4 of 34

> It's extreme physical contact. It's basically -- they're topless. They're bottomless and they're straddling -- it's a straddle dance, which means both your legs are on both sides [of the customer] and you're that close to the person. The closer you are to the person, the more you can ensure selling more dances because the patrons like the closeness of the dance . . . .

Exhibit 4.

Stacy Papinough, Chair of the Anchorage Women's Commission, testified that she

visited Fantasies, and:

> I saw nude, totally nude females gyrating on the laps of male patrons and female patrons, physical contact, they were sitting on the laps like we heard earlier, legs wrapped around, gyrating on the men's penis area. I saw nipples on men's mouths.
>
> I saw a vagina right in a man's face. There was no way he could have moved his face without touching her vagina, and that was all. I stayed about an hour. That was [going on] the whole time. It wasn't isolated incidences and I've heard testimony tonight that the patrons are not allowed to touch the women back and it may be a rule, but that does happen. I saw several instances of men's hands being on the woman's hips right here as they were gyrating on their penis area.

Exhibit 5.

Beverly Wooley, Director of the Municipality's Department of Health and Human

Services, testified about her observations from a visit to Fantasies:

> While I was there I observed female dancers who were coming into sexual contact with patrons. From the dance stage there were patrons who were actually, basically encouraged by the dancer to come up and where mouths came in contact with breasts.

Exhibit 6.

Although Sands North may attempt to dispute the testimony about lap dancing at

Fantasies, such a dispute does not preclude a grant of summary judgment. The specific

question whether lap dancing occurs at Fantasies, or how lap dances are conducted there,

does not affect this motion. The relevant inquiry is whether the Assembly had a

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA 3:05-cv-00256 (TMB)
Page 5 of 34

legitimate basis for its concerns about lap dancing.  The court's responsibility for making findings of fact does not authorize it to resolve conflicts in the evidence against the legislature's conclusion.  *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 950, (1979). The fact finding process of legislative bodies is generally entitled to a presumption of regularity and deferential review by the judiciary, so long as the enactment does not employ a suspect classification or impinge on fundamental rights.  *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 500, 109 S.Ct. 706, 725 (1989).   Under rational basis review, a legislative choice is not subject to courtroom fact-finding and may even be based on rational speculation unsupported by evidence or empirical data.  *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 2102 (1993).

At any rate, the testimony cited above indicates that lap dancing certainly does involve extensive physical contact between dancers and nude patrons.  Moreover, the evidence adduced at the Assembly hearings is corroborated by the findings from other jurisdictions.

### 2.       Findings from other jurisdictions.

Case law from other jurisdictions[1] supports the Assembly's findings.  Lap dancing

---

[1] This motion relies in part on the rule announced in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925 (1986), that a city may adopt the findings of other jurisdictions:

> We hold that *Renton* was entitled to rely on the experiences of Seattle and other cities, and in particular on the "detailed findings" summarized in the Washington Supreme Court's *Northend Cinema* opinion [*Northend Cinema, Inc. v. Seattle,* 90 Wash.2d 709, 585 P.2d 1153 (1978)], in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 6 of 34

is described as "physical contact between the genital areas of a scantily clad female dancer and fully clothed male customers." *Colonial First Properties, LLC v. Henrico County Virginia*, 236 F.Supp.2d 588, 589 (E.D.Va. 2002). "In essence, the term is a euphemism for simulated coitus in which the female dancer gyrates her genital area on the male customer's genital area." *Id.* During a lap dance, the dancer typically "sit[s] on the lap of a patron while slowly gyrating her buttocks or crotch on the patron's crotch and permit[s] the patron to fondle her breasts and buttocks." *Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Commissioners*, 32 F.3d 1436, 1439 (10th Cir. 1994). The dancers may also "put their nipples of their breasts inside [the customer's] mouth . . . and/or touch[] the penis area of [the customer's] body." *BGHA, L.L.C. v. City of*

---

evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. That was the case here. Nor is our holding affected by the fact that Seattle ultimately chose a different method of adult theater zoning than that chosen by Renton, since Seattle's choice of a different remedy to combat the secondary effects of adult theaters does not call into question either Seattle's identification of those secondary effects or the relevance of Seattle's experience to Renton.

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. at 51-2. A similar principle applies under Alaska law:

[The] contention that a compelling state interest underlying a particular statute can only be established by legislative findings of fact has no merit. The legislature need not account for the bills it passes into law. It is the responsibility of the Department of Law to defend the laws passed by the legislature against constitutional attack; and in doing so, the Department may adduce all relevant evidence and arguments, including matters which may never have been presented to or considered by the legislature in its deliberations. This has always been the framework in which constitutional adjudication takes place . . . .

*Gray v. State*, 525 P.2d 524, 528 n.15 (Alaska 1974).

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 7 of 34

*Universal City, Texas*, 210 F.Supp.2d 821, 829, (W.D. Tex. 2002).  The performance also

may include:

> engaging in other physical contact with patrons continuing to the point of
> ejaculation, opening their vaginas while placing it [sic] in close proximity
> to the patron's face, rubbing or slapping their breast on the patron's face,
> grinding their genitals or buttocks on the laps of patrons, allowing patrons
> to use their hands and mouths to place paper money in dancers' vaginas or
> buttocks, and even permitting patrons to insert their fingers into dancers'
> vaginas.

*2025 Emery Highway, L.L.C. v. Bibb County, Georgia*, 377 F.Supp.2d 1310, 1331
(M.D.Ga. 2005).

To initiate a lap dance, a patron requests that a dancer come to dance for him

personally and "tips" her as payment for a dance.  *Id.* at 1324.  Typically, the more the

customer pays, the more clothing the dancer will remove, and the more erotic the dance

will become.  *See,* e.g., *Steinbach v. State*, 979 S.W.2d 836, 838-841 (Tex.App. 1998).

Thus, in the context of lap dancing, "tipping" is more like a fee-for-service arrangement

than a gratuity.  *State ex. rel. Gibbons v. Jackson*, 16 S.W.3d 797, 800 (Tenn.Crim.App.

1999) ("lap dancing . . . will always involve the exchange of money between customer

and dancer.")

When reviewed under applicable legal standards, the Municipality's restrictions on

lap dancing prove to be constitutionally valid.

## III.    Standard of Review

Summary judgment is appropriate if, viewing the evidence in the light most

favorable to the non-moving party, there are no disputes of material fact and the movant

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 8 of 34

is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Clark v. City of Lakewood*, 259 F.3d 996, 1004 (9th Cir. 2001).

The provisions challenged by Sands North have not yet been enforced against it, so only a facial challenge is justifiable. *J & B Social Club No. 1, Inc. v. City of Mobile*, 966 F.Supp. 1131, 1139 (S.D.Ala. 1996). Whether a statute is facially unconstitutional is a matter of law. *Lind v. Grimmer*, 30 F.3d 1115, 1121 (9th Cir. 1994). Accordingly, the issues in this motion may appropriately be resolved at summary judgment.

A facial challenge typically imposes a higher burden than an "as-applied" challenge. An as-applied challenge alleges that the restriction on speech is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others. *Menotti v. City of Seattle,* 409 F.3d 1113, 1128 n.25 (9th Cir. 2005). By contrast, a facial challenge alleges that <u>any</u> enforcement of the ordinance creates an unacceptable risk of the suppression of ideas. *Id*. (emphasis added.) Sands North cannot meet this burden of proof.

## IV.    Argument

### A.    Lap dancing is not constitutionally protected conduct, so the four foot "buffer zone" is subject to low-level constitutional scrutiny.

#### 1.    Lap dancing is not constitutionally protected under federal law.

In examining a challenge to a statute based on freedom of expression principles, the threshold question is whether the enactment reaches a substantial amount of constitutionally protected expression. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186 (1982); *Bachlet v. State*, 941 P.2d 200, 204 (Alaska 1997).

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 9 of 34

Under federal law, lap dancing does not enjoy any special protection. The rationale for this was explained in *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1251 (5th Cir.1995):

> . . . intentional contact between a nude dancer and a bar patron is conduct beyond the expressive scope of the dancing itself. The conduct at that point has overwhelmed any expressive strains it may contain. That the physical contact occurs while in the course of protected activity does not bring it within the scope of the First Amendment. . . . Similarly, *patrons* have no First Amendment right to touch a nude dancer. [emphasis in original]

The Ninth Circuit Court of Appeals has repeatedly upheld "buffer zone" requirements like the one in AMC 10.40.050. In *Kev, Inc. v. Kitsap County,* 793 F.2d 1053 (9th Cir. 1986) the court held that a ten foot buffer zone did not significantly burden First Amendment Rights. The court explained "[w]hile the dancer's erotic message may be less effective from ten feet, the ability to engage in the protected expression is not significantly impaired. Erotic dancers still have reasonable access to their market." *Id.* at 1061.

This holding was reaffirmed in *BSA, Inc. v. King County,* 804 F.2d 1104 (9th Cir. 1986), where the court stated:

> We note at the outset that BSA and Chase <u>have failed to explain how the distance requirement impinges upon their First Amendment rights</u>. The [separation] requirement does not prohibit nude entertainment. It also does not diminish the expressiveness of nude entertainment. There is no allegation that the distance between entertainer and patron is an integral part of the expressive activity, or that the viewing public is less able to satisfy its appetite for sexually explicit fare.

*Id.* at 1111 (citations omitted; emphasis added).

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 10 of 34

Twelve years later, the Ninth Circuit evaluated a similar separation ordinance, in *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Cir. 1998). In this case the appellants used a different strategy, arguing that "table dancing[2] is a unique form of protected expression that is qualitatively different from nude stage dancing" because it offered "not just vision but multi-sensory perception . . . within the patron's intimate perimeter". *Colacurcio* at 555. The court rejected this argument, holding that "table dancing in private nightclubs, with documented links to prostitution and drug dealing, is a highly unlikely candidate for special protection under the First Amendment." *Id.* at 556.

More recently, in *Gammoh v. City of La Habra*, 395 F.3d 1114 (9th Cir. 2005), the court upheld an ordinance requiring dancers to perform at least two feet away from patrons. The court held that the ordinance was not void for vagueness, *Id.* at 1119-1121; it was not overbroad, *Id.* at 1121-1122; it was not a regulatory taking, *Id.* at 1122; and it did not violate First Amendment Rights, *Id*. at 1128.

Clearly, under Ninth Circuit precedent the Municipality's buffer zone does not impair any constitutionally protected right of expression. This is true under Alaska law as well.

> **2.     Lap dancing does not merit protection under the Alaska Constitution.**

The Alaska Supreme Court has not yet addressed the specific subject of lap dancing; however, Alaska case law indicates lap dancing would not enjoy constitutional

---

[2] Described as a dance performed from one to six inches away from the customer, *Colacurio*, 163 F.3d at 554 n.8.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 11 of 34

protection under state law.  In *Mickens v. City of Kodiak*, 640 P.2d 818, 820 (Alaska 1982) the Alaska Supreme Court declared that nude dancing was constitutionally protected.  With respect to ordinary nude dancing, the court stated that "the customary 'barroom' type of nude dancing involv[es] only the barest minimum of protected expression." *Id.* at 821 n.5 (citations omitted).  The court made clear that protection afforded to nude dancing would not necessarily apply in every case, noting for example that obscene performances might not be protected.  *Id.* at 822-23.  Since it held that ordinary nude dancing involves only the "barest minimum" of protected expression, the *Mickens* decision indicates that lap dancing – which goes well beyond the limits of ordinary nude dancing – probably would not be protected.

In other cases, the Alaska Supreme Court has acknowledged that "the state has a legitimate interest in regulating nudity in certain contexts."  *Powell v. City of Anchorage*, 536 P.2d 1228, 1233 n.6 (Alaska 1975).  Cases in Alaska hold that sexual conduct (as opposed to sexual expression) may legitimately be penalized.  For example, in *Summers v. Anchorage*, 589 P.2d 863 (Alaska 1979), the appellants claimed their convictions for prostitution violated a constitutional right of expression.  *Id.* at 867.  The court rejected this argument:

> The ordinance supporting the convictions of Summers and Kitchen does not threaten first amendment rights. The questioned ordinance seeks to prohibit certain sexual conduct and patterns of sexual relations. Appellants characterize these prohibitions as infringing on first amendment values of free expression and association. The expressive conduct and speech-related terms in the ordinance, however, regulate speech only as an element of prohibited prostitution activities. . . .

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 12 of 34

*Summers v. Anchorage*, 589 P.2d at 867 (citations and quotation marks omitted).  Like the ordinance at issue in *Summers*, the buffer zone required by AMC 10.40.050 proscribes sexual conduct, not protected expression.  This is constitutional.

In *Hilbers v. Municipality of Anchorage*, 611 P.2d 31 (Alaska 1980), the court upheld an ordinance that forbade employees in massage parlors from exposing their genitals to patrons or touching the patrons' genitals:

> The three subsections relating to masturbatory massages challenged by plaintiffs are designed to prevent criminal conduct, particularly the offenses of obscenity, prostitution and possibly public indecency.  The requirements that both patron and employee preserve a minimum degree of modesty and avoid genital contact seem admirably suited to that end.   Given the weakness of human nature, to permit that which is prohibited here would invite criminal misconduct.  On similar reasoning, we find that there is a reasonable relation between the objective of control of prostitution and prohibiting exposure or touching of genitals.

*Id.* 611 P.2d at 41 (citation omitted).  Like the ordinance at issue in *Hilbers*, the buffer zone is intended to eliminate a situation that invites criminal conduct.  This measure complies with Alaska's constitutional requirements.

The majority of other courts are in accord with the Municipality's position on lap dancing.  Numerous state courts hold that intentional touching of a patron by a nude dancer (or vice versa) is not constitutionally protected expression, and "buffer zone" provisions like the one at issue here are constitutional.[3]  The majority of federal courts

---

[3] *State ex. rel. Rothal v. Smith*, 783 N.E.2d 1001, 1015 (Ohio App. 9 Dist. 2002);  *People v. Hill*, 333 Ill.App.3d 783, 787 (Ill.App. 2 Dist.2002; *Krontz v. City of San Diego*, 39 Cal.Rptr.3d 535 (Cal.App. 4 Dist. 2006); *State v. Bouye,* 484 S.E.2d 461, 463 n. 2 (S.C. 1997); *American Show Bar Series, Inc. v. Sullivan County,* 30 S.W.3d 324, 338 (Tenn.Ct.App.2000); *Hoskins v. Dep't of Bus. Regulation, Div. of Alcoholic Beverages &*

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 13 of 34

agree as well.  As a matter of federal law,  "[n]o court has ever held that this conduct [i.e. lap dancing] enjoys the First Amendment protection extended to nude, or semi-nude, dancing by decisions of the Supreme Court of the United States."  *Colonial First Properties, LLC v. Henrico County Virginia*, 236 F.Supp.2d 588, 589 n.1 (E.D.Va. 2002). Although the Alaska Supreme Court is not required to follow these decisions, it would probably find such a weight of authority persuasive.

> **3.    Since no constitutional right is affected, the "buffer zone" provision need only demonstrate a substantial relationship between means and ends.**

Since lap dancing is not constitutionally protected conduct, the level of constitutional scrutiny that applies to the buffer zone is relatively low.  Under federal law, where no fundamental right is affected, the applicable standard is "rational basis" scrutiny.  *Recreational Developments of Phoenix, Inc. v. City of Phoenix*, 83 F.Supp.2d 1072, 1098 (D.Ariz. 1999).   Under Alaska law, the test is slightly more stringent, described as a sliding scale: at "the low end of the sliding scale", where no fundamental right or suspect class is affected, "a substantial relationship between means and ends is constitutionally adequate."   *Kenai Peninsula Borough v. State*, 743 P.2d 1232, 1371 (Alaska 1987).  Since Alaska's test is considered more stringent, if the ordinance survives

---

*Tobacco,* 592 So.2d 1145, 1146 (Fla. 2d DCA 1992); *State v. McGraw,* 879 P.2d 1147, 1155 (Kan.App. 1994); *City of Elko v. Abed*, 677 N.W.2d 455 (Minn.App.,2004); *Restaurant Ventures, LLC v. Lexington-Fayette Urban County Government*, 60 S.W.3d 572 (Ky.App.,2001); *Ino Ino, Inc., v. City of Bellevue,* 937 P.2d 154 (Wash. 1997), *cert. denied,* 522 U.S. 1077, 118 S.Ct. 856 (1998); *Club Southern Burlesque, Inc. v. City of Carrollton,* 457 S.E.2d 816 (Ga. 1995).

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 14 of 34

Alaska's "substantial relationship" test it will also survive under the more lenient federal "rational basis" test.

The test under Alaska law for determining a substantial relationship between the means and ends of an ordinance is "a twofold inquiry that requires courts to determine, first, whether a legitimate objective for legislative action actually existed and, second, whether the specific legislation adopted bears a close and substantial relationship to the underlying state interest." *Evans ex. rel. Kutch v. State*, 56 P.3d 1046, 1073 (Alaska 2002). Although this test is more stringent than the federal test, it is still fairly deferential, and very few legislative enactments have been invalidated under it. *Chiropractors for Justice v. State*, 895 P.2d 962, 972 (Alaska 1995) (noting, as of 1995, only three enactments in Alaska had ever been struck down under low-level scrutiny).

### a.    The buffer zone furthers a legitimate objective.

The first prong of the "rational relationship" inquiry, whether a legitimate objective exists for the legislative action, is resolved in the affirmative. The objective of the buffer zone is to eliminate the risk of prostitution, sexual assaults, and disease that are associated with lap dancing. Numerous cases agree that these are legitimate government objectives.

For example, in *Hilbers v. Municipality of Anchorage*, 611 P.2d 31 (Alaska 1980) the court acknowledged that the government has a legitimate interest in controlling prostitution, and found that an ordinance forbidding employees from exposing their genitals or touching patrons' genitals was an appropriate means to achieve that goal. *Id.*

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 15 of 34

at 37-38.  In *BSA v. King County*, 804 F.2d 1104 (9th Cir. 1986) the court explained that "curtailing public sexual contact and sexual criminal offenses represents a significant state interest.  The six foot . . . distance requirement furthers this interest by keeping nude entertainers just out of reach of the nearest patron."  In *Colacurcio v. City of Kent*, 163 F.3d at 553, evidence showed a connection between table dancing and illegal sexual activity. In *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997), a public health officer testified that lap dancing poses a risk of the transmission of disease, which justified imposing a six-foot separation distance.  *Id*. at 410.  In *Gammoh v. City of La Habra*, 395 F.3d 1114, 1125 (2005) the court held that "the two-foot rule and the no-touching rule are reasonably linked to the secondary effects that the City identifies as its purpose in enacting the Ordinance" which include "increased threat of the spread of sexually transmitted diseases".  Evidence in that case showed that solicitations for sexual favors occurred during dances and that drugs were frequently passed during tipping.  *Gammoh*, 395 F.3d at 1127 n.6.  In *DCR, Inc. v. Pierce County*, 964 P.2d 380, 390 (Wash.App. Div. 2 1998), the court found that "regulation of the distance between dancer and patron was necessary to prevent significant criminal activity that has historically and regularly occurred in adult entertainment establishments, including prostitution, narcotics transactions, breaches of the peace, and organized crime."

Not only is there a strong correlation between lap dancing and crime; some aspects of lap dancing are criminal in themselves.  Other courts have held that lap dancing is in itself an act of prostitution.  *See*, e.g. *State v. Keawe*, 108 P.3d 304, 306 (Hawaii 2005);

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 16 of 34

*People v. Hill*, 776 N.E.2d 828, 831 (Ill.App.2 Dist. 2002); *People v. Hinzman*, 177 Misc.2d 531, 677 N.Y.S.2d 440, (N.Y.City Crim.Ct.1998). Even if lap dancing is not by itself an act of prostitution, it provides a compelling opportunity for solicitation of prostitution. *Gammoh*, 395 F.3d at 1127 n.6 (evidence showed that solicitations for sexual favors occurred during lap dances); *Dreamland Ballroom and Social Dance Club, Inc. v. City of Ft. Lauderdale,* 789 So.2d 1099, 1101 (Fla.App. 4 Dist. 2001) (dancers solicited undercover officers for sex). A lap dance also invites sexual assault,[4] since the patron has an opportunity to touch the dancer's genitals, anus, or breast without the dancer's consent. Clearly, the Municipality's prohibition against lap dancing furthers a legitimate government objective.

           **b.**     **There is a fair and substantial relationship between the 'means and the ends' of the buffer zone requirement**.

The next prong of the inquiry, whether a substantial relationship exists between the government objective and the means used to further that objective, is a deferential one. The "fair and substantial relationship test does not require a perfect fit between a legislative classification and the government objective it is intended to further." *State v. Anthony,* 810 P.2d 155, 159 (Alaska 1991). In most cases, once a legitimate objective for the statute is found to exist, the court will also find that the provision bears a substantial

---

[4] Under AS 11.41.420(a)(1), a person commits sexual assault in the second degree if the offender engages in sexual contact with another person without consent of that person. AS 11.81.900(58)(A) defines "sexual contact" as knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 17 of 34

relationship to that objective.  *Chiropractors for Justice v. State*, 895 P.2d at 972 (Alaska 1995).

In the case *sub judice*, the means chosen by the Municipality is substantially related to the objective of preventing contact between dancers and patrons.  This was explained in *Colacurcio v. City of Kent*, 163 F.3d at 554 where the court upheld a separation distance of ten feet:

> . . . the less-restrictive alternatives presented by Appellants arguably are not "reasonable" alternatives as they would not serve the City's purposes of controlling drug transactions and prostitution. The one-foot and "no-touch" ordinances would be unenforceable, as both would fail to provide sufficient line-of-vision for law enforcement personnel. An earlier "no-touch" ordinance in Kent failed for this reason. In addition, both of these options would permit verbal communication between dancers and patrons, thereby failing to curtail propositions for drugs or sex. . . .  Although a four-foot distance requirement would keep patrons and dancers just out of arm's reach, a ten-foot requirement covers two arm spans and keeps patrons out of earshot. Appellants have failed to present evidence showing that a ten-foot rule burdens substantially more expression than necessary to achieve its purpose."

*Id.*.  Similarly, in *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997) the court found: "[t]he City Council determined that a six-foot zone struck the appropriate balance; while it is probable that each marginal foot of the buffer zone achieves each of these goals somewhat less efficiently, it is not for us to say that a seven-foot zone or a five-foot zone would strike a better balance." *Id*. at 413.

Since the Municipality's buffer zone does not impair any constitutionally protected right, it need only demonstrate that it is substantially related to a legitimate government goal.  The buffer zone advances a legitimate goal of preventing dancers and

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 18 of 34

patrons from touching one another, and it is substantially related to that goal, because a separation of less than four feet would be less effective.

**B.    Sands North's equal protection claim must fail.**

    **1.    Sands North has failed to allege a prima facie equal protection claim, because the classification in question - adult cabarets vs. alcohol establishments – is a matter of free choice.**

The gravamen of Sands North's equal protection claim is that AMC 10.40.050 imposes "greater restrictions on non-alcohol entertainment facilities than it does on alcohol facilities." *See*, Motion for TRO, at 39. As a threshold issue, this allegation fails to state a prima facie case. Only immutable characteristics are entitled to heightened protection under the Equal Protection Clause; characteristics that can be adopted or abandoned by choice are not. *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990). Fantasies' status as an adult cabaret is a matter of free choice. It can opt to be regulated as an adult cabaret, or it can obtain an alcoholic beverage license if it so prefers. Any alleged inequality resulting from Sands North's choice to operate Fantasies as an adult cabaret is self-imposed. This does not state an equal protection claim.

    **2.    AMC 10.40.050 exempts alcohol establishments because they are already regulated by the State. This classification is subject to low-level scrutiny, and it meets that test**.

As a matter of law, Sands North's equal protection claim fails because the challenged provision does not affect any fundamental right or suspect class. Under federal law, if no fundamental right or suspect class is at issue, the regulation is reviewed

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 19 of 34

under rational basis scrutiny. *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th

Cir.2002). Under Alaska law the test is slightly more stringent, described as a three-step

sliding-scale analysis:

> First, it must be determined at the outset what weight should be afforded
> the constitutional interest impaired by the challenged enactment. The
> nature of this interest is the most important variable in fixing the appropriate level
> of review···· Depending upon the primacy of the interest involved, the state
> will have a greater or lesser burden in justifying its legislation.
>
> Second, an examination must be undertaken of the purposes served by a
> challenged statute. Depending on the level of review determined, the state
> may be required to show only that its objectives were legitimate, at the low
> end of the continuum, or, at the high end of the scale, that the legislation
> was motivated by a compelling state interest.
>
> Third, an evaluation of the state's interest in the particular means employed
> to further its goals must be undertaken. Once again, the state's burden will
> differ in accordance with the determination of the level of scrutiny under
> the first stage of analysis. At the low end of the sliding scale, we have held
> that a substantial relationship between means and ends is constitutionally
> adequate.

*Alaska Civil Liberties Union v. State*, 122 P.3d 781, 789 (Alaska 2005).

The first step in the three-part analysis directs that low-level scrutiny should apply

here. No fundamental right or suspect class is affected. Sands North's right to offer nude

dancing is not impaired by the Municipal ordinance. Although the ordinance restricts lap

dancing, that is not constitutionally protected conduct. *See,* Section IV.A above.

Sexually oriented businesses are not a suspect class under equal protection jurisprudence.

*Isbell v. City of San Diego*, 258 F.3d 1108, 1116 (9th Cir. 2001); *Richland Bookmart, Inc.*

*v. Nichols,* 278 F.3d 570, 574 (6th Cir.2002).

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 20 of 34

The second step of the inquiry – the purpose served by the ordinance – is resolved in the Municipality's favor.  When the interests affected lie "at the low end of the continuum," the court need only examine whether the objectives of the ordinance were legitimate.  *Matanuska-Susitna Borough School District v. State*, 931 P.2d 391, 399 (Alaska 1997).  Under low-level scrutiny, "less important governmental objectives will suffice and a greater degree of over or under inclusiveness in the means-to-end fit will be tolerated.  *State v. Ostrosky*, 667 P.2d 1184, 1193 (Alaska 1983). In this case the objective served by exempting alcoholic beverage establishments is one of minimizing redundancy in regulations.

Although it is true that alcohol establishments are exempt from AMC 10.40.050, this does not mean that alcohol establishments are completely unregulated.  Instead, alcohol establishments are extensively regulated by the State of Alaska, under Title 4 of the Alaska Statutes and Title 13 Chapter 104 of the Alaska Administrative Code.  State regulations differ in some respects from the Municipal ordinance, but they still prohibit sexual contact between customers and patrons.  13 AAC 104.180(a)(3).

Since alcohol establishments are regulated by the State, the Municipal Assembly saw no need to extend its regulations to bars.  Doing so would have been redundant, and would subject alcohol establishments to potentially conflicting requirements.  This is a sufficiently legitimate government objective to survive the low-level scrutiny that applies.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 21 of 34

In the third and final step of the Alaska equal protection analysis, the court must evaluate the government's interest in the particular means employed to further its goals. If the individual interests affected lie "at the low end of the sliding scale," the court need only find a "fair and substantial relationship" between means and ends. *Matanuska-Susitna Borough School District v. State*, 931 P.2d at 396. This inquiry has already been resolved in *Hilbers v. Municipality of Anchorage*. In that case, the appellants claimed an ordinance prohibiting staff in massage parlors from displaying their genitals violated equal protection, because employees of bars and nightclubs were permitted to do so. 611 P.2d at 41. The court rejected this argument, finding "a reasonable relation between the objective of control of prostitution and prohibiting exposure or touching of genitals." *Id.* at 42. The Court explained: "[g]iven the weakness of human nature, to permit that which is prohibited here would invite criminal misconduct." *Id.*

The same reasoning applies here. Given the sexually suggestive atmosphere in adult cabarets, and the fact that the dancers are nude or nearly nude, the buffer zone provision is substantially related to a legitimate government goal. The buffer zone survives equal protection scrutiny.

### C.    Sands North's vagueness challenge lacks merit.

#### 1.    The challenged provisions are not unduly vague.

Sands North's vagueness challenge attacks the buffer zone requirement in AMC 10.40.050A.e., and the definition of "specified sexual activities" in AMC 10.40.050A. These attacks fail because the provisions at issue are simply not vague. A statute is void

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 22 of 34

for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes . . . or if it invites arbitrary and discriminatory enforcement. *Schwartzmiller v. Gardiner*, 752 F.2d 1341, 1345 (9th Cir. 1984) (citations omitted). The provisions at issue here are sufficient to give notice to a person of ordinary intelligence concerning the conduct proscribed.

Although Sands North professes some subjective confusion about these terms, that is irrelevant. So long as the terms can be clarified by interpreting them in context with the other terms in the ordinance, they are constitutional. This was explained in *Dykstra v. Municipality of Anchorage*, 83 P.3d 7, 9 (2004):

> The fact that people can, in good faith, litigate the meaning of a statute does not necessarily (or even usually) mean that the statute is so indefinite as to be unconstitutional. The question is whether the statute's meaning is unresolvably confused or ambiguous *after* it has been subjected to legal analysis. If study of the statute's wording, examination of its legislative history, and reference to other relevant statutes and case law makes the statute's meaning clear, then the statute is constitutional.

When the provisions of AMC 10.40.050 are subjected to a fair legal analysis, their meaning becomes clear and there is no vagueness problem.

### a.     The buffer zone is not unduly vague.

Sands North's vagueness attack on the buffer zone is specious. This same argument was rejected in *Gammoh v. City of La Habra*, 395 F.3d at 1119-1121. The court concluded: "the act that is prohibited - being within two feet of a patron - is certainly not vague." *Id*. at 1120. Likewise, in *Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 209 F.Supp.2d 672, (W.D.Ky. 2002), the court rejected a claim that a

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 23 of 34

three foot separation requirement between nude dancers and patrons was unduly vague. *Id.* at 683.

Sands North claims it cannot understand whether the buffer zone provision is intended to be regulatory, or just a definition with no regulatory application. That argument is groundless. The Municipality's intent to enforce this provision as a mandatory requirement is clear from the language in the ordinance. AMC 10.40.050A.e. states "[a] separation of a minimum of four (4) feet <u>shall</u> be maintained between entertainers, dancers, and/or strippers and patrons" (emphasis added). It is a basic canon of statutory construction that use of the word "shall" indicates a mandatory intent. *U.S. v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997). The sentence in AMC 10.40.050A.e is a command, not a definition. There is no vagueness or ambiguity in this provision.

> **b.    The prohibition against touching certain parts of the body is not unduly vague.**

Sands North also challenges the prohibition against "simulated or actual . . . fondling or touching of human genitals, pubic region, buttock, anus, or female breasts." Sands North suggests that a dancer might violate this provision inadvertently by scratching herself or by brushing a piece of lint off her sweater. *See,* Plaintiff's Motion for TRO at 33 n.12. This apprehension is exaggerated. The prohibition against touching or fondling must be construed in context with the other provisions in the ordinance. When viewed in context, the meaning of this provision is clear: it prohibits touching that is conducted intentionally as part of the entertainment. There is no suggestion that a dancer might violate the ordinance inadvertently.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 24 of 34

A similar "no touching" provision survived a vagueness challenge in *Kev, Inc. v. Kitsap County*, 793 F.2d 1053. In that case the court construed a provision that "no dancer shall fondle or caress any patron and no patron shall fondle or caress any dancer." *Id.* at 1057. The court found that "'fondling' and 'caressing' are ordinary, commonly used terms." *Id.* The court also explained "in the context of the other definitions provided in the ordinance . . . [the challenged provision] is easily understood to prohibit sexual conduct between dancers and patrons whom the dancers intend to arouse sexually while the dancers are acting in the scope of their employment at the erotic dance studio." *Id.* The same reasoning applies in this case. The prohibition is easily understood, and it applies only to touching offered as part of a performance or entertainment, not inadvertent touching.

In *Dodger's Bar & Grill, Inc.* v. *Johnson County Board Of County Commissioners*, 32 F.3d 1436 (10th Cir. 1994) the court rejected a vagueness challenge directed at an ordinance which proscribed "acts which constitute or simulate: the touching, caressing, or fondling of the breast [or] buttocks." *Id.* at 1444. The court held that it would not strike down legislation as vague when a court could extrapolate the allowable meaning. *Id.* It went on to explain:

> In sum, although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with. . . . We do not find any of the provisions attacked in the district court to be so vague that they fail to give adequate warning of the activities proscribed, or fail to set out "explicit standards" for law enforcement

*Dodger's Bar & Grill, Inc.* at 1445.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 25 of 34

Sands North also objects to the term "simulated", but this objection is groundless. The use of the phrase "actual or simulated" as a modifier is sufficiently clear, so long as the specified sexual activities themselves are described in sufficient detail. The phrase "actual or simulated" is part of the Supreme Court's definition of obscenity that may be completely proscribed. As stated in *Miller v. California* 413 U.S. 15, 93 S.Ct. 2607 (1973), obscenity is:

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, <u>actual or simulated</u>.
> (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25, 93 S.Ct. at 2615 (emphasis added). *Miller v. California* makes clear that the term "simulated" is essential to a definition of prohibited "specified sexual activities", because obscenity includes the <u>depiction</u> of the act, as well as the act itself. Like the definition in *Miller v. California*, AMC 10.40.050 is intended to prescribe not only real live sex acts, but the depictions thereof as well.

The definition of "specified sexual activities" in AMC 10.40.050 describes the prohibited conduct with sufficient clarity that the ordinary person exercising ordinary common sense can sufficiently understand what is prohibited. Sands North's vagueness challenge must fail.

### 2.    Sands North has no standing to argue that the ordinance is vague as to other persons.

As a general rule, courts will not entertain a vagueness challenge to an ordinance when "there can be no question as to its applicability to the particular offense involved".

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 26 of 34

*Anderson v. State*, 562 P.2d 351, 356 (1977).  Unless the alleged vagueness is shown to have a real and substantial chilling effect on other persons beside the plaintiff, it is "inappropriate . . . to adjudicate the hypothetical claims of persons not before the Court." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 61, 96 S.Ct. 2440, 2448 (1976).

As far as Sands North is concerned, there is no question that its conduct falls squarely within the prohibitions of the ordinance.  The lap dances offered at Fantasies clearly violate the four-foot buffer zone requirement.  The prohibition against "fondling or touching of human genitals, pubic region, buttock, anus or female breasts" is aimed at the type of fondling that occurs during lap dances, and it only applies to businesses that are licensed as adult entertainment establishments.  Sands North has no standing to argue this ordinance might be vague as to other parties.

> **3.    Any provisions that are vague can be saved by a narrowing construction**.

Finally, if the ordinance is found to be vague in any respect, the Municipality is entitled to resolve the problem by narrowing the construction of its terms.[5]  When a statute is challenged on constitutional grounds, "it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."  *U.S. v. Thirty-Seven Photographs*, 91 S.Ct. 1400, 1404, 402 U.S. 363, 369 (1971).  A statute should not be declared unconstitutional unless it "could not be construed so as to avoid all constitutional difficulties."  *Id.* 91 S.Ct. at 1405, 402

---

[5] For example, since the ordinance is primarily aimed at preventing contact between dancers and patrons, the prohibition against dancers touching <u>themselves</u> should be construed more narrowly than the prohibition against touching others.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 27 of 34

U.S. 363.  To the extent that any of the amendments are unduly vague, the Municipality must be allowed an opportunity by implementation to narrow the construction of those terms so any vagueness problems are alleviated.

### D.  Sands North's overbreadth challenge lacks merit.  The ordinance is not overbroad, and any overbreadth problems may be cured by a limiting construction or by severing the offending provisions.

#### 1.    The definition of "specified sexual activities" is not overbroad.

Sands North also alleges that the definition of "specified sexual activities" is overbroad.  This challenge fails to meet the applicable legal standard.  A statute is overbroad if it prohibits not only acts the legislature may forbid, but also constitutionally protected conduct.  *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984).  The relevant standard was explained in *VECO International, Inc. v. Alaska Public Offices Commission*, 753 P.2d 703 (Alaska 1988):

> Analytically, there are two ways a statute could be overbroad, which might loosely be termed "systemic" and "local." An overbroad statute is *systematically* overbroad if there is "no core of easily identifiable and constitutionally proscribable conduct that the statute prohibits." *Maryland v. J.H. Munson Co.,* 467 U.S. 947, 965-66, 104 S.Ct. 2839, 2852, (1984). On the other hand, a *locally*-overbroad statute is one where the unconstitutional applications can easily be lumped together and severed. To strike such a statute would be "manifestly[ ] strong medicine," *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916 (1973),  particularly when the litigant's own activities are not protected, and the legislation clearly intended to proscribe them.

*VECO International,* 753 P.2d at 713.

Under this standard, Sands North's overbreadth challenge fails, because it cannot demonstrate that the definition of "specified sexual activities" in AMC 10.40.050 reaches

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 28 of 34

any constitutionally protected conduct.  As discussed in Section IV.A above, "fondling" and "caressing" of a nude dancer by a patron (or vice versa) is not constitutionally protected.  Likewise, the proscription against touching of genitals, pubic region, buttock, anus or female breasts does not impinge on constitutionally protected expression, and thus does not violate overbreadth doctrine.

Provisions similar to those in AMC 10.40.050 have survived overbreadth challenges in other courts.  In *Déjà vu of Nashville, Inc. v. Metropolitan Government of Nashville*, 274 F.3d 377 (6th Cir. 2001) the court analyzed a challenge to a definition of "specified sexual activities" and noted that:

> "Specified sexual activities" include sexual intercourse and fondling of buttocks or breasts. See M.C.L. § 5.43.010(CC). A significant number of mainstream movies depict people fondling breasts or buttocks, and an even larger number "relate to" sex. Again, the risk that this definition might chill a range of protected speech would require us to find it unconstitutionally overbroad if it stood alone. The additional requirement of being a "sexually oriented business/establishment," however, narrows the Ordinance's application to those theaters that regularly present material distinguished or characterized by an emphasis on sex acts or particular body parts. Again, reading the definitions together saves the parts from overbreadth.

*Id.* 274 F.3d at 388.  Like the ordinance at issue in *Déjà vu of Nashville,* the definition of "specified sexual activities" in AMC 10.40.050 only applies to adult entertainment businesses.  That limitation effectively prevents the ordinance from being applied in a manner that would regulate constitutionally protected expression.

Overbreadth challenges to "no touching" provisions have also been rejected.  In *Kentucky Restaurant Concepts v. City of Louisville,* the court explained:

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 29 of 34

> To be sure, the Department could read the plain language of this Ordinance as applying to incidental and general social touching in a way impermissible under First Amendment jurisprudence. However, to do so would require an interpretation entirely inconsistent with the obvious purpose of the Ordinance, which is to limit touching between entertainers and others during any erotic dance performance. Given both the evident legislative intent and the actual text, the Department's interpretation is a reasonable one, and the Court should not contort the Ordinance to conjure up a hypothetical constitutional clash where none actually exists. . . .

*Id.* 209 F.Supp.2d 672 at 683. Similarly, in *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Cir. 1995) the court rejected an overbreadth challenge to a "no touch" provision, reasoning that a culpable mental state could be read into the statute by implication. *Id.* at 1254-55.

As in *Kentucky Restaurant Concepts*, the Municipality's prohibition against touching must be construed in context with the clear purpose of the ordinance, which is "to limit touching between entertainers and others during any erotic dance performance." *Id.* 209 F.Supp.2d at 683. Under *Hang On, Inc.*, the court can read a *mens rea* element into the ordinance, so the inadvertent or accidental touching will not be penalized. Accordingly, Sands North's suggestion that Section 10.40.050 might chill productions of *Hair*, *Equus*, or *A Chorus Line* (*See,* Plaintiff's Motion for TRO at 36) is unfounded.

### 2.    Sands North's overbreadth claim fails because its conduct clearly falls within the hard core of conduct that may be legitimately proscribed.

Even if AMC 10.40.050 were overbroad in some respects, that argument would have no merit in the present case, because Sands North's conduct falls squarely within the subject area that the Municipality may legitimately proscribe. Under overbreadth

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 30 of 34

doctrine, "even if the outermost boundaries of the challenged statute may be imprecise, any such uncertainty has little relevance . . . where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions . . . ." *Summers v. Anchorage*, 589 P.2d 863, 868 (Alaska 1979) citing *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914 (1973). Since sexual touching between patrons and nude dancers may legitimately be proscribed, Sands North has no standing to argue that productions of *Hair*, *Equus*, or *A Chorus Line* might be adversely affected. There is no evidence that Sands North has a frustrated desire to stage a production of *Hair*, *Equus*, or *A Chorus Line*.

### 3.    Any portion of the ordinance that is overbroad is severable.

Any portion of AMC 10.40.050 that is overbroad can be severed from the rest of the ordinance. As explained in *VECO International*, if only a portion of an ordinance is overbroad, courts will excise or construe the challenged portion, whenever possible, to avoid an unconstitutional result. *Id.* 753 P.2d 703 at 713. Anchorage Municipal Code has a presumption of severability. AMC 1.05.040. Accordingly, any portion of AMC 10.40.050 found to be irredeemably overbroad severed.

AMC 10.40.050 is not overbroad, because it does not reach any constitutionally protected conduct. Even if the ordinance were overbroad, it is not overbroad as applied to Sands North, because sexual touching of nude dancers by patrons clearly falls within the hard core of conduct that may be legitimately proscribed. Any part of the ordinance

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 31 of 34

that proves to be irreparably overbroad is severable.    Sands North's overbreadth
challenge fails.

       **E.**       **Sands North's "commerce clause" challenge is meritless.**

       Sands North's claim concerning Internet use[6] and the Commerce Clause fails
because the ordinance does not burden out-of-state commerce.    Actually, Sands North's
theory is not based on the Commerce Clause as such, but the dormant commerce clause.
*See,* Plaintiff's Motion for TRO at 39-40.    The "dormant commerce clause" is a
judicially-created doctrine that precludes states from impeding interstate commerce with
their own regulations.    *Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003).    "This
'negative' aspect of the Commerce Clause prohibits economic protectionism - that is,
regulatory measures designed to benefit in-state economic interests by burdening out-of-
state competitors."    *Id*. (citations omitted).

       In this case the essential element of a dormant commerce clause claim -
discrimination against out-of-state competitors - is absent.    AMC 10.40.050 applies only
to businesses located in the Municipality, and businesses located out of state are not
affected.    The ordinance does not trigger any dormant commerce clause issues.

---

[6] Although Fantasies characterizes its proposed Internet usage as "broadcasting", Internet
use is not included in the definition of broadcasting under federal or state law.  See 47
U.S.C. § 153(6); AS 44.21.290(2).  For that matter, Sands North is not prohibited from
displaying nudity over the Internet; it simply cannot do so from the premises of an adult
cabaret, because no adult entertainment may be open to view from outside the licensed
premises.  See AMC 10.40.050.J.3.d.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 32 of 34

## V.    Conclusion

Sands North has challenged the constitutionality of AMC 10.40.050 on its face rather than as applied.  To prevail on this claim, Sands North must demonstrate that <u>any</u> enforcement of the ordinance creates an unacceptable risk of the suppression of ideas. Sands North cannot meet this burden of proof.

Sands North's challenge to the four foot buffer zone in AMC 10.40.050 must fail. The buffer zone is intended to prevent dancers and patrons from touching one another, which is not protected conduct.  This provision is subject to low-level constitutional scrutiny, which it passes.  No court in the United States has ever struck down a law that prohibits patrons and nude dancers from touching one another.

Sands North's equal protection challenge is meritless.  The inequality that Sands North complains of is an exemption for alcohol establishments.  This does not affect any suspect class or impair any fundamental right, so it is subject to low-level scrutiny.  The exemption has a sound legislative rationale: alcohol establishments are already regulated by the State, and the Municipality saw no need to enact an overlapping set of regulations.

Sands North's vagueness challenge also lacks merit.  The buffer zone requirement is not vague, and Sands North's argument on this point is simply groundless.  The definition of "specified sexual activities" in AMC 10.40.050 is not unduly vague.  Even if it were, there is no vagueness problem with respect to lap dancing, which clearly falls within the scope of the provision.  Finally, any vagueness problems in the definition of "specified sexual activities" can be cured by a narrowing construction.

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 33 of 34

Sands North's overbreadth challenge fails for similar reasons. The adult entertainment ordinance is not overbroad; it clearly applies to preclude patrons and nude dancers from touching each other, and any overbroad portions are severable.

Sands North's dormant commerce clause fails because AMC 10.40.050 does not discriminate against out-of-state economic competition.

For these reasons, the Municipality's motion for partial summary judgment should be granted.

Respectfully submitted this 7th day of September, 2006.

JAMES N. REEVES
Municipal Attorney


By:    s/ Thomas M. McDermott
       Assistant Municipal Attorney
       P.O. Box 196650
       Anchorage, AK  99519-6650
       (907) 343-4545
       (907) 343-4550 – fax
       uslit@muni.org
       Alaska Bar No. 9910050

The undersigned hereby certifies that on September 7, 2006 a
true and correct copy of the *Memorandum in Support of Municipality's
Motion forPartial SummaryJudgment* was served on:

- Kenneth P. Jacobus
- Allan S. Rubin

by electronic means through the ECF system
as indicated on the Notice of Electronic Filing

s/ Patricia A. Karella
Patricia A. Karella, Legal Secretary
Municipal Attorneys Office

Memo in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 34 of 34