# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

LIST OF EXHIBITS ..................................................................................................... xx

I.     Introduction ........................................................................................................ 1

II.    Background......................................................................................................... 3

       A.     AMC 10.40.050 was originally derived from established case law .............. 3

       B.     The core conduct at issue in this case is the practice of lap dancing,
              which involves direct physical contact between patrons and nude
              dancers ........................................................................................................... 4

              1.     Findings from Municipal Assembly hearings ..................................... 4

              2.     Findings from other jurisdictions ........................................................ 6

III.   Standard of Review ........................................................................................... 8

IV.    Argument ............................................................................................................ 9

       A.     Lap dancing is not constitutionally protected conduct, so the four foot
              "buffer zone" is subject to low-level constitutional scrutiny ....................... 9

              1.     Lap dancing is not constitutionally protected under federal law ....... 9

              2.     Lap dancing does not merit protection under the Alaska
                     Constitution ........................................................................................ 11

              3.     Since no constitutional right is affected, the "buffer zone"
                     provision need only demonstrate a substantial relationship
                     between means and ends ................................................................... 14

                     a.     The buffer zone furthers a legitimate objective .................... 15

                     b.     There is a fair and substantial relationship between the
                            'means and the ends' of the buffer zone requirement ........... 17

  B. Sands North's equal protection claim must fail ........................................... 19

    1. Sands North has failed to allege a prima facie equal protection
      claim, because the classification in question – adult cabarets
      vs. alcohol establishments – is a matter of free choice .................... 19

    2. AMC 10.40.050 exempts alcohol establishments because
      they are already regulated by the State. This classification
      is subject to low-level scrutiny, and it meets that test ...................... 19

  C. Sands North's vagueness challenge lacks merit ......................................... 22

    1. The challenged provisions are not unduly vague ............................. 22

      a. The buffer zone is not unduly vague .................................... 23

      b. The prohibition against touching certain parts of the
        body is not unduly vague ...................................................... 24

    2. Sands North has no standing to argue that the ordinance is
      vague as to other persons ................................................................. 26

    3. Any provisions that are vague can be saved by a
      narrowing construction ..................................................................... 27

  D. Sands North's overbreadth challenge lacks merit. The ordinance
    is not overbroad, and any overbreadth problems may be cured by
    a limiting construction or by severing the offending provisions................. 28

    1. The definition of "specified sexual activities" is not overbroad ...... 28

    2. Sands North's overbreadth claim fails because its conduct
      clearly falls within the hard core of conduct that may be
      legitimately proscribed ..................................................................... 30

    3. Any portion of the ordinance that is overbroad is severable............ 31

  E. Sands North's "commerce clause" challenge is meritless ......................... 32

V. Conclusion ................................................................................................................ 33

# TABLE OF AUTHORITIES

**CASES**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE**

*2025 Emery Highway, L.L.C. v. Bibb County, Georgia*,
　　377 F.Supp.2d 1310 (M.D.Ga. 2005) ................................................................ 8

*Alaska Civil Liberties Union v. State*,
　　122 P.3d 781 (Alaska 2005) ............................................................................ 20

*American Show Bar Series, Inc. v. Sullivan County*,
　　30 S.W.3d 324 (Tenn.Ct.App.2000) .............................................................. 13

*Anderson v. State*,
　　562 P.2d 351 (1977) ....................................................................................... 27

*Bachlet v. State*,
　　941 P.2d 200 (Alaska 1997) ............................................................................. 9

*BGHA, L.L.C. v. City of Universal City, Texas*,
　　210 F.Supp.2d 821 (W.D. Tex. 2002) .............................................................. 7

*Broadrick v. Oklahoma,*
　　413 U.S. 601 93 S.Ct. 2908 (1973) .......................................................... 28, 31

*BSA, Inc. v. King County*,
　　804 F.2d 1104 (9th Cir. 1986) ................................................................... 10, 16

*Chiropractors for Justice v. State*,
　　895 P.2d 962 (Alaska 1995) ...................................................................... 15, 18

*City of Elko v. Abed*,
　　677 N.W.2d 455 (Minn.App.,2004) ............................................................... 14

*City of Renton v. Playtime Theatres, Inc.*,
　　475 U.S. 41, 106 S.Ct. 925 (1986) ................................................................ 6, 7

*City of Richmond v. J.A. Croson Co.*,
　　488 U.S. 469,  S.Ct. 706 (1989) ....................................................................... 6

*Clark v. City of Lakewood*,
　　259 F.3d 996 (9th Cir. 2001) ............................................................................. 9

*Club Southern Burlesque, Inc. v. City of Carrollton*,
    457 S.E.2d 816 (Ga. 1995) .................................................................................... 14

*Colacurcio v. City of Kent*,
    163 F.3d 545 (9th Cir. 1998) ..................................................................... 11, 16, 18

*Colonial First Properties, LLC v. Henrico County Virginia*,
    236 F.Supp.2d 588 (E.D.Va. 2002) ..................................................................... 7, 14

*DCR, Inc. v. Pierce County*,
    964 P.2d 380 (Wash.App. Div. 2 1998) ................................................................ 16

*Déjà vu of Nashville, Inc. v. Metropolitan Government of Nashville*,
    274 F.3d 377 (6th Cir. 2001) ................................................................................ 29

*Dickerson v. Bailey*,
    336 F.3d 388 (5th Cir. 2003) ................................................................................ 32

*DLS, Inc. v. City of Chattanooga*,
    107 F.3d 403 (6th Cir. 1997) ........................................................................... 16, 18

*Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Commissioners*,
    32 F.3d 1436 (10th Cir. 1994) ............................................................................ 7, 25

*Dreamland Ballroom and Social Dance Club, Inc. v. City of Ft. Lauderdale*,
    789 So.2d 1099 (Fla.App. 4 Dist. 2001) ............................................................... 17

*Dykstra v. Municipality of Anchorage*,
    83 P.3d 7 (2004) .................................................................................................... 23

*Evans ex. rel. Kutch v. State*,
    56 P.3d 1046 (Alaska 2002) ................................................................................. 15

*F.C.C. v. Beach Communications, Inc.*,
    508 U.S. 307, 113 S.Ct. 2096 (1993) ..................................................................... 6

*Gammoh v. City of La Habra*,
    395 F.3d 1114 (9th Cir. 2005) ............................................................. 11, 16, 17, 23

*Gray v. State*,
    525 P.2d 524 n.15 (Alaska 1974) ........................................................................... 7

*Hang On, Inc. v. City of Arlington*,
    65 F.3d 1248 (5th Cir.1995) .................................................................................. 10, 30

*High Tech Gays v. Defense Indus. Sec. Clearance Office*,
    895 F.2d 563 (9th Cir. 1990) ......................................................................................... 19

*Hilbers v. Municipality of Anchorage*,
    611 P.2d 31 (Alaska 1980) .................................................................................. 13, 15, 22

*Hoskins v. Dep't of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco*,
    592 So.2d 1145 (Fla. 2d DCA 1992) ............................................................................. 13

*Ino Ino, Inc., v. City of Bellevue*,
    937 P.2d 154 (Wash. 1997), *cert. denied,* 522 U.S. 1077, 118 S.Ct. 856
    (1998) ............................................................................................................................. 14

*Isbell v. City of San Diego*,
    258 F.3d 1108 (9th Cir. 2001) ....................................................................................... 20

*J & B Social Club No. 1, Inc. v. City of Mobile*,
    966 F.Supp. 1131 (S.D.Ala. 1996) .................................................................................. 9

*Kenai Peninsula Borough v. State*,
    743 P.2d 1232 (Alaska 1987) ........................................................................................ 14

*Kentucky Restaurant Concepts, Inc. v. City of Louisville*,
    209 F.Supp.2d 672 (W.D.Ky. 2002) ................................................................... 23, 29, 30

*Kev, Inc. v. Kitsap County*,
    793 F.2d 1053 (9th Cir. 1986) ................................................................................. 10, 25

*Krontz v. City of San Diego*,
    39 Cal.Rptr.3d 535 (Cal.App. 4 Dist. 2006) .................................................................. 13

*Lind v. Grimmer*,
    30 F.3d 1115 (9th Cir. 1994) ........................................................................................... 9

*Maryland v. J.H. Munson Co.*,
    467 U.S. 947, 104 S.Ct. 2839 (1984) ............................................................................ 28

*Matanuska-Susitna Borough School District v. State*,
    931 P.2d 391 (Alaska 1997) .................................................................................... 21, 22

*Menotti v. City of Seattle,*
  409 F.3d 1113 n.25 (9th Cir. 2005) ......................................................................... 9

*Mickens v. City of Kodiak*,
  640 P.2d 818 (Alaska 1982) ................................................................................ 12

*Miller v. California*
  413 U.S. 15, 93 S.Ct. 2607 (1973) ...................................................................... 26

*Northend Cinema, Inc. v. Seattle,*
  90 Wash.2d 709, 585 P.2d 1153 (1978) ................................................................ 6

*People v. Hill*,
  776 N.E.2d 828 (Ill.App.2 Dist. 2002) ........................................................... 13, 17

*People v. Hinzman,*
  177 Misc.2d 531, 677 N.Y.S.2d 440, (N.Y.City Crim.Ct.1998) ........................... 17

*Powell v. City of Anchorage*,
  536 P.2d 1228 n.6 (Alaska 1975) ........................................................................ 12

*Recreational Developments of Phoenix, Inc. v. City of Phoenix*,
  83 F.Supp.2d 1072 (D.Ariz. 1999) ...................................................................... 14

*Restaurant Ventures, LLC v. Lexington-Fayette Urban County Government*,
  60 S.W.3d 572 (Ky.App.,2001) ........................................................................... 14

*Richland Bookmart, Inc. v. Nichols,*
  278 F.3d 570 (6th Cir.2002) ................................................................................ 20

*Schwartzmiller v. Gardiner*,
  752 F.2d 1341 (9th Cir. 1984) ........................................................................ 23, 28

*State v. Anthony,*
  810 P.2d 155 (Alaska 1991) ................................................................................ 17

*State v. Bouye,*
  484 S.E.2d 461 n. 2 (S.C. 1997) .......................................................................... 13

*State v. Keawe*,
  108 P.3d 304 (Hawaii 2005) ................................................................................ 16

*State v. McGraw,*
    879 P.2d 1147 (Kan.App. 1994) ........................................................................................ 14

*State v. Ostrosky*,
    667 P.2d 1184 (Alaska 1983) ............................................................................................ 21

*State ex. rel. Gibbons v. Jackson*,
    16 S.W.3d 797 (Tenn.Crim.App. 1999) ............................................................................. 8

*State ex. rel. Rothal v. Smith*,
    783 N.E.2d 1001 (Ohio App. 9 Dist. 2002) ..................................................................... 13

*Steinbach v. State*,
    979 S.W.2d 836 (Tex.App. 1998) ...................................................................................... 8

*Suburban Video, Inc. v. City of Delafield,*
    694 F.Supp. 585 (E.D.Wis. 1988) ...................................................................................... 3

*Summers v. Anchorage*,
    589 P.2d 863 (Alaska 1979) ................................................................................ 12, 13, 31

*U.S. v. Myers*,
    106 F.3d 936 (10th Cir. 1997) .......................................................................................... 24

*U.S. v. Thirty-Seven Photographs*,
    91 S.Ct. 1400, 402 U.S. 363 (1971) ................................................................................. 27

*Vance v. Bradley,*
    440 U.S. 93, 99 S.Ct. 939, (1979) ...................................................................................... 6

*VECO International, Inc. v. Alaska Public Offices Commission*,
    753 P.2d 703 (Alaska 1988) ....................................................................................... 28, 31

*Village of Hoffman Estates v. Flipside*,
    455 U.S. 489, 102 S.Ct. 1186 (1982) ................................................................................. 9

*Young v. American Mini Theatres, Inc.*,
    427 U.S. 50, 96 S.Ct. 2440 (1976) ................................................................................... 27

# OTHER AUTHORITIES RELIED UPON

## UNITED STATES CODE

47 U.S.C.A. §153(6) ................................................................................................. 32

## FEDERAL RULE OF CIVIL PROCEDURE

Fed.R.Civ.P. 56(c) ..................................................................................................... 9

## ALASKA STATUTES

AS 11.41.420(a)(1) ................................................................................................... 17

AS 11.81.900(b) ....................................................................................................... 17

AS 44.21.290(2) ....................................................................................................... 32

## ALASKA ADMINISTRATIVE CODE

13 AAC 104.180(a)(3) ..............................................................................................21

## ANCHORAGE MUNICIPAL CODE

AMC 1.05.040 .......................................................................................................... 31

AMC 10.40.050 ................................... 1,2,3,10,13,19,21,22,23,24,26,28,29,30,31,32,33,34

# AUTHORITIES RELIED UPON

**United States Code**

47 U.S.C. § 153 (6)

**Title 47. Telegraphs, Telephones, and Radiotelegraphs**

**Wire or Radio Communication**

**Subchapter I. General Provisions**

**§ 153. Definitions**
For the purposes of this chapter, unless the context otherwise requires--
* * *

(6)     Broadcasting
The term "broadcasting" means the dissemination of radio communications intended to be received by the public, directly or by the intermediary of relay stations.

**Fed.R.Civ.P. 56(c)**
**Rule 56. Summary Judgment**

* * *
(c) Motion and Proceedings Thereon.

The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**Alaska Statutes**

**AS 11.41.420. Sexual Assault in the Second Degree.**

(a)     An offender commits the crime of sexual assault in the second degree if
        (1)    the offender engages in sexual contact with another person without consent of that person;

**AS 11.81.900. Definitions.**

(a) For purposes of this title, unless the context requires otherwise,

\* \* \*

    (58) "sexual contact" means
        (A) the defendant's
            (i) knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast; or
            (ii) knowingly causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast;
        (B) but "sexual contact" does not include acts
            (i) that may reasonably be construed to be normal caretaker responsibilities for a child, interactions with a child, or affection for a child;
            (ii) performed for the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical or mental health of the person being treated; or
            (iii) that are a necessary part of a search of a person committed to the custody of the Department of Corrections or the Department of Health and Social Services;

**AS 44.21.290. Definitions.**

In AS 44.21.256 – 44.21.290, unless the context otherwise requires,

(1) "commission" means the Alaska Public Broadcasting Commission;
(2) "public broadcasting" includes, but is not limited to, television and radio transmission by 2,500 megahertz, closed circuit or microwave video and audio programming, slow-scan television programming, programming via satellite, teletype or facsimile transmission, and distribution methods, when the transmission, programming, and distribution are intended to serve a noncommercial public purpose.

**Alaska Administrative Code**

**13 AAC 104.180. Denial, suspension, revocation, or refusal to renew or transfer, in the public interest**

(a)     The factors the board will, in its discretion, consider in determining whether it is in the public interest to deny, revoke, suspend, or refuse to renew or transfer a license include

   (1)     the applicant's, the applicant's affiliates', the transferee's, or the transferee's affiliates' histories of commission of

      (A)     an act that constitutes a crime involving moral turpitude;
      (B)     a violation of <u>AS 04</u> or regulations adopted by the board;
      (C)     a violation of the alcoholic beverage control laws of another state, as a licensee of that state; or
      (D)     a felony in this state, the United States, or another state or territory during the 10 years immediately preceding the date of application;

   (2)     whether the applicant, the applicant's affiliates, the transferee, or the transferee's affiliates are untrustworthy, unfit to conduct a licensed business, or a potential source of harm to the public;

   (3)     whether the applicant, the applicant's affiliates, the transferee, or the transferee's affiliates have permitted, on licensed premises belonging to that person, the occurrence of sexual contact between persons; for the purpose of this paragraph, "sexual contact" means the touching of genitals, anus, or female breast or the intrusion of any object into the genital or anal opening regardless of whether the act was consensual;

\*\*\*

**ANCHORAGE MUNICIPAL CODE**

**AMC 1.05.040  Severability.**

The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and, if any phrase, clause, sentence, paragraph or section of this Code is declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

**AMC 10.40.050  Adult-oriented establishment license; physical layout of premises; conduct of business.**
A.      Definitions. For the purpose of this section, the following words and phrases shall have the meanings indicated in this subsection:

Adult-oriented establishment, or adult business, shall include, but is not limited to, adult bookstores, adult motion picture theaters, adult mini-motion picture establishments, adult cabarets, physical culture studios, massage parlors, escort services, or similar type businesses where, by the nature of the business, minors under the age of 18 are denied entry, or businesses which are prohibited by law from having minors or unaccompanied minors on the premises for reasons other than the sale of liquor. If a premises, whose primary business is overnight lodging, offers adult movies via a cable, closed circuit or pay per view system, in the absence of any other adult entertainment activities, the availability of such movies, does not render the business an adult-oriented establishment for the purposes of this section.

Adult bookstore means an establishment having as its stock in trade, for sale, rent, lease, inspection or viewing, books, films, videocassettes, magazines or other periodicals which are distinguished or characterized by their emphasis on matters depicting, describing or relating to specified sexual activities, or specified anatomical areas, as defined in this section, and in conjunction therewith have facilities for the presentation of adult-oriented films, movies or live performances, for observation.

Adult cabaret means a cabaret which features topless dancers, strippers, male or female impersonators, or similar entertainers. An adult cabaret does not include an establishment licensed for sale of alcoholic beverages.

Adult entertainment means any exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any actual or simulated specified sexual activities, or specified anatomical areas, as defined in this section.

Adult mini-motion picture theater means an enclosed building with a capacity of less than 50 persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to specified sexual activities, or specified anatomical areas, as defined in this section, for observation by patrons therein.

Adult motion picture theater means an enclosed building with a capacity of 50 or more persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to specified sexual activities, or specified anatomical areas, as defined in this section, for observation by patrons therein.

Escort service means a person or business that furnishes, offers to furnish or advertises to furnish escorts for a fee, tip or other consideration or prohibits service to or entry onto their premises of minors under the age of 18. Escort service shall not include computerized or telephonic services which do not allow access to the premises by customers.

Operators means any person, partnership or corporation operating, conducting, maintaining or owning any adult-oriented establishment.

Physical culture studio or massage parlor means an establishment where minors are not allowed which:
    a.    Provides any of the following services for hire or compensation:
        1.    Baths or bathing facilities;
        2.    Steamrooms, saunas or related facilities;
        3.    Modeling or modeling facilities;
        4.    Services involving the use of conditioning or exercise equipment;
        5.    Massage or related services; and
    b.    Does not have a license for the practice of a profession or vocation licensed or regulated under AS Title 8 or which provides services through persons acting as employees, independent contractors or otherwise who do not have a current license to provide such services pursuant to AS Title 8.

Specified anatomical areas means:
    a.    Less than completely and opaquely covered human genitals, pubic region, buttocks, and female breast below a point immediately above the top of the areola.
    b.    Human male genitals in a discernible turgid state, even if opaquely covered.

Specified sexual activities means simulated or actual:
    a.    Showing of human genitals in a state of sexual stimulation or arousal.
    b.    Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.
    c.    Fondling or touching of human genitals, pubic region, buttock, anus or female breasts.
    d.    The intrusion of any object into the genital or anal opening regardless of whether the act was consensual.
    e.    A separation of a minimum of four feet shall be maintained between entertainers, dancers and/or strippers and patrons.

B.    License required; transfer of license.
    1.    Except as provided in subsection B.4 of this section, from and after May 1, 1994, no adult-oriented establishment shall be operated or maintained in the municipality without first obtaining a license to operate issued by the municipal clerk.

  2. A license may be issued only for one adult-oriented establishment located at a fixed and certain place. Any person, partnership or corporation which desires to operate more than one adult-oriented establishment must have a license for each. The requirements of Section 21.45.240 will apply to each location.

  3. No license or interest in a license may be transferred to any person, partnership or corporation.

  4. All adult-oriented establishments existing on February 16, 1994, must submit an application for a license within 60 days of such date. If an application is not received within such date, then such existing adult-oriented establishments shall cease operations.

  5. No person shall advertise or offer services regulated by this chapter unless they are licensed to provide such services pursuant to this chapter.

C. Application for license.

  1. Any person, partnership or corporation desiring to secure an adult-oriented establishment license shall make application to the municipal clerk. The application shall be filed in triplicate with, and dated by, the municipal clerk. A copy of the application shall be distributed promptly by the municipal clerk to the municipal police department and to the applicant.

  2. The application for a license shall be upon a form provided by the municipal clerk. An applicant for a license shall furnish the following information under oath:

    a. Name and address.

    b. Written proof that the individual is at least 18 years of age.

    c. The address of the adult-oriented establishment and the name of the business to be operated by the applicant.

    d. If the applicant is a corporation, the name of the corporation, the date and state of incorporation, the name and address of the registered agent and the name and address of all shareholders owning more than five percent of the stock in the corporation and all officers and directors of the corporation.

  3. Within 21 days of receiving an application for a license the municipal clerk shall notify the applicant whether the application is granted or denied.

  4. Whenever an application is denied, the municipal clerk shall advise the applicant in writing of the reasons for such action. If the applicant requests a hearing within ten days of receipt of notification of denial, a public hearing shall be held within ten days thereafter before the municipal clerk, as provided in this section.

  5. Failure or refusal of the applicant to give any information relevant to the investigation for the application or his refusal or failure to appear at any reasonable time and place for examination under oath regarding the application or his refusal to submit to or cooperate with any investigation required by this section shall constitute an admission by the applicant that he is ineligible for such license and shall be grounds for denial thereof by the municipal clerk.

D.   Standards for issuance of license.
  1.   To receive a license to operate an adult-oriented establishment, an applicant must meet the following standards:
    a.   If the applicant is an individual:
      (1)   The applicant shall be at least 18 years of age.
      (2)   The applicant must have not been convicted of a violation of this section or any of the offenses listed in subsection I.1.g. of this section within the two years immediately preceding the date of application.
    b.   If the applicant is a corporation:
      (1)   All officers, directors and stockholders required to be named under subsection C.2.d. of this section shall be at least 18 years of age.
      (2)   The applicant must have not been convicted of a violation of this section or any of the offenses listed in subsection I.1.g. of this section within the two years immediately preceding the date of application.
    c.   If the applicant is a partnership, joint venture or any other type of organization where two or more persons have a financial interest:
      (1)   All persons having a financial interest in the partnership, joint venture or other type of organization shall be at least 18 years of age.
      (2)   The applicant must have not been convicted of a violation of this section or any of the offenses listed in subsection I.1.g. of this section within the two years immediately preceding the date of application.
  2.   The location for which the license is sought must meet the requirements of Section 21.45.240 or comply with that section as an existing nonconforming use. Provided however, that any structural changes required to comply with the physical layout requirements of subsection J of this section shall not terminate an existing nonconforming use right.

E.   License fee. A license fee of $300.00 shall be submitted with the application for a license. If the application is denied, the fee shall be returned.

F.   Display of license. The license shall be displayed in a conspicuous public place in the adult-oriented establishment. Any premises licensed under this section shall also post a notice at all entrances that such premises are premises where minors are not allowed.

G.   Reserved.

H.   Renewal of license.
  1.   Every license issued pursuant to this section will terminate at the expiration of one year from the date of issuance, unless sooner revoked, and must be renewed before operation is allowed in the following year. Any operator desiring to renew a license shall make application to the municipal clerk. The application for renewal must be filed not later than 60 days before the license expires. The application for renewal shall be filed in triplicate with and dated by the municipal clerk. A copy of the application for renewal

shall be distributed promptly by the municipal clerk to the municipal police department and to the operator. The application for renewal shall be upon a form provided by the municipal clerk and shall contain such information and data, given under oath or affirmation, as is required for an application for a new license.

  2. A license renewal fee of $300.00 shall be submitted with the application for renewal. In addition to the renewal fee, a late penalty of $100.00 shall be assessed against the applicant who files for a renewal less than 60 days before the license expires. If the application is denied, the renewal fee only shall be returned.

  3. If the municipal police department, health and human services, or other departments are aware of any information bearing on the operator's qualifications, or that of the applicant's employees, that information shall be filed in writing with the municipal clerk. Approval or clearance by the municipal police department is not a prerequisite to the issuance of a license under this chapter.

  4. The municipal clerk may deny renewal of license or permit for any of the reasons identified in Section 10.40.050.I.

I. Revocation of license.

  1. The municipal clerk may revoke or suspend a license or permit for any of the following reasons:

    a. Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

    b. The operator violates any provision of subsection J. or K. of this section or any rule or regulation adopted pursuant to this section.

    c. The operator becomes ineligible to obtain a license or permit.

    d. Any cost or fee required to be paid by this section is not paid.

    e. Any intoxicating liquor or other alcoholic beverage is transported onto the premises, or served or consumed on the premises of the adult-oriented establishment by any person, where the licensee knew or reasonably should have known.

    f. Any person under the age of 18 is permitted to enter or remain upon the premises.

    g. Any of the following offenses are committed by any person at the location to which an adult business license has been issued:

      (1) Any of the offenses described in Chapter 8.65 involving or related to prostitution;

      (2) Any of the offenses described in Chapter 8.50 involving sexual exhibition, dissemination of indecent material, or sexual exploitation harmful to minors; or

      (3) Allowing any person on the premises to engage in any of the specified sexual activities listed in 10.40.050A.

    h. Any of the reasons set forth in Section 10.10.035.

  2. The transfer of a license or any interest in a license shall automatically and immediately revoke the license.

   3. The municipal clerk, before revoking or suspending any license or permit, shall give the operator at least ten days' written notice of the charges against him, and the opportunity for a hearing before the municipal clerk, as provided in this section. In deciding whether to revoke or suspend a license or permit the municipal clerk may consider remedial measures taken by the licensee or permittee.
   4. Any person whose license has been revoked under this section may apply for a new license when they have met the qualifications required for new license applicants.

J. Physical condition of premises; sanitation requirements.
   1. Booths, rooms or cubicles for private viewing. Any adult-oriented establishment having available for customers, patrons or members any booth, room or cubicle for the private viewing of any adult entertainment must comply with the following requirements:
     a. Access. Each booth, room or cubicle shall be totally accessible to and from aisles and public areas of the adult-oriented establishment, and shall be unobstructed by any curtain, door, lock or other control-type devices except in compliance with subsection J.1.b.(2) of this section.
     b. Construction. Every booth, room or cubicle shall meet the following construction requirements:
       (1) Each booth, room or cubicle shall be separated from adjacent booths, rooms and cubicles and any non-public areas by a wall.
       (2) Each booth, room or cubicle which is fitted with a curtain or door shall be configured so that when the door is closed or curtain drawn the entire room may be observed with an unobstructed view from outside of the room. No such door may be locked. If the door or curtain, when closed, obstructs the view of any portion of the room such condition constitutes a violation of this subsection.
       (3) All walls shall be solid and without any openings, shall be extended from the floor to a height of not less than six feet, and shall be light colored, nonabsorbent, smooth textured and easily cleanable.
       (4) The floor must be light colored, nonabsorbent, smooth textured and easily cleanable.
       (5) The lighting level of each booth, room or cubicle, when not in use shall be a minimum of ten footcandles at all times, as measured from the floor.
     c. Occupants. Only one individual shall occupy a booth, room or cubicle at any time. For the purposes of live performance or other live adult entertainment only, the one person per booth limit shall not apply. No occupant of any booth, room or cubicle shall engage in any type of sexual activity, or cause any bodily discharge or litter while in the booth. No individual shall damage or deface any portion of the booth.
   2. Physical culture studios and massage parlors. The licensee of any adult-oriented establishment which is a physical culture studio or massage parlor shall keep licensed premises clean and sanitary. Clean towels, sheets and linens shall be provided

for each patron receiving massage services. Disinfecting agents and sterilizing equipment sufficient to ensure the cleanliness and safe condition of all equipment shall be provided and used.

  3. Exterior.

    a. Shall be maintained in a neutral tone to conform with surrounding building appearance.

    b. Building will be repaired and maintained in a timely manner.

    c. Fences to be maintained in conforming appearance and maintained in good condition.

    d. No adult entertainment shall be open to view from outside the licensed premises, or broadcast to any site outside the licensed premises. Permanent barriers shall be installed and maintained at each entrance and exit to screen the interior of the premises from public view. Exterior windows shall be covered with opaque covering at all times.

  4. Parking lots and grounds.

    a. To be maintained in safe and clean condition.

    b. Grounds to be kept clean and not used for outdoor storage.

    c. All refuse removed weekly.

  5. Signage, in addition to the requirements of Title 21.

    a. Each business shall be limited to one sign per entrance.

    b. Each sign shall be no larger than 20 square feet.

    c. No neon, reader or mobile signs.

    d. All signs shall conform to exterior decor requirements.

  6. Ingress or egress. An operator may not have his/her business premises connected by any means of ingress or egress with premises occupied by an establishment selling or dispensing alcoholic beverages.

  7. Interior.

    a. Appropriate window coverings to maintain conforming appearance (no foil, sheets, boards, et cetera).

    b. Premises to be maintained in a clean and sanitary manner.

    c. The operator shall maintain at least ten footcandles of light in the public portions of the establishment, including aisles, at all times. However, if a lesser level of illumination in the aisles shall be necessary to enable a patron to view the adult entertainment in a booth, room or cubicle adjoining aisles, a lesser amount of illumination may be maintained in such aisles, provided, however, at no time shall there be less than one footcandle of illumination in such aisles, as measured from the floor.

    d. Each business shall comply with annual inspections for the following:

      i. Health.
      ii. Fire.
      iii. Building.
      iv. Other Code compliance.

K.  Responsibilities of operator.

1.  Every act or omission by an employee constituting a violation of the provision of this section shall be deemed the act or omission of the operator if such act or omission occurs either with the authorization, knowledge or approval of the operator, or as a result of the operator's negligent failure to supervise the employee's conduct, and the operator shall be punishable for such act or omission in the same manner as if the operator committed the act or caused the omission. Such acts or omissions can be considered in determining whether to revoke, suspend or renew a license.

2.  No employee of an adult-oriented establishment shall allow any minor to enter, to loiter around or to frequent an adult-oriented establishment or to allow any minor to view adult entertainment as defined in this section.

3.  No licensee shall have any other license or permits for games of chance to be played or sold on that premises licensed as an adult business.

4.  Licensees who operate physical culture studios or massage parlors must keep records of treatments given and the names of masseurs or masseuses giving such treatments. Such records, as well as the premises of the business establishment, shall be subject to administrative inspection by municipal officers as permitted under this title.

L.  Review of actions on license. Review of the grant, denial, renewal, nonrenewal, suspension or revocation of a license shall be in accordance with Section 10.10.035 and Chapter 3.60.

M.  Penalties and prosecution. Any person who is found to have violated this section shall be fined a definite sum not exceeding $300.00 and such conviction shall result in the revocation of any license. The municipal clerk shall notify the administrative official, as identified in Section 21.25.030.

N.  Enforcement. The municipal police department shall have the authority to enter any adult-oriented establishment at all reasonable times to inspect the premises and enforce this section.

# **EXHIBIT LIST**

Page

Exhibit 1    AO 93-157(S-6) ................................................................................... 3

Exhibit 2    AM 1022-93 describing the legislative intent of AO 93-157 .................. 4

Exhibit 3    AO 2005-139 ....................................................................................... 4

Exhibit 4    Jennifer Johnson (former employee at Fantasies) .................................. 5

Exhibit 5    Stacy Papinough, Anchorage Women's Commission ............................ 5

Exhibit 6    Beverly Wooly, Director of Health & Human Services,
             Municipality of Anchorage ..................................................................... 5