KENNETH JACOBUS
Attorney for Plaintiff
310 K Street, Suite 200
Anchorage, AK 99501-2064
(907) 277-3333 – Phone
(907) 264-6666 - Fax
kpjlaw@yahoo.com


ALLAN S. RUBIN*
Co-Counsel for Plaintiff
DRAPER & RUBIN, P.L.C.
29800 Telegraph Road
Southfield, Michigan 48034
(248) 358-9400 – Phone
(248) 358-9729 – Fax
allan@draper-rubin.com
*Admitted Pro Hac Vice

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA


SANDS NORTH, INC., d/b/a FANTASIES
ON 5th AVENUE, an Alaska Corporation,

                Plaintiff,

vs.

THE CITY OF ANCHORAGE, ALASKA,
an Alaska Municipal Corporation,

                DEFENDANT.

Case No: 3:05-cv-256

HON. Timothy M. Burgess

---

## PLAINTIFF'S RESPONSE TO THE DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.     COUNTER STATEMENT OF FACTS ...............................................................1

       1.     THE PLAINTIFF'S BUSINESS ........................................................1

       2.     THE ANCHORAGE ORDINANCE BEFORE AMENDMENT ...........................3

       3.     THE ORDINANCE AMENDMENTS ...................................................4

       4.     THE REGULATORY PROVISIONS OF THE ORDINANCE AMENDMENT
              AS DESCRIBED BY THE DEFENDANT IN ITS BRIEF IN SUPPORT OF ITS
              MOTION FOR SUMMARY JUDGMENT............................................5

       5.     THE PURPORTED BASIS FOR ADOPTION OF THE ORDINANCE AND
              THE AMENDMENT ..................................................................6

       6.     EVIDENCE CHALLENGING THE ASSERTED GOVERNMENTAL
              INTERESTS          ...................................................................7

              A.     THE AFFIDAVIT OF DR. LINZ................................................7

              B.      THE AFFIDAVIT OF DR. JUDITH HANNA.........................9

              C.     EXCERPT TESTIMONY AND REPORTS OF DRS. GREENWOOD
                     AND THOMAS ...............................................................10

              D.     THE HARTMANS' AFFIDAVITS............................................10

              E.     THE AFFIDAVITS OF VARIOUS ENTERTAINERS AND
                     EMPLOYEES OF SANDS NORTH .......................................12

       7.     THAT DESPITE DEFENDANT'S ARGUMENTS TO THE CONTRARY, THIS
              CASE IS NOT ABOUT LAP DANCING, RATHER IT IS AIMED AT
              SILENCING EXPRESSION ...........................................................13

II.    ARGUMENT IN OPPOSITION TO MOTION .................................................13

       A.     STANDARD OF REVIEW UNDER FED. R. 56 ...............................13

              1.     STANDARD OF CONSTITUTIONAL REVIEW UNDER THE
                     ALASKA CONSTITUTION .......................................................14

2.      STANDARD OF REVIEW UNDER THE FEDERAL  CONSTITUTION ..........................................................................17

      A.      STRICT SCRUTINY APPLIES TO THE CERTAIN PROVISIONS OF THE ORDINANCE..........................................17

      B.      INTERMEDIATE SCRUTINY UNDER FEDERAL CONSTITUTIONAL LAW.........................................................19

B.      CLAIMS UNDER THE ALASKA CONSTITUTION ........................................27

1.      THE ANCHORAGE ORDINANCE FAILS STATE CONSTITUTIONAL REVIEW UNDER MICKENS ................................................................27

2.      THE ORDINANCE PROVISIONS FAIL THE EQUAL PROTECTIONS ANALYSIS SET FORTH IN MICKENS UNDER THE ALASKA CONSTITUTION ........................................................................29

C.      CLAIMS UNDER THE U.S. CONSTITUTION ..................................................31

1.      THE PROVISIONS OF THE ORDINANCE WHICH IMPACT "SIMULATED CONDUCT" FAIL STRICT SCRUTINY, WHICH IS THE PROPER LEVEL OF CONSTITUTION ANALYSIS ....................31

2.      THE BUFFER ZONE IS NOT DIRECTED AS SECONDARY EFFECTS, BUT RATHER IS AIMED AT THE PRIMARY EFFECT AND THUS FAILS STRICT SCRUTINY................................................32

3.      THE BUFFER ZONE VIOLATES THE FIRST AMENDMENT RIGHT TO ASSOCIATION................................................................................33

4.      THE ORDINANCE ALSO FAILS INTERMEDIATE SCRUTINY........35

      A.      THE MUNICIPALITY DID NOT RELY UPON EVIDENCE OF SECONDARY EFFECTS IN ADOPTING THE ORDINANCE AND QUESTIONS OF FACT EXIST AS TO WHETHER PLAINTIFF HAS CAST DOUBT ON THE MUNICIPALITY'S PURPORTED SECONDARY EFFECTS RATIONALE .............36

      B.      THE ORDINANCE IS NOT NARROWLY TAILORED ............37

5.      THE ORDINANCE IS AGUE AND OVERBROAD...............................37

6.     THE BROADCAST PROHIBITIONS VIOLATE THE FIRST
       AMENDMENT AND THE COMMERCE CLAUSE ..............................45

       A.     FIRST AMENDMENT VIOLATIONS ......................................45

       B.     COMMERCE CLAUSE VIOLATIONS ...................................47

III.   CONCLUSION           ...................................................................................................50

# INDEX OF AUTHORITIES

## Cases

22nd Avenue Station, Inc. v. City of Minneapolis, 429 F. Supp. 2d 1144 (D. Minn. 2006) ......... 37

4805 Convoy, Inc. v. City of San Diego, 183 F.3d 1108 (9th Cir. 1999) .................................... 41

AAK, Inc. v. City of Woonsocket, 830 F. Supp. 99 (D.R.I. 1993) ............................................... 26

ACLU v. Johnson, 194 F. 3d 1149 (10th Cir. 1999) ...................................................... 49

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ...................................................... 14

Alaska Pacific Assur. Corp. v. Brown, 687 P. 2d 264 (Alaska. 1984) ......................................... 30

Allen v. Wright, 468 U.S. 737, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984) .................................. 41

Am. Booksellers Found. v. Dean, 342 F.3d 96 (2nd Cir, 2003) ...................................... 49

American Libraries Ass'n. v. Pataki, 969 F. Supp. 160 S.D.N.Y. 1997) ......................... 48, 49, 50

American Party of Texas v. White, 415 U.S. 767 (1974) ............................................... 34

American Trucking Ass'n v. Michigan P.S.C, ___ U.S. __, 125 S. Ct. 2419; 162 L. Ed. 2d 407
    (2005) ...................................................... 47

Artistic Entertainment, Inc. v. City of Warner Robins, 223 F.3d 1306 (11th Cir. 2000) ............. 32

Ashcroft v. ACLU, 535 U.S. 564; 122 S.Ct. 1700; 142 L. Ed. 2d 771 (2002) ........................... 46

Ashcroft v. Free Speech Coalition, 535 U.S. 234, 152 L.Ed.2d 403, 122 S. Ct. 1389 (2002) 41, 46

Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 79 L. Ed. 1032, 55 S. Ct. 497 (1935) ................ 47

Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) .......... 20, 22

Bartnicki v. Vopper, 532 U.S. 514, 149 L. Ed. 2d 787, 121 S. Ct. 1753 (2001) .......................... 15

Ben's Bar, Inc. v. Vill. of Somerset, 316 F.3d 702 (7th Cir. 2003) ....................................... 18, 19

Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 96 L. Ed. 2d 500, 107 S. Ct.
    2568 (1987) ...................................................... 42

Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 77 L. Ed. 2d 469, 103 S. Ct. 2875 (1983) 46

Boos v. Berry, 485 U.S. 312; 108 S. Ct. 1157; 99 L. Ed. 2d 333 (1988) ........................ 29, 33, 46

Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599 (1977) ...................................................................................................................... 48

Breese v. Smith, 501 P.2d 159 (Alaska 1972) ........................................................... 15

Broadrick v. Oklahoma, 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973) .................. 42, 46

Brown v. Socialist Workers '74 Campaign Committee, 459 U.S. 87; 103 S. Ct. 416; 74 L. Ed. 2d 250 (1982) .................................................................................................... 34

Buckley v. Valeo, 424 U.S. 1; 96 S. Ct. 612; 46 L. Ed. 2d 659 (1976)........................................ 34

California v. La Rue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) ................................. 31

Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)............... 13, 14

City Council of Los Angeles v. Vincent, 466 U.S. 789, 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984) ............................................................................................................................. 42

City of Chicago v. Morales, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999) .................. 40

City of Erie v. Pap's A.M., 120 S.Ct. 1382, 529 U.S. 277, 146 L. Ed. 2d 265 (2000).......... passim

City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 152 L. Ed. 2d 670, 122 S. Ct. 1728 (2002) .................................................................................................................... passim

City of Newport, Kentucky v. Iacobucci, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986)... 30

City of Nyssa v. Dufloth, 339 Ore. 330; 121 P. 3d 629 (Ore. 2005) ........................................... 28

Clarkson v. Town of Florence, 198 F. Supp 2d 997 (ED WI. 2002)........................................... 29

Cohen v. California, 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971); ............................... 46

Colacurcio v. City of Kent, 163 F.3d 545 (9th Cir. 1998)............................................................ 26

Cousins v. Wigoda, 419 U.S. 477, 95 S. Ct. 541; 42 L. Ed. 2d 595 (1975) ................................ 34

Cyberspace Communs., Inc. v. Engler, 142 F. Supp. 2d 827 (D. Mich. 2001) ............................ 49

Daytona Grand, Inc. v. City of Daytona, 410 F. Supp. 2d 1173 (M.D. Fla, 2006) ..................... 37

Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, 274 F.3d 377 (6th Cir. 2001) ......................................................................................... 34

Democratic Party of United States v. Wisconsin, 450 U.S. 107; 101 S. Ct. 1010; 67 L. Ed. 2d 82 (1981).................................................................................................................... 34

Discotheque v. City Council of Augusta, 449 S.E.2d 608 (Ga. 1994) ......................................... 27

Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) ........................ 31

Dream Palace v. Maricopa, 384 F.3d 990 (9th Cir. 2004)............................................. 17, 18, 19 31

Durham v. Brock, 498 F. Supp. 213 (M.D. Tenn. 1980)............................................................. 21

East Brooks Books, Inc. v. City of Memphis, 48 F.3d 220 (6th Cir. 1995) ................................. 26

Edenfield v. Fane, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543, 555 (1993)................... 26, 36

Encore Video v. City of San Antonio, 310 F. 3d. 812 (5th Cir. 2002) ......................................... 25

Erznoznik v. City of Jacksonville, 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975) .. 16, 30

First Nat'l Bank v. Bellotti, 435 U.S. 765, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978). .................. 46

Flanigans Enterprises v. Fulton County, 242 F.3d 976 (11th Cir. 2001)....................................... 37

Forsyth County v. Nationalist Movement, 505 U.S. 123, 120 L. Ed. 2d 101, 112 S. Ct. 2395 (1992)........................................................................................................................ 42

Free Speech Coalition v. Reno, 198 F.3d 1083, 1095 (9th Cir. 1999) ......................................... 41

Freeman v. Arpaio, 125 F.3d 732 (9th Cir. 1997) ...................................................................... 14

G&V Lounge, Inc. v. Michigan Liquor Control Com'n., 23 F.3d 1071 (6th Cir. 1994)............... 20

G.Q. Gentleman's Quarters v. City of Lake Ozark, 83 S.W. 3d. 98 (Mo. Ct. App. 2002)..... 25, 32

Giovani Carandola, LTD. v. Bason, 303 F.3d 507 (4th Cir. 2002) ............................................. 42

Gonzales v. Raich, 125 S. Ct. 2195 (2005)................................................................................ 49

Granholm v. Heald, 544 U.S. 460; 125 S. Ct. 1885; 161; L. Ed. 2d 796 (U.S. 2005).................. 49

Grayned v. City of Rockford, 408 U.S. 104; 925 S.Ct. 2294; 33 L.Ed.2d 222 (1972)................. 38

Healy v. The Beer Institute, et al., 491 U.S. 324, 105 L. Ed. 2d 275, 109 S. Ct. 2491 (1989)..... 49

Hess v. Indiana, 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973) ...................................... 15

Holmberg v. City of Ramsey, 12 F.3d 140 (8th Cir. 1993) .......................................................... 27

Joelner v. Village of Wash. Park, 378 F.3d 613, 619 (7th Cir., 2004) ................................... passim

Jott, Inc. v. Charter Township of Clinton, 569 N.W.2d 841 (Mich. App. 1997)......................... 30

Kev, Inc. v. Kitsap County, 793 F.2d 1053 (9th Cir. 1986) ........................................................ 38

Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)................. 38

Kolender v. Lawson, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983) ........................... 37

Lamont v. Postmaster General of U.S., 381 U.S. 301, 14 L. Ed. 2d 398, 85 S. Ct. 1493 (1965). 45

Lounge Management, Ltd. v. Trenton, 580 N.W.2d 156 (Wis. 1998) ......................................... 30

Marks v. Anchorage, 500 P.2d 644 (1972)................................................................................. 38

Marks v. United States, 430 U.S. 188, 51 L. Ed. 2d 260, 97 S. Ct. 990 (1977) .......................... 24

Martin v. City of Struthers, Ohio, 319 U.S. 141, 87 L. Ed. 1313, 63 S. Ct. 862 (1943) ............. 45

MD II Entertainment, Inc. v. City of Dallas, 935 F. Supp. 1394 (N.D. Tex. 1995) .................... 26

Messerli v. State, 626 P.2d 81 (Alaska 1980)................................................................. 14, 14, 28

Mickens v. Kodiak, 640 P.2d 818 (1982) .................................................................... 14, 16, 27, 29

Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).............................. 20, 45

NAACP v. Button, 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963) .............................. 34, 42

Nakatomi Investments, Inc. v. City of Schenectady, 949 F. Supp. 988 (N.D.N.Y. 1997) .......... 26

National Audubon Soc'y, Inc. v. Davis, 307 F.3d 835 (9th Cir.)................................................. 49

New York State Liquor Authority v. Bellanca, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357
    (1981).................................................................................................................................... 30

Odle v. Decatur County, 421 F. 3d 386 (6th Cir. 2005) ............................................................ 42

Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 131 L. Ed. 2d 261, 115 S. Ct.
    1331 (1995)............................................................................................................................ 48

Paulson v. City of San Diego, 294 F.3d 1124 (9th Cir. 2002)..................................................... 15

Peek-a-Boo Lounge v. Manatee County, 337 F.3d 125 (11th Cir. 2003)...................................... 37

Perez v. United States, 402 U.S. 146; 28 L. Ed. 2d 686; 91 S. Ct. 1357 (1971) ......................... 48

Perry Education Ass'n. v. Perry Local Educator's Ass'n., 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)........................................................................................................................ 14, 21

Philadelphia v. New Jersey, 437 U.S. 617, 57 L. Ed. 2d 475, 98 S. Ct. 2531 (1978) .................. 49

Phillips v. Borough of Keyport, 107 F.3d 164 (3d Cir. 1997)....................................................... 21

Police Dep't of Chicago v. Mosley, 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972)......... 46

Quincy Cable TV, Inc. v. FCC, 768 F.2d 1434 (DC Cir. 1985))................................................... 47

R.A.V.  v. City of St. Paul, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992).......... 21, 32

Ranch House, Inc. v. Amerson, 238 F.3d 1273 (11th Cir. 2001) .............................. 25, 26, 32, 37

Reno v. ACLU, 521 U.S. 844; 117 S. Ct. 2329; 138 L. Ed. 2d 874 (1997) ......................... passim

Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) ........ passim

Roberts v. United States Jaycees, 468 U.S. 609, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984). 33, 34, ....................................................................................................................................... 44

Roth v United States 354 US 476; 77 S. Ct. 1304; 1 L. Ed. 2d 1498 (1957) ............................... 21

Sable Communications v. FCC, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed. 93 (1989)..... 20, 21, 29

Schad v. Mt. Ephraim, 452 U.S. 61, 68 L.Ed.2d 671, 101 S.Ct. 2176 (1981).............................. 20

Schultz v. Cumberland, 228 F.3d 831 (7th Cir. 2000).......................................... 18, 19, 21, 22, 31

Shelton v. Tucker, 364 U.S. 479; 81 S. Ct. 247; 5 L. Ed. 2d 231 (1960) .................................... 34

Simon & Schuster, Inc. v. New York Crime Victims Bd., 502 U.S. 105, 116 L. Ed. 2d 476, 112 S. Ct. 501 (1991)............................................................................................................... 19

Staley v. Jones, 239 F.3d 769 (6th Cir. 2001) ............................................................................. 42

State v. Ciancanelli, 339 Ore. 282; 121 P. 3d 613 (Ore. 2005) ................................................... 28

Texas v. Johnson, 491 U.S. 397, 105 L. Ed. 2d 342, 109 S. Ct. 2533(1989) ............. 18, 32, 49, 50

Treacy v. Municipality of Anchorage, 91 P.3d 252 (Alaska. 2004)....................................... 15, 28

Triplett Grille, Inc. v. City of Akron, 40 F.3d 129 (6th Cir. 1994)......................................... 20, 42

Tucson Woman's Clinic v. Eden, 379 F.3d 531 (9th Cir. 2004)................................................... 40

Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497
    (1994)........................................................................................................ 27, 37, 47

Turney v. Pugh, 400 F.3d 1197 (9th Cir. 2005)....................................................................... 42, 43

United States v. Adams, 343 F.3d 1024, 1035 (9th Cir. 2003)....................................................... 37

United States v. Darby, 312 U.S. 100, 114, 85 L. Ed. 609, 61 S. Ct. 451 (1941) ....................... 48

United States v. Lopez, 514 U.S. 549, 552-553 (1995).......................................................... 47, 48

United States v. Morrison, 529 U.S. 598; 146 L. Ed. 2d 658; 120 S. Ct. 1740 (2000) ............... 48

United States v. O'Brien, 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968)....................... 22

United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d
    864 (2000)................................................................................................... passim

United States v. Virginia, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735................................ 27

Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) ............... 15, 21, 28, 42

Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440 (1976) ......... 22

Young v. City of Simi Valley, 216 F.3d 807 (9th Cir. 2000) ....................................................... 41

Zibtluda, LLC v. Gwinnett County, 411 F.3d 1278 (11th Cir. 2005).......................................... 26

## Other Authorities

Z. Chaffee, Jr., Free Speech in the United States 151-52 (1941) ................................................ 15

## Rules

Fed. R. Civ. P. 56............................................................................................................... 13

Fed. R. Civ. Pro. 56............................................................................................................ 28

## Constitutional Provisions

Const. Alaska, Art. I, Sec. 1.............................................................................................. 14, 28

U.S. Const. Amend. I ........................................................................................................... 19

# I.    COUNTER STATEMENT OF FACTS

## 1.    The Plaintiff's Business

The Plaintiff is a duly authorized Alaska Corporation which conducts business under the trade name of Fantasies on 5th Avenue ("Fantasies").  It is located at 1911 E. Fifth Avenue in Anchorage (see Aff. of C. Hartman, ¶ 3, Ex. 1).[1]  Plaintiff opened Fantasies on October 15, 1998. Previously, Plaintiff operated as Sands North Show Club from January, 1989 until moving to its present location on October 15, 1998.  The Plaintiff's business is a non-alcoholic "juice bar" which sells pop and juice, but does not serve alcoholic beverages. Plaintiff presents what is commonly referred to as non-obscene, nude and semi-nude performance dance entertainment. (See Aff. of C. Hartman, ¶ 3, Ex. A). All performances that take place on the premises are provided by adult entertainers strictly for adults. (See Aff. of C. Hartman, ¶ 3, Ex. A). The Plaintiff is presently licensed by Anchorage as an "Adult Oriented Business." Plaintiff's business has been open and operating for nearly 18 years without significant problems. (See Aff. of C. Hartman, ¶ 3, Ex. A).

Plaintiff's business is connected to another business, Debco, Inc. d/b/a Club Elixir. Club Elixir is a traditional bar, which shares a common entrance with the Plaintiff's business; however, they are located on different floors, and Fantasies is separated from the main lobby by a separate entryway and door into its business.  For many years, The Settler, (now known as Club Elixir), was separated from Fantasies by a wall that was made up of mostly reflective glass windows. As a result of a recent renovation and expansion of the building, it moved to the upper level (2nd floor) of the building and Fantasies was expanded over the entire first floor of the

---

[1] The Original Affidavit of Ms. Hartman was filed in connection with Docket No. 17. A copy of that Affidavit is reproduced here as Ex. A.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 1 of 50

building. While patrons from Club Elixir are allowed into Fantasies, they are not allowed to bring in alcoholic beverages. (See Aff. of C. Hartman, ¶ 3, Ex. A). Despite nearly eighteen years of operating without significant incident or problems, the expansion of the business brought Fantasies to the attention of the Anchorage Assembly ("Assembly") due to the fact that The Settler had to apply to amend its "conditional land use permit." A proposed ordinance to separate non-alcoholic adult cabarets from liquor license establishments by 1,000 feet was brought before the Assembly. This proposal was discussed at length by the Assembly and public testimony was taken. However, after being informed by the legal department that it may face constitutional issues, it was postponed indefinitely.   (See Aff. of C. Hartman, ¶ 3, Ex. A). Thereinafter, a proposed ordinance (AO 2005-139; See, Ex. B) was introduced on September 27, 2006 and a "public hearing" was held on October 11, 2006.   After public testimony was closed, the Assembly discussed the ordinance, then abruptly voted to change the order of the day and take up other issues so the members could have time to prepare amendments to the ordinance.

Without further testimony or any evidence being taken, the Assembly adopted a series of amendments to the current Adult Entertainment Ordinance. (See of Aff. of C. Hartman, ¶ 3, Ex. A, See also, Minutes Assembly Meetings, Ex. C). These amendments were made without the Assembly making any legislative findings that 1.) the amendments were related to any governmental purpose, let alone a substantial one; 2.) the provisions were designed to further that purported governmental interest; 3.) that it was narrowly tailored to achieve the asserted governmental interest; and, 4.) the Ordinance was aimed at the alleged secondary effects alleged to be associated with such businesses. (See Aff. of C. Hartman, ¶ 3, Ex. A; See also, Ex. D, Aff. of Dr. Daniel Linz, ¶'s 16, 21, 39, 69 and 71; Ex. C, Assembly Minutes). The ordinance seeks to impose regulations on Plaintiff's business which are greater than those imposed upon alcoholic

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 2 of 50

serving establishments offering the identical type of entertainment as the Plaintiff, yet, no justification is found for this disparate treatment and no legislative findings are stated to support this distinction.

### 2.    The Anchorage Ordinance before Amendment

Anchorage had an ordinance which regulated what is generally referred to as "adult entertainment." This Ordinance was codified at Section 10.40.050 of the Anchorage Municipal Code (the "Code") (See Ex. F). This Code was amended on October 11, 2005 to add additional provisions to the Code (the "Amendments" see, Ex. B). The Amendments were adopted on a split vote, with the most controversial provisions having been adopted by a 6-5 vote of the Assembly (see Ex. C, Assembly Minutes). The Amendment was given immediate effect. (Id).

The Plaintiff operates as an adult business, having been licensed as an adult cabaret since 2004. An "Adult Cabaret" is defined as "a cabaret which features topless dancers, strippers, male or female impersonators, or similar entertainers. *An adult cabaret does not include an establishment licensed for sale of alcoholic beverages*." (See Ex. E, Ordinance, 10.40.050(A)). Pursuant to the Code, businesses which offer similar entertainment as the Plaintiff, but which also hold a liquor license, are not required to be licensed, nor are they required to comply with the licensing and regulatory provisions. Id. The term "*adult entertainment*" was defined under the Code to mean, "***any*** exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any actual or simulated specified sexual activities, or specified anatomical areas, as defined in this section." The Code, prior to amendment defined the term, *Specified Anatomical Areas* to mean:

a.    Less than completely and opaquely covered human genitals, pubic region, buttocks, and female breast below a point immediately above the top of the areola.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 3 of 50

    b.    Human male genitals in a discernible turgid state, even if opaquely covered.

Prior to Amendment, the Code defined *Specified Sexual Activities to* mean: Simulated or actual:

    a.    Showing of human genitals in a state of sexual stimulation or arousal.

    b.    Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

    c.    Fondling or erotic touching of human genitals, pubic region, buttock or female breasts.[2]

In order to operate as an adult business, the Code requires licensure by the City. (See Ex. E, Ordinance, 10.40.050(A), Section B(5)). Prior to Amendment, an adult cabaret was required to be licensed, and once licensed, could present adult entertainment. Since licensure, the Plaintiff has operated, without suspension or revocation of its license, and at the time of adoption of the Amendments, the Plaintiff's license was in good standing.

## 3.    The Ordinance Amendments

On October 11, 2005, Anchorage adopted the Amendments.  (See Ex. B). Pursuant to the Amendments, Section A of the definitional section was amended as follows:

*Specified Sexual Activities* means simulated or actual:

    a.    Showing of human genitals in a state of sexual stimulation or arousal.

    b.    Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

    **c.    Fondling or touching of human genitals, pubic region, buttock or female breasts.[3]**

---

[2] As will be discussed, infra, prior to amendment, the definitional provision were just that – definitional. They were not regulatory.

[3] This provision of the Ordinance will be referred to as the "No Touch" provision.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 4 of 50

d.    The intrusion of any object into the genital or anal opening regardless of whether the act was consensual;

**e.    A separation of a minimum of four (4) feet shall be maintained between entertainers, dancers, and/or strippers and patrons.** [4] (Emphasis added)

Section I of the ordinance has also been amended. As amended, Section I now reads:

1.    The municipal clerk may revoke or suspend a license or permit for any of the following reasons:
…
**(g.)(3)    Allowing any person on the premise to engage in any of the specified sexual activities listed in 10.40.050A.**
…
(See Ex. B, Section 10.40.050, (I))

Section J of the Ordinance was also amended. As amended, Section J now reads:

3.    *Exterior.*
…
d.    No adult entertainment shall be open to view from outside the licensed premise, or broadcast to any site outside the licensed premise. Permanent barriers shall be installed and maintained at each entrance and exit to screen the interior of the premise from public view. Exterior windows shall be covered with opaque covering at all times.  (See Ex. B).

**4.    The Regulatory Provisions of the Ordinance Amendment as Described by the Defendant in its Brief in Support of its Motion for Summary Judgment.**

In an effort to assert that the Ordinance is not vague, the Defendant has asserted that the

following terms used in the ordinance mean as follows:

a.    The "Buffer Zone". Pursuant to the Defendant, despite the fact that the regulation appears in a definitional section of the Amendment, it intends to enforce, *as a command,* a requirement that "a separation of four (4) feet shall be maintained between entertainers, dancers, and/or stripers and patrons." (See, Defendant's Memorandum, Pg. 24.) As described by the Defendant, it is a violation for a person who is described as an entertainer, dancer, and/or stripper to come, *at any time,* within 4 feet of a patron, including when they are performing, walking, or otherwise on the premise of the establishment.

b.    The "No-Touch" Provisions. Under the provisions of the Ordinance, the Defendant alleges that the Ordinance provisions apply to "simulated or actual … fondling or

---

[4] This provision of the Ordinance will be referred to as the "Buffer Zone."

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 5 of 50

touching of human genitals, public region, buttocks, anus or female breasts" during the course of a performance. Thus under the interpretation of the Ordinance proffered by Defendant, an entertainer violates this provision by simulating the touching, or actually touching his or her genitals, pubic region, buttocks, anus or if a female, her breasts during the course of a performance. (See, Defendants Memorandum, Pg. 24-26).

**5.** **The Purported Basis for Adoption of the Ordinance and the Amendment.**

Anchorage asserts in its Motion that it modeled its original ordinance after an Ordinance from the City of Delafield, Wisconsin. According to the Municipality, AO 93-157 was predicated upon the alleged existence of "Secondary Effects." (See Brief in Support of Motion For Summary Judgment, pg.'s 3-4). Ordinance AO 93-157, by its clear terms and intent, **excluded adult cabarets** from its regulatory scope. (See Brief in Support of Motion For Summary Judgment, Ex. 2, AM 1022-93; See also, Id. Ex. 2, AO 93-157 (S-6) §10.40.050(A)(1)["Adult-Oriented Establishment does not include an adult cabaret"]).[5] The Municipality asserts that in 2005, it amended the existing ordinance by adopting AO 2005-139, which was not adopted to address *secondary effects* of adult cabarets, but rather to prohibit a particular type of expression it asserts was occurring at adult cabarets, to wit, "Lap Dancing." (See Brief in Support of Motion For Summary Judgment, pg.'s 4-5) Although the Anchorage Assembly made no factual findings, the Municipality asserts that testimony regarding "Lap Dancing" fostered concerns about "sexual contact involving dancers and patrons, as well as other unidentified criminal or harmful activities." Id. at pg. 4. According to the Defendant, the Buffer

---

[5] By omitting an adult cabaret from regulation, one can assume that the Assembly determined that such businesses were not associated with the "secondary effects" relied upon for the adoption of the initial ordinance.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 6 of 50

Zone was enacted to eliminate the risk of prostitution, sexual assaults, and diseases that are associated with lap dancing.[6] The Assembly made no such findings.

### 6.     Evidence challenging the asserted governmental interests.

In Opposition to the asserted interest of the Government, the Plaintiff has attached various Affidavits, scientific studies, and reports as *Ex.'s D, E, F, G, H, and I* to this response to Defendant's Motion. A Summary of that evidence is as follows:

### B.  The Affidavit of Dr. Linz

Dr. Linz is a professor employed with the Department of Law and Society and the Department of Communication at the University of California Santa Barbara.[7] Dr. Linz's research focus has been on the effects of sexually oriented and other violent entertainment upon human psychology and behavior and the effects of sexually related expression on adults and communities. Dr. Linz has been qualified as an expert witness on the question of alleged secondary effects from adult entertainment and the effects of such entertainment on human behavior by numerous federal courts through out the United States.  Dr. Linz has reviewed the purported record relied upon by Anchorage in the adoption of both the initial ordinance and the amended ordinance, and concluded that Anchorage appears *not to have read or reviewed* <u>any</u> specific studies or reports from other communities regarding the alleged secondary effects of adult businesses, nor did they rely on evidence obtained from its own community regarding the secondary effects of adult businesses. Dr. Linz also points out that despite the conclusion in the AM 1022-93 and AO 93-157(S-6) that some adult businesses cause "secondary effects," the

---

[6] No evidence was produced in the record below to suggest that Fantasies or other "adult cabarets" are connected to prostitution or other criminal activities and Defendant points to no such evidence, such as police reports or other materials.

[7] Dr. Linz's Affidavit is attached as Ex. D. His Curriculum Vitae is attached as Ex. D-1.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 7 of 50

scientific studies demonstrate that no such relationship exists between such businesses and adult cabarets and further that evidence from these other municipalities does not fairly support the City of Anchorage ordinance and casts direct doubt on the rationale behind the ordinance. (See Ex. D ¶16, 21, 39, 69 & 71) As it relates to "Lap Dancing, Dr. Linz avers that there are no secondary effects studies that specifically examine the link between secondary effects and adult businesses that feature individual table or lap dancing and prostitution and that no other municipality could have considered such evidence because such evidence does not exist. (See Ex. D, ¶ 45)

As it relates to the Municipality's conclusions that the regulation of the distance between dancer and patron was necessary to prevent significant criminal activity that has historically occurred in adult entertainment establishments, Dr. Linz avers that "[p]roperly conducted field research with exotic dance club entertainers and employees have found no support for the allegations of misconduct among performers in the adult industry." (See Ex. D ¶ 71). Therefore, Dr. Linz concludes that Anchorage's amendment was based upon "shoddy data and reasoning. (Id, at ¶ 77).

As it relates to Anchorage's assertion that the Buffer Zone is related to conduct, not speech, Dr. Linz discusses the results of a peer-reviewed, published paper in the *Journal of Law and Human Behavior*, 24, 5, 507-533. In this study, Dr. Linz and others tested the assumption made by courts as to whether dancer proximity affects the content of messages conveyed by exotic dancers. According to Dr. Linz, the results of the study shows that the content of messages conveyed by the dancers was significantly altered by restrictions placed on dancer nudity and dance-patron proximity. As a result, Dr. Linz avers that the "Buffer Zone" provisions are not an incidental restriction on expression. (Id at ¶ 78).[8]

---

[8] Dr. Hanna concurs with this conclusion.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 8 of 50

Dr. Linz also discusses the literature and prior testimony of Dr.'s Greenwood and Thomas, experts in the field of Sexually Transmitted Diseases. According to Dr. Linz, these public health experts have found that there is no relationship between adult businesses and sexually transmitted diseases or other public health ill effects. Thus, it is Dr. Linz's professional opinion that such evidence casts direct doubt on the Municipality's conclusion that Adult Businesses are associated with STD's or negative health effects. (Id at ¶'s 47-69).

Lastly, Dr. Linz has conducted a secondary effects study in the municipality of Anchorage and preliminarily concluded that adult businesses in Anchorage **are** **not** associated with crime or other secondary effects in Anchorage.  Dr. Linz's findings are set forth in ¶'s 79-83 of his Affidavit.  His methodology in reaching this conclusion is described in ¶'s 79-83 of his Affidavit.

### C.  The Affidavit of Dr. Judith Hanna

Attached hereto as Ex. E, is the Affidavit of Dr. Judith Hanna, a Cultural Anthropologist at the University of Maryland.[9]  According to Dr. Hanna, exotic dance is a form of non-verbal expression and is communication, with serious artistic value (See, Ex. E, Hanna Aff, ¶ 32, 33). According to Dr. Hanna, the proposed ordinance impacts on the expression and message contained in exotic dance, by changing it, impacting upon its communicative ability, and impacting expression by the restrictions imposed upon the expression itself (See, Id at ¶ 34).  It is Dr. Hanna's opinion that nudity, simulated nudity, simulated sexual activity, dancer-patron proximity, nonsexual touch between dancer and patron, dancer self-touch, simulated self-touch and dim lighting are essential and integral expressive and communicative components of the exotic

---

[9] A Copy of Dr. Hanna's Curriculum Vitae is attached as Ex. E-1.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 9 of 50

dance and are not merely incidental conduct associated therewith nor merely do the restrictions simply impact the manner in which such dance is performed. (*Id* at ¶ 34 - 35). Dr. Hanna has conducted field research related to exotic dance and has found no support for the allegations of misconduct among performers in the adult industry. (See Id at ¶ 14). Dr. Hanna concludes that the Ordinance, as amended, <u>significantly</u> infringes upon speech and expression (Id. at 35).

### D.    Excerpt Testimony and Reports of Dr.'s Greenwood and Thomas.[10]

The Plaintiff has previously disclosed the Testimony and Reports of Drs. Greenwood and Thomas, which are attached to Dr. Linz's Affidavit as Ex. D, 15-18. According to these Public Health Experts, based upon the known risk behaviors, the method and mode of transmission of sexually transmitted diseases and information gathered from the Center of Disease Control, there is <u>no</u> evidence to support the conclusion that sexually transmitted diseases are spread at Adult-Oriented Businesses. In fact, Dr. Thomas in her prior testimony concludes that the risk of obtaining a sexually transmitted disease at an adult entertainment establishment is no greater than the risk of obtaining a sexually transmitted disease in a Courtroom. (See Ex. D, Linz Aff., Ex. D -17, Testimony of Dr. Thomas, Pg. 76-77).

### E.    The Hartman's Affidavits.

Attached as Ex.'s G and H are the Supplemental Affidavit of Carol Hartman and the Affidavit of Kathy Hartman. In the Hartmans' Affidavits, they aver that: 1.) they are the owners of the Plaintiff and are involved in the management of Plaintiff's business for many years, 2.) they have operated the Plaintiff's business and it has not been the source of crime or other deleterious effects in the Community; 3.) they do not know of any entertainer who was the

---

[10] Testimony, reports, and the Curriculum Vitae's from Dr. Thomas and Dr. Greenwood were previously disclosed to Defendant in Plaintiff's R. 26 disclosures as Exhibits 33-38. Dr. Greenwood is now expected to testify at the time of trial in this matter and Plaintiff will supplement its previous R. 26 expert disclosure accordingly.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 10 of 50

victim of a crime (other than a petty property crime) at Plaintiff's business location; 4.) they do not know of any person who has been the victim of a sexual assault, including "sexual contact" (i.e., non-consensual sexual touching) while working at the business; 5.) they do not know of any entertainer who has obtained a Sexually Transmitted Disease while working at the business or an adult cabaret in general; 6.) the business does not allow nor have they seen any sexual acts occurring at the premises and that the business does not permit such conduct; 7.) they train the staff that they cannot have sexual contact with a patron and that if any employee were to engage in sexual contact with a patron, that employee would be immediately terminated; 8.) they have not observed any act of prostitution taking place on the premises of Fantasies and prostitution is not permitted at the business and that if any person engaged in an act of prostitution, they would be immediately terminated, removed from the premises and the police called; 9.) they have not observed any illegal drug sales at the premises, that such conduct is not permitted at the business and if anyone were to engage that narcotics trafficking and/or the use of any illegal drugs, such person would be immediately terminated, removed from the premises and the police called;  10.) criminal behavior is not tolerated at the business premises and that the business and staff take regular steps to ensure that crime does not occur in or around Fantasies, including conducting regular security checks in/and around the premises to ensure that crime does not occur, and that security personnel and/or staff conduct random locker and bag searches of the dancers to ensure illegal contraband (alcohol and/or drugs) are not brought onto the premises, and 11.) the business works with the police department to ensure that the business is not a source of crime or other deleterious effects in the community.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 11 of 50

### F.  The Affidavits of Various Entertainers and Employees of Sands North

Attached hereto as Ex. I are the affidavits of various entertainers who presently or have in the past been employed by Fantasies. Each of these individuals has been employed as an entertainer and each avers that they 1.) have not been and do not know of any entertainer who was the victim of a crime at Plaintiff's business location, 2.) have not been the victim of a sexual assault, including "sexual contact" (i.e., non-consensual sexual touching) while working at an adult club and know of no other entertainer who has been a victim of such a crime, 3.) have not obtained a Sexually Transmitted Disease while working at an adult cabaret and know of no entertainer who has obtained a Sexually Transmitted Disease, 4.) have not allowed nor have they seen any sexual acts to occur at an adult cabaret and know that such acts <u>are</u> <u>not</u> permitted, 5.) have been trained that they may not have sexual contact with a patron and know that if they engage in sexual contact with a patron at Plaintiff's business they would be immediately terminated, 6.) have not observed any act of prostitution taking place on the premises of Fantasies and know that prostitution is not permitted and that if any person engaged in an act of prostitution, that they would be immediately terminated and the police called, 7.) have not observed any illegal drug sales at the premises and know that such conduct is not permitted and Fantasies and know that if anyone were to engage in narcotics trafficking and/or the use of any illegal drugs, such person would be immediately terminated 8.) have not observed any criminal behavior at Fantasies and know that no criminal behavior is tolerated at the premises, and 9.) know that the staff takes steps to ensure that crime does not occur in or around Fantasies and that the staff conducts regular security checks in/and around the premises to ensure that crime does not occur, and that the security personnel and staff conduct random locker and bag searches of

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 12 of 50

the dancers to ensure that no alcohol or illegal contraband are brought onto the premises of Fantasies.

> 7.     **That Despite Defendant's Arguments to the Contrary, this Case is Not About Lap Dancing, Rather it is aimed at Silencing Expression.**

In Defendant's Brief, much discussion is given to "Lap Dancing." However, no matter how loud the Defendant screams "lap dancing," this case has nothing to do with lap dancing, other than the Defendant's "post hac" claim that the ordinance was aimed at "Lap Dancing." In fact, a review of the Assembly records show that no findings were made regarding the adoption of this ordinance, nor was a legislative intent asserted by Anchorage. Rather, the record is silent on the legislative motivation for the adoption of this ordinance. Nor does the legislation simply prohibit lap dancing. On the contrary, the legislation goes much farther than that and prohibits 1.) actual or simulated fondling or touching of human genitals, pubic region, buttock or female breasts, 2.) simulated sexual acts, 3.) an entertainer from coming within 4 feet of a customer – at any time, and 4.) the transmission of activities taking place inside the premises to locations outside of the premises. Such restrictions are not aimed at lap dancing, but rather on a disfavored mode of expression. (See e.g., Ex. D, Linz Affidavit, Ex. E, Hanna Affidavit.)

## II.     ARGUMENT IN OPPOSITION TO MOTION

### A.  Standard of Review Under Fed. R. 56

Defendant has moved for Summary Judgment on Plaintiff's claims. A movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(e)). This burden is an onerous one and "summary judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 13 of 50

resolved against the moving party." Id, citing, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-159 (1970). Thus, "[if] . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . . ." <u>Celotex</u>, surpa at 331. In the context of evaluating the constitutionality of a governmental regulation which impinges upon constitutional rights, the government bears the burden of establishing the Constitutionality of its enactment. <u>Perry Education Ass'n. v. Perry Local Educator's Ass'n.</u>, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). "In considering a motion for summary judgment**,** the court may not weigh the evidence or make credibility determinations and is required to draw all inferences in a light most favorable to the non-moving party**."** <u>Freeman v. Arpaio,</u> 125 F.3d 732, 735 (9th Cir. 1997).

## 1.   Standard of Constitutional Review under the Alaska Constitution

The Plaintiff asserts that the Anchorage Ordinance, as amended, violates Article I, Sec. 5 of the Alaska Constitution, which states:

> Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.

The Alaska Constitution protects free speech, but in a more explicit and direct manner than the Federal Constitution. <u>Messerli v. State</u>, 626 P.2d 81, 83 (Alaska 1980). Nude dancing is protected under Article I, Section 5 of the Alaska Constitution. <u>Mickens v. Kodiak,</u> 640 P.2d 818, 820 (1982). Laws prohibiting free expression, based on the content of the expression, are sustainable [under the Alaska Constitution] only for the <u>most compelling of reasons</u>. <u>Mickens</u>, 640 P.2d at 821. (emphasis added). Unlike the U.S. Supreme Court, which has permitted the regulation of nudity and expressive conduct on the basis of a showing of alleged "secondary effects of adult entertainment," the Alaska Supreme Court has stated on more than one occasion, that "it is absurd to punish a person 'because his neighbors have no self-control and cannot

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 14 of 50

refrain from violence.'" Mickens, 640 P.2d at 822, citing, Breese v. Smith, 501 P.2d 159, 174 n.60 (Alaska 1972), *Quoting* from Z. Chaffee, Jr., Free Speech in the United States 151-52 (1941). The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it. Bartnicki v. Vopper, 532 U.S. 514, 529, 149 L. Ed. 2d 787, 121 S. Ct. 1753 (2001). The government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." Hess v. Indiana, 414 U.S. 105, 108, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973) (per curiam).  A federal court interpreting state law is bound by the decisions of the highest state court. Paulson v. City of San Diego, 294 F.3d 1124, 1128 (9th Cir. 2002).

Once a fundamental right under the constitution of Alaska has been shown to be involved and it has been further shown that this constitutionally protected right has been *impaired* by governmental action, then the government must come forward and meet its substantial burden of establishing that the abridgment in question is justified by a compelling governmental interest. This strict scrutiny standard "best comports with the kind of ordered liberty which represents the core of Alaska's constitutional heritage." Messerli, 626 P.2d at 84. In order for a governmental enactment to be upheld under "strict scrutiny," it must be *necessary* to a *compelling* state interest, and must be *narrowly drawn* to achieve that end.  Widmar v. Vincent, 454 U.S. 263, 270, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (emphasis added). In addition, when state action infringes upon a fundamental right, the state must demonstrate that no less restrictive alternative exists to accomplish its purpose. Treacy v. Municipality of Anchorage, 91 P.3d 252, 266 (Alaska. 2004). As the Supreme Court pointed out in United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 864 (2000), "almost no statute or regulation can meet this standard."

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 15 of 50

Furthermore, the Ordinance in this case discriminates against businesses which offer expressive activities but do not sell liquor from those that do. Specifically, the Ordinance only applies to those businesses which *do not sell alcoholic beverages on the premise.* [11] In <u>Mickens</u>, the Alaska Supreme Court held that "discrimination on the basis of the content of protected forms of expression cannot be tolerated except where there are 'clear reasons' for it." <u>Mickens</u>, 640 P.2d at 822; citing <u>Erznoznik v. City of Jacksonville</u>, 422 U.S. 205, 215, 45 L. Ed. 2d 125, 134, 95 S. Ct. 2268 (1975). In <u>Mickens</u>, the Court went on to state that "our state constitution, …, 'draws no distinction between free speech in a bar and free speech on a stage, and no provision of our Constitution gives a preferred position to regulation of alcoholic beverages." <u>Mickens</u>, 640 P.2d at 821. As with <u>Mickens</u>, [albeit reversed] it is unlikely that Anchorage can offer a justification for distinguishing between entertainment involving expression where alcohol is not sold from establishments where expression is permitted and  intoxicating liquor is sold. No justification is provided in the Ordinance for these restrictions, let alone a substantial and compelling reason for its enactment. Furthermore, in order to justify such restrictions, the Government must come forth not only with a compelling governmental reason, but also must demonstrate that the means chosen are the most narrowly tailored means for achieving the stated harm it is attempting to alleviate. In this case, it is suggested that the government cannot meet its significant burden of demonstrating not only a compelling governmental reason to restrict performances before adult audiences who knowingly and willingly have come to view them, but

---

[11] The Ordinance only applies to adult cabarets which are specifically defined to not include a business licensed to sell alcohol by the glass. (See Ex. B, Ordinance 10.40.050(A), Definitions).

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 16 of 50

also, that the means chosen to do so are not the most narrowly drawn means available to serve that interest. [12]

### 2. Standard of Review under the Federal Constitution

In the Defendant's Motion, it asserts that no question of material fact exists as to the Constitutionality of its Ordinance, arguing that the proper level of constitutional scrutiny is "rational basis." The Plaintiff asserts that the proper level of scrutiny for the "No Touch" provision is Strict Scrutiny. Plaintiff further alleges that the balance of the Ordinance must be analyzed under the First Amendment for a determination of the proper level of constitutional scrutiny and is subject to either Strict or Intermediate Scrutiny.[13]

### a. Strict Scrutiny Applies to the Certain Provisions of the Ordinance

Anchorage has adopted a "No Touch" provision, which prohibits an entertainer from engaging in certain forms of expression during the course of a performance, including touching certain portions of his or her body. Section 10.40.050(I), the challenged provision, provides that the municipal clerk may revoke or suspend the license of an adult business for any of the following reasons, including, "allowing any person on the premise to engage in any of the specified sexual activities listed in 10.40.050. As the Defendant admits, the Ordinance will be enforced to proscribe activity that comes within the First Amendment's protections. <u>Dream Palace v. Maricopa</u>, 384 F.3d 990, 1018 (9th Cir. 2004), (<u>See also</u>, Ex. D, Linz Aff., Ex. E, Hanna Aff.)

---

[12] For example, the Government must demonstrate that a no sexual contact provision as found in the liquor code would not be sufficient to serve the governments interest or that a 1, 2, or 3 foot buffer zone would not suffice.

[13] In Defendant's Memorandum, it does not discuss whether the "No-Touch" provisions survive any level of constitutional scrutiny. Rather, its argument is that the "No-Touch" provision is neither vague nor overbroad. It does not address whether such prohibition is constitutional, in the first instance.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 17 of 50

In evaluating the level of scrutiny to apply to an ordinance that restricts expression, the courts first look to the purpose for which the regulation was adopted. If a regulation is "enacted to restrict certain viewpoints or ***modes of expression***, it is presumptively invalid and subject to strict scrutiny." Ben's Bar, Inc. v. Vill. of Somerset, 316 F.3d 702, 707 (7th Cir. 2003), citing Texas v. Johnson, 491 U.S. 397, 403, 411-412; 105 L. Ed 2d 342; 109 S. Ct. 2533 (1989); City of Renton v. Playtime Theatre, Inc., 475 U.S. 41, 46-47; 106 S. Ct. 925; 89 L.Ed2d 29 (1986) (emphasis added).

In prohibiting dancers from engaging in "simulated sexual activities," whatever they may be, Anchorage has, as it has conceded, proscribed the particular movements and gestures that a dancer may make during the course of a performance. The Ninth Circuit, in Dream Palace, has recently explained that such restrictions are analyzed under **<u>strict</u>** scrutiny in stating:

> The Seventh Circuit considered the same prohibition on "specific sexual activity" in Schultz [v. Cumberland], 228 F.3d [831 (7th Cir. 2000)] at 846-48, and struck it down as an unconstitutional infringement on protected expression.

> By restricting the particular movements and gestures of the erotic dancer . . . the Ordinance unconstitutionally burdens the protected expression. The dominant theme of nude dance is an emotional one; it is one of eroticism and sensuality. [The Ordinance] deprives the performer of a repertoire of expressive elements with which to craft an erotic, sensual performance and thereby interferes substantially with the dancer's ability to communicate her erotic message. It interdicts the two key tools of expression in this context that imbue erotic dance with its sexual and erotic character -- sexually explicit dance movements and nudity. . . .*Id.* at 847 (internal citations and quotation marks omitted).

> The Seventh Circuit further explained that the government could not hide behind Renton because "a secondary-effects rationale by itself does not bestow upon the government free license to suppress specific content of a specific message . . . ." *Id.* at 845. "Such a regime would permit the government to single out a message expressly, formulate a regulation that prohibits it, then draw content-neutral treatment nonetheless simply by producing a secondary effects rationale as pre-textual justification." *Id.* at 844; *see also* Brownell, 190 F. Supp. 2d at 484-93 (following Schultz and striking prohibition on "specified sexual activities"). Dream Palace, at 384 F. 3d at 1020-21.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 18 of 50

In concluding that such restrictions are subject to strict scrutiny, the 9th Circuit stated:

> "We are inclined to agree with the Seventh Circuit. Maricopa County cannot avoid the constitutional prohibition on proscribing non-obscene speech "by regulating nude dancing with such stringent restrictions that the dance no longer conveys eroticism nor resembles adult entertainment." Schultz, 228 F.3d at 844. Section 13(e), in preventing erotic dancers from practicing a protected form of expression, does precisely that. **We therefore apply strict scrutiny to section 13(e)**. (Emphasis added).

In this case, Anchorage attempts to regulate the performance of adult entertainment by regulating the content of expression in the same way Maricopa County did in Dream Palace. Therefore, it is subject to strict scrutiny. As the Supreme Court pointed out in Playboy, "almost no statute or regulation can meet this standard." In Dream Palace, the Ninth Circuit reached the same conclusion, finding that the ordinance at issue in that case failed to address a compelling state interest and was not narrowly drawn to achieve that end. Id., citing, Simon & Schuster, Inc. v. New York Crime Victims Bd., 502 U.S. 105, 118, 116 L. Ed. 2d 476, 112 S. Ct. 501 (1991). The same conclusion must be reached here. In choosing to define the term "specified sexual activity" to prohibit not only actual sexual activities, but also simulated acts, Anchorage impermissibly regulated the conduct of dancers. As such, it is subject to strict scrutiny and violates the First Amendment. See e.g., Dream Palace and Cumberland .

> **b.      Intermediate Scrutiny under Federal Constitutional Law.**

The First Amendment to the United States Constitution provides that: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. Amend. I. The Free Speech Clause applies to the states by operation of the Fourteenth Amendment's due process clause. Joelner v. Village of Wash. Park, 378 F.3d 613, 619 (7th Cir., 2004); See e.g., Ben's Bar, Inc. 316 F.3d at 707 (citations omitted). As succinctly stated by the Supreme Court:

> "Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee. . . . Nor may an

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 19 of 50

> entertainment program be prohibited solely because it displays the nude human figure. '[N]udity alone' does not place otherwise protected material outside the mantle of the First amendment. . . . Furthermore, . . . nude dancing is not without its First Amendment protections from official regulation." <u>Schad v. Mt. Ephraim</u>, 452 U.S. 61, 65-66, 68 L.Ed.2d 671, 101 S.Ct. 2176 (1981) (citations omitted).

More recently, the Supreme Court and the federal appellate courts have reiterated the position that nude, "topless," and erotic performance dance entertainment fall within the protections of the First Amendment. *See, e.g.*, <u>Barnes v. Glen Theatre, Inc.</u>, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); <u>G&V Lounge, Inc. v. Michigan Liquor Control Com'n.</u>, 23 F.3d 1071, 1075 n.1 (1994) ("it nevertheless remains true that topless dancing is (still) constitutionally protected under the First Amendment") (parenthetical in original); and <u>Triplett Grille</u>, supra (invalidating an overbroad anti-nudity ordinance). Nevertheless, expression which is legally obscene falls outside of the scope of the First Amendment. <u>Miller v. California</u>, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). However, expression short of legal obscenity, regardless of how erotic or controversial, cannot be legally proscribed. The Supreme Court has clearly held that "sexual expression which is *indecent* but not obscene is protected by the First Amendment." <u>Sable Communications v. FCC</u>, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed. 93 (1989) (emphasis added).

When determining the constitutionality of the Ordinance at issue, the first thing that a Court must do is to determine the level of constitutional scrutiny that must be applied to the calculus. Regulations enacted for the purpose of restraining expression on the basis of its *content* are *presumptively invalid*. <u>Renton</u>, 475 U.S. at 46-47. A law is facially unconstitutional if it prohibits otherwise permitted expression solely on the basis of its *content*. <u>R.A.V. v. St. Paul</u>,

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 20 of 50

505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (emphasis added). If the ordinance or regulation is content-based, then in order to be upheld, it must pass the "most exacting" ("strict") scrutiny of being *necessary* to a *compelling* state interest, and must be *narrowly drawn* to achieve that end. Widmar, 454 U.S. at 270 (emphasis added). In this context, narrow tailoring requires that the government choose the "*least restrictive means* to further the articulated interest." Sable Communications, 492 U.S. at 126 (emphasis added).

When considering the constitutionality of this Ordinance, this Court must also keep two further matters in mind. First, because of the recognized preferred position of First Amendment rights, there is no general presumption of constitutionality that would normally attach to other legislative enactments. *See, e.g.,* Durham v. Brock, 498 F. Supp. 213, 221 (M.D. Tenn. 1980), aff'd, 698 F.2d 1218 (6th Cir. 1982), and cases cited therein. Second, it is the government's general burden to substantiate the constitutionality of the deprivation of protected rights. *See, e.g.,* Perry Education Ass'n., 460 U.S. at 45. This evidentiary burden is not diminished in any regard merely because these Plaintiffs are engaged in adult entertainment. *See, e.g.,* Phillips v. Borough of Keyport, 107 F.3d 164, 172-73 (3d Cir. 1997) (en banc), cert. denied, 522 U.S. 932 (1997).

Sex and obscenity are not synonymous. The portrayal of sex, e.g. in art, literature, and scientific works is not itself sufficient reason to deny the constitutional protection of freedom of speech and of the press. Sex, a great mysterious motive force in human life, has indisputably been a subject of absorbing interest throughout the ages; it is one of the vital problems of human interest and concern. Roth v. United States 354 US 476, 487 (1957). Very generally, whether conduct regulations will be subject to intermediate or strict scrutiny most often actually hinges upon the regulation's intended purpose, rather than some strained interpretation of content-

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 21 of 50

neutrality. See Ben's Bar, 316 F.3d at 723; Schultz, 228 F.3d at 845 ("Courts often called [regulations] content-neutral without explaining that [they] are in fact content-based and only analyzed as content-neutral when certain preconditions are met.") There are two distinct, yet overlapping lines of Supreme Court jurisprudence addressing the degree of First Amendment protection afforded to adult entertainment, a particular type of expressive conduct. Ben's Bar, 316 F.3d at 712-13. One group of cases addresses public indecency regulations. See Barnes v. Glen Theatre, Inc., supra; Pap's A.M., supra. The other considers adult entertainment zoning ordinances. See Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440 (1976); Renton, supra.; City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 152 L. Ed. 2d 670, 122 S. Ct. 1728 (2002). However, the analytical framework under-pinning both strains of jurisprudence is rooted in United States v. O'Brien, 391 U.S. 367, 376-82, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). Ben's Bar, 316 F.3d at 714. Consequently, the Supreme Court has held that the distinctions between the test used to assess the constitutionality of public indecency statutes, see Pap's A.M., 529 U.S. at 289, and that used to evaluate adult entertainment zoning ordinances, see Renton, 475 U.S. at 46-47, are irrelevant. Ben's Bar, 316 F.3d at 714; Joelner, supra.

In City of Erie, supra, the Supreme Court specifically rejected all bases for adoption of anti-nudity ordinances, save one, that being the "alleged secondary effects" of adult entertainment. City of Erie, 120 S.Ct. at 1393-94, 1402. An ordinance attempting to alleviate alleged secondary effects of adult entertainment must be based upon evidence. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. Renton, 474 U.S. at 51-52.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 22 of 50

In <u>City of Erie</u>, the Supreme Court stated: "We now clarify that a government's restriction on public nudity such as the ordinance at issue here should be evaluated under the framework set forth in <u>O'Brien</u> for content neutral restrictions on symbolic speech. " <u>City of Erie,</u> 120 S.Ct. at 1391. Specifically, the Court stated:

> We conclude that <u>Erie's</u> asserted interest in controlling *negative secondary effects* associated with adult entertainment establishments like Kandyland, was unrelated to the suppression of the erotic message conveyed by nude dancing. The ordinance prohibiting public nudity is therefore valid *if it satisfies the four-factor test from <u>O'Brien</u>* for evaluating restrictions on symbolic speech. (Emphasis added)

In <u>Alameda Books</u>, the question of what evidence, if any, is reasonable was presented to the court. As with many of the recent decisions impacting First Amendment rights, no single opinion of the Court in <u>Alameda Books</u> received a majority of the votes of the Justices of the Supreme Court. Rather, there was a four-member plurality authored by Justice O'Connor and a critical concurrence written by Justice Kennedy. The four-member plurality in <u>Alameda Books</u> noted that in <u>Renton</u>, the Court did not set a "high bar for municipalities that want to address merely the secondary effects of protected speech." (122 S. Ct at 1736 (O'Connor, J.)) The plurality, however, sounded a very strong cautionary note when analyzing laws supposedly directed at the "secondary effects" of "adult entertainment establishments."

> This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rational for its ordinance. If plaintiff fails to cast direct doubt on this rational, either by demonstrating that the municipality's evidence does not support its rational, or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standards set forth in <u>Renton</u>. If plaintiffs succeed in casting doubt on a municipality's rational in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance. (122 S. Ct at 1736 (O'Connor, J.)). (Emphasis added.)

Justice Kennedy delivered, in his concurrence, the critical fifth vote necessary to reverse the decision in <u>Alameda Books</u>. Accordingly, his opinion has particular weight (See <u>Bens Bar,</u>

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 23 of 50

supra.) First, and most importantly, Justice Kennedy agrees with the four-member dissent that

these types of regulations are not "content neutral." (122 S. Ct. at 1741 (Kennedy, J.)) Second,

and even more importantly, Justice Kennedy notes that while secondary effects doctrine may be

utilized to reduce secondary effects, it cannot have the consequent effect of reducing either

speech or expression related activities, stating:

> In Renton, the Court determined that while the material inside adult bookstores
> and movie theatres is speech, the consequent sordidness outside is not. The
> challenge is to correct the latter while leaving the former, as far as possible,
> untouched. If a city can decrease the crime and blight associated with certain
> speech by the traditional exercise of its zoning power, and at the same time leave
> the quantity and accessibility of the speech substantially undiminished, there is no
> First Amendment objection. This is so even if the measure identifies the problem
> outside by reference to speech inside - - that is, even if the measure is in that sense
> content based. **On the other hand, a city may not regulate the secondary
> effects of speech by suppressing the speech itself**. (122 S. Ct. at 1739
> (Kennedy, J.) (Emphasis added.)

Justice Kennedy summed up his analysis (which, therefore, represents the "holding" of

the Court) as follows:

> At the outset, we must identify the claim a city must make in order to justify a
> content-based zoning ordinance. As discussed above, a city must advance some
> basis to show that its regulation has the purpose and effect of suppressing
> secondary effects, while leaving the quantity and accessibility of speech
> substantially intact. The ordinance may identify the speech based on content, but
> only as a short hand for identifying the secondary effects outside. A city may not
> assert it will reduce secondary effects by reducing speech in the same proportion.
> On this point, I agree with Justice Souter. See Post, at 5. **The rational of the
> ordinance must be that it will suppress secondary effects - - and not by
> suppressing speech.** (122 S. Ct. at 1742 (Emphasis added.)[14]

---

[14] As Justice Kennedy's concurrence is the narrowest opinion joining the judgment of the Court
in Alameda Books, it controls. Marks v. United States, 430 U.S. 188, 193, 51 L. Ed. 2d 260, 97
S. Ct. 990 (1977) … The municipality's inference that the ordinance "may reduce the costs of
secondary effects without substantially reducing speech," must appear reasonable. Joelner, 378
F.3d at 624. (citations omitted)

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 24 of 50

In other words, the city must at least present evidence that the burden on speech imposed by an ordinance is no greater than necessary to further the city's interest in combating secondary effects. Encore Video v. City of San Antonio, 310 F. 3d. 812 (5th Cir. 2002). The "content-neutrality" inquiry is therefore subsumed by the inquiry into a municipality's purpose in enacting the regulation. Joelner, supra at 623-4; See also Ben's Bar, 316 F.3d at 724 (citing Alameda Books, 535 U.S. at 432-39 (plurality opinion); id, at 448-49 (Kennedy, J. concurring); City of Erie, 529 U.S. at 294-96 (plurality opinion); and Id. at 310 (Souter, J., concurring in part and dissenting in part)). In evaluating a municipality's underlying regulatory motivations, Court's may consider a "'wide variety of materials including, but not limited to, the text of the regulation or ordinance, any preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware.'" Ben's Bar, 316 F.3d at 723 n.28 (quoting Ranch House, Inc. v. Amerson, 238 F.3d 1273, 1280 (11th Cir. 2001)). And while a municipality need not conduct new studies or produce evidence independent of that already generated by other cities, Id. at 716-17 (citing Renton, 475 U.S. at 51-52), there still must be some reasonably relevant evidentiary basis for a municipality's action. Joelner at 624. Where a city presents no evidence that its purpose in enacting an ordinance that restricts First Amendment protected expression is designed to prevent negative secondary effects associated with erotic dancing establishments, the regulation is subject to strict scrutiny.  Ben's Bar, 316 F. 3d. at 724, n. 29; citing G.Q. Gentlemen's Quarters, Inc. v. City of Lark Ozark, 83 S. W. 3d 98, 103 (MO. Ct. App. 2002).

The Defendant argues in its brief that it may rely on *post hac* justifications in support of its ordinance. Plaintiff does not agree with that summary conclusion. Rather, under federal constitutional law, Courts, in determining whether the purpose of a law is to suppress protected

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 25 of 50

speech, may examine a wide variety of materials, including the text of the statute, any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators were *clearly aware*. Ranch House, supra at 1280, citing Colacurcio v. City of Kent, 163 F.3d 545, 552 (9th Cir. 1998) ("We will look to the full record to determine whether evidence indicates that the purpose of the ordinance is to suppress speech or ameliorate secondary effects. In so doing, we will rely on all 'objective indicators of intent, including the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment, the stated purpose, and the record of proceedings.' " (citation omitted)); See also, Joelner, supra at 624. Thus a municipality must "cite to some meaningful indication - in the language of the code or in the record of legislative proceedings - that the legislature's purpose in enacting the challenged statute was a concern over secondary effects rather than merely opposition to proscribed expression." Zibtluda, LLC v. Gwinnett County, 411 F.3d 1278, 1286 (11th Cir. 2005). This burden is not satisfied by mere speculation or conjecture, and the government must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. Edenfield v. Fane, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543, 555 (1993) (emphasis added). Succinctly put, then, the *Defendants* are required to *prove* the causal connection between the asserted governmental interests and the enacted regulations. *See, e.g.*; MD II Entertainment, Inc. v. City of Dallas, 935 F. Supp. 1394, 1397-98 (N.D. Tex. 1995); AAK, Inc. v. City of Woonsocket, 830 F. Supp. 99, 104 (D.R.I. 1993); and Nakatomi Investments, Inc. v. City of Schenectady, 949 F. Supp. 988, 997-98 (N.D.N.Y. 1997). If this connection is not proven, the law cannot stand. *See, e.g.,* East Brooks Books, Inc. v. City of Memphis, 48 F.3d 220, 226 (6th Cir. 1995). When analyzing whether regulations impermissibly infringe upon protected expression, courts *must not accept at face value* the supposed legislative

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 26 of 50

motivation for enacting such laws. *See, e.g.*, Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 645-46, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994); Holmberg v. City of Ramsey, 12 F.3d 140 (8th Cir. 1993), cert. denied, 513 U.S. 810 (1994); Discotheque v. City Council of Augusta, 449 S.E.2d 608 (Ga. 1994); United States v. Virginia, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735.

### B.    Claims Under the Alaska Constitution.

Laws prohibiting free expression, based on the content of the expression, are sustainable [under the Alaska Constitution] only for the most compelling of reasons. Mickens, 640 P.2d at 821 (emphasis added). Unlike the U.S. Supreme Court, which has permitted the regulation of nudity and expressive conduct on the basis of a showing of alleged "secondary effects of adult entertainment," the Alaska Supreme Court has stated on more than one occasion, that "it is absurd to punish a person 'because his neighbors have no self-control and cannot refrain from violence.'" Mickens, 640 P.2d at 822; [Stating "it is not permissible to suppress constitutionally protected forms of expression in order to curb the lawless conduct of some of those who are reacting to it, unless other law enforcement techniques which do not infringe first amendment freedoms are unavailable or likely to be ineffective."]  Thus, under Alaska constitutional law, strict, as opposed to intermediate scrutiny applies to Plaintiff's claims.

### 1.    The Anchorage Ordinance Fails State Constitutional Review under *Mickens*

As noted in the Aff. of Dr. Linz, Ex. D, ¶ 78 and Aff. of Dr. Hanna, Ex. E ¶ 35, the no-touch provisions and the Buffer Zone impact the message of nude dancing. As such, each of these provisions inhibits expression. The broadcasting transmission also impact on freedom of expression. (See, Playboy, supra.) Free Speech and Expression are fundamental rights under the Alaska Constitution (See, Mickens, supra). Once a fundamental right under the constitution of

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 27 of 50

Alaska has been shown to be involved and it has been further shown that this constitutionally protected right has been *impaired* by governmental action, then the government must come forward and meet its <u>substantial burden</u> of establishing that the abridgment in question was justified by a <u>compelling governmental interest</u> and that no less restrictive alternative exists to accomplish its purpose. (<u>See</u>, <u>Messerli</u>, 626 P.2d at 84.)[15] In order for a governmental enactment to be upheld under "strict scrutiny," it must be *necessary* to a *compelling* state interest, and must be *narrowly drawn* to achieve that end. <u>Widmar</u>, 454 U.S. at 270 (emphasis added). Under Alaska law, "[f]undamental rights will be reviewed using a strict scrutiny standard;" <u>Treacy</u>, 91 P.3d at 265. The Defendant has not addressed the application of strict scrutiny to the analysis of this ordinance, nor have they argued that it survives strict scrutiny. This is for good reason, as once strict scrutiny is applied, almost no law can meet legislative burden required. See, e.g. <u>Playboy</u>.[16] The failure of the Defendant to address this issue and demonstrate the lack of a question of fact is, in and of itself, sufficient reason to deny Defendant's Motion under Fed. R. Civ. Pro. 56.  Moreover, in <u>Mickens</u>, the Alaska Supreme Court rejected an argument that a

---

[15]  The Supreme Court of Oregon, in <u>State v. Ciancanelli,</u> 339 Ore. 282, 322; 121 P. 3d 613 (Ore. 2005) reached a similar result, stating:  "We do not mean to say that the legislature cannot enact laws that are designed to prohibit or punish conduct that amounts to prostitution, the transmission of sexual diseases, or the exploitation of classes of persons. However, we agree with the point in <u>Robertson</u> that lawmakers are precluded from enacting restrictions on speech solely on the theory that the speech is connected with some adverse consequences and that, absent the speech, the consequences are, to some indefinable degree, less likely.

[16]  The Oregon Supreme Court has also found that a four foot buffer zone fails strict scrutiny. <u>See</u>, <u>City of Nyssa v. Dufloth,</u> 339 Ore. 330; 121 P. 3d 629 (Ore. 2005).  As with the Alaska Supreme Court, the Oregon Supreme Court has stated that, "the legislature constitutionally may enact laws designed to prohibit or punish conduct that amounts to prostitution or other criminal activity, but Article I, section 8, precludes the legislature from using limitations on speech or expression as a substitute for regulating that conduct directly." Id. at 340.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 28 of 50

secondary effects justification was sufficient to impinge upon expression in a "nude dancing" case.[17] [18]  This Court is bound by that decision (see Paulson, supra.)

Nor has the Municipality demonstrated that the Ordinance is narrowly tailored, which in this instance means the "*least restrictive means* to further the articulated interest." Sable Communications, 492 U.S. at 126 (emphasis added). For example, Anchorage has not explained why a simple ban on sexual conduct inside an adult business would not be sufficient to further the articulated interest.  As Mickens 640 P.2d at 822 made clear, "it is not permissible to suppress constitutionally protected forms of expression in order to curb the lawless conduct of some of those who are reacting to it, unless other law enforcement techniques which do not infringe first amendment freedoms are unavailable or likely to be ineffective."  Based upon the Affidavits of Dr. Linz, Dr. Hanna, the Hartmans, and the Entertainers, which demonstrate that no such problems exist, the Municipality has failed to establish a *compelling state interest.* Nor has the Municipality established that the Ordinance is narrowly tailored. Therefore, Defendant's Motion should be denied.

### 3.  The Ordinance Provisions Fail the Equal Protection Analysis set forth in *Mickens* under the Alaska Constitution.

The Ordinance in this case discriminates against businesses which offer expressive activities but do not sell liquor. In Mickens, the Alaska Supreme Court held that "discrimination on the basis of the content of protected forms of expression cannot be tolerated except where

---

[17]  As the Supreme Court stated: "We have made clear that the lesser scrutiny afforded regulations targeting the secondary effects of crime or declining property values has no application to content-based regulations targeting the primary effects of protected speech." Reno v. ACLU, 521 U.S. 844 at 867-868; 138 L.Ed.2d 874; 117 S.Ct. 2329 (1997); Boos v. Berry, 485 U.S. 312, 320-321; 108 S. Ct. 1157; 99 L. Ed. 2d 333 (1988).

[18]  "Combating secondary effects of adult entertainment may be significant governmental interest but it has never been found to be a compelling one."  Clarkson v. Town of Florence, 198 F. Supp 2d 997, 1008-1009 (ED WI. 2002).

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 29 of 50

there are 'clear reasons' for it." <u>Mickens</u>, 640 P.2d at 822; citing, <u>Erznoznik</u>, 422 U.S. at 215. In <u>Mickens</u>, the Court went on to state that "our state constitution, …, 'draws no distinction between free speech in a bar and free speech on a stage, and no provision of our Constitution gives a preferred position to regulation of alcoholic beverages." <u>Mickens,</u> 640 P.2d at 821. Because the Anchorage ordinance burdens a fundamental right, i.e., the Freedom of Speech, it is subject to strict scrutiny review. <u>See</u> e.g., <u>Alaska Pacific Assur. Corp. v. Brown</u>, 687 P. 2d 264, 270 (Alaska. 1984). As with <u>Mickens</u>, [albeit reversed] it is unlikely that Anchorage can offer a justification for distinguishing between entertainment involving expression where alcohol is not sold from establishments where expression is permitted and  intoxicating liquor is sold. Without such a justification, the ordinance cannot stand.

Courts, including the Supreme Court, have consistently held that there are *increased* risks of secondary effects when combining nudity (or partial nudity) and alcohol. *See, e.g.*, <u>Jott, Inc. v. Charter Township of Clinton</u>, 569 N.W.2d 841, 854-55 (Mich. App. 1997); <u>Lounge Management, Ltd. v. Trenton</u>, 580 N.W.2d 156, 161-62 (Wis. 1998), <u>cert. denied</u>, 119 S.Ct. 511 (1998) (ordinance which prohibited all depictions of nudity -- whether live or pictorial -- in all business establishments was unconstitutionally overbroad because the regulation had "no connection to the *potential harmful secondary effects arising from nude dancing in liquor licensed establishments*") (emphasis added); <u>New York State Liquor Authority v. Bellanca</u>, 452 U.S. 714, 718, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (Stating that "[c]ommon sense indicates that any form of *nudity coupled with alcohol in a public place begets undesirable behavior*") (emphasis added); <u>City of Newport, Kentucky v. Iacobucci</u>, 479 U.S. 92, 96, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986) (the city commission in the preamble to an ordinance prohibiting nude or nearly nude activity on premises licensed to sell alcoholic beverages had determined that "*nude*

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 30 of 50

*dancing in establishments serving liquor was 'injurious to the citizens' of the city*") (emphasis added).[19]   Accordingly, if anything, the government has *greater* power to restrict expression when combined with alcohol.  Here, however, Anchorage turns this concept on its head, and permits liquor bars to present erotic dancing without the buffer zone, while at the same time imposing the buffer zone only on non-liquor facilities. Under Alaska law, this violates Equal Protection.[20]   At minimum, Plaintiff has raised a question of fact as to this issue and Defendant's Motion should be denied.

### D.  Claims Under the U.S. Constitution

#### 1.    The Provisions of the Ordinance which impact "simulated conduct" fail Strict Scrutiny, which is the proper level of constitutional analysis.

As discussed extensively above, the No-Touch provision of the ordinance directly impact on the method and mode of expression by prohibiting particular movements and gestures of the erotic dancer. Pursuant to the Ninth Circuit's decision in <u>Dream Palace,</u> supra and the Seventh Circuit's decision in <u>Schultz</u>, such an ordinance is subject to *strict scrutiny*. As the Ninth Circuit recently held in <u>Dream Palace</u>, such a restriction fails to address a compelling state interest and it is not narrowly drawn to achieve that end. Thus, it fails strict scrutiny. Anchorage's ordinance restricts entertainment in an identical fashion. It is therefore subject to strict scrutiny and for the same reasons that the Ordinance in <u>Dream Palace</u> failed to pass such scrutiny, so does Anchorage's ordinance. Therefore, the Defendant's Motion should be denied for this reason.

---

[19] *See, also*, <u>California v. La Rue</u>, 409 U.S. 109, 114, 118, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); and <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 932-33, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

[20] Article I, Section 1 of the Alaska Constitution offers greater protections than the U.S. Constitution.  <u>ACLU v. State</u>, 122 P.3d 781, 785 (2005).  It also protects equal "rights" and "opportunities."

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 31 of 50

### 2.    The Buffer zone is not directed at Secondary Effects, but rather is aimed at the Primary Effects and thus fails Strict Scrutiny.

The Defendant, in its Motion, asserts that the Ordinance is directed, not at the alleged secondary effects of adult entertainment, but rather at prohibiting a certain mode of expression which it describes as "Lap Dancing."  As the Supreme Court has recognized, "[t]he level of First Amendment scrutiny a court uses to determine whether a regulation of adult entertainment is constitutional depends on the purpose for which the regulation was adopted. If the regulation was enacted to restrict certain viewpoints or modes of expression, it is presumptively invalid and subject to strict scrutiny. Texas v. Johnson, 491 U.S. at 411-12; Renton, 475 U.S. at 46-47. On the other hand, if the regulation was adopted for a purpose unrelated to the suppression of expression--e.g., to regulate non-expressive conduct or the time, place, and manner of expressive conduct--a court must apply a less demanding intermediate scrutiny. Alameda, 491 U.S. at 406-07; Pap's A.M., 529 U.S. at 289 (plurality opinion); Id. at 310 (Souter, J., concurring in part and dissenting in part). Where a municipality presents no evidence that its purpose in enacting an is to prevent negative secondary effects associated with erotic dancing establishments and, thus, that the ordinance was unrelated to the suppression of expression, a municipality has the heavy burden of justifying the ordinance under the strict scrutiny standard. G.Q. Gentleman's Quarters, 83 S.W. 3d. at 103; citing, Pap's A.M., 529 U.S. at 289. As the Eleventh Circuit has recognized, the "secondary effects doctrine is an exception to the general rule that a statute which on its face distinguishes among particular types of speech or expression by content is subject to the strictest scrutiny." Ranch House, supra at 1282-1283; citing, Artistic Entertainment, Inc. v. City of Warner Robins, 223 F.3d 1306, 1308 (11th Cir. 2000) ("regulations that restrict protected expression based on its content are subject to strict scrutiny"); see also R.A.V., 505 U.S. at 382. ("The First Amendment generally prevents government from proscribing speech, or even

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 32 of 50

expressive conduct, because of disapproval of the ideas expressed." (citations omitted)). As the Supreme Court in <u>Boos v. Barry</u>, 485 U.S. at 321 recognized, "[r]egulations that focus on the direct impact of speech on its audience present a different situation. Listeners' reactions to speech are not the type of 'secondary effects' we referred to in <u>Renton</u>." In <u>Ranch House</u>, supra at 1283, the Eleventh Circuit recognized that a municipal defendant "must cite to some meaningful indication--in the language of the code or in the record of legislative proceedings--that the legislature's purpose in enacting the challenged statute was a concern over secondary effects rather than merely opposition to proscribed expression." [Citing, <u>Renton,</u> 475 U.S. at 48.]. In this case, it is conceded that the regulations at issue are <u>not</u> aimed at addressing the "alleged secondary effects" of adult entertainment, but rather, are aimed at a particular form of expression. These are primary effects – not secondary effects – which are subject to strict, as opposed to intermediate scrutiny. Because the Defendant admitted that the Ordinance was not aimed at "secondary effects," it is subject to strict scrutiny.  Defendant has not argued that the Ordinance survives strict scrutiny and for the reasons previously set forth herein, the ordinance fails a strict scrutiny analysis and therefore Defendant's Motion should be denied.

**3.    The Buffer Zone Violates the First Amendment Right to Association.**

The U.S. Supreme Court has recognized that the right of association, which stems from the First Amendment, "encompasses two distinct types of freedoms. The first type of freedom of association includes the choice to enter into and maintain certain intimate human relationships. * * * The second type of freedom is the right to associate for the purpose of engaging in expressive activity protected by the First Amendment. <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 622, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984); <u>See</u> <u>also,</u> <u>Dallas v. Stanglin</u>, 490 U.S. 19, 23-24, 109 S. Ct. 1591, 104 L. Ed. 2d 18. (1989). This includes rights of free speech, assembly, petition for

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 33 of 50

the redress of grievances, and the exercise of religion. *Id*.  The Buffer Zone provision bans the right of the expressive association between the audience and the entertainers.  This communication is a "collective effort on behalf of shared goals." See <u>Roberts</u>, 468 U.S. at 622. Patrons frequent the adult establishments to share similar ideas, emotions, and expressed protected communication that is being banned by this Ordinance.

In <u>Deja Vu of Nashville, Inc. v. Nashville</u>, 274 F.3d 377, 396 (6th Cir. 2001) the Sixth Circuit recognized the associational rights of performers and patrons, stating, "[t]he dancers and customers work together as speaker and audience to create an erotic, sexually-charged atmosphere, and although society may not find that a particularly worthy goal, it is a shared one nonetheless." <u>See</u> <u>also</u>, Ex. D, Linz Aff., Ex. E, Hanna Aff. ¶ 35. This guarantee to freedom of association must be reviewed under strict scrutiny, and while it has been held that the right to associate for expressive purposes is not an absolute, it does have to be reviewed to serve a compelling state interest.  Thus, "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas that cannot be achieved through means significantly less restrictive of associational freedoms." *Id, citing,* <u>Roberts</u>, 468 U.S. at 623; see also, <u>Brown v. Socialist Workers '74 Campaign Committee</u>, 459 U.S. 87; 103 S. Ct. 416; 74 L. Ed. 2d 250 (1982)*;* <u>Democratic Party of United States v.</u> <u>Wisconsin</u>, 450 U.S. 107, 124 (1981*);* <u>Buckley v. Valeo</u>, 424 U.S. 1, 25 (1976) (per curiam); <u>Cousins v. Wigoda</u>, 419 U.S. 477, 95 S. Ct. 541; 42 L. Ed. 2d 595 (1975); <u>American Party of</u> <u>Texas v. White</u>, 415 U.S. 767, 780-781 (1974); <u>NAACP v. Button</u>, 371 U.S. 415, 438; 9 L. Ed. 2d 405; 83 S. Ct. 328 (1963); <u>Shelton v. Tucker</u>, 364 U.S. 479, 486, 488(1960). As the Supreme Court pointed out in <u>Playboy</u>, surpa, "almost no statute or regulation can meet this standard."

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 34 of 50

The Buffer Zone prohibits the right to associate based on the message that is being delivered and received, solely because it is not viewed as encouraged communications. It prohibits verbal expression, speech and even social contact, such as shaking another's hand. Such actions are not limited to the time that a performer is nude or semi-nude. Rather, they are prohibited at all times, since the ordinance provides that no entertainer may come within 4 feet of a patron at any time. No justification for these provisions was presented and no evidence was considered by the municipal assembly demonstrating that these provisions are narrowly tailored to achieve the end of furthering a compelling state interest.  Furthermore, no study or other evidentiary matter introduced as part of the legislative record would support the finding of a compelling governmental interest unrelated to the suppression of ideas, which could not be achieved though means significantly less restrictive – such as enforcement of other regulatory laws. In fact, other than pointing out to this Court that some other court, given the circumstances of its particular case, upheld a similar law, Defendant has presented no evidence to justify any restriction on the freedom of association, as contained in this Ordinance. While the Municipality alleges that the Ordinance was aimed at "sexual assaults," "prostitution," and sexually transmitted diseases, the Affidavits of Drs. Linz, Hannah, Greenwood, the Hartmans, and the Entertainers demonstrate that no such compelling interest exists. And certainly, such a restriction is not narrowly tailored. As such, Defendant's Motion for Summary Judgment should be denied.

**4.    The Ordinance Also Fails Intermediate Scrutiny.**

While the Plaintiff alleges that the balance of the amendments are subject to strict constitutional scrutiny, the Ordinance, even if analyzed under intermediate scrutiny, fails constitutional analysis as it was not adopted to further a significant governmental interest, nor is it narrowly tailored.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 35 of 50

a.    **The Municipality Did Not Rely Upon Evidence of Secondary Effects in Adopting the Ordinance and Questions of Fact Exist as to Whether Plaintiff has Cast Doubt on the Municipality's Purported Secondary Effects Rationale.**

Intermediate scrutiny is not a toothless standard. In the context of the regulations of adult businesses, a plurality of the Supreme Court in <u>Alameda Books</u> recognized that an Ordinance regulating adult businesses is subject to evidentiary challenge and that in adopting an ordinance, a Municipality may not rely upon shoddy data or reasoning, stating:

> This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rational for its ordinance.  If plaintiff fails to cast direct doubt on this rational, either by demonstrating that the municipality's evidence does not support its rational, or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standards set forth in <u>Renton</u>.  If plaintiffs succeed in casting doubt on a municipality's rational in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.  (122 S. Ct at 1736 (O'Connor, J.)).

Nor may a city "regulate the secondary effects of speech by suppressing the speech itself." (<u>Alameda</u>, 122 S. Ct. at 1739 (Kennedy, J.))  Furthermore, the governmental burden is not satisfied by mere speculation or conjecture, and the government must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. <u>Edenfield</u>, supra. As noted in the Aff. of Dr. Linz, Anchorage, in adopting its adult entertainment ordinance, did not rely upon any evidence that such businesses are associated with secondary effects. (See, Ex. D, ¶ 77). Furthermore, Dr. Linz avers that properly conducted scientific research has established that adult businesses do not cause secondary effects. (Id). Dr. Linz has now conducted an analysis of crime in the Anchorage for the past five years and has concluded that adult businesses *in Anchorage* are not associated with an increase in crime or other secondary effects. (See Ex. D, ¶'s 79-83).  Thus, Plaintiff asserts that it has cast direct doubt on both the factual findings and reasoning relied upon by Anchorage to support its ordinance. (See,

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 36 of 50

e.g. <u>Ranch House</u>, supra.)[21] Because the Plaintiff has cast doubt on the Municipality's basis for adoption of the ordinance, the Plaintiff has, at minimum, met its burden to survive Defendant's Motion for Summary Judgment; therefore, the Defendant's Motion should be denied.

**b.    The Ordinance is not Narrowly Tailored.**

Under intermediate constitutional scrutiny, the purported legislation must actually *further* the interests posited by the government. Thus, the government "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." <u>Turner</u>, 114 S. Ct. at 2470. In this case, Anchorage has not alleged evidence that the Ordinance is aimed at addressing a real harm nor that the regulations, other than by banning expression, will address the harm in a material and direct way. Furthermore, Anchorage has not explained why a simple ban on sexual conduct inside an adult business would not be sufficient to further the articulated interest. For this reason, a question of material fact exists as to whether the amendments are narrowly tailored; therefore, Defendant's Motion should be denied for this reason as well.

**5.    The Ordinance is Vague and Overbroad**

The Anchorage Ordinance is also unconstitutionally vague. It is recognized that "a regulation must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" <u>Kolender v. Lawson</u>, 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983); see also <u>United States v. Adams</u>, 343 F.3d 1024, 1035 (9th Cir. 2003), cert. denied, 159 L. Ed. 2d 779, 124 S. Ct. 2871 (2004). A greater degree of specificity and clarity is

---

[21] See e.g., <u>Daytona Grand, Inc. v. City of Daytona</u>, 410 F. Supp. 2d 1173 (M.D. Fla, 2006), Ex. D-11; <u>See</u> <u>also</u> <u>Alameda Books</u>, supra; <u>Peek-a-Boo Lounge v. Manatee County</u>, 337 F.3d 125 (11th Cir. 2003); <u>22nd Avenue Station, Inc. v. City of Minneapolis</u>, 429 F. Supp. 2d 1144 (D. Minn. 2006); <u>Flanigans Enterprises v. Fulton County</u>, 242 F.3d 976 (11th Cir. 2001).

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 37 of 50

required when First Amendment rights are at stake. <u>Kev, Inc. v. Kitsap County</u>, 793 F.2d 1053, 1057 (9th Cir. 1986).[22] As the Supreme Court has noted, constitutional concerns are heightened when a vague statute "abuts upon sensitive areas of basic First Amendment freedoms," as such a statute:

> ". . .'operates to inhibit the exercise of [those] freedoms.'  Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone'. . . than if the boundaries of the forbidden areas were clearly marked.'"  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 109; 925 S.Ct. 2294; 33 L.Ed.2d 222 (1972).

Succinctly put, *precision in draftsmanship* is the touchtone of constitutionality for a regulation which impacts upon First Amendment rights.  *See, e.g.*, <u>Keyishian v. Board of Regents</u>, 385 U.S. 589, 603-04, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). In addition to these concerns, there is an additional component to the vagueness doctrine.  In <u>Kolender</u>, the Supreme Court observed that:

> ". . .the more important aspect of the vagueness doctrine 'is not actual notice [to the accused], but the other principal element of the doctrine - *the requirement that a legislature establish minimal guidelines to govern law enforcement*.'
>
> * * *
>
> Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policeman, prosecutors, and juries *to pursue their personal predilections*."

<u>Kolender</u>, 461 U.S. at 358 (emphasis added, clarification added and in original).

In this case, the Anchorage Ordinance uses subjective and confusing language in its description of the activities prohibited, thus rendering the definition "specified sexual activities" unconstitutionally vague. To this end, Section A of the Ordinance defines as specified sexual activities, and includes in its definition of specific sexual activity, "simulated or actual: a.) Showing of human genitals in a state of sexual stimulation or arousal; b.) Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or

---

[22] <u>See also</u>, <u>Marks v. Anchorage</u>, 500 P.2d 644 (1972).

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 38 of 50

cunnilingus; c.) Fondling or touching of human genitals, pubic region, buttock or female breasts;

d.) The intrusion of any object into the genital or anal opening regardless of whether the act was

consensual; and e.) A separation of a minimum of four (4) feet shall be maintained between

entertainers, dancers, and/or strippers and patrons. These provision, however, are not contained

in a regulatory provisions of the ordinance; rather they are contained in the definitional section of

the Ordinance. Thus, the first question that arises is whether this provision is a regulatory

provision at all, or rather is that a term which is merely definitional without any regulatory

impact. However, the Defendant, in its Brief, asserts that they are regulatory. (See Defendants

Memorandum, pg. 24)

> An, *Adult-oriented establishment, or adult business,* is defined:

> to include, but is not limited to, adult bookstores, adult motion picture theaters, adult mini-motion picture establishments, adult cabarets, physical culture studios, massage parlors, escort services, or similar type businesses where, by the nature of the business, minors under the age of 18 are denied entry, or businesses which are prohibited by law from having minors or unaccompanied minors on the premises for reasons other than the sale of liquor. If premises, whose primary business is overnight lodging, offers adult movies via a cable, closed circuit or pay per view system, in the absence of any other adult entertainment activities, the availability of such movies, does not render the business an adult-oriented establishment for the purposes of this section.

Under the definitions contained in the Ordinance, an adult cabaret, such as Plaintiff's

business, is an adult business, as it meets the definition of an adult cabaret. However, an adult

cabaret does not include an establishment licensed for sale of alcoholic beverages.  In fact, the

term "adult entertainment" is defined under the ordinance as "any exhibition of any motion

pictures, live performance, display or dance of any type, which has as its dominant theme, or is

distinguished or characterized by an emphasis on, any **actual or simulated specified sexual**

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 39 of 50

**activities**, or specified anatomical areas, as defined in this section."[23] Thus, to offer adult entertainment, and thus fall within the definitions of an adult business, one must first offer adult entertainment, which includes offering actual or simulated specified sexual activities. In other words, to be adult entertainment, one must engage in specified sexual activities. [24]

This language used in defining specified sexual activities and thus adult entertainment is unconstitutionally vague. See City of Chicago v. Morales, 527 U.S. 41, 56-64, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999) (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness because the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); Tucson Woman's Clinic v. Eden, 379 F.3d 531, 554-55 (9th Cir. 2004) (holding a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others") (internal quotation and citation omitted); Free Speech Coalition

---

[23] The definition of specified sexual activities is important to other definitions in the Ordinance as well. For example, an *Adult mini-motion picture theater* means an enclosed building with a capacity of less than 50 persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to specified sexual activities, or specified anatomical areas, as defined in this section, for observation by patrons therein. Likewise, an *Adult motion picture theater* means an enclosed building with a capacity of 50 or more persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to specified sexual activities, or specified anatomical areas, as defined in this section, for observation by patrons therein.

[24] It is unclear how someone could simulate fondling or touching of the genitals or breasts or simulate "a separation of a minimum of four (4) feet shall be maintained between entertainers, dancers, and/or strippers and patrons" or how a movie or performance of any kind, characterized by depicting specified sexual activities could comply with or for that matter, could not fall within this definition.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 40 of 50

v. Reno, 198 F.3d 1083, 1095 (9th Cir. 1999), aff'd sub nom. Ashcroft v. Free Speech Coalition,

535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002) (holding a provision that criminalized

sexually explicit images that "appear to be a minor" or "convey the impression" that a minor is

depicted unconstitutionally vague because it was unclear "whose perspective defines the

appearance of a minor, or whose impression that a minor is involved leads to criminal

prosecution"). In this case, it is abundantly clear that the Anchorage ordinance is inherently

subjective. For example, how does one know if they are simulating the showing of human (and

more particularly female) genitals in a state of sexual stimulation or arousal? Likewise, how does

one know if they are simulating the fondling or touching of human genitals, pubic region,

buttock or female breasts[25] or simulating that a separation of a minimum of four (4) feet shall be

maintained between entertainers, dancers, and/or strippers and patrons? The answer is they don't

and, as a result, enforcement based upon "the subjective viewpoint of others." As such, the

Anchorage Ordinance is vague.

The Anchorage Ordinance is also overbroad. Under the overbreadth doctrine, a plaintiff

may challenge government action by showing that it may inhibit the First Amendment rights of

parties not before the court. See Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir.

2000); 4805 Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1111 (9th Cir. 1999). The

overbreadth doctrine functions as an exception to "the general prohibition on a litigant's raising

another person's legal rights," Allen v. Wright, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct.

3315 (1984), and is based on the idea that "the very existence of some broadly written laws has

the potential to chill the expressive activity of others not before the court." Forsyth County v.

---

[25] Apparently under the Anchorage Ordinance, one would engage in specified sexual acts by merely scratching an itch in a particularly private area or by brushing lint from ones sweater or pants.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 41 of 50

Nationalist Movement, 505 U.S. 123, 129, 120 L. Ed. 2d 101, 112 S. Ct. 2395 (1992). The overbreadth doctrine is an extraordinary but firmly-established means of enforcing First Amendment rights. Traditional standing is not a requirement, i.e., a plaintiff may assert the interests of others not before the court even if it is only their protected expression, not the plaintiff's, that the challenged ordinance is said to infringe. Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574, 96 L. Ed. 2d 500, 107 S. Ct. 2568 (1987); City Council of Los Angeles v. Vincent, 466 U.S. 789, 801, 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984); Broadrick v. Oklahoma, 413 U.S. 601, 613, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973); NAACP v. Button, 371 U.S. at 433; Triplett Grille, Inc. v. City of Akron, 40 F.3d 129, 135 (6th Cir. 1994); Giovani Carandola, LTD. v. Bason, 303 F.3d 507, 512 (4th Cir. 2002). In an effort to avoid an overbreadth challenge, the Defendant argues that Plaintiff does not have a "frustrated desire" to stage a production of *Hair, Equus,* or *A Chorus Line*. (See Brief of Defendant, Pg. 31). However, the fact that a particular location is unlikely to offer performances of Shakespeare's plays is immaterial. See Odle v. Decatur County, 421 F. 3d 386, 398 (6th Cir. 2005)  Carandola, 303 F.3d at 512; see also Vincent, 466 U.S. at 801-802.  This is because, the purpose of the overbreadth doctrine is "to prevent the chilling of future protected expression," Staley v. Jones, 239 F.3d 769, 779 (6th Cir. 2001); Odle, supra.

If an ordinance is held to be overbroad, the result is dramatic: "any enforcement of [the ordinance] is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Broadrick, 413 U.S. at 613 When examining a law for overbreadth, a court's first task is to determine "whether the enactment reaches a substantial amount of constitutionally protected conduct." Turney v. Pugh, 400 F.3d 1197, 1200-1201 (9th Cir. 2005). When

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 42 of 50

government "restricts the expression of ideas, alarm bells should sound for all of us. The freedom of speech -- including both a speaker's freedom to convey an idea, and a listener's freedom to receive it -- is at the heart of the protections that our Constitution guarantees so that our society may remain a free one. Turney, at 1205.

In this case, the Plaintiff, whose own speech is chilled under by the ordinance, has standing to raise an overbreadth challenge and the overbreadth of the Ordinance amendments is obvious. To this end, the Ordinance provision at issue is not a regulatory provision; rather, it is a definitional provision, required to be construed as part of the definition of specified sexual activities. In fact, any material which is distinguished by a dominant theme of actual or simulated specified sexual activities is adult entertainment, which is defined under the ordinance as "any exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any **actual or simulated specified sexual activities**, or specified anatomical areas, as defined in this section." As such, any acts defined as a specified sexual act, renders businesses within the scope of the Ordinance, including "simulated or actual: a.) Showing of human genitals in a state of sexual stimulation or arousal; b.) Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus; c.) Fondling or touching of human genitals, pubic region, buttock or female breasts;  d.) The intrusion of any object into the genital or anal opening regardless of whether the act was consensual; and e.) A separation of a minimum of four (4) feet shall be maintained between entertainers, dancers, and/or strippers and patrons. Pursuant to Ordinance 10.40.050(B)(5) "No person shall advertise or offer services regulated by this chapter unless they are licensed to provide such services pursuant to this chapter."  Thus, any business which simulates an entertainer, dancer or stripper touching themselves, who simulates

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 43 of 50

sexual acts, or who simulates coming within 4 feet of a patron is now performing specified sexual activities and is now required to have an adult license. [Provided, of course, such a business does not serve alcohol]. As a result, performances by just about every dance troupe in Anchorage is now rendered "adult" and required to be licensed under the ordinance, as is every performance by the likes of Brittney Spears, Madonna, or Michael Jackson, and just about every place which permits entertainers of any type to come within four feet of its patrons. Similarly, performances of Hair, Equus, and a Chorus Line are now adult entertainment as these performances not only have performers who perform dance movements which include "touching their breasts, buttocks or pubic area" but simulate sexual activities as defined under the Ordinance. (See e.g. Ex. E, Hanna Aff., ¶ 12)  Finally, all dancing, even that which is done by performers fully clothed, whether performed by professional entertainers or customers wearing a formal wedding dress or a pant suit are now performing "specified sexual activities" and therefore the location in which they perform must now be licensed as and adult cabaret by the City, and once licensed, such acts are prohibited.[26]

In addition, the Ordinance prohibits entertainers from coming within 4 feet of patrons, not only when their performing, but at all times. As such, it clearly infringes on the associational freedoms of entertainers and patrons, which as discussed *infra*, impinge on the clearly protected freedom of human relationships and for the purpose of engaging in expressive activity protected by the First Amendment. Roberts, supra. The Ordinance clearly reaches constitutionally

---

[26] Of course one of the requirements under Renton, is the sufficiently of alternative avenues of communication. It is doubtful if any city could provide enough locations to meet the number of sites that are now required for all of the newly defined adult entertainment. And of course, there is no evidence in the record to justify such restrictions in the first instance. Anchorage has alleged that the Amendments are to be strictly construed. (See Brief in Support of Motion, Pg. 24-26).

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 44 of 50

protected activities and, as such, the Ordinance is unconstitutionally overbroad. At minimum, the Plaintiff has raised a question of fact, such that the Defendant's Motion should be denied.

      **6.    The Broadcast Prohibitions violate the First Amendment and the Commerce Clause.**

    Pursuant to the Amended Ordinance:

> No adult entertainment shall be open to view from outside the licensed premise, **or broadcast to any site outside the licensed premise**. Permanent barriers shall be installed and maintained at each entrance and exit to screen the interior of the premise from public view. Exterior windows shall be covered with opaque covering at all times.

    In essence, this provision prohibits the broadcast of entertainment from inside the premises to any other location. This prohibition violates not only the First Amendment, Art. I, Sec. 5 of the Alaska Constitution, but also the Commerce Clause.

    **a.   First Amendment Violations**

    Sexual expression which is indecent but not obscene is protected by the First Amendment. The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. (i.e. Strict Scrutiny). Sable Comm., supra. The First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it." Martin v. City of Struthers, Ohio, 319 U.S. 141, 143, 87 L. Ed. 1313, 63 S. Ct. 862 (1943). It protects material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era. Reno v. ACLU, 521 U.S. at 868. "The right to receive publications is . . . a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." Lamont v. Postmaster General of U.S., 381 U.S. 301, 308, 14 L. Ed. 2d 398, 85 S. Ct. 1493 (1965) (Brennan, J., concurring).[27] Supreme

---

[27] There is no claim that the speech at issue is obscene under Miller, supra.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 45 of 50

Court precedents teach that "where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists. We are expected to protect our own sensibilities "simply by averting [our] eyes." <u>Playboy</u>, 529 U.S. at 813, citing, <u>Cohen v. California</u>, 403 U.S. 15, 21, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971). "As a general matter, 'the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" <u>Ashcroft v. ACLU</u>, 535 U.S. at 573, citing, <u>Bolger v. Youngs Drug Products Corp.</u>, 463 U.S. 60, 65, 77 L. Ed. 2d 469, 103 S. Ct. 2875 (1983) (quoting <u>Police Dep't of Chicago v. Mosley</u>, 408 U.S. 92, 95, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972)). The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. "The possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . . ." <u>Free Speech Coalition</u>, 535 U.S. at 255; citing, <u>Broadrick</u>, 413 U.S. at 612. Restrictions which attempt to do so are subject to strict scrutiny.    <u>Playboy</u>, at 813.[28] The Supreme Court has emphasized that strict scrutiny applies to content-based regulation of Internet speech**.** <u>See</u> <u>Reno</u>, 521 U.S. at 874.  To satisfy strict scrutiny, the law in question must be (1) narrowly tailored to (2) promote a compelling government interest. See <u>Playboy,</u> 529 U.S. at 813. The government has the burden of showing that a content-based regulation of speech "is necessary to serve a compelling state interest." <u>See</u> <u>First Nat'l Bank v. Bellotti,</u> 435 U.S. 765, 786, 788-89, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978). Merely asserting that the government has

---

[28] "We have made clear that the lesser scrutiny afforded regulations targeting the secondary effects of crime or declining property values has no application to content-based regulations targeting the primary effects of protected speech." <u>Reno,</u> 521 U.S. at 867-868; <u>Boos v. Berry</u>, 485 U.S. at 320-321.

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 46 of 50

an interest in preventing some harm cannot justify the suppression of free speech if insufficient evidence exists to suggest that such harm is likely to occur in the absence of regulation. That is, "that the Government's asserted interests are important in the abstract does not mean, however, that the [regulation] will in fact advance those interests. When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured.'" Turner, supra, at 664 (quoting Quincy Cable TV, Inc. v. FCC, 768 F.2d 1434, 1455 (DC Cir. 1985)).

In this case, the Ordinance in question prohibits the broadcasting of adult entertainment from inside the premise to locations outside the premise. Such restrictions are no different than those found to be unconstitutional in Playboy, Ashcroft, Reno, and Turner. It defines and prohibits speech based upon its content. As such, it is subject to strict scrutiny and is presumptively invalid. Thus to survive strict scrutiny, the Anchorage must demonstrate that its (1) narrowly tailored to (2) promote a compelling government interest. The legislative record in this case is devoid of such evidence and the Defendant has not offered any here. Therefore, the Defendants Motion should be denied.

### 2.    Commerce Clause Violations

The Constitution delegates to Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. United States v. Lopez, 514 U.S. 549, 552-553 (1995). Our Constitution "was framed upon the theory that the peoples of the several states must sink or swim together." American Trucking Ass'n v. Michigan P.S.C, ___ U.S. __, 125 S. Ct. 2419, 2422; 162 L. Ed. 2d 407 (2005); Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 523, 79 L. Ed. 1032, 55 S. Ct. 497 (1935). Thus, the Supreme Court has consistently held that the Constitution's express grant to Congress of the power to

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 47 of 50

"regulate Commerce . . . among the several States," Art. I, § 8, cl. 3, contains "a further, negative command, known as the dormant Commerce Clause," Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179, 131 L. Ed. 2d 261, 115 S. Ct. 1331 (1995), that "creates an area of trade free from interference by the States," Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 328, 50 L. Ed. 2d 514, 97 S. Ct. 599 (1977) (internal quotation marks omitted). This negative command prevents a State from "jeopardizing the welfare of the Nation as a whole" by "placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." Id, citing, Jefferson Lines, supra. The commerce power "is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution. "Lopez, at 553 there are three broad categories of activity that Congress may regulate under its commerce power. Id, citing, Perez v. United States, 402 U.S. 146, 150; 28 L. Ed. 2d 686; 91 S. Ct. 1357 (1971); First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i. e., those activities that substantially affect interstate commerce.  Lopez, 558-559 (multiple citations omitted). Just as state acquiescence to federal regulation cannot expand the bounds of the Commerce Clause, see, e.g., United States v. Morrison, 529 U.S. 598, 661-662; 146 L. Ed. 2d 658; 120 S. Ct. 1740 (2000), (Breyer, J., dissenting), so too state action cannot circumscribe Congress' plenary commerce power. See United States v. Darby, 312 U.S. 100, 114, 85 L. Ed. 609, 61 S. Ct. 451 (1941) ("That power can

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 48 of 50

neither be enlarged nor diminished by the exercise or non-exercise of state power"). Supreme Court case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. Gonzales v. Raich, 125 S. Ct. 2195, 2205 (2005) In this vein, the Supreme Court has "reiterated that when "'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'" Gonzales, supra at 2206.  State laws that discriminate against interstate commerce face "a virtually per se rule of invalidity." Granholm v. Heald, 125 S. Ct. 1885, 1897 (U.S. 2005); citing, Philadelphia v. New Jersey, 437 U.S. 617, 624, 57 L. Ed. 2d 475, 98 S. Ct. 2531 (1978).

In order to establish a claim under the so-called dormant Commerce Clause, [Plaintiff] must show that the state law or regulation in question penalizes interstate commerce, and does so without sufficient economic justification." National Audubon Soc'y, Inc. v. Davis, 307 F.3d 835, 857 (9th Cir.), amended,  on denial of reh'g en banc, 312 F.3d 416 (2002); Two circuits, the Tenth and the Second have found the regulations attempting to impose restrictions on internet dissemination of speech are *per se* violations of the Commerce Clause. (See Am. Booksellers Found. v. Dean, 342 F.3d 96 (2nd Cir, 2003); ACLU v. Johnson, 194 F. 3d 1149 (10th Cir. 1999)).[29]  In ruling a regulation prohibiting sexually explicit speech on the basis that it impermissibly infringed on commerce, the Tenth Circuit, in Johnson, stated:

> As the Pataki Court stated in rejecting that same argument, that analysis "is unsupportable in light of the text of the statute itself . . . and the reality of Internet communications." Pataki,

---

[29] See also, Cyberspace Communs., Inc. v. Engler, 142 F. Supp. 2d 827, 831 (D. Mich. 2001) "A statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." Healy v. The Beer Institute, et al., 491 U.S. 324, 336, 105 L. Ed. 2d 275, 109 S. Ct. 2491 (1989). Thus, regardless of the legislature's intent to regulate solely within the State's own borders, the Act would, in effect, attempt to control communications occurring outside of the State of Michigan."

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 49 of 50

969 F. Supp. at 169; Section 30-37-3.2(A) contains no express limitation confining it to communications which occur wholly within its borders. Rather, it "applies to any communication, intrastate or interstate, that fits within the prohibition and over which [New Mexico] has the capacity to exercise criminal jurisdiction." <u>Johnson</u> at 1161, citing, <u>American Libraries Ass'n. v. Pataki</u>, 969 F.Supp. 160, 169-170 (S.D. NY 1997).

The identical reasoning applies in this case. The Anchorage statute attempts to burden the transmission of speech which is **broadcast to any site outside the licensed premise.** Such locations necessarily include out-state consumers, via the internet. As such, it inhibits Commerce and is a per se violation of the Commerce Clause.

### III.    CONCLUSION

For the reasons set forth herein, the Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted,

Dated: October 12, 2006

  s/Allan S. Rubin
Allan S. Rubin (P44420)
Draper & Rubin, P.L.C.
29800 Telegraph Road
Southfield, Michigan 48034
(248) 358-9400 – Phone
allan@draper-rubin.com

Plaintiff's Response to Motion for Summary Judgment
Sands North v MOA 3:05-cv-00256 (TMB)
Page 50 of 50