# MUNICIPALITY OF ANCHORAGE
## ANCHORAGE ASSEMBLY

**Assembly Chambers, Z. J. Loussac Library**
**3600 Denali Street, Anchorage, Alaska**

**Minutes for Regular Meeting of August 23, 2005**

**1.     CALL TO ORDER**

The Assembly Meeting was convened by Chair Fairclough at 5:00 p.m. in the Assembly Chambers, Room 108 of the Loussac Library, 3600 Denali Street in Anchorage, Alaska.

**2.     ROLL CALL**  A Quorum was achieved with Assemblymembers present.

PRESENT:     Allan Tesche, Janice Shamberg, Debbie Ossiander, Dan Sullivan, Anna Fairclough, Dan Coffey, Chris Birch, Ken Stout, Paul Bauer, Dick Traini and Pamela Jennings.
ABSENT:     None.

**3.     PLEDGE OF ALLEGIANCE**  Assemblymember Stout led the pledge.

**4.     MINUTES OF PREVIOUS MEETINGS**
        4.A.    Regular Meeting – July 12, 2005

Mr. Coffey moved,                                    to approve the Regular Meeting Minutes of
Ms. Shamberg seconded,                      July 12, 2005,

Ms. Jennings requested a spelling correction on Page 11, Line 9.

        and the motion, as amended,  was passed without objection.

**5.     MAYOR'S REPORT**

Mayor Begich reported on the upgrades that had been made to the Municipal Web site.  An additional packet from the Administration was distributed to Assemblymembers that evening, regarding union negotiations. All State Legislators and all members of the Transportation Committee had been sent copies of the Municipal Long Range Transportation Plan, requesting their input.  The Parks Plan had been sent to the State Parks Division, requesting their input.

Mayor Begich reported that the International Municipal Lawyers' Association 2005 National Distinguished Public Service Award had been awarded to Municipal Attorney Fred Boness.  The International Municipal Lawyers' Association had reviewed hundreds of nominations for this national, distinguished, public service award.  Qualifications included having significant achievements in local government, the ability to enhance the image of local government, be able to demonstrate characteristics of integrity, honesty, selflessness, dedication, tact, diplomacy and astuteness in dealing with the news media and the public.  Mayor Begich and Mr. Tesche congratulated Mr. Boness. Mr. Boness thanked the Mayor for the presentation and for the honor and gave credit to his staff for the recognition.

**6.     ASSEMBLY CHAIR'S REPORT**

Chair Fairclough reported that the Assembly Office had received a letter from the National League of Cities, thanking the staff and the Municipal Clerk's Office staff for helping to host the Energy Committee and the recent visitors to Anchorage.

Chair Fairclough, on behalf of Ms. Ossiander and residents of Chugiak and Eagle River, thanked the Mayor and the Heritage Land Bank for resolving the public access to Mount Baldy.

To Chair Fairclough, Chief Fiscal Officer Jeff Sinz responded they were providing quarterly reports to the Assembly on Municipality debt and an explanation of debt management.

Mr. Traini reported on the recent Alaska Municipal League Meeting in Skagway.  He and Mr. Tesche reported on the topics of state revenue sharing and the natural gas pipeline.

Mr. Coffey reported that the Rotary Club had recently hosted the President of British Petroleum, who announced they expected to address the State Legislature on a gas pipeline.

Ms. Jennings reported on her recent tour of Fort Richardson, where they were working to be prepared for potential disasters in our community.  She thanked Major Mike Haller of the Department of Military and Veterans Affairs and Lieutenant Colonel Bob Dole for the tour.

9.E.3.  Information Memorandum No. AIM 55-2005, C-5-7 Sewer Trunk Upgrade Phase 2 Construction Unlimited, Inc. (PO 246003) Report of Construction Contract Change Orders ($53,592.89); Anchorage Water & Wastewater Utility.

9.E.4.  Information Memorandum No. AIM 56-2005, contracts awarded between $50,000 and $100,000 through formal competitive processes for the month of July, 2005; Purchasing.

9.E.5.  Information Memorandum No. AIM 57-2005, Sole Source Procurement Report for the month of July 2005; Purchasing.

**9.F.  ORDINANCES AND RESOLUTIONS FOR INTRODUCTION**

9.F.1.  Ordinance No. AO 2005-110, an ordinance of the Municipality of Anchorage, Alaska, providing for the issuance of **Refunding Electric Revenue Bonds** of the Municipality in one or more series in the aggregate amount of not to exceed $250,000,000 for the purpose of providing funds to refund certain outstanding electric revenue bonds and to pay costs of issuance; providing for a trust agreement; delegating to the Chief Fiscal Officer certain matters relative to said bonds; authorizing an official statement; and authorizing the sale of such bonds; Finance. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 564-2005.

9.F.2.  Ordinance No. AO 2005-111, an ordinance of the Municipality of Anchorage, Alaska, authorizing and providing for the borrowing from the State of Alaska Drinking Water Fund of an aggregate amount not to exceed $2,500,000 for the purpose of financing a portion of the costs of the Girdwood Water Improvements and the 88th Avenue (PZ411) Water Transmission Main projects in the Municipality, and providing for related matters; Anchorage Water & Wastewater Utility. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 596-2005.

9.F.3.  Ordinance No. AO 2005-112, an ordinance of the Municipality of Anchorage authorizing and providing for the borrowing of not to exceed $7,200,000 from the State of Alaska Clean Water Fund for the purpose of the partial landfill closure of the **Anchorage Regional Landfill** and providing for related matters; Solid Waste Services. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 597-2005.

9.F.4.  Ordinance No. AO 2005-113, an ordinance of the Anchorage Municipal Assembly amending Anchorage Municipal Code Section 3.70.050 pertaining to the membership of the **Employee Relations Board** and annual election of the Chair; Assemblymember Ossiander.
  a.  Assembly Memorandum No. AM 596-2005. *(Public Hearing 9-27-05)*

9.F.5.  Resolution No. AR 2005-217, a resolution of the Municipality of Anchorage appropriating $227,592 from the Federal Office for Domestic Preparedness, under the 2005 Metropolitan Medical Response System (MMRS) grant program, through the Alaska Division Of Homeland Security and Emergency Management to the State Categorical Grants Fund (231), Anchorage Fire Department, for the purchase of Emergency Medical Services (EMS), **Electronic Patient Care Reporting (EPCR)** equipment; Anchorage Fire Department. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 592-2005.

9.F.6.  Resolution No. AR 2005-218, a resolution of the Municipality of Anchorage, Alaska, confirming and levying assessments for the sewer special improvements within **Levy-Upon-Connection (LUC) Roll 05-S-4,** setting date of payment and providing for penalties and interest in the event of delinquency; Anchorage Water & Wastewater Utility. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 593-2005.

The Administration requested this item be pulled for review on the Regular Agenda. *(See item 10.F.6)*

9.F.7.  Resolution No. AR 2005-219, a resolution of the Municipality of Anchorage., Alaska, accepting U.S. Environmental Protection Agency grant in the amount of $4,610,000 for funding the **Girdwood Water Improvements Project;** Anchorage Water & Wastewater Utility. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 594-2005.

9.F.8.  Resolution No. AR 2005-220, a resolution of the Municipality of Anchorage authorizing the Administration to amend the Participation Agreement with the State of Alaska **Public Employees' Retirement System (PERS)** to exempt certain positions from participation in PERS; Employee Relations. *(Public Hearing 9-13-05)*
  a.  Assembly Memorandum No. AM 595-2005.

9.F.9.  Ordinance No. AO 2005-114, an ordinance amending Anchorage Municipal Code Section 3.97.060 pertaining to **naming of municipal buildings, other fixed facilities and public places;** Office of Economic & Community Development. *(Public Hearing 9-13-05) (Addendum)*
  a.  Assembly Memorandum No. AM 604-2005.

This item was passed on the Consent Agenda. Mr. Coffey moved for reconsideration. *(See item 10.F.9)*

9.F.10.  Ordinance No. AO 2005-115, an ordinance adopting the **Anchorage Long-Range Transportation Plan ~ 2025,** and concurrent amendments to the Official Streets and Highways Plan (OS&HP), as revised elements of *Anchorage 2020 – The Anchorage Bowl Comprehensive Plan* and amending Anchorage Municipal Code Chapter 21.05; Traffic Department. *(Public Hearing 9-27-05) (Addendum)*
  a.  Assembly Memorandum No. AM 609-2005.

This item was passed on the Consent Agenda. Mr. Coffey moved for reconsideration. *(See item 10.F.10)*

9.F.11.  Ordinance No. AO 2005-116, an ordinance of the Anchorage Municipal Assembly amending Anchorage Municipal Code Section 10.40.050, **Adult-Oriented Establishment License,** to set a minimum distance between adult-oriented establishments and premises licensed as beverage dispensaries under AS 04.11; Assemblymember Traini. *(Addendum) (Public Hearing 9-13-05)*

Mr. Traini moved,                              to introduce AO 2005-116 with Public Hearing set

Mr. Coffey seconded,
and Mr. Stout was the concurring third. on September 13, 2005,

9.F.12.  Ordinance No. AO 2005-117, an ordinance amending Anchorage Municipal Code Chapter 10.60 regarding **Vendor Licensing**; Assemblymember Tesche and Mayor Begich. **(Addendum)** (Public Hearing 9-13-05)

Mr. Tesche moved,
Mr. Coffey seconded,
and Ms. Jennings was the concurring third.
to introduce AO 2005-117 with Public Hearing set for September 13, 2005,

Chair Fairclough called the Question on the remainder of Consent Agenda.

and the motion, as amended, was passed.

AYES:     Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer, Traini and Jennings.
NAYES:   None.

The amended Consent Agenda was approved and Chair Fairclough proceeded into discussion of the pulled items.

**END OF CONSENT AGENDA**

10.     **REGULAR AGENDA**
10.A.    **RESOLUTIONS FOR ACTION - PROCLAMATIONS AND RECOGNITIONS**
10.A.1.  Resolution No. AR 2005-208, a resolution of the Anchorage Municipal Assembly recognizing and commemorating **Women's Equality Day** – August 26, 2005; Mayor Begich and Assemblymembers Fairclough, Jennings, Ossiander, Shamberg, Bauer, Birch, Coffey, Stout, Sullivan, Tesche and Traini.

Ms. Shamberg moved,
Ms. Ossiander seconded,
and this was unanimously passed.
to approve AR 2005-208,

Ms. Ossiander read the resolution and Ms. Shamberg recognized four women from the audience, each representing organizations in the city. Accepting the resolution commemorating Women's' Equality Day were Anchorage Equal Rights Commission Executive Director Barbara Jones, Anchorage Women's Commission Chair Stacie Papineau, YWCA Executive Director Heather Arnett and Federal Women's' Program Chair Tonya Abrams.  Ms. Arnett and Ms. Jones thanked the Mayor and the Assembly for recognizing Women's Equality Day.

10.B.    **RESOLUTIONS FOR ACTION - OTHER**
10.B.2.  Resolution No. AR 2005-210, a resolution of the Municipality of Anchorage appropriating $60,288 Interest Revenue within the Heritage Land Bank Capital Improvement Projects Fund (421) in the **Heritage Land Bank Capital Improvement Project Fund (421)** for professional services, court costs, fees and IGC costs; Heritage Land Bank.
a.     Assembly Memorandum No. AM 585-2005.

Mr. Coffey moved,
Ms. Jennings seconded,
to approve AR 2005-210,

To Mr. Coffey, Heritage Land Bank Administrator Lynn Roderick Van Horn responded that this was a housekeeping issue, taking care of survey and court costs associated with Girdwood golf course and ski resort plan, dating back five years.  She responded this was the final litigation in the matter.

and this motion was approved unanimously.

10.B.3.  Resolution No. AR 2005-211, a resolution of the Municipality of Anchorage providing for the appropriation of a grant totaling $37,200 from the State of Alaska, Department of Education and $42,000 as a contribution from the Library 2005 Operating Budget within the Areawide General Fund (101), to the State Categorical Grant Fund (231) for the **Public Library Assistance Grant** under the Office of Economic & Community Development Department.
a.     Assembly Memorandum No. AM 586-2005.

Mr. Bauer moved,
Ms. Jennings seconded,
to approve AR 2005-211,

To Mr. Bauer, Municipal Librarian Art Weeks responded that they were sending twelve people to various conferences including the American Library Association Mid-winter Conference, various training workshops and the Public Library Association in Boston.  He stated it was important for library employees to be educated and stay current with new library services products, software and trends.  The training was well worth the money.  To Mr. Bauer, Mr. Weeks responded the next resolution on the Agenda was to approve the replacement of library furniture, which was 20 years old.

and this motion was passed without objection.

10.B.4.  Resolution No. AR 2005-212, a resolution of the Municipality of Anchorage providing for the appropriation of $30,200 from donations from the Anchorage Library Foundation and $100 from a citizen donation to the Miscellaneous Operational Grant Fund (261), Office of Economic and Community Development, for the purchase of **library furnishings, books and material**.

14.K.   Ordinance No. AO 2005-96, an ordinance amending Anchorage Municipal Code Section 21.50.320 to permit and provide standards for **automobile display lots** in conjunction with large retail establishments (Planning and Zoning Commission Case 2005-036); Planning Department.
   1.   Assembly Memorandum No. AM 511-2005. **(Carried Over to 9-13-05)**

15.   **SPECIAL ORDERS**

15.A.   Resolution No. 2005-223 a resolution of the Anchorage Municipal Assembly establishing a policy that encourages the use of bicycle helmets and promotes the issuance of **free bicycle helmets** through the Safe Kids Program; Assemblymember Sullivan. **(Laid on the Table)**

Mr. Sullivan moved,                                      *to introduce* AR 2005-223,
Mr. Tesche seconded,
and Mr. Coffey was the concurring third.

Mr. Tesche moved, seconded by Mr. Coffey, to amend AR 2005-223, on Line 28, *by adding* to read: Section 2: That the Municipality of Anchorage extends its "<u>sincere</u>" thanks to Providence Health System for the Safe Kids Program including the Free Helmet Program.  This was accepted by Mr. Sullivan as a friendly amendment.

Mr. Coffey proposed to amend AR 2005-223 on Lines 23 and 32, *by adding* to read:  AO 2005-77 "<u>, as amended</u>," and this was accepted by Mr. Sullivan as a friendly amendment.  Mr. Tesche concurred.

To Mr. Traini, Mr. Sullivan responded that the city would not be paying for this promotion.

Mr. Sullivan moved,                                      *to approve* AR 2005-223, as amended,
Mr. Tesche seconded,
and this passed without objection.

Mr. Coffey moved, seconded by Ms. Ossiander, to Change the Order of the Day to take up, in order, 13.A, 13.E, 14.B and 14.I and this was approved without objection.  Mayor Begich stated there were people present that evening from out-of-state to hear 13.D, concerning the code enforcement tracking system.

16.   **UNFINISHED AGENDA**   None.

17.   **AUDIENCE PARTICIPATION**   None.

18.   **ASSEMBLY COMMENTS**

Chair Fairclough commended Ms. Shamberg and all Assemblymembers for their work on the bicycle ordinance.

19.   **EXECUTIVE SESSIONS**   None.

20.   **ADJOURNMENT**

Chair Fairclough adjourned the meeting at 11:00 p.m.


_____
ANNA FAIRCLOUGH, Assembly Chair

ATTEST:


_____
BARBARA GRUENSTEIN, Municipal Clerk
Date Minutes Approved: <u>February 28, 2006.</u>
MC/BG

*(Copies of Approved Meeting Minutes are available from the Municipal Clerk's Office, 632 West 6th Avenue, Suite 250, Anchorage, Alaska, (907)343-4505, or on the Municipal Web Site, www.muni.org ~Assembly~Minutes~year~month~day)*

# MUNICIPALITY OF ANCHORAGE
# ANCHORAGE ASSEMBLY

### Assembly Chambers, Z. J. Loussac Library
### 3600 Denali Street, Anchorage, Alaska

### Minutes for Special Meeting of August 30, 2005, amended

**1.    CALL TO ORDER**

The Special Assembly Meeting was convened by Chair Fairclough at 5:07 p.m. in the Assembly Chambers, Room 108 of the Loussac Library, 3600 Denali Street in Anchorage, Alaska.

**2.    ROLL CALL**   A Quorum was achieved with Assemblymembers present.

PRESENT:    Allan Tesche, Janice Shamberg, Debbie Ossiander, Dan Sullivan, Anna Fairclough, Dan Coffey, Chris Birch, Ken Stout, Paul Bauer, Dick Traini and Pamela Jennings.
ABSENT:    None.

**3.    PLEDGE OF ALLEGIANCE**   Assemblymember Birch led the pledge.

Mayor Begich recognized two Municipal employees in the audience.  APD Patrol Officer Mark Karstetter, with the Meth Lab Team, was also a Technical Sergeant in the Alaska Air National Guard, where he had served for the past 14 years. Officer Karstetter was currently a member of the 176th Maintenance Squadron, and in 2002, had been deployed to Khandahar, Afghanistan for eight months supporting Operation Enduring Freedom. APD Senior Patrol Officer Scott Lofthouse was the Gang Investigations Instructor and an Assault/Robbery Unit Detective. Officer Lofthouse was also a Master Sergeant with the Alaska Air National Guard, where he served as a Superintendent for the 3rd Security Forces Squadron. Mayor Begich presented community recognitions to these men and thanked each of them for serving the city and the country. Officer Karstetter thanked the Mayor, the Assembly and fellow officers present that evening, for their recognition and support of his service with the National Guard and Reserve, which made up nearly 65% of the forces stationed in Afghanistan.

Chair Fairclough thanked the men for their service to the community.

Ms. Jennings thanked them for their service to the country and thanked their families for their support.  She hoped Officer Lofthouse and his unit would receive more assistance for their efforts in Afghanistan.

To Mr. Sullivan, Officer Karstetter acknowledged his understanding of an ordinance before the Assembly dealing with methamphetamine and responded that any regulation of the sale of Sudafed and those types of over-the-counter narcotics would make it harder for criminals and would assist police efforts in shutting down Meth labs in the area.

**4.    OLD BUSINESS**
    4.A.    Ordinance No. AO 2005-83, an ordinance amending Title 10 to add a new Chapter for licensing of towing operators in the Municipality, amending Section 10.05.025 to add a fine, and other matters; Legal Department.
        1.    Assembly Memorandum No. AM 442-2005.
        2.    Ordinance No. AO 2005-83(S), an ordinance amending Title 10 to add a new Chapter for licensing of towing operators in the Municipality, amending Section 10.05.025 to add a fine, and other matters; Legal Department. *(Public Hearing Closed 8-9-05; Postponed from 8-9-05)*

Chair Fairclough stated that Public Hearing was closed on August 9, 2005 and she called for a motion.

    Mr. Traini moved,                              to approve AO 2005-83(S),
    Mr. Coffey seconded,

To Mr. Birch, Anchorage Police Department Impound Supervisor Mindy McCulley clarified specific requirements on signage, concerning allowances for one sign for the front of a business and the manufacturing costs of signs.

Mr. Sullivan stated the insurance requirements should be limited to companies involved with the rotational tow.  Ms. McCulley responded that the Department of Risk Management created insurance requirements because of the value of vehicles and the high costs of accidents.

    Mr. Sullivan moved,                            to amend AO 2005-83(S) on Page 2, Line 32, B & C, *by*
    Ms. Jennings seconded,                         *adding, "for operators that tow on behalf of the Municipality*
    and this was later withdrawn.                  *of Anchorage."*

To Mr. Tesche, Mr. Sullivan responded his intent was to make insurance requirements for tow operators who participate with the rotation contract with the city.  All other tow companies would be responsible for their own insurance programAs. Mr. Tesche responded that Municipal Code had existing insurance requirements, offering protection to the public.  To his question, Municipal Manager Michael Abbott responded there were different code requirements for tow operators involved with the rotational tow program, which involved single contracts where

To Ms. Shamberg, Mayor Begich responded they were still in the process of drafting a merit-pay reward system.  Mr. Otto responded they were gathering information from across the country and working with the Human Resource Advisory Board.

Chair Fairclough stated that she had been contacted by employees, concerned about the language on Line 15, 'except executive employees.'  Mayor Begich responded that executive employees had never received service recognition, and their length of service was at the will of the Mayor.

Mr. Tesche supported the Mayor's intentions and approved of a system of employment compensation based on merit and performance.  He recommended this issue be addressed after completing contract negotiations and he encouraged the Mayor to address Municipal Code, to legally pursue this issue.  He would not support the ordinance.

Mr. Coffey supported the Mayor's ordinance.  This was an issue that needed to be dealt with.

and this motion failed, 5-6.

AYES:       Shamberg, Fairclough, Coffey, Birch, Stout and [Jennings].
NAYES:    Tesche, Ossiander, Sullivan, Bauer, Traini and Jennings.

Mayor Begich stated the Administration would continue to work on this issue and would present it again in the near future.

     5.I.       Resolution No. AR 2005-173, a resolution confirming and levying special assessments for **Special Assessment District 1SR02** which reconstructed Warwick Drive, and setting the date of assessment installment payments, interest on unpaid assessments, and providing for penalties and interest in the event of delinquency; Project Management & Engineering.
          1.       Assembly Memorandum No. AM 476-2005.  *(Carried Over from 7-26-05, 8-9-05 and 8-23-05)*

Chair Fairclough read the resolution title and opened Public Hearing.

Mr. Coffey moved,                          to approve AR 2005-173,
Ms. Jennings seconded,

To Chair Fairclough, Deputy Municipal Manager Michael Abbott responded the contractor was Cullip Excavating, which had bid the contract under cost, and it would cost taxpayers less than originally estimated.

Ms. Jennings moved,                to amend AR 2005-173 on Page 1, Line 22 *by adding* Mr.
Traini seconded,                     "August 30;" on Line 32 "1st," and "November;" and on
and this was passed without opposition.     Line 33 "November 1st."

and the main motion, as amended, was passed, 10-0.

AYES:       Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer, Traini and Jennings.
NAYES:    None.
*(Clerk's Note:  Mr. Tesche was temporarily out of Chambers at the time of the vote.)*

     5.J.       Resolution No. AR 2005-193, a resolution of the Anchorage Municipal Assembly approving an amendment to an alcoholic beverages conditional use in the B-3 District for a beverage dispensary use per AMC 21.40.180 D.8 for **The Setter**, located on Lot 1, Fantasies Subdivision and Lots 4, 5 and 6, Block 26C, Fourth Addition Subdivision; site address being 1911 East 5th Avenue, generally located between East 4th and East 5th Avenues, on the east side of Sitka Street (Mountain View Community Council) (Case 2005-103); Planning Department.  *(Continued to 9-27-05, 8:00 p.m.)*
          1.       Assembly Memorandum No. AM 519-2005.  *(Continued to 9-27-05, 8:00 p.m.)*

Chair Fairclough called for discussion on Assemblymembers' conflicts of interest or ex parte contact which needed to be addressed.

Chair Fairclough declared that she had a conflict of interest with her association as the Executive Director of Standing Together Against Rape *(STAR)*.  The Board of STAR had passed a resolution opposing AR 2005-193 and had supported Mr. Traini's proposed 1000-foot separation between under-21 adult-oriented businesses and establishments with liquor licenses.

Mr. Coffey stated the Question.

Mr. Coffey moved              "Does Assembly Chair Fairclough have a substantial financial
Mr. Traini seconded,          interest in the matter before the Assembly?"
and his was later amended.

To Mr. Tesche, Chair Fairclough responded she had no personal financial interest with any of the businesses that were subjects of this application.  Her employment with STAR was not contingent upon her discussion and action of this matter before the Assembly.  She responded that she could participate as an Eagle River Chugiak Representative and make a fair and impartial decision on this matter.  She stated her action taken upon this resolution may be misperceived by the public or argued legally, depending upon the outcome of the vote.  She viewed this matter as a land use issue, and there had been much discussion on issues that were not applicable.

Mr. Sullivan stated that he had served with Chair Fairclough for the last seven years and he was confident that she would be able to participate with this proceeding with impartiality.  The resolution from a board was not a compelling

1   document and the board had not made their decision based on her position. He would vote that she did not have a
2   conflict of interest.
3
4   To Mr. Coffey, Chair Fairclough responded that her participation on this matter would not affect her professional
5   association with the board, because they understood and could clearly differentiate between the issues. The staff she
6   worked with, however might view it differently, because they worked closely with the community on a personal basis
7   and might not be able to separate the difference between victimization and a land use issue. She responded that she
8   could vote impartially. Mr. Coffey stated that her being able to vote impartially was the key issue for Assemblymember
9   to decide, and not public perception.
10
11  Ms. Ossiander stated that she had witnessed Chair Fairclough in discussion and she was able to remain focused on
12  the issue. All Assemblymembers, as representatives, were engaged with the community and were shaped with their
13  experiences, but there was no economic impact for Ms. Fairclough and her employers would remain impartial with her
14  participation. Ms. Ossiander stated there was no conflict of interest.
15
16  Mr. Coffey proposed for the original motion to include additional language to address the appearance of a conflict of
17  interest. Municipal Attorney Fred Boness responded that officials, boards or commissions, while acting in their quasi-
18  judicial capacity, shall remain impartial in all matters, both in fact and appearance. He stated that Chair Fairclough
19  was acting in a quasi-judicial capacity with the decision before the Assembly. Mr. Tesche concurred, that it
20  summarized the question before the Assembly. Mr. Coffey stated the question of Ms. Fairclough's participation boiled
21  down to the question of her impartiality.
22
23        Mr. Coffey moved,                        to amend the Coffey Motion, *by adding* to read: "Does
24        Mr. Tesche seconded,                     Assembly Chair Fairclough have a substantial financial
25                                                 interest, **impartiality or the appearance of a conflict**
26                                                 **of interest** in the matter before the Assembly?"
27
28  Mr. Stout stated that many Assemblymembers had appearances of conflicts of interests, regardless of the outcome,
29  and the question was their impartiality.
30
31  Mr. Coffey put the Question. Ms. Jennings requested a roll call vote.
32
33        and this motion, as amended, failed.
34
35  AYES:     None.
36  NAYES:    Tesche, Shamberg, Ossiander, Sullivan, Coffey, Birch, Stout, Bauer, Traini and Jennings.
37  ABSTAIN:  Fairclough.
38
39        Mr. Birch moved the Question,           "Does Assemblymember Coffey have a substantial financial
40        Ms. Shamberg seconded,                  interest, impartiality or the appearance of a conflict of
41                                                 interest in the matter before the Assembly?"
42
43  Mr. Coffey disclosed that in 1999 he had represented a former owner of the Irish Setter, and had heard discussions of
44  the establishment's square footage and the addition of Fantasies next door. In June of 2003 he had worked with the
45  current owner on permitting for a conditional use. He had declined to complete that representation, formally notified
46  the owner, returned funds that he had been paid and closed the file with this matter.
47
48  To Mr. Tesche, Mr. Coffey responded that he had had no further professional involvement with any of the applicants or
49  the business since that time. He responded his law firm dealt with many land use issues and had dealt with many
50  conditional uses associated with liquor licenses. Mr. Coffey stated his legal expertise involved land use issues, and he
51  clearly understood the matter before the Assembly. He responded that he could make a fair and impartial decision as
52  an Assemblymember.
53
54  Ms. Shamberg stated there was the appearance of a conflict of interest.
55
56  Ms. Ossiander stated that while she wanted to rely on Mr. Coffey's knowledge of land use and Title 21, she stated
57  there was the appearance of a conflict of interest.
58
59  Mr. Sullivan stated that many clients of Mr. Coffey had been before the Assembly. Mr. Coffey had represented many
60  in the past and would represent many in the future, which might be potentially thousands of businesses in the city. But
61  he was not currently representing and had no financial interest in those clients. He would not support a conflict.
62
63  Mr. Stout stated that because the word 'appearance,' had been included, it would qualify many Assemblymembers for
64  having conflicts of interest. He trusted Mr. Coffey to remain fair and impartial with his participation and he would not
65  support a conflict of interest.
66
67  Mr. Tesche stated that, for many reasons, he would vote that Mr. Coffey did have a conflict of interest.
68
69  Mr. Birch put the Question.
70
71        and this motion failed.
72
73  AYES:     Tesche, Shamberg, Ossiander and Jennings.
74  NAYES:    Sullivan, Fairclough, Birch, Stout, Bauer and Traini.
75  ABSTAIN:  Coffey.
76
77  To Chair Fairclough, Mr. Boness responded it was recommended to disclose which Assemblymembers had had ex
78  parte contact by visiting the site or being exposed to outside information. Mr. Sullivan, Mr. Tesche, Ms. Jennings, Mr.
79  Traini, Ms. Fairclough, Mr. Bauer, Mr. Stout indicated they had visited the site.

Other than attending the Assembly Worksession and reviewing the information that had been prepared by the Assembly Office, Assemblymembers disclosed information they had been exposed to, concerning the matter. Mr. Tesche had viewed an email from the STAR Board. Ms. Shamberg stated she had reviewed arrest records, prior to Assemblymembers being advised not to have ex parte contact. Ms. Ossiander had received 3 or 4 short phone calls on this matter. Ms. Jennings had only reviewed the prepared packet. Mr. Traini had read the public documents of police arrest and investigation records of the owner's sons. Mr. Bauer had not viewed any other records. Mr. Stout stated that he had talked with the two owners while he was at the site. Mr. Birch had only viewed the packet information. Mr. Coffey had only reviewed the previous billings in his office, previously related to this matter. Ms. Fairclough had received one phone call.

Chair Fairclough put the Question, "For those of you, who visited the site, does your site visit in any way make you incapable of being able to listen to testimony and vote in an impartial manner?" There was no response.

To Chair Fairclough, Planning Administrator Jerry Weaver responded that the request was to increase the square footage for the bar area by 40%. The increase in size was the basis for their recommendation that this matter was a major amendment.

To Mr. Bauer, Mr. Weaver responded this was the first case before any Anchorage Assembly deciding a matter of this kind.

Chair Fairclough put the Question, "Shall we consider this a Major Amendment, which would require a Public Hearing?" Mr. Tesche moved to amend the document with reference to this question.

| | |
|---|---|
| Mr. Tesche moved, | to amend AR 2005-193 under 21.15.030.G, *by adding* "For |
| Ms. Jennings seconded, | purposes of amending the application for modification to |
| and this motion was passed unanimously. | a conditional use permit is MAJOR and should be considered |
| | by the Assembly only after Public Hearing," |

AYES:      Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer, Traini and Jennings.
NAYES:   None.

Chair Fairclough read the resolution title and opened Public Hearing.

KARA NIQUIST, Director of Advocacy for Covenant House, spoke of many activities on the premises. She opposed adding the liquor license and opposed the resolution. To Mr. Tesche, Ms. Niquist responded the approval of this permit would only make the situation worse. To Mr. Sullivan, she responded there was reference to an employee having been offered $1,000, which happened all the time. To Mr. Traini, Ms. Niquist responded the management had assisted the girls in getting fake identification *(ID)*. She identified the management as the Gonzalez brothers. To Ms. Shamberg, she had spoken with many girls, formerly Fantasies employees, who reported inappropriate touching. To Ms. Jennings, she responded there had been a rape in the parking lot reported, and the management had not allowed the use of the phone to call authorities. To Mr. Bauer, she responded that in her two years with Covenant House, she had personally interviewed at least five women from Fantasies, but that did not indicate the total numbers of women from that establishment that they assisted. To Ms. Shamberg, the Supreme Court Decision had indicated that local government had the responsibility to review and regulate the secondary effects to the community, concerning land use. She stated there were now a pornographic store and a motel right next door to this establishment.

JENNIFER JOHNSON, former dancer and former girlfriend of Marcos Gonzalez, opposed the resolution. She had been choked in the establishment and thought it was a dangerous spot. To Ms. Jennings, she responded employees paid the house to work there. To Mr. Bauer, she responded there should be restrictions and consequences made to the owners. To Mr. Traini, she responded the owner's three sons, like Fantasies, were considered the management. To Ms. Shamberg, she responded that no liquor was served in Fantasies. To Ms. Jennings, she described the layout of the establishment, with the common use of one bathroom. To Mr. Tesche, she responded the testimony from Ms. Niquist was accurate. To Mr. Coffey, she responded that she had recently quit dancing. To Mr. Stout, she responded they would not be able to control the new facility.

DR. BECKY USRY, a 25-year practicing sociologist, opposed the resolution.

GORDON SCHADT, an attorney representing the applicant, testified it was a land use issue, concerning a conditional use permit and the changes were improvements. To Mr. Traini, Mr. Schadt described the plastic partition separating the dance floor and the bar. To Mr. Tesche, he responded there had been only three liquor-related incidents in the last two years. He responded that Carol Hartman was the owner of the property, the building and the Setter. Her sister, Kathy Hartman, owned Fantasies. There were two separate business licenses. To Mr. Tesche, Mr. Traini, Mr. Coffey and Ms. Jennings, Mr. Schadt responded to questions concerning the girls' activities, his knowledge of the Gonzalez brothers, the premise entrance, the viewing wall and the modifications under the license.

JUDY MUNOZ, former Setter bartender, testified against principles of the establishment concerning serving drunks. To Mr. Coffey, she responded that she had complained to her employees union. To Mr. Traini, she responded that Marcos Gonzalez used to be a disc jockey and was probably a bartender now. To Ms. Jennings and Mr. Bauer, she responded children were allowed in the bar only.

KACY TELFER, Mary Magdalene Home Alaska Executive Director, opposed the resolution and stated it was a land use issue. To Mr. Sullivan, she responded that if this conditional use was approved, it would increase the amount of alcohol served.

LYNNE BALLEW, Safe Harbor Inn owner and neighbor to the Setter, stated it was a land use issue. Fantasies and the Setter had been good neighbors. She thanked Mr. Bauer for his complements on her well-maintained property. To Mr. Tesche, she responded that they handled 120-130 people daily and 50% were children.

SAM O'CONNOR, West Side Community Patrol President, testified on the criminal history of the Gonzalez brothers. To Mr. Tesche and Mr. Traini, he responded to issues concerning the health and safety of the girls and a strip club at the Showboat. To Mr. Traini, Mr. O'Connor responded he was concerned for the girls' safety.

DALE FOX, Executive Director of Alaska CHARR, testified that the Hartmans had always been up front with their plans and were honest, caring and contributing members of the community. They had invested their life savings in these improvements to the establishment. They had followed all the rules and he urged Assembly support. To Ms. Shamberg, Mr. Fox responded he supported the business.

TOM McGRATH testified against allowing these two businesses to locate together. He urged the Assembly to deal with this as a land use problem. To Mr. Coffey, Ms. Jennings, Mr. Tesche and Mr. Traini, Mr. McGrath responded to their questions on legally licensing, revoking conditional uses, unrestricted intimate sexual activities, defining lap dances and allowed physical contract.

TERI INCH, with Mary Magdalene Home and mother of three, testified against allowing the conditional use. To Mr. Stout, she responded about stripping and its affects on the girls' growth and development.

STACIE PAPINEAU, Anchorage Women's Commission Chair, opposed the resolution, because of the secondary effects of establishments such as these, including violence and abuse. To Mr. Traini, she responded that she had visited the premises for about an hour and described totally-nude, sexual interaction between the dancers and patrons.

LEANNE CHRISTENSEN, limousine chauffer for the Setter and former dancer, testified in support of the resolution. To Mr. Tesche, she responded that the two businesses should remain separated and secured by guards. The glass viewing wall improved the business in the bar. To Mr. Traini, she responded that Marcos Gonzalez was the disc jockey.

BROOKE HARVEY, dancer at Fantasies, testified it was a good place to work and she supported the building expansion.

WILLIAM SMITH testified this was a land use issue and he did not support the resolution.

TROY MAULDIN supported this resolution and supported Carol and Kathy's expansion for their businesses. He had visited the premises and did not see any questionable activity. He urged Assembly support.

Mr. Coffey moved,
Mr. Bauer seconded,                          to extend the Assembly Meeting until midnight,

Mr. Sullivan moved,
Ms. Jennings seconded,                       to amend the Coffey Amendment *by changing* to extend
and this failed with many members opposing.  the Assembly Meeting until [midnight] "11.30,"

and the main motion failed.

KIM KINGSFORD, janitor with Fantasies, supported the establishment.

Mr. Coffey moved,                            to Continue AR 2005-115 to 8:00 p.m. on
Mr. Sullivan seconded,                       September 27, 2005,
and this motion was passed unanimously.

6.    **NEW PUBLIC HEARING**
      6.A.    Resolution No. AR 2005-207, a resolution of the Anchorage Assembly approving the **Heritage Land Bank 2005-2006 Work Program** and 2007-2011 Five-Year Management Plan; Heritage Land Bank.
              1.    Assembly Memorandum No. AM 563-2005. *(Carried Over to 9-13-05)*

7.    **ADJOURNMENT**

Chair Fairclough adjourned the meeting at 11:00 p.m.


*Anna Fairclough*
ANNA FAIRCLOUGH, Assembly Chair

ATTEST:


*Barbara S. Gruenstein*
BARBARA GRUENSTEIN, Municipal Clerk
Date Minutes Approved: February 28, 2006, as amended.
MC/BG

*(Copies of Approved Meeting Minutes are available from the Municipal Clerk's Office, 632 West 6th Avenue, Suite 250, Anchorage, Alaska, (907)343-4505, or on the Municipal Web Site, www.muni.org ~Assembly~Minutes~year~month~day)*

# MUNICIPALITY OF ANCHORAGE
## ANCHORAGE ASSEMBLY

**Assembly Chambers, Z. J. Loussac Library**
**3600 Denali Street, Anchorage, Alaska**

**Minutes for Regular Meeting of September 13, 2005, amended**

1.   **CALL TO ORDER**

The Assembly Meeting was convened by Chair Fairclough at 5:04 p.m. in the Assembly Chambers, Room 108 of the Loussac Library, 3600 Denali Street in Anchorage, Alaska.

2.   **ROLL CALL**   A Quorum was achieved with Assemblymembers present.

PRESENT:   Allan Tesche, Janice Shamberg, Debbie Ossiander, Dan Sullivan, Anna Fairclough, Dan Coffey, Chris Birch, Ken Stout, Paul Bauer, Dick Traini and Pamela Jennings.

ABSENT:   None

3.   **PLEDGE OF ALLEGIANCE**   Assemblymember Shamberg led the pledge.

4.   **MINUTES OF PREVIOUS MEETINGS**   None.

5.   **MAYOR'S REPORT**

Mayor Begich presented certificates, honoring two Municipal employees, serving in the Alaska Army National Guard, deployed to Iraq. *(Clerk's Note: With the assistance from members of AT&T Alascom, ACS and the Municipal Information Technologies Division, Officer Gum was connected, via live video from his location in Baghdad.)*

The first certificate was presented to Dennis Gum, a 21-year Senior Patrol Officer with Anchorage Police Department (APD), who had served for 12 years with the Alaska Army National Guard and for the past 8 years with the U.S. Army Reserves, holding the rank of Lieutenant Colonel. He was currently serving with the Special Operations in Baghdad. Officer Gum thanked everyone who had made the live presentation possible. He thanked his wife and family for their support, the Mayor and the Assembly for the recognition and support. Rochelle *(Rocky)* Gum accepted the certificate on behalf of her husband and stated that she had seen him for only two weeks in the past year, since his deployment.

Mayor Begich presented the second certificate to Seth McMillan, an APD Patrol Officer, serving with the Alaska Army National Guard, as Sergeant. He was to be deployed to Iraq on September 16th, as a Combat Medic with the 1st Battalion, 297th Infantry. Officer McMillan thanked members of the Guard, fellow APD officers, the Assembly and the Mayor for the support and recognition. He hoped to be home after his one-year tour. Mayor Begich thanked both men for their service to the city and to the country.

On behalf of Mayor Begich, Office of Equal Opportunity Director Celeste Hodge announced the upcoming Diversity Week, scheduled for September 25th to October 1st. Many events were planned throughout the week, including a dinner with a keynote speaker on October 1st. Mr. Traini thanked Ms. Hodge for her efforts. He and Ms. Jennings offered congratulations on her new position as director.

Mayor Begich recognized Brian Saylor in the audience, newly appointed to the Health and Human Services Commission.

6.   **ASSEMBLY CHAIR'S REPORT**   None.

7.   **COMMITTEE REPORTS**

Ms. Ossiander announced the Title 21 Committee would continue their Friday meetings, with discussion that week on Chapter 5, Zoning Categories and Allowed Uses, at the Planning Department from 1:00 to 3:00 p.m. All meetings were open to the public.

8.   **ADDENDUM TO AGENDA**

Chair Fairclough called for a motion and read the Addendum items. She called for additional items to be added, and AR 2005-242, AO 2005-127, AO 2005-126, and AR 2005-243 were added. Mr. Tesche requested consideration to allow public testimony from guests in the audience, who were not on the evening's agenda. Mr. Birch opposed his request. Chair Fairclough denied his request, because the issue would be addressed on September 27th and the length of the Agenda that evening. Vice Chair Coffey concurred. Vice Chair Coffey added a Summary of Economic Effects to AO 2005-116. Chair Fairclough assigned new items to the Agenda as 9.A.1, 9.F.21, 9.F.20, 9.D.25 and 14.M, respectively. There being no additional items, she called for a vote to incorporate the Addendum items into the Agenda. Mr. Coffey declared conflicts of interest with Agenda items D.4 and 14.K.

Anchorage Municipal Assembly
Regular Meeting Minutes of September 13, 2005
Page 16

1        Assembly Memorandum No. AM 610-2005

Chair Fairclough stated that Mr. Coffey had declared a conflict of interest and she ruled that he would not participate with this matter and there were no objections. She opened Public Hearing.

SHERMAN ERNOUF, representing Club Oasis, testified in support of the conditional use permit, allowing for duplicate licenses for two fixed bars in the establishment.

With no additional public testimony, Chair Fairclough closed Public Hearing and called the question.

Mr. Birch moved,                          to approve AR 2005-222.
Ms. Shamberg seconded,

To Ms. Jennings, Mr. Ernouf responded the owners were negotiating a joint-use parking agreement with the neighboring business, Prime Ink. He responded the language in the document, referring to the percentages of alcohol and food served needed administrative corrections.

Mr. Sullivan moved,                       to amend AR 2005-222 on Page 2, Lines 6 and 7, *by*
Ms. Jennings seconded,                    *changing*, to read: 'Alcohol sales are estimated to be [20] "80"
and this was approved without objection.   percent    ' and 'compared to [80] "20" percent food sales. ..'

Ms. Jennings moved,                       to amend AR 2005-222 on Page 2, Line 6, *by changing* to
Mr. Sullivan seconded,                    read: '... required parking spaces appear to be [37] "137"
and this was approved without objection.   spaces,'

Ms. Jennings objected adding additional licenses for one location. Parking and traffic were concerns, along with the increased violence which accompanied so many people drinking alcohol in one location.

Chair Fairclough called the Question.

        and this motion, as amended, was passed, 8-2

AYES        Tesche, Ossiander, Sullivan, Fairclough, Birch, Stout, Bauer and Traini.
NAYES       Shamberg and Jennings.
ABSTAIN     Coffey.

14 L.    Ordinance No. AO 2005-97, an ordinance amending Anchorage Municipal Code Section 21.50.160 to amend a subsection and add a new subsection exempting **catering and special events permits** involving the retail sale and dispensing of alcoholic beverages from the conditional use process (Planning and Zoning Commission Case 2005-053), Planning Department.
        1.    Assembly Memorandum No. AM 512-2005.

Chair Fairclough read the ordinance title and opened Public Hearing. With no one to testify she closed Public Hearing and called the Quesiton.

Mr. Sullivan moved,                       to approve AO 2005-97,
Ms. Shamberg seconded.

Ms. Ossiander understood the Planning Department was creating a substitute version for this ordinance. Mr. Coffey and Planning Director Tom Nelson concurred.

To Mr. Bauer, Mr. Coffey responded that unique cases of conditional uses were still being considered.

Ms. Ossiander moved,                      to postpone indefinitely AO 2005-97,
Mr. Sullivan seconded,
and this passed without objection.

14 M.    Ordinance No. AO 2005-116, an ordinance of the Anchorage Municipal Assembly amending Anchorage Municipal Code Section 10.40.050, **Adult-oriented Establishment License**, to set a minimum distance between adult-oriented establishments and premises licensed as Beverage Dispensaries under AS 04.11; Assemblymember Traini.
        1.    Assembly Memorandum No. AM 611-2005.
        2.    Summary of Economic Effects. *(Laid on the Table)*

Chair Coffey read the ordinance title. He stated this matter could be forwarded to the Planning and Zoning (P&Z) Commission. Mr. Sullivan responded if the issue was referred to P&Z then Public Hearing should also be postponed. He recommended that Public Hearing be opened and the issue be referred to the Planning Department. He requested a map from the Planning Department.

Mr. Tesche recommended Public Hearing be opened and Assembly action taken that evening.

Chair Coffey opened Public Hearing.

MARTIN ELDRED, Pastor of Joy Lutheran Church, supported the ordinance. It set parameters around these businesses, helping to protect the health and welfare of persons in the community. To Ms. Ossiander, Reverend Eldred responded he would be more adamant if the ordinance was addressing under-21 aged dancers. To Mr. Tesche, Reverend Eldred responded that the density of adult establishments helped to create an unhealthy environment with increased crime and created blights in the community.

1
2  STACIE PAPINEAU, Chair of the Alaska Women's Commission, spoke in favor of the ordinance and presented a
3  resolution of support from the Commission to the Assembly
4
5  KATHLEEN PLUNKETT testified in support of the ordinance because it would create rules that would help decrease
6  crime and help improve revitalization of neighborhoods and the community.
7
8  REGINA MANTEUFEL proposed amendments to the ordinance, requiring posting of Municipal Code concerning tips,
9  in the restrooms and dressing rooms. Mr. Tesche responded that her amendment could not be taken up that evening
10 because the title of the ordinance addressed other issues. He thanked her for her tireless advocacy in this area
11
12 CASEY STOUFFER, Executive Director of the Mary Magdalene Home Alaska, supported the ordinance and stated the
13 1000-foot barrier between adult-oriented businesses would help to reduce effects from this type of business, in
14 particular, sexually exploitation of women
15
16 CAROL HARTMAN, with Fantasies, thought consideration of local statistics needed to be considered, rather than
17 comparing with national studies.  To Mr. Tesche, Ms. Hartman responded there was a Supreme Court decision
18 requiring a study to use local, instead of national statistics.
19
20 KIM BOWMAN opposed the ordinance  The people who used these businesses would go to them, regardless of
21 where they were or how close they were to each other.
22
23 ELIZABETH FRANCES, an under-21 dancer at Fantasies, opposed the ordinance because it would affect her job.
24
25 LORI PICKETT supported the ordinance.  She proposed consideration of changes, including eliminating the use of
26 glass or Plexiglas, as a separating wall between a bar and a strip club.
27
28 BROOKE HARVEY, a 20-year old dancer at Fantasies, stated that this was not a teen club, but an adult club
29
30 With no additional public testimony, Chair Coffey closed Public Hearing and called the Question
31
32         Mr. Traini moved,                                    to approve AO 2005-116.
33         Mr. Tesche seconded.
34
35 To Mr. Sullivan, Mr. Traini responded that the Municipal Attorney and land use special consultants had stated this
36 issue did not conflict with federal law.  Mr. Tesche concurred.  To Mr. Sullivan, Planning and Zoning Director Tom
37 Nelson responded there was a map that indicated locations of adult establishments and school zones, with separation
38 zones.  Mr. Sullivan responded that map was limited.
39
40 To Chair Coffey, Acting Municipal Attorney Rhonda Fehlen Westover responded if this ordinance resulted in an
41 absolute prohibition of these establishments, based on the 1000-foot barrier, there would be legal issue  As a policy
42 matter, the Assembly may regulate time, manner and place, but did not have the ability to prohibit the type of activity,
43 as long as the minimum distance requirement did not prohibit all activity.  She recommended examination of a map
44
45 To Mr. Birch, Ms. Westover responded the Legal Department was examining the legalities of co-ownership of these
46 establishments  Mr. Birch stated it appeared the thrust of the ordinance was to prohibit this type of dancing.  Chair
47 Coffey responded 'adult-oriented establishment' was defined in statutes as being a place where under-aged people
48 were prohibited for reasons other than alcohol.
49
50 Mr. Tesche stated that Assembly Legal Secretary Susan Lutz had prepared a map of the Anchorage Bowl, showing
51 the radiuses.  There were other areas in the city where additional establishments would be allowed
52
53 Mr. Traini stated that Seattle had not approved a new strip club for the past eighteen years  To Mr. Traini, Health and
54 Human Services Director Beverly Wooley responded she had toured Fantasies and was aware of activities  She
55 responded the bar and the strip club were side-by-side, with a Plexiglas wall separating teenaged dancers from
56 patrons entering the bar.
57
58         Mr. Sullivan moved,             to postpone AO 2005-116 to September 27, 2005, after
59         Mr. Birch seconded.             referring it to the Public Safety Committee and with the
60                                         Planning Department submitting a definitive map, showing
61                                         the 1000-feet and locations of establishments, churches and
62                                         schools.
63
64 To Chair Coffey, Mr. Nelson responded the requested map could be prepared for the Assembly Meeting on September
65 27th.  Mr. Bauer responded he would schedule a Public Safety Committee Meeting on the 23rd at 9:00 a.m. to address
66 the map  Mr. Sullivan accepted all conditions as friendly amendments.
67
68 Mr. Sullivan requested an opinion from the Department of Law on the affect of passage of this ordinance to current
69 applications, particularly the Setter.  Mr. Tesche responded that he had prepared a floor amendment to address that
70 issue, which had been reviewed by the Law Department.  Chair Coffey requested the Legal Staff make sure there
71 would not be a title issue
72
73 Mr. Traini objected to postponement.
74
75 Mr. Tesche stated there were many constituents in his district that took this matter very seriously because it affected
76 families and the values of the community. He urged members to take this very seriously, but, he would support
77 postponement.
78

1   Mr Sullivan stated the process included a committee structure for reasons to methodically and thoroughly examine
2   matters like this one, to fully understand, before being considered by the Assembly.
3
4           and the amended Sullivan motion to postpone was approved,
5           with an excused absence for Ms. Fairclough.
6
7       Ms. Ossiander moved,                              to adjourn the Assembly Meeting.
8       Mr. Tesche seconded,
9       and this motion failed 4-6.
10
11  AYES:    Tesche, Ossiander, Sullivan and Traini.
12  NAYES    Shamberg, Coffey, Birch, Stout, Bauer and Jennings.
13  ABSENT:   Fairclough, excused.
14
15  Mr. Sullivan requested the Health and Human Services Commission and the Public Safety Committee address the
16  methamphetamine precursor drugs before the Assembly considered the matter.
17
18          14.N   Ordinance No. AO 2005-117, an ordinance an ordinance amending Anchorage
19               Municipal Code Chapter 10.60 regarding vendor licensing; Assemblymember Tesche
20               1      Assembly Memorandum No. AM 612-2005.
21
22  Chair Coffey read the ordinance title and opened Public Hearing.
23
24  MELVIN STERN, a downtown ice cream vendor, testified the lottery process needed to be reviewed. It no longer
25  operated as it was intended and it was being abused.
26
27  SHIRLEY COLWELL testified that more time was needed to examine the lottery issue because the process was not
28  fair and did not follow the law. To Mr. Birch, Ms. Caldwell responded that her booth was located on private property at
29  6th and D Street. To Mr. Sullivan, Ms. Caldwell responded that the licensing process needed to be improved.
30
31  JOE NANGLE, a 14-year downtown lottery vendor, opposed the lottery changes because public process had not been
32  included. He explained the process that he and his family had used over the years to ensure they would get one of the
33  12 positions allowed. To Mr. Tesche, Mr. Nangle responded that his family maintained two downtown vendor spots.
34  To Mr. Sullivan, he responded that he would support a grandfather clause for vendors.
35
36  DON SMITH testified in support of needed changes in the ordinance
37
38  With no additional public testimony, Chair Coffey closed Public Hearing and called the Question.
39
40      Mr. Tesche moved,                              to approve AO 2005-117,
41      Ms. Ossiander seconded.
42
43  Mr. Tesche urged a YES-vote. This would be an opportunity to work with downtown vendors to improve the process.
44
45  Mayor Begich stated the Administration was addressing concerns the audit had indicated. It was their intent to include
46  public process and have Assembly approval on a final ordinance by November. They were addressing the process,
47  the numbers of issued licenses and the value of prime locations.
48
49          and this motion was passed without objection,
50          with an excused absence for Ms. Fairclough.
51
52          14.O   Ordinance No. AO 2005-108, an ordinance of the Anchorage Municipal Assembly requiring utilization
53               of efficient combined cycle power generation technology, together with combined heat and power
54               and best available environmental control technology, in connection with replacement of existing power
55               generation equipment, including Unit #3, Plant #1, by Municipal Light & Power; Assemblymembers
56               Tesche, Traini, Coffey and Stout.
57
58  Chair Coffey read the ordinance title and opened Public Hearing. With no one to testify he closed Public Hearing and
59  called the Question.
60
61      Mr. Tesche moved,                          to postpone AO 2005-108 until November 8, 2005 with a
62      Ms. Shamberg seconded,                     worksession scheduled.
63
64  Mr Birch supported postponement and scheduling a worksession.
65
66  Ms. Jennings supported postponement.
67
68          and this motion passed without objection.
69
70          14.P   Ordinance No. AO 2005-51, an ordinance of the Anchorage Municipal Assembly to levy a three (3)
71               percent sales tax on the sale of goods with certain exemptions, with a cap and with a reimbursement
72               for collection, all within the tax cap and for the exclusive purpose of reducing property taxes
73               proportionately throughout the Municipality of Anchorage, subject to a sunset provision and submitting
74               the question of whether or not to approve said sales tax to the qualified voters of the Municipality at its
75               next Regular Election on April 4, 2006 with re-approval required at the April 7, 2009 Regular Election;
76               Assemblymember Coffey. (Public Hearing Rescheduled to September 27, 2005)
77               1      Assembly Memorandum No. AM 205-2005.
78

1   15.    SPECIAL ORDERS   None.
2
3   16.    UNFINISHED AGENDA   None.
4
5   17.    AUDIENCE PARTICIPATION
6
7   The Assembly approved to Change the Order of the Day, allowing the Reverend Doctor Greene the opportunity to
8   speak.
9
10  Reverend Doctor William Greene, President of the NAACP Anchorage Branch, thanked the Assembly for allowing him
11  to speak to a very important issue. The reorganization of the Assembly Office had involved firing an African-American
12  woman with eighteen years with the municipality, who held a senior position. He viewed it as racism and felt a grave
13  injustice had been done. The actions taken would not go away until the situation was rectified. He urged the
14  Assembly to give her job back or allow Ms. Jackson the opportunity to make the decision to return. To Ms. Jennings,
15  Reverend Doctor Greene responded that Ms. Jackson had done an outstanding job in the community, was a role
16  model for young African-Americans in the community and helped fill a minority position that was needed in the
17  community. The actions taken were wrong, improper and unfair. Chair Fairclough responded there were concerns
18  with the perception in the community, when this was simply a reorganization of the Assembly. Mr. Tesche and Mr.
19  Traini thanked Reverend Doctor Greene for testifying. Mr. Coffey thanked him for speaking and sharing his
20  perception. Reverend Doctor Greene responded the community was outraged and the Assembly needed to be held
21  accountable.
22
23  18.    ASSEMBLY COMMENTS   None.
24
25  19.    EXECUTIVE SESSIONS   None.
26
27  20.    ADJOURNMENT
28
29  Chair Coffey adjourned the Regular Assembly Meeting at 11:55 and there were no objections.
30
31
32
33
34
35
36                                  _____
37                                  ANNA FAIRCLOUGH, Assembly Chair
38
39
40
41
42                                  _____
43  ATTEST:                         DAN COFFEY, Acting Assembly Chair
44
45
46
47
48  _____
49  BARBARA GRUENSTEIN, Municipal Clerk
50  Date Minutes Approved: October 25, 2005
51  MC/BG
52
53
54  (Copies of Approved Documents and Meeting Minutes are available in the Municipal Clerk's Office, 632 West 6th Avenue, Suite 250,
55  Anchorage, Alaska, telephone (907)343-4311, or on the Municipal Web Site, www.muni.org ~Assembly)
56
57
58
59

# MUNICIPALITY OF ANCHORAGE
## ANCHORAGE ASSEMBLY

**Assembly Chambers, Z. J. Loussac Library**
**3600 Denali Street, Anchorage, Alaska**

**Minutes for Regular Meeting of September 27, 2005**

**1.     CALL TO ORDER**

The Assembly Meeting was convened by Chair Fairclough at 5:08 p.m. in the Assembly Chambers, Room 108 of the Loussac Library, 3600 Denali Street in Anchorage, Alaska.

**2.     ROLL CALL**   A Quorum was achieved with Assemblymembers present.

PRESENT:     Allan Tesche, Janice Shamberg, Debbie Ossiander, Dan Sullivan, Anna Fairclough, Dan Coffey, Chris Birch, Paul Bauer, Dick Traini and Pamela Jennings.
ABSENT:     Ken Stout, excused.

**3.     PLEDGE OF ALLEGIANCE**   Assemblymember Ossiander led the pledge.

**4.     MINUTES OF PREVIOUS MEETINGS**
         4.A     Regular Meeting – July 26, 2005

Mr. Coffey moved,                          to approve the Regular Meeting Minutes of
Ms. Ossiander seconded,                    July 26, 2005.
and this motion was passed unanimously,
with Ms. Fairclough abstaining because of an excused absence.

         4.B     Special Meeting – August 31, 2005
Mr. Coffey moved,                          to approve the Special Meeting Minutes of
Mr. Sullivan seconded,                     August 31, 2005.

Ms. Jennings stated there were many sections missing from Assembly discussion that were important.  Chair Fairclough requested she make her requests for additions to the Minutes Clerk and called for a motion to postpone.

Mr. Coffey moved,                          *to postpone* the Meeting Minutes of August 31, 2005
Mr. Tesche seconded,                       until additional Assembly discussions were added.
and this was approved without objection.

**5.     MAYOR'S REPORT**

Mayor Begich reported that the Municipal Light and Power's bond rating had recently been reviewed and had improved.  He reported on the unified comprehensive list of proposed projects from the State Department of Transportation *(DOT)* and the Administration would soon release a draft, identifying top projects.  To Mr. Coffey, Mayor Begich responded that they would deliver the list of top proposals to DOT by the end of October.

**6.     ASSEMBLY CHAIR'S REPORT**

Chair Fairclough stated there were high school government students in the audience that evening and she briefly explained to them how to follow the Agenda and how the Assembly did business.

**7.     COMMITTEE REPORTS**

Ms. Ossiander announced a School Site Selection Committee meeting on Thursday, October 29th at 10 a.m.  On Friday, the Title 21 Committee would meet at the Planning Department from 9:00 to 11:00 a.m. to finish Chapter 5.

Mr. Bauer reported on the recent Public Safety Committee worksession, where they had reviewed Mr. Traini's ordinance concerning adult-oriented establishments.  The Municipal Attorney's Office gave legal advice and the Planning Department had presented maps showing proximity of sites in the city, sharing information that assisted the Assembly with moving forward to resolving this issue.

Mr. Tesche thanked Mr. Bauer and the Public Safety Committee for their review of the adult-oriented establishment issue.  Because it had been determined there were constitutional questions concerning the proposed 1000-foot radius, he would be moving to postpone indefinitely AO 2005-116 and there would be a new ordinance introduced that evening, with Public Hearing set for October 11th, addressing the issue through regulatory means.

**8.     ADDENDUM TO AGENDA**

1  ABSENT:  Stout, excused.
2
3      11 F.   Ordinance No. AO 2005-116, an ordinance of the Anchorage Municipal Assembly amending
4              Anchorage Municipal Code Section 10.40.050, **Adult-Oriented Establishment License**, to set a
5              minimum distance between adult-oriented establishments and premises licensed as Beverage
6              Dispensaries under AS 04.11; Assemblymember Traini.
7                  1.     Assembly Memorandum No. AM 611-2005.
8
9   To Chair Fairclough, Mr. Traini responded his intention was to postpone this item indefinitely and introduce a new
10  ordinance.
11
12      Mr. Traini moved,
13      Mr. Coffey seconded,                          *to postpone indefinitely AO 2005-116,*
14
15  Mr. Traini stated that acting upon legal advice, he wanted to postpone this item indefinitely.  Mr. Coffey responded that
16  there was a conflict with this proposed zoning action, because it may prohibit this type of establishment.  Mr. Traini
17  responded that a new ordinance would be introduced.  Mr. Coffey supported Mr. Traini's effort.
18
19      and this motion was approved without objection.
20
21  AYES:    Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Bauer, Traini and Jennings.
22  NAYES:   None.
23  ABSENT:  Stout, excused.
24
25  **12.    APPEARANCE REQUESTS**  None.
26
27  **13.    CONTINUED PUBLIC HEARINGS**
28      13 A    Ordinance No. AO 2005-80, an ordinance amending Anchorage Municipal Code Section 4.60.275 to
29              increase the membership of the **Youth Advisory Commission**, Mayor's Office.
30                  1.     Assembly Memorandum No. AM 479-2005.  *(Carried over from 7-26-05 and 8-9-05;*
31                  *Continued from 8-23-05)*
32
33  Chair Fairclough read the ordinance title and opened Public Hearing
34
35  KARL WING, Chair of the Mayor's Youth Advisory Commission, requested Assembly consideration of expanding the
36  number of students on the commission from nine to fifteen members.  He stated it would benefit the youth of the
37  Municipality.  He was accompanied by members of the commission, who introduced themselves as Treasurer ZOE
38  MOTE, Secretary PATRICIA POSEY, CODY GRAHAM, Vice Chair CLAIRE CHOI, Public Relations Coordinator KELLI
39  HALLGRIMSON and GREG BOMBECK.  Others in the group included CULLEN HAYES, Commissioner, and adult
40  advisors RAESHAUN BIBBS and MICHAEL KEROSKY.  All members present supported the ordinance.
41
42  To Mr. Sullivan, Mr. Wing responded the top issues they were researching included vandalism, obesity rates and
43  gangs and he encouraged Assembly input.  Advisory Commission bracelets were handed out to Assemblymembers,
44  who were encouraged to wear them to show support for the fund raisers and activities
45
46  Mayor Begich stated that members of the Youth Intern Program and the Advisory Commission and helped create a
47  youth web page, full of high interest items for this age group.  The group had been a great help.
48
49  With no additional public testimony, Chair Fairclough closed Public Hearing and called the Question.
50
51      Mr. Coffey moved,
52      Mr. Sullivan seconded,                        *to approve AO 2005-80,*
53
54  Mr. Sullivan urged a YES-vote.
55
56      and this motion passed unanimously.
57
58  AYES:    Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Bauer, Traini and Jennings.
59  NAYES:   None.
60  ABSENT:  Stout, excused.
61
62      13.B.   Resolution No. AR 2005-193, a resolution of the Anchorage Municipal Assembly approving an
63              amendment to an alcoholic beverages conditional use in the B-3 District for a beverage dispensary
64              use per AMC 21.40.180 D.8 for **The Setter**, located on Lot 1, Fantasies Subdivision and Lots 4, 5 and
65              6, Block 26C, Fourth Addition Subdivision; site address being 1911 East 5th Avenue, generally located
66              between East 4th and East 5th Avenues, on the east side of Sitka Street (Mountain View Community
67              Council) (Case 2005-103); Planning Department.
68                  1.     Assembly Memorandum No. AM 519-2005.  *(Carried Over from 8-9-05; Continued from 8-30-*
69                  *05 Special Meeting)*
70
71  Chair Fairclough read the resolution title and opened Public Hearing
72
73  KATHLEEN PLUNKETT opposed any changes to this conditional use or any addition of any liquor license.  She
74  actively worked with the Weed and Seed Program, dealing with crime reduction and prevention.  Their strategy used
75  long-term solutions and involvement of the community, the police, neighborhood groups, parks, legislative groups and
76  others.  All strip clubs should offer the same public health safety and protection to their employees, as the alcoholic
77  clubs offered.  Mr. Coffey responded that Mr. Traini and Ms. Ossiander had introduced an ordinance that evening,
78  which dealt with those issues.

CAROL HARTMAN testified in support of the Setter. Previous public testimony had shifted to hearsay and gossip about employees and her family, when the issue was the conditional use. To Mr. Sullivan, Ms. Hartman responded there could be another entrance established on the west corner. She responded that she was not willing to give up her viewing floor, separating the bar and the dancers. Legally, the only thing that needed to separate the groups was a wall.

KATHY HARTMAN, owner of the Setter, stated she had complied with all requests and requirements. Their establishment did not cause secondary effects and had an extremely low number of police incidents. To Mr. Sullivan, Ms. Hartman responded that a separate entry was not necessary and the businesses were kept separate.

MARCO GONZALEZ supported the conditional use. He wanted to clear his name from earlier testimony of false accusations. He and the owners of the Setter were proud of their record and they all worked together to keep it clean. He urged Assemblymembers to visit the establishment and talk with the girls.

CARLOS GONZALEZ stated it was a land use issue and should not have anything to do with Fantasies. He invited Assemblymembers to visit any of their employees. They ran a straight forward, clean business. To Ms. Ossiander, Mr. Gonzalez responded that he checked IDs, for clients entering Fantasies. To Ms. Jennings, he responded the alleged rape on the premises had been reported to police from the business. To Mr. Birch, Mr. Gonzalez responded the coffee shop in the parking lot was still unhappy with their landscaping improvements.

CHRISTINE SCOLLAN testified in support of the conditional use. She said there were no major problems with their bar. She had never heard of any problems of the bar from others.

ARMANDO GONZALEZ wanted to clear his name from former testimony when he was referred to as a felon with a criminal history, which was not true. He shared history of his family owning the business. The Setter and Fantasies worked well together.

AMY LITSON testified that she was a dancer at Fantasies. To Mr. Tesche, she responded lap dances were $20 for topless and $25 for dancing nude. There was no truth to a lap dance where dancers were horizontal. Their dancers did not have sexual intimacy with customers. Ms. Lipton responded the glass wall only showed the stage.

SUMMER GONZALEZ, dancer and bartender at Fantasies and the Setter, testified in support of the conditional use.

REBECCA ROBERTS opposed the conditional use permit. She did not support any bar or strip club for under-age dancers and sexually oriented bars and motels. The clubs were unhealthy and unsafe. Combining a strip club and bar would compound the problems. She had studied this issue on a state and local level, regarding being sexually exploited and impacting youth in the community. She passed out case studies of this subject.

ASH RAVINO testified in support of the conditional use permit.

"TINY" (Alatauatuisafanva Peter Lilo-Asia), a security guard for Fantasies, spoke in favor of the land use permit. To Ms. Ossiander, he responded that he made sure alcohol did not leave the premises, along with other duties. He had not seen any traffic concerns in their parking lot. To Ms. Jennings, he responded that he was a fully-trained security guard and they had enough guards for the establishment.

JESSICA LIPTON opposed the way some of the dancers had been treated by Assemblymembers.

With no additional testimony, Chair Fairclough closed Public Hearing and called the Question.

> Mr. Coffey moved,                                        to postpone AR 2005-193 until October 11, 2005.
> Mr. Traini seconded,

Mr. Coffey stated this was a unique establishment in many ways. Postponing this issue until October 11 would allow members to reach a satisfactory conclusion on the conditional use and the non-licensed adult establishments.

Mr. Sullivan opposed postponement. The conditional use question could be decided that evening and the question of adult-entertainment establishments could be addressed in October.

Mr. Traini supported postponement. He requested additional testimony from Health and Human Services Director Beverly Wooley.

Mr. Birch opposed postponement because they had been dealing with this issue far too long. The delay would be financially affecting the businesses.

Mr. Tesche supported postponement because the ordinance introduced that evening would set new standards for business like Setters and Fantasies.

Chair Fairclough supported postponement.

Mr. Sullivan stated the business deserved a decision.

Question was called and the motion to postpone was passed 7-3.

AYES:    Tesche, Shamberg, Ossiander, Fairclough, Coffey, Traini and Jennings.
NAYES:   Sullivan, Birch and Bauer.
ABSENT:  Stout, excused.

14 S.   **FIRST PUBLIC HEARING:**  Ordinance No. AO 2005-126, an ordinance amending Anchorage Municipal Code Title 12 to enact a **sales and use tax** on the sale of goods within the Municipality for the exclusive purpose of reducing property taxes proportionately throughout the Municipality, with certain exemptions, with a cap and with reimbursement for collection, all within the tax cap, subject to a sunset provision, and submitting the question of whether or not to approve a sales tax to the qualified voters of the Municipality at its next Regular Election on April 4, 2006 with re-approval required at a subsequent Regular Election as established by ordinance; Assemblymember Coffey. *(Carried Over to October 11, 2005)*

14 T.   **FIRST PUBLIC HEARING:**  Ordinance No. AO 2005-51, an ordinance of the Anchorage Municipal Assembly to levy a **three (3) percent sales tax** on the sale of goods with certain exemptions, with a cap and with a reimbursement for collection, all within the tax cap and for the exclusive purpose of reducing property taxes proportionately throughout the Municipality of Anchorage, subject to a sunset provision and submitting the question of whether or not to approve said sales tax to the qualified voters of the Municipality at its next Regular Election on April 4, 2006 with re-approval required at the April 7, 2009 Regular Election; Assemblymember Coffey. *(Carried Over to October 11, 2005)*
1.   Assembly Memorandum No. AM 205-2005.

14 U.   Ordinance No. AO 2005-121, an ordinance of the Anchorage Municipal Assembly amending the *Utility Corridor Plan* to add a new electrical transmission line corridor alignment (Planning and Zoning Commission Case 2005-105); Planning Department. *(Public Hearing set for 10-25-05)*
1.   Assembly Memorandum No. AM 655-2005.

Chair Fairclough called the Question.

Mr. Coffey moved,                                   *to Continue AO 2005-121 with Public Hearing set for*
Mr. Traini seconded,                                *October 25, 2005.*
and this passed without objections.

14 V.   Ordinance No. AO 2005-122, an ordinance adopting the **Anchorage Bowl Park, Natural Resource, and Recreation Facility Plan** as an element of the Comprehensive Plan and amending Section 21.05.030 of the Anchorage Municipal Code (Planning and Zoning Commission Case 2004-021); Planning Department.
1.   Assembly Memorandum No. AM 656-2005. *(Carried Over to October 11, 2005)*

**15.   SPECIAL ORDERS**   None.

**16.   UNFINISHED AGENDA**   None.

**17.   AUDIENCE PARTICIPATION**

Chair Fairclough acknowledged a group of Boy Scouts in the audience.  The group introduced themselves as Troop 266 and included First Class Jess Wilson, First Class Jared Dee, First Class Taylor Cosper, Second Class Trevor VanBlankenstein and Second Class Eric VanBlankenstein.

**18.   ASSEMBLY COMMENTS**

**19.   EXECUTIVE SESSIONS**   None.

**20.   ADJOURNMENT**

Chair Fairclough called for a motion to adjourn the meeting.

Mr. Coffey moved,                                   *to adjourn the Regular Assembly Meeting.*
Ms. Jennings seconded,
and this motion was passed,

AYES:     Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer, Traini and Jennings.
NAYES:    None.

The Regular Assembly Meeting was adjourned at 11:55 p.m.


_Anna J. Fairclough_
ANNA FAIRCLOUGH, Assembly Chair

ATTEST:


_Barbara E. Gruenstein_
BARBARA GRUENSTEIN, Municipal Clerk
Date Minutes Approved. : November 8, 2005
MC/BG

*(Copies of Approved Documents and Meeting Minutes are available in the Municipal Clerk's Office, 632 West 6th Avenue, Suite 250, Anchorage, Alaska, (907)343-4311, or on the Municipal Web Site, www.muni.org ~Assembly)*

# MUNICIPALITY OF ANCHORAGE

## ANCHORAGE ASSEMBLY

Assembly Chambers, Z. J. Loussac Library
3600 Denali Street, Anchorage, Alaska

**Minutes for Regular Meeting of October 11, 2005**

**1.    CALL TO ORDER**

The Assembly Meeting was convened by Chair Fairclough at 5:05 p.m. in the Assembly Chambers, Room 108 of the Loussac Library, 3600 Denali Street in Anchorage, Alaska.

**2.    ROLL CALL**  A Quorum was achieved with Assemblymembers present.

PRESENT.    Allan Tesche, Janice Shamberg, Debbie Ossiander, Dan Sullivan, Anna Fairclough, Dan Coffey, Chris Birch, Ken Stout, Paul Bauer, Dick Traini and Pamela Jennings.

ABSENT:    None.

**3.    PLEDGE OF ALLEGIANCE**  Assemblymember Tesche led the pledge.

**4.    MINUTES OF PREVIOUS MEETINGS**

4.A    Special Meeting – August 31, 2005.

Mr. Coffey moved,
Mr. Stout seconded,                     to approve the Special Meeting Minutes of
                                        August 31, 2005,

Ms. Jennings moved,
Mr. Coffey seconded,                    to amend the Minutes on Page 1,
and this was approved without objection.   *by deleting the word 'were,'*

and the main motion, as amended, was passed unanimously,
with Ossiander abstaining, due to an excused absence on that date.

**5.    MAYOR'S REPORT**

Mayor Begich recognized all new board and commission appointments present that evening.  New appointments and reappointments included, Colin Dey, Building Board of Examiner and Appeals; Michele Miller and Pamela Cravez, Arts Advisory, Mark Mew, Public Safety; Eric Gurley, Transportation; Mike Gutierrez and Rosalie Sandoval, Equal Rights, Robert Scher and Tom Krzewinski, Geotechnical Advisory; David Barton, Americans with Disabilities Act Advisory; Dawnia Clements, Joan Notti and Carolyn Gardner, Seniors Citizens Advisory; Karen Turner, Board of Ethics; James Gurke, Jim Nordlund and Rod McCoy, Housing and Neighborhood Development; Bill Parker, Historic Preservation Board; Jim Fero and Robert Ferrell, Cemetery Advisory; Lori Pickett and Stacie Papineau, Women's Advisory; Eric McCallum, Parks and Recreation; Art Isham, Planning and Zoning; and Dan Dickinson, Budget Advisory.

Chair Fairclough and Mayor Begich thanked all the appointees for volunteering their time and service  Mayor Begich commended all these professionals for their advice and recommendations on important issues to the city.

**6.    ASSEMBLY CHAIR'S REPORT**  None.

**7.    COMMITTEE REPORTS**

Mr. Sullivan reported that he and Mr. Coffey met with Budget Director Janet Mitson to discuss the upcoming budget. They would have all their requested information by the next scheduled budget worksession.

Mr. Bauer reported on the recent Public Safety Committee Meeting, where they discussed the concerns of methamphetamines use.  There were currently 20-30 operating 'meth' labs in the city and the ordinance would help to control the sale of ingredients used.  The Anchorage Police Department fully supported this effort.

Ms. Ossiander reported the Title 21 Committee would meet on Friday, from 10:00 to 12:00 in the Assembly Conference Room to discuss design standards in Chapter 7 of Title 21.  It was open to the public.  Meeting Minutes were posted on the Planning Department website.

Mr. Birch reported that he and Ms. Ossiander had participated with the Audit Committee meeting on September 29th  They had reviewed the background study of the auditing company and determined that KPMG was strong and capable and KPMG would continue to provide municipal auditing services.

**8.    ADDENDUM TO ADDENDUM**

Chair Fairclough called for a motion and read the Addendum items.  She called for additional items and AO 2005-151, AIM 78-2005 and AO 2005-150 were added  She assigned to these items Agenda Numbers 9.F.18, 9.F 11.B and

1 Chair Fairclough read the ordinance title and stated it was the Assembly's intention to continue this issue to November
2 1, 2005. She opened Public Hearing. With no one to testify, she called the Question.
3
4 Mr. Coffey moved,                 *to Continue AO 2005-122 to November 1, 2005,*
5 Ms. Ossiander seconded,
6 and this was approved without objection, 11-0.
7
8 13.C   Ordinance No. AO 2005-115, an ordinance adopting the **Anchorage Long-Range Transportation**
9        **Plan ~ 2025**, and concurrent amendments to the Official Streets and Highways Plan (OS&HP), as
10        revised elements of *Anchorage 2020 – The Anchorage Bowl Comprehensive Plan* and amending
11        Anchorage Municipal Code Chapter 21.05; Traffic Department.
12        1.    Assembly Memorandum No. AM 809-2005. *(Carried Over from 9-27-05; Continued to*
13        *10-25-05)*
14
15 Chair Fairclough read the ordinance title and opened Public Hearing. With no one to testify, she closed Public Hearing
16 and called the Question.
17
18 Mr. Coffey moved,                *to Continue AO 2005-115 to October 25, 2005.*
19 Ms. Ossiander seconded,
20
21 Mr. Coffey stated the Planning and Zoning Commission had reviewed this issue and the Assembly was involved with a
22 series of worksessions and reviews and more time was needed to make additional changes. There had been a
23 request for another worksession on this matter before the 25th.
24
25 To Mr. Traini, Chair Fairclough responded that Assemblymembers should send their proposed amendments to Deputy
26 Municipal Manager Michael Abbott. Chair Fairclough requested that copies of all amendments also be sent to herself
27 and to AMATS representatives, Ms. Ossiander and Mr. Birch.
28
29 Ms. Ossiander stated that she and Ms. Jennings had submitted a series of questions to Mr. Wilber and she requested
30 his responses also be sent to Assemblymembers.
31
32 Question was put on the main motion
33
34 and the motion was passed unanimously, 11-0.
35
36 13.D.   Ordinance No. AO 2005-126, an ordinance amending Anchorage Municipal Code Title 12 to enact a
37        **sales and use tax** on the sale of goods within the Municipality for the exclusive purpose of reducing
38        property taxes proportionately throughout the Municipality, with certain exemptions, with a cap and
39        with reimbursement for collection, all within the tax cap, subject to a sunset provision, and submitting
40        the question of whether or not to approve a sales tax to the qualified voters of the Municipality at its
41        next Regular Election on April 4, 2006 with re-approval required at a subsequent Regular Election as
42        established by ordinance; Assemblymember Coffey. *(Carried Over from 9-27-05)*
43        1.    Ordinance No. AO 2005-126(S), a an ordinance amending Anchorage Municipal Code Title 12
44           to enact a sales and use tax on the sale of goods within the Municipality for the exclusive
45           purpose of reducing property taxes proportionately throughout the Municipality, with certain
46           exemptions, with a cap and with reimbursement for collection, all within the tax cap, subject to
47           a sunset provision, and submitting the question of whether or not to approve a sales tax to the
48           qualified voters of the Municipality at its next Regular Election on April 4, 2006 with re-
49           approval required at a subsequent Regular Election as established by ordinance;
50           Assemblymember Coffey. **(Laid on the Table)** *(Continued to 10-18-05)*
51
52 Mr. Coffey moved to combine Public Hearing on 13.D and 13.E, concerning sales tax. Ms. Jennings seconded and
53 there were no objections. Chair Fairclough opened Public Hearing. There was no one to testify and she stated AO
54 2005-123 would be taken up again on October 18, 2005.
55
56 13.E.   Ordinance No. AO 2005-51, an ordinance of the Anchorage Municipal Assembly to levy a **three (3)**
57        **percent sales tax** on the sale of goods with certain exemptions, with a cap and with a reimbursement
58        for collection, all within the tax cap and for the exclusive purpose of reducing property taxes
59        proportionately throughout the Municipality of Anchorage, subject to a sunset provision and submitting
60        the question of whether or not to approve said sales tax to the qualified voters of the Municipality at its
61        next Regular Election on April 4, 2006 with re-approval required at the April 7, 2009 Regular Election;
62        Assemblymember Coffey. *(Carried Over from 9-27-05)* **(Postponed Indefinitely)**
63        1.    Assembly Memorandum No. AM 205-2005
64
65 *(Clerk's Note: See details of Combined Public Hearing in Agenda item 13.D)*
66
67 Chair Fairclough closed Public Hearing on AO 2005-51 and put the Question.
68
69 Mr. Coffey moved,                *to postpone indefinitely AO 2005-51.*
70 Ms. Jennings seconded,
71
72 Mr. Coffey stated AO 2005-126 was an improved document that would be carried forward.
73
74 and this motion was unanimously approved, 11-0.
75
76 **14.**   **NEW PUBLIC HEARINGS**
77 14.A   Ordinance No. AO 2005-139, an ordinance amending Anchorage Municipal Code Section 10.40.050,
78        regarding the premises and licensing of **Adult-Oriented Establishments**; Assembly Chair Fairclough
79        & Assembly Vice-Chair Coffey and Assemblymembers Traini, Ossiander and Tesche.

Chair Fairclough read the ordinance title and opened Public Hearing.

KATHY HARTMAN, owner of Fantasies, cited State House Bill 430, which allowed establishments to employ 18 to 20 year-olds to work on the premises, as long as they did not sell, serve, dispense or deliver alcohol beverages. She opposed the ordinance.

MARCO GONZALEZ opposed the ordinance and thought there was an organized movement to blackmail their business. There were other things in the community that needed Assembly attention.

LEANNE CHRISTENSON, former dancer and current limousine driver for the Setter, testified in support of the business. To Mr. Birch, she responded the Setter had the same standards as other adult-oriented establishments.

CAROL HARTMAN opposed the ordinance, which had gone beyond the issue of building construction. It was a personal attack on their business. Ms. Ossiander stated it was not the intent of Assemblymembers or Planning and Zoning to harass the owners or employees, but rather to allow the same standards for under-aged dancers as were already imposed in over-21 clubs. The language had been crafted by the Municipal Attorney, which was similar to the language used by the Alcoholic Beverage Control Board. Ms. Hartman responded the reputation of the business had been ruined.

"TINY" (Alatauatuisafanva Peter Lilo-Asia) testified that this issue was supposed to be a land use issue, but the Assembly and the public were addressing sexual conduct, under-aged dancers and the glass separating the two establishments. To Mr. Coffey, 'Tiny' responded he did not understand the standards of dancers, as addressed in the new ordinance.

CORINTHIAN WILEY, a regular customer at Fantasies, testified the establishment had been abused. There were so many lies and so much confusion with this issue and they had suffered. He testified to their credibility.

KIM KINGSFORD testified that Section J applied specifically to Fantasies, addressing the viewing wall and floor at their business. If they removed this clause, she would support the ordinance, allowing the women additional protection. To Mr. Coffey, she thought it was a taking away their constitutional rights.

KATHLEEN PLUNKETT supported the ordinance.

ARMANDO GONZALEZ, manager at Fantasies, agreed with Ms. Kingsford. The ordinance singled out Fantasies.

With no additional public testimony, Chair Fairclough closed Public Hearing and called the Question.

Mr. Traini moved,
Mr. Tesche seconded.                        to approve AO 2005-139,

Additional persons in the audience indicated they wanted to speak to the ordinance and Chair Fairclough called for a motion to reopen Public Hearing. Mr. Coffey so moved, seconded by Traini and there were no objections. The Chair reopened Public Hearing.

CARLOS GONZALEZ stated that his establishment had been abused and had been discriminated against. They had followed a legal and fair process to expand their business and put in the viewing floor. If the ordinance was passed as it was, there would be a lawsuit. To Mr. Coffey, Mr. Gonzalez responded that he wanted to have the doors and windows opened in the summer and he wanted the viewing floor.

AMY LISTON approved of women's rights and protection. She thought their business was being pin-pointed.

ROBERT PEARSON, a regular patron of Fantasies, approved of the doors and windows being allowed open in the summer. He thought patrons should be able to move back and forth between businesses.

ELI DALTON did not see a problem with the viewing wall. Moving the bar upstairs would solve the problem.

CARL WELSH supported Setters and Fantasies. They ran a very strict and responsible business.

SUMMER GONZALEZ testified that Setters and Fantasies had been side-by-side for many years and only when they were expanding was there a problem with the viewing wall.

STEVE KLINE supported the proposed amendments and thought they should be allowed to prop the doors and windows open.

Chair Fairclough closed Public Hearing. A motion was on the floor by Mr. Traini, seconded by Mr. Tesche.

Mr. Coffey requested time to prepare amendments. Ms. Jennings moved to Change the Order of the Day to take up 14.B and there were no objections. Upon completion of 14.B, D, F, G, H and 11.D, the Chair returned the body to this item. Mr. Coffey indicated the amendments were completed and had been reviewed by the Municipal Attorney.

Mr. Coffey moved,
Mr. Birch seconded.              to amend AO 2005-139 on Page 1, Line 26 *by adding a new*
                                *Subsection to read:* "e. A separation of a minimum of four
                                (4) feet shall be maintained between entertainers, dancers
                                and/or strippers and patrons."

To Mr. Coffey, Ms. Shamberg responded that she proposed this amendment because lap dances were troubling to her constituents. She responded this law was in effect in other cities in the nation. Mr. Coffey stated it may be problematic to address additional issues, when the intent had been to bring clubs into compliance with Title 4.

To Mr. Tesche, Municipal Attorney Fred Boness responded a four-foot separation requirement would stand up in court. APD Chief Walt Monegan responded that, while officers did periodic bar-checks, enforcement would rely upon voluntary compliance   Mr. Tesche stated that he would support the Shamberg Amendment.

Mr. Sullivan stated they were now exceeding their original intent, and without a review or understanding of the standards for this new type of requirement, he hesitated to support an arbitrary number.

Mr. Traini stated that Seattle, Washington had recently passed a similar ordinance, with a four-foot regulation.

To Ms. Ossiander, Mr. Boness responded that under Municipal Code, this amendment would not affect over-21 strip clubs associated with bars and would only apply to strip clubs with no liquor licenses, which catered to 18-21 year-olds.  Mr. Coffey responded that he was concerned that different groups of adults would be treated differently, and was unsure of those consequences.

Ms. Shamberg stated her intent was to protect the young women.

and this was approved, 7-4

AYES:     Tesche, Shamberg, Ossiander, Sullivan, Stout, Traini and Jennings.
NAYES:    Fairclough, Coffey, Birch and Bauer.

Mr. Coffey moved,                          to amend AO 2005-139 on Page 2, at the end of Line 9 *by*
Mr. Birch seconded,                        *adding* to read "...establishment by any person ", where the
                                           licensee knew or reasonably should have known,"

Mr. Coffey stated this related to the section in the ordinance dealing with alcohol on premises   This would help protect owners from patrons sneaking alcoholic beverages into the business.

Mr. Sullivan responded this did not make it clear, with the language 'reasonably should have known.'

To Ms Jennings, Police Chief Monegan responded that enforcement would be reliant upon complaints, voluntary compliance and occasional bar-checks.

and this was passed, 7-4.

AYES:     Shamberg, Fairclough, Coffey, Birch, Stout, Traini and Jennings.
NAYES:    Tesche, Ossiander, Sullivan and Bauer.

Mr. Coffey moved,                          to amend AO 2005-139 on Page 3, Lines 18-21 *by*
Mr. Bauer seconded,                        *changing* to read  "....of the premises form public view.
and this was passed unanimously, 11-0.     [No exterior door or window shall be propped or kept open at
                                           any time during the hours of operation and e] Exterior
                                           windows shall be covered with opaque coverings at all times

Mr. Coffey moved on behalf of Mr. Traini,  to amend AO 2005-139 on Page 3 *by adding* a new Section
Ms. Jennings seconded,                     to read  "Convicted felons shall not be employed at any
and this was later amended,                adult-oriented establishment."

To Mr. Coffey, Mr. Traini responded that his amendment was self-explanatory.

Mr. Sullivan stated that convicted felons, who had served their time and had paid their debt, needed an opportunity to be employed in society.  The crime may have happened 30 years ago and those folks may have become long-standing, good citizens for many years.  The amendment overreached its intent.

To Mr. Traini, Mr. Tesche responded there were many crimes that were considered felonies, the most serious included rapes, murders, arson and certain theft offences   Mr. Traini stated if the felony had not been removed from their record, they had no business being in a facility like this one.  He urged a YES-vote.

Mr. Tesche stated that consideration was needed for protection of the pubic interest, by keeping felons out of sexually-charged business, fueled by alcohol.  He would support the amendment

Mr. Coffey stated it was not right to continue a prohibition, when a rehabilitated felon wanted to become functional in society again.  Mr. Tesche proposed to amend the Traini Amendment  which Mr Traini accepted as a friendly amendment.

Mr. Coffey moved,                          to amend the Traini Amendment, *by adding* to read:
Mr. Birch seconded,                        "**Persons convicted of a felony within the past five years**"
and this was later amended,                [Convicted felons] shall not be employed at any adult-
and again amended,                         oriented establishment".**"[-]** [**provided that the conviction
                                           was greater than five years ago.**"]

Mr. Sullivan stated it was not appropriate establishing time frames by which felons could work at establishments. There were felons for accounting fraud or other white-collar crimes that had nothing to do with working with an establishment of this nature.  It would be better to address this at a later date with amendments that specify what felony crimes.  Amendments were being created on the fly and it was not looking very pretty.

Mr. Tesche proposed new language, which specified the definition of a felony, as based on State Law.

1  Mr. Bauer requested input from the Municipal Attorney or from the Police Chief. Police Chief Monegan responded the
2  State Alcohol Beverage and Control regulations stated the board could deny a license if there was a felony history for
3  ten years immediately preceding the application  Mr. Bauer stated there were also similar, specific requirements listed
4  for airport security, where he worked
5

6  Mr. Sullivan stated the Police Chief had given the example of requirements for person applying for the liquor license,
7  but not for an employee at the establishment  He urged a NO-vote  He recommended those interested in pursuing
8  this issue to do a little more research and the document could be amended at a later date
9

10  Mr. Traini stated this was not a hard situation  He saw no need for a convicted felon to be exposed to the youth of
11  Anchorage  He would support the amendment  Mr. Birch, the second, concurred
12

13  Question was called on the amendment to the Traini Amendment
14

15        and the motion was passed, 7-4.
16

17  AYES       Tesche, Shamberg, Fairclough, Birch, Stout, Traini and Jennings
18  NAYES      Ossiander, Sullivan, Coffey and Bauer.
19

20  Mr. Coffey stated the amended Traini Amendment was on the floor. It would apply to all adult-oriented businesses,
21  and he urged caution in considering this issue.  He urged a NO-vote
22

23  Vice Chair Coffey assumed the Chair, allowing Ms. Fairclough to address this issue.  Because she ran a rape-crisis
24  center, her involvement with the issue created a possible conflict of interest, if it were specific to sex offenders.  She
25  proposed to abstain from participation on this issue. Mr. Sullivan responded that the amendment was not specific to
26  her job duties or any other responsibilities in her professional or private life.  He put the Question.
27

28        Mr. Sullivan moved,
29        Mr. Bauer seconded,                    that Assemblymember Fairclough *does not* have a conflict of
30        and this was approved without objection.     interest with this amendment,
31

32  Chair Coffey ruled there was no conflict and ordered Ms. Fairclough to participate.  He called for additional discussion
33

34  Mr. Bauer urged a NO-vote because the language was not specific when describing felons.
35

36  Mr. Birch urged a NO-vote.
37

38  Mr. Sullivan urged a NO-vote.
39

40  Mr. Tesche urged a YES-vote, to send a clear statement that felons do not belong in adult establishments
41

42  Question was called on the amended amendment concerning felons.
43

44        and this motion, as amended, failed, 3-8.
45

46  AYES:      Tesche, Shamberg and Traini.
47  NAYES:     Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer and Jennings
48

49  Chair Coffey explained the next amendment, would change subsection I 1 g. to include three criteria under which a
50  license could be suspended or revoked
51

52        Mr. Coffey moved,
53        Mr. Sullivan seconded,               to amend AO 2005-139 on Page 2, Line 14, *by adding a* "new
54                                             subsection g," Standards for issuance of license  *with*
55                                             subsections 1, 2 and 3, *and renumbering the remaining,*
56  To Chair Fairclough, Health and Human Services Director Beverly Wooley explained the intent was to include defined
57  restrictions to adult-oriented establishment by any person, with specific offenses.
58

59  Mr. Sullivan and Mr. Coffey urged YES-votes.
60

61        and this motion was passed, 11-0.
62

63        Mr. Coffey moved,
64        Ms. Shamberg seconded,              to amend AO 2005-139 on Page 2, Line 5, Section 6, *by*
65        and this was passed unanimously.    *adding:* "4. The Municipal Clerk may deny renewal of license
66                                            or permit for any of the reasons identified in section
67                                            10 40.050." *(revocation of license)*
68

69        Mr. Traini moved,
70        Ms. Shamberg seconded,             to amend AO 2005-139 on Page 3, Line 16, following '...from
71        and this was amended,              outside the licensed premises' *by adding* [;] ", or be
                                            broadcast to any site outside the licensed premises."
72  To Chair Fairclough, Mr. Traini responded that this would restrict establishments from broadcasting outside the
73  licensed premises.  Mayor Begich responded this would include web cam, broadcasting activities to outside the
74  building.  Ms Jennings responded that this was very forward thinking and she supported.  Mr. Coffey supported and
75  offered clarified language, which was accepted by the second.
76

77  Mr. Sullivan stated there may be a conflict with FCC regulations concerning freedom of broadcast.  Municipal Attorney
78  Fred Boness responded the FCC did not govern closed-circuit broadcasts and the amendment dealt with requirements

1  with respect to establishments licensed by the Municipality.  Mr. Sullivan stated this was another example of last
2  minute changes, with no public testimony and lacked legal research.
3
4  Ms. Ossiander stated that cell phones with a camera, taking pictures on the premises would be restricted and needed
5  to be addressed.  Mr. Boness responded this amendment referred to the establishment but not a patron.
6
7          and this was approved, 9-2.
8
9  AYES:      Tesche, Shamberg, Sullivan, Fairclough, Coffey, Stout, Bauer, Traini and Jennings.
10  NAYES:    Ossiander and Birch.
11
12  Chair Fairclough put the Question on the main motion, as amended.
13
14          and the main motion, as amended was passed, 11-0.
15
16  AYES:      Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Stout, Bauer, Traini and Jennings.
17  NAYES:    None.
18
19  Mr. Sullivan moved the Change the Order of the Day to take up 11 D, seconded by Mr. Coffey and there were no
20  objections.
21
22          14.B.    Resolution No. AR 2005-251, a resolution of the Municipality of Anchorage appropriating $602,998 as
23                   a grant from the U.S. Department of Health and Human Services to the Federal Categorical Grants
24                   Fund (241), Department of Health and Human Services to fund Family Planning Services.
25                   1.       Assembly Memorandum No. AM 684-2005.
26
27  Chair Fairclough read the resolution title and opened Public Hearing.  With no one to testify, she closed Public Hearing
28  and called the Question.
29
30          Mr. Coffey moved,
31          Ms. Jennings seconded,                        to approve AR 2005-251,
32          and this was passed without objection.
33
34  AYES:      Tesche, Shamberg, Ossiander, Fairclough, Coffey, Birch, Stout, Bauer and Jennings.
35  NAYES:    None.
36  (Clerk's Note: Sullivan and Traini were temporarily out of Chambers at the time of the vote.)
37
38  Mr. Coffey moved to Change the Order of the Day to take up 14.D, seconded by Ms. Jennings and there were no
39  objections.
40
41          14.C.    Ordinance No. AO 2005-135, an ordinance amending Anchorage Municipal Code Chapters 3.30 and
42                   3.70 regarding represented and non-represented employee eligibility for service recognition pay,
43                   Employee Relations Department.
44                   1.       Assembly Memorandum No. AM 691-2005. (Postponed to 11-01-05)
45
46  Chair Fairclough read this ordinance title and opened Public Hearing.
47
48  BARBARA HUFF, Director of Governmental and Legislative Affairs for Teamsters Local 959, opposed.  It would
49  eliminate the right to bargain.  This was not good business practice and she urged the Assembly to oppose.
50
51  EVERETT ROBBINS, President of the Anchorage Police Department Employees Association, testified that they did
52  not have service recognition, and all items for employees were negotiated during the collective agreement, with
53  compromises being made.
54
55  LARRY BELL, representative of the Electrical Worker's Union, opposed the ordinance.  Upon his request, 50-60
56  people from the audience raised their hands to show they opposed.  He strongly urged the Assembly to oppose.
57
58  HELENE ANTELL opposed the ordinance and thought it was unnecessary.  The Mayor did not need this function
59  because the issue could be negotiated at the bargaining table.  To Mr. Tesche, Ms. Antell responded the ordinance
60  may lead to practices which were unconstitutional.  On-going and future negotiations could be affected by this
61  ordinance, which would be considered an unfair labor practice and unlawful.  She agreed that this was a policy
62  change, concerning an issue that could be legislated or negotiated.  To Mr. Traini, Ms. Antell thanked him for his
63  support.  Mayor Begich referred to the AMEA contract and described collectively negotiating to reach an agreement.
64  Ms. Antell responded that AMEA had not agreed to changes in the contract language.  She urged that the contract
65  remain the same, and for any negotiations to occur when the contact was up for renewal in 2007.  Mayor Begich
66  responded the language was clear, creating the option to bring this forward.
67
68  JOYCE MUCHA opposed.  Attempts to take away service recognition had failed in the past, and this one should fail
69  also.  It was unfair and the ordinance was not equitable.
70
71  RICHARD DARDEN, with the Carpenters Union, opposed the ordinance because it was unfair and unjust.
72
73  ELAINE BRIGGS, a 24-year municipal employee represented by AMEA, opposed.  She urged the Assembly to
74  oppose.
75
76  KEN LANGFORD, Municipal Light and Power Supervisor, non-represented, opposed the ordinance.
77
78  TIM CHRISTY testified the rules should not be changed in the middle of a contract.  It led to a lack of trust.
79

Mr Tesche moved,    to postpone indefinitely AO 2005-127.
Mr Coffey seconded,
and this was passed. 10-1.

AYES.    Tesche, Shamberg, Ossiander, Sullivan, Fairclough, Coffey, Birch, Bauer, Traini and Jennings
NAYES.    Stout.

**15.    SPECIAL ORDERS** None.

**16.    UNFINISHED AGENDA** None.

**17.    AUDIENCE PARTICIPATION** None.

**18.    ASSEMBLY COMMENTS**

Chair Fairclough stated that parliamentary procedures, according to *Robert's Rules of Order*, involved decorum of issues heard before the Assembly  Discussion needed to pertain to issues, rather than persons and personalities. Over the process of the recent Assembly Department reorganization, that had not been followed. She questioned if the Assembly wanted to take up formal disciplinary actions in the future, of Assemblymembers who did not follow those rules. She requested that Assemblymembers respond to her on the matter.

**19.    EXECUTIVE SESSIONS** None.

**20.    ADJOURNMENT**

Chair Fairclough called for a motion to adjourn the meeting.

Mr. Coffey moved,    to adjourn the Regular Assembly Meeting.
Mr. Stout seconded,
and this motion was unanimously passed.

The Regular Assembly Meeting was adjourned at 11:13 p.m.

_____
ANNA FAIRCLOUGH, Assembly Chair

ATTEST:

_____
BARBARA GRUENSTEIN, Municipal Clerk
Date Minutes Approved: <u>November 8, 2005</u>.
MC/BG

*(Copies of Approved Documents and Meeting Minutes are available in the Municipal Clerk's Office, 632 West 6th Avenue, Suite 250, Anchorage, Alaska, (907)343-4311, or on the Municipal Web Site, www.muni.org ~Assembly)*