KENNETH JACOBUS
Attorney for Plaintiff
310 K Street, Suite 200
Anchorage, AK 99501-2064
(907) 277-3333 – Phone
(907) 264-6666 - Fax
kpjlaw@yahoo.com


ALLAN S. RUBIN*
Co-Counsel for Plaintiff
DRAPER & RUBIN, P.L.C.
29800 Telegraph Road
Southfield, Michigan 48034
(248) 358-9400 – Phone
(248) 358-9729 – Fax
allan@draper-rubin.com
*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

SANDS NORTH, INC., d/b/a FANTASIES
ON 5th AVENUE, an Alaska Corporation,

              Plaintiff,

vs.

THE CITY OF ANCHORAGE, ALASKA,
an Alaska Municipal Corporation,

              DEFENDANT.

Case No: 3:05-cv-256

HON. Timothy M. Burgess

## PLAINTIFF'S RESPONSE TO THE DEFENDANT'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.      INTRODUCTION        ................................................................................1

II.     FACTUAL BACKGROUND .....................................................................2

III.    ARGUMENT        ...................................................................................11

        A.    STANDARD OF REVIEW ................................................................11

        B.    PRIOR RESTRAINT  ......................................................................13

        C.    REASONABLE OPPORTUNITY TO OPEN AND OPERATE .........................22

        D.    LACK OF EVIDENCE TO SUPPORT ADOPTION OF THE ORDINANCE....24

        E.    TAKINGS CLAIMS  ......................................................................26

        F.    THE BALANCE OF PLAINTIFF'S CLAIMS ....................................................27

IV.     CONCLUSION        ...................................................................................27

V.      RELIEF REQUESTED    .....................................................................28

## Cases

*Admiral Theater v. City of Chicago*, 832 F.Supp. 1195 (N.D. Ill. 1993) ..................................... 21

*Alaska Civ. Liberties Union v. State*, 122 P.3d 781 (2005) ......................................................... 23

*Alaska Inter-Tribal Council v. State*, 110 P.3d 947 (Alaska 2005) .............................................. 23

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980) ......................................................................... 12

*Alexander v. City of St. Paul,* 227 N.W.2d 370 (Minn. 1975) ...................................................... 18

*Alexander v. United States*, 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) ................ 19

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) .................. 19

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)....... 20

*Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) ....................................... 12

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)..................... 16

*City of Colorado Springs v. 2354, Inc.,* 89 P.2d 272 (Colo. 1995)............................................... 18

*City of Erie v. Paps A.M.*, 529 U.S. 277 (2000)........................................................................... 11

*City of Littleton v. ZJ Gifts D-4 LLC*, 124 S.Ct. 2219 (2004)...................................................... 14

*City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002)....................................................... 10

*City of Paducah v. Investment Entertainment,* 791 F.2d 463 (6th Cir. 1986) ........... 13, 16, 17, 18

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)................................................................................................................................. 22

*Conley v. Gibson*, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ........................................... 13

*Cornflower Entertainment, Inc. v. Salt Lake City Corp.,* 485 F. Supp. 777 (D. Utah 1980).. 16, 18

*Ellwest Stereo Theatre, Inc. v. Boner*, 718 F. Supp. 1553 (M.D. Tenn. 1989)............................. 15

*Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir. 1980)........................ 17

*Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834-45 (9th Cir. 1980).................................... 13

*Fernandez v. Limmer,* 663 F.2d 616, 630 (5th Cir. 1981) ........................................................... 16

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987)................................................................................. 26

*Forsythe County v. Nationalists Movement*, 505 U.S. 123, 133 n. 10, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) ........................................................................................................ 15

*Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).................... 10, 14

*FW/PBS v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).......... 10, 13, 14

*Gayety Theatres, Inc. v. Miami,* 719 F.2d 1550 (11th Cir. 1983)................................................. 17

*Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980)....................................................... 15, 18

*Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389 (1994) ................................................................ 23

*Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971 (9th Cir. 1999)...................................... 13

*Hess v. Indiana*, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973).......................................... 20

*Hishon v. King & Spalding*, 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) ................... 13

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed. 1512 (1959)....................................................................................................................... 20

*Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir. 1999)........................... 14

*Lawson v. Helmer*, 77 P.3d 724 (Alaska 2003) ........................................................................... 23

*Leatherman v. Tarrant County*, 507 U.S. 163; 113 S. Ct. 1160; 122 L. Ed. 2d 517 (1993) ........ 12

*Madsen v. Women's Health Center,* 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994).... 16, ................................................................................................................................... 17, 21

*Malabed v. North Slope Borough*, 70 P.3d 416 (Alaska 2003) ................................................... 23

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005)........................................................... 22

*Mickens v. Kodiak*, 640 P. 2d 818 (1982) .................................................................................... 24, 26

*Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F.Supp. 2d 659 (N.D. Tex. 2001) .. 21

*Natco v. Ratner*, 463 F. Supp. 1124 (S.D.N.Y. 1979) ................................................................. 16

*Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed.2d 1357 (1931) ............................. 15, 16

*Newman v. Universal Pictures*, 813 F.2d 1519 (9th Cir. 1987)................................................... 13

*Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884 (6th Cir. 2000) ..................... 13, 14, 16, 17, 18

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) .............................................................. 13

*Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 692 (2001) .................. 26

*Penn Central Trans. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631
    (1978)................................................................................................................................... 26

*Pentco, Inc. v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978) ...................................................... 15

*Perrine v. Municipal Court*, 488 P.2d 648 (Cal. 1971) ............................................................... 18

*R.A.V. v. St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ........................... 13, 24

*Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) ........ passim

*Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d
    93 (1989)............................................................................................................................... 25

*Schafer v. Vest*, 680 P.2d 1169 (Alaska 1984)........................................................................... 23

*Schenck v. Pro-Choice Network*, 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997)............... 17

*Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000) ...................................................... 18

*Seattle v. Bittner*, 505 P.2d 126 (Wash. 1973)........................................................................... 18

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) ........ 14

*Simon & Schuster v. Crime Victims Board*, 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991)
    ............................................................................................................................................... 17

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) 14

*Stanek v. Kenai Peninsula Borough*, 81 P.3d 268 (Alaska 2003)................................................. 24

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506; 122 S. Ct. 992; 152 L. Ed. 2d 1 (2002)................. 12

*United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)......................... 25

*Vance v. Universal Amusement Co.*, 445 U.S. 308, 316, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980)
    ................................................................................................................... 16, 20, 21, 22

*Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989) .......... 22

*Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) ................................... 25

**Rules**

Fed. R. Civ. Pro. 12 ................................................................................................ 6, 16, 17, 27

Fed. R. Civ. Pro. 56 ................................................................................................................ 6

Fed. R. Civ. Pro. 8 ......................................................................................................... 16, 17

**Constitutional Provisions**

Alaska Const., Art. I, Sec. I ................................................................................................. 28

# I.     INTRODUCTION

The Plaintiff has filed a Complaint in this matter alleging that an Anchorage Ordinance violates the First Amendment to the United States Constitution and various provisions of the Alaska Constitution. The Defendant has now moved, pursuant to Fed. R. Civ. Pro. 12 (c), to dismiss Plaintiffs claims on the Pleadings, asserting that the Plaintiffs Complaint fails to state a claim upon which relief can be granted. Defendant's Motion was filed in conjunction with the filing of a Motion pursuant to Fed. R. Civ. Pro. 56, seeking summary judgment of certain other claims filed by the Plaintiff. As with the Defendant, many of the issues are addressed in Plaintiff's Response to the Defendant's Rule 56 Motion and the Plaintiff relies upon its Response filed in conjunction with that Motion for its response here and the arguments in avoidance of those claims raised in Plaintiff's Response will not repeated. This is because if Plaintiffs claims survive the Rule 56 Motion, this Court cannot determine that as a matter of law, there are <u>no</u> set of facts which would permit the Plaintiff to relief on those claims.

The balance of this Response will address Defendants claims that the balance of Plaintiffs claims, not otherwise addressed in its Response to Defendants Motion for Summary Judgment, should be dismissed.  This includes the following claims:

      a.        Prior Restraint and its related arguments relating to Procedural Guarantees;

      b.        Reasonable Opportunity to Open and Operate;

      c.        Lack of Evidence to Support adoption of the Ordinance; and,

      d.        The Takings Claims

Because the Plaintiff has set forth viable causes of action, the Defendant's Motion for Judgment on the Pleadings should be denied.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 1 of 28

## II.    FACTUAL BACKGROUND

Anchorage adopted Ordinance 10.40.050, as amended by AO 2005-139, which is the subject of this challenge. Ord. 10.40.050 is attached hereto as Ex. A. The Amendment is attached as Ex. B. At its core, Ord. 10.40.050 is a licensing scheme which requires licensure of certain businesses engaged in First Amendment expression. Because this is a Motion for Judgment on the Pleadings, the following facts from Plaintiff's Complaint (Ex. C, ¶'s 10-30) are set forth as the factual bases for Plaintiff's Claims:

10.    That the Plaintiff opened its current business on or about August 30, 1990. Plaintiff has in the past operated a business which featured, as part of its operation, the presentation of what is commonly referred to a nude and topless entertainment at its premises. Plaintiff does not serve alcoholic or other intoxicating beverages on its premises.

11.    That Anchorage, in the past, has adopted an Ordinance, which attempted to regulate what is generally referred to as "adult entertainment." This Ordinance was codified at Section 10.40.050 of the Anchorage Municipal Code (the "Code")… This Code was amended on October 11, 2005 to add additional provisions to the Code (the "Amendments")...   The Amendments were adopted on a split vote, with the most controversial provisions having been adopted by a 6-5 vote of the assembly. The Amendment was given immediate effect and is currently in force in Anchorage.

12.    That under the Code an "*adult-oriented establishment*", or "*adult business,*" shall include, but is not limited to, adult bookstores, adult motion picture theaters, adult mini-motion picture establishments, **adult cabarets**, physical culture studios, massage parlors, escort services, or similar type businesses where, by the nature of the business, minors under the age of 18 are denied entry, or businesses which are prohibited by law from having minors or unaccompanied minors on the premises for reasons other than the sale of liquor. If a premise, whose primary business is overnight lodging, offers adult movies via a cable, closed circuit or pay per view system, in the absence of any other adult entertainment activities, the availability of such movies does not render the business an adult-oriented establishment for the purposes of this section.

13.    That under the Code, the Plaintiff operates as an adult business, having been licensed as an adult business since 2004, and more specifically, as an "Adult Cabaret."

14.    That under the Code, an "Adult Cabaret" is defined as "a cabaret which features topless dancers, strippers, male or female impersonators, or similar entertainers. ***An adult cabaret does not include an establishment licensed for sale of alcoholic beverages.***"

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 2 of 28

15.    That pursuant to the definitions in the Code, businesses that offer similar entertainment as Plaintiff, but which also hold a liquor license, are not required to be licensed under the Code, nor are they required to comply with the licensing and regulatory provisions of the Code.    Rather, they are exempted from the Code Requirements.

16.    That under the Code, "*adult entertainment*" means any exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any actual or simulated specified sexual activities, or specified anatomical areas, as defined in this section.

*17.*    That under the Code and prior to amendment the term,

*Specified anatomical areas* means:

    a.    Less than completely and opaquely covered human genitals, pubic region, buttocks, and female breast below a point immediately above the top of the areola.
    b.    Human male genitals in a discernible turgid state, even if opaquely covered.

18.    That under the Code and prior to amendment the term:

*Specified sexual activities* means simulated or actual:

a.    Showing of human genitals in a state of sexual stimulation or arousal.

b.    Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

c.    Fondling or erotic touching of human genitals, pubic region, buttock or female breasts.

19.    That pursuant to the Code, no person shall advertise or offer services regulated by the  Code unless they are licensed to provide such services pursuant to this chapter. (Ordinance, 10.40.050, Section B(5)).

20.    That in order to obtain a license under the Code, a corporate applicant, such as the Plaintiff, must  meet the following requirements:
(1)    All officers, directors and stockholders required to be named under subsection C.2.d of this section shall be at least 18 years of age.

(2)    The applicant must not have been convicted of a violation of this section or any of the offenses listed in subsection I.1.f(1) of this section within the two years immediately preceding the date of application.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 3 of 28

c.    If the applicant is a partnership, joint venture or any other type of organization where two or more persons have a financial interest:

(1)    All persons having a financial interest in the partnership, joint venture or other type of organization shall be at least 18 years of age.

(2)    The applicant must have not been convicted of a violation of this section or any of the offenses listed in subsection I.1.f(1) of this section within the two years immediately preceding the date of application.

2.    The location for which the license is sought must meet the requirements of <u>Section 21.45.240</u> or comply with that section as an existing nonconforming use. Provided however, that any structural changes required to comply with the physical layout requirements of subsection J of this section shall not terminate an existing nonconforming use right. (See Ordinance, 10.40.050, Section D)

21.    That in order to renew a license, the Ordinance provided, prior to Amendment, as

follows:

Every license issued pursuant to this section will terminate at the expiration of one year from the date of issuance, unless sooner revoked, and must be renewed before operation is allowed in the following year. Any operator desiring to renew a license shall make application to the municipal clerk. The application for renewal must be filed not later than 60 days before the license expires. The application for renewal shall be filed in triplicate with and dated by the municipal clerk. A copy of the application for renewal shall be distributed promptly by the municipal clerk to the municipal police department and to the operator. The application for renewal shall be upon a form provided by the municipal clerk and shall contain such information and data, given under oath or affirmation, as is required for an application for a new license.

2.    A license renewal fee of $300.00 shall be submitted with the application for renewal. In addition to the renewal fee, a late penalty of $100.00 shall be assessed against the applicant who files for a renewal less than 60 days before the license expires. If the application is denied, the renewal fee only shall be returned.

3.    If the municipal police department is aware of any information bearing on the operator's qualifications, or that of the applicant's employees, that information shall be filed in writing with the municipal clerk. Approval or clearance by the municipal police department is not a prerequisite to the issuance of a license under this chapter.

22.    That the Code, prior to amendment, provided for revocation of a license as

follows:

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 4 of 28

1.    The municipal clerk may revoke or suspend a license or permit for any of the following reasons:

a.    Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

b.    The operator violates any provision of subsection J.1.b.2 or K of this section or any rule or regulation adopted pursuant to this section.

c.    The operator becomes ineligible to obtain a license or permit.

d.    Any cost or fee required to be paid by this section is not paid.

e.    Any intoxicating liquor or other alcoholic beverage is served on the premises of the adult-oriented establishment.

f.    The licensee, manager or designated representative, is convicted of the following offenses at the location to which an adult business license has been issued:

(1)    Involving any of the following offenses as described in Chapter 8 of the Anchorage Municipal Code:

(a)    Assignation for prostitution;

(b)    Prostitution;

(c)    Offering to secure another for prostitution;

(d)    Maintaining a place of prostitution;

(e)    Owning or leasing a place of prostitution;

(f)    Coercing another to become a prostitute;

(g)    Violation of <u>Section 8.50.010</u>, relating to prohibited performances and exhibitions to minors;

(h)    Violation of <u>Section 8.50.020</u>, relating to disseminating indecent material to minors; or

(i)    Violation of <u>Section 8.50.040</u>, relating to sexual exploitation of minors.

(2)    The fact that a conviction is being appealed shall have no effect on the revocation of the license.

g.    Any of the reasons set forth in <u>Section 10.10.035</u>.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 5 of 28

(See, Section 10.40.050, (I)).

23.     That the Code, prior to amendment, provided for the exterior and interior

configuration as follows:

3.     *Exterior.*

a.     Shall be maintained in a neutral tone to conform with surrounding building appearance.

b.     Building will be repaired and maintained in a timely manner.

c.     Fences to be maintained in conforming appearance and maintained in good condition.

7.     *Interior.*

a.     Appropriate window coverings to maintain conforming appearance (no foil, sheets, boards, et cetera).

b.     Premises to be maintained in a clean and sanitary manner.

c.     The operator shall maintain at least ten footcandles of light in the public portions of the establishment, including aisles, at all times. However, if a lesser level of illumination in the aisles shall be necessary to enable a patron to view the adult entertainment in a booth, room or cubicle adjoining aisles, a lesser amount of illumination may be maintained in such aisles, provided, however, at no time shall there be less than one footcandle of illumination in such aisles, as measured from the floor. (See **Exhibit 1**, Ordinance 10.40.050(J)).

24.     That the Ordinance imposes the following requirements on a Licensee:

K.     *Responsibilities of operator.*

1.     Every act or omission by an employee constituting a violation of the provision of this section shall be deemed the act or omission of the operator if such act or omission occurs either with the authorization, knowledge or approval of the operator, or as a result of the operator's negligent failure to supervise the employee's conduct, and the operator shall be punishable for such act or omission in the same manner as if the operator committed the act or caused the omission. Such acts or omissions can be considered in determining whether to revoke, suspend or renew a license.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 6 of 28

2.    No employee of an adult-oriented establishment shall allow any minor to enter, to loiter around or to frequent an adult-oriented establishment or to allow any minor to view adult entertainment as defined in this section.

3.    No licensee shall have any other license or permits for games of chance to be played or sold on that premises licensed as an adult business.

(See, Section 10.40.050 (K)).

25.    That on October 11, 2005, Anchorage adopted the Amendments to the Code.

26.    That pursuant to the Amendments, section A of the definitions were amended to

read as follows:

*Specified sexual activities* means simulated or actual:

   a.  Showing of human genitals in a state of sexual stimulation or arousal.

   b.  Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

   c.  Fondling or [EROTIC] touching of human genitals, pubic region, buttock or female breasts.

   d.  <u>The intrusion of any object into the genital or anal opening regardless of whether the act was consensual;</u>

   e.  **<u>A separation of a minimum of four (4) feet shall be maintained between entertainers, dancers, and/or strippers and patrons.</u>**

   (Emphasis in original).[1]

27.    That Section H of the Ordinance was also amended. As amended, Section H now

reads as follows:

3.    If the municipal police department, **<u>health and human services, or other department are</u>** [IS] aware of any information bearing on the operator's qualifications, or that of the applicant's employees, that information shall be filed in writing with the municipal clerk. Approval or clearance by the municipal police department is not a prerequisite to the issuance of a license under this chapter.

---

[1] It is believed that the items between brackets were deleted and the items underlined were added.  It is unclear why items are bolded.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 7 of 28

**4.    The Municipal Clerk may deny renewal of license or permit for any of the reasons identified in section 10.40.050.1.**

(Emphasis in original).

28.    That section I of the ordinance has also been amended. As amended, Section I now reads:

1.    The municipal clerk may revoke or suspend a license or permit for any of the following reasons:

a.    Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

b.    The operator violates any provision of subsection J.1.b.2 or K of this section or any rule or regulation adopted pursuant to this section.

c.    The operator becomes ineligible to obtain a license or permit.

d.    Any cost or fee required to be paid by this section is not paid.

e.    Any intoxicating liquor or other alcoholic beverage is <u>transported unto the premises, or</u> served or <u>consumed</u> on the premises of the  adult-oriented establishment, <u>by any person,</u> **where the licensee knew or reasonably should have known.**

b.                    <u>Any person under the age of eighteen is permitted to enter or remain on the premise</u>.

c.                    Any of [THE LICENSEE, MANAGER OR DESIGNATED REPRESENTATIVE, IS CONVICTED OF] the following offenses are committed by any person at the location to which an adult business license has been issued:

(1)    <u>Any of the offenses described in chapter 8.65 involving or relating to prostitution.</u> [INVOLVING ANY OF THE FOLLOWING OFFENSES AS DESCRIBED IN CHAPTER 8 OF THE ANCHORAGE MUNICIPAL CODE:

(A)    ASSIGNATION FOR PROSTITUTION;

(B)    PROSTITUTION;

(C)    OFFERING TO SECURE ANOTHER FOR PROSTITUTION;

(D)    MAINTAINING A PLACE OF PROSTITUTION;

(E)    OWNING OR LEASING A PLACE OF PROSTITUTION;

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 8 of 28

(F)     COERCING ANOTHER TO BECOME A PROSTITUTE;

(G)     VIOLATION OF <u>SECTION 8.50.010</u>, RELATING TO PROHIBITED PERFORMANCES AND EXHIBITIONS TO MINORS;

(H)     VIOLATION OF <u>SECTION 8.50.020</u>, RELATING TO DISSEMINATING INDECENT MATERIAL TO MINORS; OR

(I)     VIOLATION OF <u>SECTION 8.50.040</u>, RELATING TO SEXUAL EXPLOITATION OF MINORS.][2]

(2)     <u>Any of the offenses described in chapter 8.50 involving sexual exhibition, dissemination of indecent material, or sexual exploitation harmful to minors; or</u>

[THE FACT THAT A CONVICTION IS BEING APPEALED SHALL HAVE NO EFFECT ON THE REVOCATION OF THE LICENSE.]

(3)     <u>Allowing any person on the premise to engage in any of the specified sexual activities listed in 10.40.050A.</u>

h.     Any of the reasons set forth in <u>Section 10.10.035</u>.

29.     That J of the Ordinance was also amended. As amended, Section J now reads:

3.     *Exterior.*

a.     Shall be maintained in a neutral tone to conform with surrounding building appearance.

b.     Building will be repaired and maintained in a timely manner.

c.     Fences to be maintained in conforming appearance and maintained in good condition.

d.     <u>No adult entertainment shall be open to view from outside the licensed premise, **or broadcast to any site outside the licensed premise.** Permanent barriers shall be installed and maintained at each entrance and exit to screen the interior of the premise from public view.</u> ~~No exterior door or window shall be propped or kept open at any time during the hours of operation. and~~ **E**[e]xterior windows shall be covered with opaque covering at all times.

(See, Section 10.40.050, (J)). (Emphasis in Original).

30.     That Plaintiff has in the past and presently desire to operate at its licensed premises, dance entertainment which would present non-obscene live nude and semi-

---

[2] The bracketed items have been deleted and the underlined items added.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 9 of 28

nude performance dance entertainment at its business location, which would, under the definitions in the ordinance, require the Plaintiff to be licensed under the Ordinance and to comply with the ordinance provision, both as originally adopted and as amended.

Based upon the facts recited in Plaintiff's Complaint, the Plaintiff alleges:

43.    That the Ordinance is unconstitutional, in whole or in part, facially and/or as applied to

Plaintiff, and in violation of Plaintiff's First, Fifth and Fourteenth Amendment rights and the

corollary rights under the Alaska Constitution, as well as the Commerce Clause, in that:

a.    It is a prior restraint on constitutionally protected speech activities, contrary to Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and the corollary rights under the Alaska Constitution;

b.    It is overbroad in its application to constitutionally protected speech and, therefore, violates the First and Fourteenth Amendments to the United States Constitution and the corollary rights under the Alaska Constitution;

c.    It is not a content neutral law of general applicability, but rather are an impermissible content-based restriction on speech;

d.    It fails to provide the procedural guarantees required under the United States Constitution as provided for by the Supreme Court in Freedman v. Maryland, 380 U.S. 51 (1965) and FW/PBS v City of Dallas, 483 U.S. 215 (1990).

e.    There are no facts that would support the claim that an "adult cabaret," as defined in the Ordinance, which presents topless or bottomless dancing, causes any adverse secondary effects that Anchorage has a right to regulate.

f.    They violate the Supreme Court's decision in Renton v. Playtime Theaters, 475 U.S. 41 (1986) and City of Los Angeles v. Alameda Books, 535 U.S. 425 (2002) in that they fail to provide a reasonable opportunity for an adult business to open and operate and fail to provide sufficient alternative avenues for communication;

g.    They are not narrowly tailored nor are the restrictions contained reasonably related to any legitimate and/or substantial governmental interest;

h.    The Ordinance is not supported by any evidence that the Ordinance would be effective in furthering any substantial governmental interest;

i.    It violates the Commerce Clause of the United States Constitution;

j.    It constitutes a taking of property, either actual or regulatory, without just compensation and without due process of law;

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 10 of 28

k.    It violates Plaintiff's substantive and procedural due process rights;

l.    It was not enacted upon a constitutionally sufficient basis;

m.    It attempts to impose unconstitutional conditions on one's right to engage in constitutionally protected activities;

n.    It violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and the corollary provisions of the Alaska Constitution by creating and permitting uneven treatment in the exercise of constitutionally protected rights and by permitting differing treatment amongst persons desiring to engage in constitutionally protected expression;

o.    The restrictions on dance entertainment are greater then those permitted by the United States Supreme Court in City of Erie v. Paps A.M., 529 U.S. 277 (2000) and such further restrictions on dance entertainment in connection with constitutionally protected expression are not supported by any evidence of negative secondary effects, are a prior restraint on constitutionally protected expression and are unconstitutionally overbroad.

p.    The some or all of the definitions contained in the Ordinance are vague and facially overbroad.

q.    Impairs upon other rights not yet known, but will or may become known through the course of discovery.

The Defendant has now moved, pursuant to Fed. R. Civ. Pro. 12(c), for Judgment on the Pleadings. As will be discussed below, that Motion should be denied.

## III.    ARGUMENT

**THAT PLAINTIFF MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED AS PLAINTIFF HAS ASSERTED VIABLE CAUSES OF ACTION WHICH IF PROVEN WOULD ENTITLE PLAINTIFF TO JUDGMENT AT TRIAL**

A.    Standard of Review

Fed. R. Civ. Pro. 8 (a) governs pleadings in Federal Court. Fed. R. Civ. Pro 8(a) and provides:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 11 of 28

needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Under Fed. R. Civ. Pro. 8(a), a complaint must set forth, "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512; 122 S. Ct. 992; 152 L. Ed. 2d 1 (2002) Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). A heightened pleading requirement does not apply in a civil rights claim. See *Leatherman v. Tarrant County*, 507 U.S. 163; 113 S. Ct. 1160; 122 L. Ed. 2d 517 (1993)

Fed. R. Civ. Pro. 12 (C) provides:

Motion for Judgment on the Pleadings. (c) After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Under Federal Rule of Civil Procedure 12 (c), "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is proper when it is clearly established that there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Where Fed. R. Civ. Pro. 12(c) is used to raise the defense of failure to state a claim, the motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6); that is the court dismiss Plaintiff's claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980); see also, *Hishon v. King*

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 12 of 28

& *Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987). In deciding this motion, not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834-45 (9th Cir. 1980). Thus, a judgment on the pleadings is only "properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 980 (9th Cir. 1999).

B.     Prior Restraint

Regulation enacted for the purpose of restraining expression on the basis of its ***content*** are ***presumptively invalid***. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). This presumption flows from the risk of two particular "'evils that will not be tolerated:' (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) 'the risk of indefinitely suppressing permissible speech' when a licensing law fails to provide for the prompt issuance of a license." *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 889 (6th Cir. 2000); (citing *FW/PBS v. City of Dallas*, 493 U.S. 215, 225-7, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

A law is facially unconstitutional if it prohibits otherwise permitted expression solely on the basis of its ***content***. *R.A.V. v. St. Paul,* 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). A licensing scheme of First Amendment activities which vests unbridled discretion in the decisionmaker is subject to prior restraint analysis. "A 'prior restraint' exists when speech is conditioned upon the prior approval of public officials." *Nightclubs, Inc. v. City of Paduca,* 202

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 13 of 28

F.3d at 889, *citing*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). **Prior restraints are presumptively invalid**. *Nightclubs*, 202 F.3d at 889.

> As stated by the Eleventh Circuit:
>
> "As a form of prior restraint, licensing schemes commonly contain two defects: discretion and the opportunity for delay. An ordinance that gives public officials the power to decide whether to permit expressive activity must *contain precise and objective criteria on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid*."

*Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999) (emphasis added), *citing Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Simply put, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, *without narrow, objective, and definite standards to guide the licensing authority*, is unconstitutional." *Shuttlesworth*, 394 U.S. at 150-51 (emphasis added). *See also*, *FW/PBS, Inc.,* 493 U.S. at 226 (listing cases). To protect against the occurrence of these impermissible risks, ordinances which regulate the operation of sexually oriented businesses by enacting prior restraints upon those businesses must comport with a minimum of three procedural safeguards: (1) the prompt issuance of a license and prompt judicial review of licensing decisions, (2) preservation of the status quo pending a final licensing determination, and (3) requiring the government to bear the burden of litigation its position that a license was not warranted. *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *see also FW/PBS*, 493 U.S. at 227. This essential holding was recently reaffirmed by the Supreme Court in *City of Littleton v. ZJ Gifts D-4 LLC*, 124 S.Ct. 2219 (2004)

In this case, Plaintiff alleges that Ordinance 10.40.050 is an unconstitutional licensing scheme. First, to engage in adult entertainment, a license is required. (See Ord. 10.40.050 (B)(1).

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 14 of 28

The license must be renewed each year (Id at § H) and may be revoked. (Id at § I), including revocation for a violation of the provisions of Section A, of the definitional sections. (Id at § I(3)). As set forth in Plaintiff's Response to the Defendants Motion for Summary Judgment, Plaintiff alleges that such provisions are vague and overbroad and therefore permit unbridled discretion on the part of the licensor.

Defendant also alleges that Plaintiff's claims are moot because the Plaintiff has a license to present adult entertainment. However, the relevant question is not whether Plaintiff presently possesses a license, but rather whether the ordinance delegates overbroad discretion to revoke or suspend that license. In this context, "overbroad discretion to a decisionmaker rests not on whether the municipality has actually exercised discretion in an impermissible manner, "but *whether there is anything in the ordinance preventing him from doing so*." *Forsythe County v. Nationalists Movement*, 505 U.S. 123, 133 n. 10, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (emphasis added).

In addition, the Ordinance prohibits certain persons from obtaining an adult license, including those who have been licensed and violate the definitional provisions of the Ordinance and the operator is liable for violations by employees. (See, 10.40.050, §K). Thus a licensee faces suspension or revocation of its license for violations of the ordinance by its employees. As the District Court noted in *Ellwest Stereo Theatre, Inc. v. Boner*, 718 F. Supp. 1553 (M.D. Tenn. 1989):

> "The Court should also note that the practice of denying a person a license to engage in activities protected by the First Amendment based on prior convictions is constitutionally suspect. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed.2d 1357 (1931*); Pentco, Inc. [ v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978)]; *Genusa [v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980)]. In particular, the courts have consistently struck down ordinances which permit or require the denial or revocation of a license to show adult-oriented motion pictures on the basis that an applicant or an employee of an applicant has been convicted on an

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 15 of 28

obscenity charge. *Cornflower Entertainment, Inc. v. Salt Lake City Corp.*, 485 F.
Supp. 777 (D. Utah 1980); *City of Paducah v. Investment Entertainment,* 791 F.2d
463 (6th Cir. 1986); *Natco v. Ratner*, 463 F. Supp. 1124 (S.D.N.Y. 1979)."

718 F. Supp. at 1572 n.5 (clarification added). The reason for this is constitutionally obvious.

To preclude someone from engaging in constitutionally protected conduct because of prior

illegality effectuates an impermissible prior restraint. *See, e.g.*, *Near v. Minnesota*, 283 U.S. at

716-717; and *Fernandez v. Limmer,* 663 F.2d 616, 630 (5th Cir. 1981) ("[p]ersons with prior

criminal records are not First Amendment outcasts").

Systems of prior restraint are heavily disfavored by the Constitution. "***Any*** system of

prior restraints of expression comes to this Court bearing a ***heavy presumption against its***

***constitutional validity***." *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316, 100 S.Ct. 1156,

63 L.Ed.2d 413 (1980) (emphasis added), *quoting Bantam Books, Inc. v. Sullivan*, 372 U.S. 58,

83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In *Vance,* the Court found unconstitutional a Texas law that

prohibited future exhibition of films by those who had repeatedly been found to have exhibited

obscene material, and quoted the *Bantam Books* decision where it had previously observed that:

"The state made the mistake of prohibiting future conduct after a finding of undesirable present

conduct. When that ***future conduct*** may be protected by the First Amendment, the whole system

must fail. . ." *Vance*, 445 U.S. at 311 n.3, *quoting Bantam Books*, 372 U.S. at 66 (emphasis

added). As stated by the District Court in *Natco, supra*, it is "impermissible to deny a person the

right to exercise a fundamental freedom (by denying a license to operate a First Amendment

related business such as a bookstore or movie theater) solely upon the ground that that person has

suffered a prior criminal conviction . . . ." 463 F.Supp. at 1130 (clarification in original).

Nor has Supreme Court jurisprudence changed in this regard over the years. In *Madsen*

*v. Women's Health Center,* 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), Justice

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 16 of 28

Scalia, joined by Justices Kennedy and Thomas in a partial concurrence and partial dissent in review of an injunction against abortion protesters, observed that he knew "of no authority for the proposition that restriction of speech, rather than fines or imprisonment, should be the sanction for misconduct." *Id.* at 794 n.1. Indeed, in both *Madsen* and *Schenck v. Pro-Choice Network*, 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (another abortion protester case), the Court was unanimous in its belief that previous misconduct, and even ***prior illegal activity*** by anti-abortion protesters, could not serve as a basis to deprive them of their rights to engage in current and future First Amendment activities.

Similarly, in *Simon & Schuster v. Crime Victims Board*, 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991), the Supreme Court held that even individuals convicted of heinous crimes such as murder could not be deprived of their First Amendment rights to author, publish, and receive royalties from books describing their criminal activities. *Id.* at 116. If the First Amendment (and thereby the Alaska Constitution) protects the rights of such notorious murderers as the Son of Sam and Charles Manson to write and profit from books, then it surely also protects the right of a cabaret owner.

The Sixth Circuit addressed this issue in *City of Paducah v. Investment Entertainment,* 791 F.2d 463 (6th Cir. 1986), where it noted that:

> "We have found no precedent in which courts have upheld an obscenity law that provided for the revocation of obscenity dealers' business licenses. In at least three instances, federal courts have held local obscenity ordinances that use the revocation of licenses and permits to be unconstitutional prior restraints of protected speech."

*Id.,* at 467, *citing Gayety Theatres, Inc. v. Miami,* 719 F.2d 1550 (11th Cir. 1983); *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir. 1980), *cert. denied*, 450

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 17 of 28

U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981); and *Cornflower Entertainment*, 485 F. Supp. at 777.

Most telling, however, is the more-recent Seventh Circuit decision in *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000), where that Circuit, agreeing with the Sixth Circuit's decision in *Paducah,* succinctly concluded:

> "The First Amendment also does not allow licensing provisions based on criminal history that 'totally prohibits certain classes of persons' from First Amendment expression . . . . 'We know of no doctrine that permits the state to deny to a person First Amendment liberties other than the right to vote solely because that person was once convicted of a crime or other offense.' . . . Accordingly, the Ordinance disqualification provisions . . . for operator and employee licensing are unconstitutional as well . . . . Like the disqualification provisions struck down as unconstitutional in *Genusa [v. City of Peoria,* 619 F.2d 1203 (7th Cir. 1980)], these license ineligibility provisions *absolutely disentitle classes of speakers from a category of expression*. They produce a complete ban on certain expression for a disqualified group of applicants, who, by definition, wish to speak, and such a drastic measure *cannot be justified here as narrowly tailored to resist some secondary effects*."

228 F.3d at 852 (emphasis and clarification added, citations omitted).

Other state appellate courts have come to the same conclusion that these criminal disability provisions effectuate an impermissible prior restraint. *See, e.g., Perrine v. Municipal Court*, 488 P.2d 648, 652 (Cal. 1971), cert. denied, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972) (ordinance unconstitutional as no showing had been made that persons convicted of specifically articulated sex crimes were "in any way disqualified to participate in the operation of a[n adult] bookstore or likely to abuse the right to do so to promote any criminal propensities that they may still possess") (clarification added); *City of Colorado Springs v. 2354, Inc.,* 89 P.2d 272, 288-89 (Colo. 1995); *Alexander v. City of St. Paul,* 227 N.W.2d 370, 373 (Minn. 1975) (holding that the presumptive unconstitutionality of a criminal disability provision which effectuated a prior restraint could be overcome only upon a showing that the continued operation of a business would present a "clear and present danger" of a substantive evil); and *Seattle v. Bittner*, 505 P.2d 126, 131 (Wash. 1973).

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 18 of 28

There are other Supreme Court decisions, both old and new, which reinforce the unconstitutional nature of these criminal disability provisions. For example, in *Alameda Books,* Justice Kennedy, in his critical concurring opinion, observed that a municipality may not attempt to address a concern of secondary effects by "suppressing the speech itself." *Alameda Books,* 535 U.S. at 445 (Kennedy, J., concurring). To be constitutional, the law must instead "leave the quantity and accessibility of the speech substantially undiminished." *Id.* at 445. Yet, here, the Anchorage Ordinance "suppress[ing] the speech itself," in that it prohibits the exercise thereof based upon prior criminality. And, the ability of individuals suffering a criminal disability to engage in expressive activities is not only diminished, but it is ***totally precluded***. As Justice Kennedy stated: "A city may not assert that it will reduce secondary effects by reducing speech in the same proportion." **Id.** at 449. However, this is ***exactly*** the approach taken by the Municipality by way of the criminal disability provisions.

In addition, in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), the Court held that a nuisance abatement padlocking of an adult bookstore for non-speech related activities (prostitution and lewdness) did not constitute an impermissible prior restraint under *Near* because "the order would impose no restraint at all on the dissemination of particular materials, since respondents ***are free to carry on their book-selling business at another location***, even if such locations are difficult to find." *Arcara*, 478 U.S. at 705 n.2 (emphasis added). In contrast to *Arcara*, the disabled individuals and businesses here are not free to carry on their expressive activities at another location in the municipality. Rather, they are First Amendment lepers and are precluded from engaging in protected activities anywhere within the municipality. They are thus subject to the absolute prior restraint prohibition that was critically absent in *Arcara.*

The decision in *Alexander v. United States*, 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), is also instructive. There, the Court concluded that the forfeiture provisions of the

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 19 of 28

federal RICO statute did not violate the First Amendment.   In an opinion authored by Chief

Justice Rehnquist, the Court observed:

> "Assuming, of course, that he has sufficient untainted assets to open new stores,
> restock his inventory, and hire staff, petitioner can go into the adult entertainment
> business *tomorrow*, and sell as many sexually explicit magazines and videotapes
> as he likes, without any risk of being held in contempt for violating a court order.
> Unlike the injunctions in *Near, [Better Austin v.] Keefe*, [402 U.S. 415, 91 S.Ct.
> 1575, 29 L.Ed.2d 1 (1971)], and *Vance*, the forfeiture order in this case imposes
> no ***legal impediment*** to-- no prior restraint on -- petitioner's ability to engage in
> ***any expressive activity he chooses***.   He is perfectly free to open an adult
> bookstore or otherwise engage in the production and distribution of erotic
> materials; he just cannot finance these enterprises with assets derived from his
> prior racketeering offenses."

*Id.* at 551 (emphasis and clarification added).  The Anchorage Ordinance violates this doctrine

by imposing an absolute "legal impediment" to constitutionally protected expressive conduct.

Finally, and most recently, in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct.

1389, 152 L.Ed.2d 403 (2002)**,** the Supreme Court clearly observed that the "***prospect*** of crime"

does not justify laws suppressing protected speech.  Citing from a long line of prior authorities,

the Court noted that "[a]mong free men, the deterrents ordinarily to be applied to prevent crime

are education and punishment for violations of the law, not abridgement of the rights of free

speech . . . ." *Id.*, *quoting*, *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S.

684, 689, 79 S.Ct. 1362, 3 L.Ed. 1512 (1959). Simply put, "[t]he government may not prohibit

speech because it increases the chance an unlawful act will be committed 'at some indefinite

future time.'" *Free Speech Coalition,* 535 U.S. at 253, *quoting*, *Hess v. Indiana*, 414 U.S. 105,

108, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (*per curiam*).

The Ordinance provisions permitting -- and indeed requiring -- the suspension and/or

revocation of a license to engage in ***future*** constitutionally protected expressive activities also

constitute an impermissible prior restraint.

> "At least since the seminal First Amendment decision in *Near v. Minnesota*, 283
> U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931) it has been clear the
> governmental prohibition of future protected expression based on findings of past

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 20 of 28

> or present undesirable conduct is 'the essence of censorship.' *Accord*, such cases
> as *Vance,* 445 U.S., 311 n.3, ('when that future conduct may be protected by the
> First Amendment, the whole system must fail because the dividing line between
> protected and unprotected speech may be 'dim and uncertain')."

*Admiral Theater v. City of Chicago*, 832 F.Supp. 1195, 1205 (N.D. Ill. 1993).

Another District Court has also noted that such suspension and revocation of an adult business license is impermissible under *Vance*. In *Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F.Supp. 2d 659, 665 (N.D. Tex. 2001), the District Court there observed that just as in *Vance*, "the City proposes to prevent a business operator's full exercise of First Amendment freedoms going forward, on the basis of past instances in which expression offered by the business has crossed the line from lawful to unlawful." Specifically, the District Court found such provisions to violate the second prong of the First Amendment because they do not "relate to or further the governmental interest of assuring law abiding licensees." *Millennium*, 181 F.Supp. 2d at 665.

Basically, this infirmity is the "book-end" to the unconstitutionality of the criminal disability provisions. While Anchorage could engraft a civil penalty onto the Ordinance for a violation thereof, and could even interpose a period of imprisonment, *See, Madsen*, 512 U.S. at 794 *n.* 1 (three Justices observing that they knew "of no authority for the proposition that restriction of speech, rather than fines or imprisonment, should be the sanction for misconduct")(Scalia, J., concurring in part and dissenting in part). What the government may not do, however, is to suspend or revoke a license to engage in ***future*** expressive activities because of prior misdeeds.

Here, Anchorage does not articulate any reason whatsoever for engrafting the criminal disability provisions on to the Ordinance (a constitutional failing in-and-of-itself), it is clear that the only basis for these prohibitions could be the conclusion that people who were convicted of crimes in the past would be more likely to engage in such conduct in the future. Accordingly,

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 21 of 28

because of the potential ***prospect*** of future criminal activity occurring, Anchorage creates an absolute and irrebuttable prohibition of individuals and businesses, found to have violated the Ordinance from engaging in First Amendment-protected activities for 2 years. Such censorial legislation has long been eschewed by the Supreme Court. As the Supreme Court noted in *Vance*, such a system of prior restraint comes to court bearing a "heavy presumption against its constitutional validity." 445 U.S. at 316. These ordinance provisions do not overcome that presumption, and are invalid. At minimum, it is the Defendant's burden to come forward with evidence demonstrating that it restraint scheme is constitutional, as such systems bear a heavy presumption against their constitutionality. Therefore, Defendant's Motion under Fed. R. Civ. Pro. 12 (c) should be denied.

C.    Reasonable Opportunity to Open and Operate

In *Renton v. Playtime Theatres, Inc.*, 475 U.S. at 54, the Supreme Court cautioned against the enactment of regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech." The Court went on to state that the "First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." Id. In addition, such restrictions must " leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)). In this context, Plaintiff claims are that the Ordinance, by placing restrictions on the activities of Plaintiffs business, but not on other similar business, prevents the Plaintiff from having a reasonable opportunity to compete in the marketplace. As the Ninth Circuit stated in *Menotti v. City of Seattle*, 409 F.3d 1113, 1128-1129 (9th Cir. 2005), it is a "fundamental principle" behind

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 22 of 28

content analysis is that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." (Citing, *Renton*, 475 U.S. at 48-49.) (internal quotation marks and citation omitted).

The Alaska Constitution provides that all persons are "entitled to *equal rights, opportunities, and protection* under the law." Alaska Const., Art. I, Sec. I.  Often referred to as the "equal protection clause," this clause actually guarantees not only equal "protection," but also equal "rights" and "opportunities" under the law. *Alaska Civ. Liberties Union v. State*, 122 P.3d 781, 785 (2005) It protections are broader than the Equal Protection clause of the United States Constitution. *Id*, citing, *Malabed v. North Slope Borough*, 70 P.3d 416, 420 (Alaska 2003) ("We have long recognized that the Alaska Constitution's equal protection clause affords greater protection to individual rights than the United States Constitution's Fourteenth Amendment."); *Schafer v. Vest*, 680 P.2d 1169, 1172 (Alaska 1984) (Burke, C.J., concurring, noting that this textual difference from the Federal Constitution emphasizes that the framers meant all three guarantees).

Under Alaska Constitutional law, a person or group asserting an equal protection violation must demonstrate that the challenged law treats similarly situated persons differently. *Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 966 (Alaska 2005); *Lawson v. Helmer*, 77 P.3d 724, 728 (Alaska 2003). In this case, the Anchorage Ordinance treats non-liquor licensees different from licensees.

In *Gonzales v. Safeway Stores, Inc.*, *882 P.2d 389, 396 (1994)*, the Alaska Supreme Court summarized its general approach to claims that the equal rights clause has been violated:

> The constitutional right to equal protection is a command to state and local governments to treat those who are similarly situated alike. The common question in equal protection cases is whether two groups of people who are treated differently are similarly situated and thus entitled to equal treatment. Equal protection jurisprudence concerns itself largely with the

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 23 of 28

reasons for treating one group differently from another. In reviewing equal protection claims we view the enactment in question as creating, by its differential treatment, separate groups. . . . This separation by different legal treatment is referred to as a "classification." We ordinarily review a classification under Alaska's equal rights clause by asking whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a fair and substantial relationship to that reason. See also, *Stanek v. Kenai Peninsula Borough*, 81 P.3d 268, 270 (Alaska 2003)

Under the Alaska equal protection analysis, court employ a "sliding scale" between strict scrutiny and the most tolerant "legitimate reason" test. "As the right asserted becomes 'more fundamental' or the classification scheme employed becomes 'more constitutionally suspect,' the challenged law 'is subjected to more rigorous scrutiny at a more elevated position on our sliding scale.'" *Stanek* at 270. Free Speech, including free speech associated with nude dancing has been held to be a fundamental right under the Alaska Constitution. *Mickens v. Kodiak*, 640 P. 2d 818 (1982).

Plaintiff alleges that by treating the Plaintiff in a disparate manner from similar situated entertainment facilities, the Defendant denies the Plaintiff a reasonable opportunity to engage in expression and to operate its business. At minimum, Plaintiff has set forth a viable cause of action and therefore, Defendants Motion should be denied.

D.    Lack of Evidence to Support adoption of the Ordinance

Plaintiff, in its Complaint, alleges that the Defendant has adopted its ordinance without a substantial or significant basis for doing so. As Plaintiff has alleged both in this Brief and in its Response to Defendant's Motion for Summary Judgment, the Ordinance violates various Federal and Alaskan Constitutional provisions. Plaintiff alleges that this court must evaluate the Ordinance provisions under strict scrutiny, or at minimum intermediate scrutiny.

A law is facially unconstitutional if it prohibits otherwise permitted expression solely on the basis of its ***content***. *R.A.V.*, 505 U.S. at 381; *Mickens*, supra.  If an ordinance is content-based,

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 24 of 28

then in order to be upheld, it must pass the "most exacting" ("strict") scrutiny of being **necessary** to a **compelling** state interest, and must be **narrowly drawn** to achieve that end. *Widmar v. Vincent,* 454 U.S. 263, 270, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). In this context, narrow tailoring requires that the government choose the "least restrictive means to further the articulated interest." *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (emphasis added).

"On the other hand, so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton,* 475 U.S. at 47. In addition, regulations which only *incidentally* impact upon expressive conduct are analyzed pursuant to a four-part test as set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), which evaluates:

1. Whether the regulation at issue is within the government's constitutional power;

2. ***Whether the regulation furthers an important or substantial governmental interest***;

3. Whether the governmental interest is unrelated to the suppression of free expression; and

4. Whether the incidental restriction on alleged First Amendment freedom is ***no greater than is essential*** to the furtherance of that interest.

*Id.* at 377 (emphasis added).

In order--under federal constitutional jurisprudence--for a law to be analyzed under intermediate "time, place or manner" scrutiny, it must in the first analysis be "content-neutral." *See, e.g.*, *Renton*, 475 U.S. at 47. *Renton,* however, created a legal fiction by discussing certain laws that are targeted at adult entertainment (in particular, zoning ordinances) as being "content

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 25 of 28

neutral," or by at least analyzing them for constitutional purposes as being so. *Renton,* 475 U.S. at 46-49. Alaska Constitutional law makes no such distinction (see Mickens, supra).

Irrespective of the standard employed, the Plaintiff alleges that Anchorage, in adopting the challenged Ordinance, did not rely upon evidence to demonstrate its governmental interest and that the Ordinance is not narrowly tailored. (See e.g. *Mickens, Alamada, Renton, supra.)* Thus Plaintiff has asserted a valid constitutional basis to challenge to adoption of Ordinance and therefore, the Defendants Motion for Judgment on the Pleadings should be denied.

E.     Takings Claims

The Plaintiff has also asserted a takings claim. Specifically, Plaintiff alleges that Ordinance interferes with Plaintiffs use of its property by rendering an area, within 4 feet of any entertainer, unusable. In addition, Plaintiff's claim that the regulation interferes with Plaintiffs investment based expectations. Plaintiff alleges that it has asserted a valid cause of action against the Defendant under its taking theory.

The United States Supreme Court in *Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 692 (2001) and *Penn Central Trans. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), has concluded that when a regulation that substantially interferes with investment-backed expectations amounts to a "taking."

In *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987)., the Supreme Court stated that where a:

> regulation that goes too far will be recognized as a taking. 107 S Ct 2386. Where government action works a taking, that necessarily implies the constitutional obligation to pay just compensation. *Id.* That the regulation was an interim one or could be invalidated did not preclude an award for damages. The Court held that "'temporary' takings . . . are not different in kind from permanent takings, for which the Constitution clearly requires compensation." 107 S Ct 2388. Where government activities effect a taking, the mere invalidation of the offending ordinance does not relieve the government of its duty to provide compensation for the period during which the taking was effective. 107 S Ct

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 26 of 28

2389. The Court did not distinguish between takings accomplished by the use of police power or by eminent domain. The key consideration was whether there had been a taking.

In this case, the Plaintiff has alleged that the Regulations at issue constitute a taking without just compensation. This is a valid claim and therefore, the Defendants Motion for Judgment on the Pleadings should be denied.

F.    The Balance of Plaintiffs Claims

The Defendant has moved for Judgment on the pleadings as to the balance of Plaintiffs claims. Plaintiff alleges that each of the arguments of Defendant have been addressed in either this Briefing or in response to Plaintiffs Motion For Summary Judgment. They will not be repeated here, but rather are incorporated hereto by reference.

## IV.    CONCLUSION

In this case, the Plaintiff has asserted that the Anchorage Ordinance at issue in this case violate various state and federal constitutional provisions. While the Plaintiff has asserted various theories under which this Court could conclude that the Ordinance violates the either the U.S. Constitution and/or the Constitution of the State of Alaska.  Plaintiff's Complaint sets forth a plain statement of the facts and an assertion that the Ordinance violates various provision of the constitution. It certainly gives the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. As Plaintiff has demonstrated herein, it has asserted viable causes of action which this Court cannot say that no set of facts could exist which, if proven, would be consistent with Plaintiff's allegations and entitle the Plaintiff to relief. Therefore, the Defendant's Motion should be denied.

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 27 of 28

## V.    <u>**RELIEF REQUESTED**</u>

For the reasons set forth herein, the Plaintiff respectfully asks this Honorable Court to enter

an order Denying Defendant's Motion for Judgment on the Pleadings.

Respectfully Submitted,

Dated: October 12, 2006
                                         <u>s/Allan S. Rubin</u>
                                         Allan S. Rubin (P44420)
                                         Draper & Rubin, P.L.C.
                                         29800 Telegraph Road
                                           Southfield, Michigan 48034
                                           (248) 358-9400 – Phone
                                           allan@draper-rubin.com

Plaintiff's Response to Motion for Judgment on the Pleadings
Sands North v MOA 3:05-cv-00256 (TMB)
Page 28 of 28