Thomas M. McDermott
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SANDS NORTH, INC., d/b/a FANTASIES ON 5TH AVENUE, an Alaskan Corporation, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| MUNICIPALITY OF ANCHORAGE, ALASKA, an Alaskan Municipal Corporation, | ) ) ) |
| Defendant. | ) ) ) |

U.S. District No. 3:05-cv-00256 (TMB)

<u>REPLY IN SUPPORT OF</u>
<u>MUNICIPALITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## I.    Introduction

In its opening motion, the Municipality demonstrated that the Plaintiff's constitutional claims are meritless. As far as freedom of expression is concerned, the conduct that AMC 10.40.050 restricts is not constitutionally protected; the Municipality has a legitimate basis, supported by the legislative record and case law, for imposing

these restrictions; the restrictions are unrelated to the suppression of expression; and the effect on constitutionally protected expression, if any, is minimal.  Sands North has no equal protection claim, because adult entertainment businesses are not a suspect class, and Plaintiff can freely choose to obtain a different license if that would be advantageous. The Commerce Clause claim fails because the Municipality's restriction on broadcasting targets only in-state economic activity.

In its response to these points, Sands North has misstated the provisions of AMC 10.40.050, misconstrued the issues in this case, and misstated the controlling case law. Much of Sands North's argument is material that has already been refuted.  Sands North's sole new argument, pertaining to freedom of association, adds nothing to the analysis.  The Municipality is entitled to summary judgment on the claims discussed in this motion.

## II.    Facts

### Sands North has seriously misrepresented the provisions of AMC 10.40.050.

Some of the arguments raised in Sands North's opposition are simply straw-man fallacies.  Sands North has falsely imputed certain characteristics to AMC 10.40.050 that actually do not exist, and then proceeded to refute these concocted ideas.   These arguments are fallacious and irrelevant.

For example, at page 18 of its brief (page 29 on the court's docket) Sands North asserts that Anchorage has enacted a ban on "simulated sexual activities".  Sands North then points out that a ban on "simulated sexual activities" was struck down as

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 2 of 23

unconstitutionally overbroad, in *Dream Palace v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004). Sands North concludes that AMC 10.40.050 should be struck down for the same reason. This argument is a fallacy, because AMC 10.40.050 does not ban all "simulated sexual activities". It would be a mistake to strike down AMC 10.40.050 on this basis.

Instead, AMC 10.40.050 prohibits entertainers from engaging in "<u>specified</u> sexual activities", which are defined narrowly:

*Specified sexual activities* means simulated[1] or actual:

a.    Showing of human genitals in a state of sexual stimulation or arousal.

b.    Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

c.    Fondling or touching of human genitals, pubic region, buttock, anus or female breasts.

d.    The intrusion of any object into the genital or anal opening regardless of whether the act was consensual.

e.    A separation of a minimum of four feet shall be maintained between entertainers, dancers and/or strippers and patrons.

In this circumstance, when the prohibition against "simulating" is limited to specific acts, it will pass constitutional muster. See, *Dodger's Bar & Grill, Inc.* v. *Johnson County Board Of County Commissioners*, 32 F.3d 1436, 1444 (10th Cir. 1994) (upholding

---

[1] On the issue of "simulated" acts as listed in AMC 10.40.050, it is not clear that the parties even have a ripe dispute, because Sands North has not indicated which acts, if any, its dancers intend to simulate. There is a presumption that regulations are not unconstitutionally vague if the regulated party has the means of obtaining clarification either by making inquiry or through an administrative process. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193 (1982). Sands North has not made any effort to obtain such clarification. There is a realistic possibility that such an effort would resolve this particular question, because as far as the Municipality is concerned, the main priority in this case is regulation of actual physical acts, rather than simulated acts.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 3 of 23

prohibition against "acts which constitute or simulate: the touching, caressing, or fondling of the breast [or] buttocks.").

Another exaggeration is found at page 44 of Plaintiff's brief (page 54 of the court's docket) where Sands North argues that "performances by just about every dance troupe in Anchorage is now rendered 'adult' and required to be licensed under the ordinance, as is every performance by the likes of Britney Spears, Madonna, or Michael Jackson . . ."

Not so. AMC 10.40.050 only applies to adult entertainment establishments, and this category is narrowly defined. Section 10.40.050A makes this quite clear:

> *Adult entertainment* means any exhibition of any motion pictures, live performance, display or dance of any type, which has as its <u>dominant theme</u>, or is distinguished or characterized by an emphasis on, any actual or simulated specified sexual activities, or specified anatomical areas, as defined in this section. (emphasis added)

In order to qualify as adult entertainment, the <u>dominant theme</u> must be explicitly sexual. The mainstream theaters and dance troupes in Anchorage do not qualify as "adult" businesses under this definition, nor do Britney Spears, Madonna, or Michael Jackson.

Sands North also proposes, at page 44 of its brief (page 54 of the court's docket) that "the Ordinance prohibits entertainers from coming within 4 feet of patrons, not only when performing, but at all times." This is false. The Municipality has already made clear that the buffer zone will only be enforced during the course of a performance. A dancer inadvertently bumping into a customer would not violate this provision.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 4 of 23

Much of Sands North's argument is based on a "parade of horribles" that are illusory. Argument of this nature is simply irrelevant.

**<u>The legislative record contains abundant evidence of secondary effects.</u>**

In its opposition, Sands North asserts that the Municipality "appears *not to have read or reviewed* <u>any</u> specific studies or evidence from other communities regarding the alleged secondary effects of adult businesses . . ." Plaintiff's Opposition brief at page 7. This assertion is misleading. For one thing, the Assembly did indeed collect and review studies on this subject. The Assembly record contains studies showing that sex-oriented businesses generate adverse secondary effects, such as prostitution, increased crime, decline in property values, and increased disease. Those include, but are not limited to:

A summary of studies and legal findings concerning adverse secondary effects of sex-oriented businesses, prepared by Susan Lutz, Legal Secretary to the Assembly. Exhibit 1.

Article titled Strip Clubs are Gateways to Addiction, Prostitution by Heather Resz, Anchorage Chronicle Exhibit 2.

Written coments by Nancy Fair, Vice President of Service High School PTSA. Exhibit 3.

Findings from court cases, research, and other jurisdictions showing links between sex-oriented business, and crime and disease. Exhibit 4.

A National Law Center compilation of studies documenting the secondary effects of sexually oriented businesses. Secondary effects include an increase in live sex acts on the premises, prostitution, increase in violent crime, decline in property values. Exhibit 5.

Testimony of David Sherman, former strip club manager, before the National Organization Against Lewd Activities, documenting links between strip clubs and prostitution and illegal drug use. Exhibit 6.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 5 of 23

More importantly, published research is not the only source of information on which the Assembly relied. The Assembly did its own fact-finding, holding hearings and taking testimony from citizens who shared their firsthand knowledge about the sordid nature of the entertainment at Fantasies. These citizens testified that dancers at Fantasies engaged in grossly explicit physical sexual contact with their customers. The dancers, fully nude, straddle their customers and massage the customers' groin; they stick their vaginas and breasts in the patrons' faces, and allow customers' mouths to contact their breasts and vaginas; and generally engage in the most explicit sexual contact imaginable short of outright sexual penetration. (See testimony of Jennifer Johnson, Stacy Papinough, and Beverley Wooley, exhibits 4, 5, and 6 in support of the Municipaliyt's Motion for Partial Summary Judgment; see also testimony of Kara Nyquist and Dr. Becky Usry, exhibits 7 and 9 in support of the Municipality's Opposition to Motion for TRO.)

In addition to studies and citizen testimony, the Municipality has collected numerous cases detailing the practices[2] that occur in clubs like Fantasies, and the adverse

---

[2] The practices are discussed in the Municipality's opening brief, and the cases relied upon are *Colonial First Properties, LLC v. Henrico County Virginia*, 236 F.Supp.2d 588, 589 (E.D.Va. 2002); *Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Commissioners*, 32 F.3d 1436, 1439 (10th Cir. 1994); *BGHA, L.L.C. v. City of Universal City, Texas*, 210 F.Supp.2d 821, 829, (W.D. Tex. 2002); *2025 Emery Highway, L.L.C. v. Bibb County, Georgia*, 377 F.Supp.2d 1310, 1331 (M.D.Ga. 2005); *Steinbach v. State*, 979 S.W.2d 836, 838-841 (Tex.App. 1998); and *State ex. rel. Gibbons v. Jackson*, 16 S.W.3d 797, 800 (Tenn.Crim.App. 1999).

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 6 of 23

secondary effects[3] that result.  These cases corroborate the testimony that was provided by local citizens.  Actually the cases cited here are just a small portion of the total collected; this Court is no doubt aware that there are dozens, and possibly hundreds, of cases in the federal courts confirming the secondary effects of sex-oriented businesses.

In addition to studies and citizen testimony, the Assembly has first-hand knowledge of the circumstances and conditions in the Anchorage community.  The Supreme Court recognized this principle in *Alameda Books*:

> The Los Angeles City Council knows the streets of Los Angeles better than we do. . . . It is entitled to rely on that knowledge; and if its inferences appear reasonable, we should not say there is no basis for its conclusion.

*Id.*, 535 U.S. at 452, 122 S.Ct. at 1743.

In reaching its conclusion that adult businesses cause adverse secondary effects, the Municipal Assembly relied upon 1) citizen testimony; 2) research studies and articles; 3) court decisions, and 4) its own first-hand knowledge of the Anchorage community. This is ample support for the Assembly's conclusion.

---

[3] The secondary effects are also discussed in the Municipality's opening brief, and the cases relied upon are *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585, at 595 (E.D.Wis. 1988); *Northend Cinema, Inc. v. Seattle,* 90 Wash.2d 709, 585 P.2d 1153 (1978); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925 (1986); *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Cir. 1998); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997); *Gammoh v. City of La Habra*, 395 F.3d 1114, 1125 (9th Cir. 2005); *DCR, Inc. v. Pierce County***,** 964 P.2d 380, 390 (Wash.App. Div. 2 1998); and *Dreamland Ballroom and Social Dance Club, Inc. v. City of Ft. Lauderdale,* 789 So.2d 1099, 1101 (Fla.App. 4 Dist. 2001).

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 7 of 23

### III.    Standard of Review

**<u>Sands North has misstated the standard of review.  Even if the Municipality's regulation is content-based, the most rigorous scrutiny that the Court should apply – under state or federal law - is intermediate scrutiny.  Strict scrutiny is not appropriate</u>**.

In its opposition brief, the Plaintiff argues that the Municipality's regulation is content-based, and therefore should be subject to strict scrutiny.  This is a misstatement of the law.

Under federal law, [c]ontent-based regulations may be analyzed under intermediate scrutiny if two conditions are met: 1) the ordinance regulates speech that is sexual or pornographic in nature; and 2) the primary motivation behind the regulation is to prevent secondary effects."  *Gammoh v. City of La Habra*, 395 F.3d 1114, at 1123 (9th Cir. 2005).  A statute will survive intermediate scrutiny if it: 1) is designed to serve a substantial government interest; 2) is narrowly tailored to serve that interest; and 3) leaves open alternative avenues of communication.  *Id.*, at 1125-26.

AMC 10.40.050 satisfies these parameters.  The ordinance serves a substantial government interest, because it is designed to eliminate the risk of prostitution, sexual assaults, and disease that are associated with lap dancing.  "It is beyond peradventure at this point in the development of the doctrine that a state's interest in curbing the secondary effects associated with adult entertainment establishments is substantial."  *Center For Fair Public Policy v. Maricopa County*, 336 F.3d 1153, at  1166 (9th Cir. 2003).

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 8 of 23

The narrow tailoring requirement is satisfied so long as the government's asserted interest "would be achieved less effectively absent the regulation." *Colacurcio,* 163 F.3d at 553.  In *Colacurcio v. City of Kent*, 163 F.3d at 554, the court found "[a]ppellants have failed to present evidence showing that a ten-foot rule burdens substantially more expression than necessary to achieve its purpose."   Similarly, in *Kev Inc. v. Kitsap County*, 793 F.3d 1053, at 1061 (9th Cir. 1986) the court found that a regulation prohibiting dancers from fondling or caressing one another was necessary to prevent prostitution. Finally,   the  ordinance   leaves  open  ample  alternative  avenues  of communication, since the dancers are still free to engage in nude dancing.  See, *Gammoh v. City of La Habra*, 395 F.3d at 1128; *Kev Inc. v. Kitsap County*, 793 F.3d  at 1062.

This Court should also apply the intermediate scrutiny test to the claims raised under the Alaska Constitution.  Alaska case law concerning regulation of adult businesses is not nearly as well-developed as the federal law, but the few cases that address this subject indicate strict scrutiny would <u>not</u> apply here.  In *Mickens v. City of Kodiak*, 640 P.2d 818 (Alaska 1982) the Alaska Supreme Court declared that "the customary 'barroom' type of nude dancing involv[es] only the barest minimum of protected expression." *Id.* at 821 n.5 (citations omitted).  The court made clear that protection afforded to nude dancing would not necessarily apply in every case, noting for example that obscene performances might not be protected.  *Id.* at 822-23.

In *Summers v. Anchorage*, 589 P.2d 863 (Alaska 1979), the Supreme Court rejected the argument that a conviction for prostitution violated the appellants' constitutional right

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 9 of 23

of expression. *Id.* at 867. The court explained: "the expressive conduct and speech-related terms in the ordinance, however, regulate speech only as an element of prohibited prostitution activities." *Id.* Likewise, in *Hilbers v. Municipality of Anchorage*, 611 P.2d 31 (Alaska 1980), the court upheld an ordinance that forbade employees in massage parlors from exposing their genitals to patrons or touching the patrons' genitals – conduct very similar to the "specified sexual activities" that AMC 10.40.050 prohibits.

Overall, the Alaska cases make clear that reasonable restrictions on indecent conduct are not subject to strict scrutiny, so long as the restrictions do not interfere with the expressive aspects of nude dancing itself. This court should apply the intermediate scrutiny standard as described in *Gammoh v. City of La Habra*, 395 F.3d 1114, at 1123-6 (9th Cir. 2005).

## IV.   Discussion:

### **Sands North has failed to show any injury to a protected right of expression**.

Perhaps the most serious problem with Sands North's case is that it fails the threshold test, i.e., there is no evidence that AMC 10.40.050 reaches a substantial amount of constitutionally protected expression. See *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186 (1982). Although Sands North complains that its right to engage in nude dancing is constitutionally protected, AMC 10.40.050 does not prohibit nude dancing, so that right is not injured.

Similarly, Sands North claims the four foot buffer zone impairs the customers' enjoyment of the dancers' performance; even if true, this does not support a constitutional

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 10 of 23

claim. This same argument was rejected in *Colacurcio v. City of Kent*, 944 F.Supp. 1470

(W.D.Wash. 1996):

> Undoubtedly, the experience of the nightclub patron is significantly
> enhanced if he or she can be closer to the nude dancer on stage. The patron
> can see and hear the dancer more clearly, and has a better opportunity to
> smell the "breath, perfume and the scent of the body." . . . But there is
> nothing in constitutional jurisprudence to suggest that patrons are entitled
> under the First Amendment to the maximum erotic experience possible.

*Id.* at 1476; *affirmed* 163 F.3d 545 (9th Cir. 1998).

Sands North also implies that AMC 10.40.050 might somehow chill future

productions of *Hair*, *Equus*, or *A Chorus Line* (Plaintiff's Opposition brief at 42,

docketed page 52). This argument is specious. The scope of AMC 10.40.050 is limited

to adult entertainment businesses, and it does not apply to conventional theaters that show

mainstream works of art.

The true effect of AMC 10.40.050.A is only to prohibit persons from engaging in

the "specified sexual activities". This conduct is not constitutionally protected

expression.

### **Sands North has failed to recognize the distinction between speech and conduct**.

Although Sands North argues at length about the right to engage in

constitutionally protected expression, it fails to note that this case largely deals with

conduct, not expression. There is no First Amendment protection for physical sexual

conduct in a place of business. See, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705, 106

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 11 of 23

S.Ct. 3172, 3176 (1986); *Recreational Developments of Phoenix, Inc. v. City of Phoenix*, 220 F.Supp.2d 1054, 1066 (D.Ariz. 2002).

The Municipality's adult entertainment ordinance is not intended to regulate speech; its purpose is to prohibit certain offensive sexual <u>acts</u>. The key language is set out in AMC 10.40.050.I.1.g.3, which provides that a license may be revoked if the licensee "allow[s] any persons on the premises to <u>engage in</u> any of the specified sexual <u>activities</u> listed in 10.40.050.A" (emphasis added). The significance of the phrase "engage in . . . activities" is clear: it prohibits persons from <u>actually committing</u> those acts on the premises. On the other hand, the ordinance does not preclude adult businesses from expressing or portraying sexual subject matter by means other than physical acts. That these acts may contain some "kernel of expression . . . is not sufficient to bring the activity within the protection of the First Amendment." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570, 111 S.Ct. 2456, 2462 (1991) (citation omitted).

### <u>In addition to the secondary effects described above, AMC 10.40.050 also proscribes conduct that is inherently indecent.</u>

Sands North asserts that *City of Erie v. Pap's A.M.* "specifically rejected all bases for adoption of anti-nudity ordinances, save one, that being the 'alleged secondary effects' of adult entertainment." See Plaintiff's brief at page 22 (page 32 as docketed). This is a misinterpretation of *Erie* and a misstatement of the law generally. Actually there are two distinct but related sources of authority for restrictions on adult entertainment, and both are still legally sound.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 12 of 23

The "secondary effects" doctrine is not the only basis for regulating adult businesses.  Cities also may regulate <u>on-premises conduct</u> of adult businesses, where such conduct is inherently indecent or obscene.  See, e.g. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390 (1972) (overruled on other grounds[4] in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495 (1996)).  This line of authority is derived from the city's general police power to regulate public sexual conduct in order to protect public morals and order.  This principle is explained in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 at 567-68, 111 S.Ct. 2456 at 2461:

> The public indecency statute is clearly within the constitutional power of the State and furthers substantial governmental interests. . . .  Public indecency statutes of this sort are of ancient origin and presently exist in at least 47 States. . . .  Public indecency statutes such as the one before us reflect moral disapproval of people appearing in the nude among strangers in public places. . . .
>
> This and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation. . . .

The holdings in *Larue, Young,* and *Barnes* were cited with approval in *Dream Palace v. County of Maricopa*, 384 F.3d 990, at 1019 (9th Cir. 2004), where the Court noted "the States' inherent police powers provide ample authority to restrict the kind of

---

[4] In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) the Supreme Court upheld California regulations enacted in response to live sex shows and sexual contact between nude performers and patrons in establishments licensed to sell liquor. 409 U.S. at 111, 93 S.Ct. 390.  The record in that case was "a sordid one," and consisted of testimony regarding customers engaging in oral copulation with dancers, public masturbation, and numerous other contacts between male customers and female performers. *Id.* In upholding the regulation, the Supreme Court relied in part on the states' authority to regulate liquor establishments under the Twenty-First Amendment.  *Id.* at 118, 93 S.Ct. 390. Subsequently, in *44 Liquormart* the Court disowned its reliance on the Twenty-first Amendment, but reaffirmed that "the States' inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved. *Id.* at 514-16, 116 S.Ct. 1495.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 13 of 23

'bacchanalian revelries' described in the *LaRue* opinion . . . .  *See, e.g., Young* and *Barnes*" . . . .

Like the ordinances in *Larue*, *Young*, and *Barnes*, AMC 10.40.050 curtails indecent sexual conduct <u>on the premises</u> of adult entertainment establishments, as well as curbing the secondary effects of such businesses.  Although AMC 10.40.050 is specific to adult businesses, it merely applies the same standards of decency that would apply in the community generally.   The conduct prohibited would certainly be unlawful on the premises of any other business.  See, AMC 8.10.080 (indecent exposure); AS 11.41.458 and 460 (indecent exposure); AS 11.61.110(a)(7) (disorderly conduct).  There is no need to demonstrate that public indecency creates adverse secondary effects, because the prohibition on public indecency "is not a means to some greater end, but an end in itself." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 572, 111 S.Ct. 2456, 2463 (1991).

### **<u>Plaintiff has failed to cast doubt on the Assembly's evidence.</u>**

Although Sands North has produced evidence tending to disprove the link between adult businesses and adverse secondary effects, this evidence is not sufficient to cast doubt on the Municipality's rationale for passing its ordinance.  The quantum of evidence that a city must garner was announced in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 at 51-2, 106 S.Ct. 925 (1986):

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 14 of 23

This is a low threshold.  For example, in *World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1195-6 (9th Cir. 2004) the court found:

> In holding that the Ordinances promoted a substantial governmental interest, the district court stressed that Spokane only needed " 'some' evidence to support its Ordinances," and correctly concluded that the "elimination of pornographic litter, by itself, represents a substantial governmental interest, especially as concerns protection of minors." *World Wide Video,* 227 F.Supp.2d at 1157-58. The citizen testimony concerning pornographic litter and public lewdness, standing alone, was sufficient to satisfy the "very little" evidence standard of *Alameda Books*, 535 U.S. at 451, 122 S.Ct. 1728 [other citations omitted].  Anecdotal evidence and reported experience can be as telling as statistical data and can serve as a legitimate basis for finding negative secondary effects.

In sum, *World Wide Video* teaches that a city's evidentiary burden may be satisfied by a few citizen complaints about pornographic litter and public lewdness.

Technically, under *City of Los Angeles v. Alameda Books*, once a city has produced evidence demonstrating a legitimate government basis for the ordinance, the court is then required to engage in a burden-shifting process:

> The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.* If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id.* 535 U.S. at 438-39, 122 S.Ct. at 1743.  However, this test is extremely deferential: in *Alameda Books*, the City of Los Angeles relied on just one study, more than twenty years old, showing a correlation between crime and concentrations of adult businesses.  535

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 15 of 23

U.S. at 430, 122 S.Ct. at 1732.  The Court found that "the proposition to be shown is supported by a <u>single study and common experience</u>" (emphasis added) and that was at least sufficient to survive a summary judgment motion.  535 U.S. at 452, 122 S.Ct. at 1743.

Actually, so long as a city collects <u>any</u> evidence supporting its rationale for regulating adult businesses, courts are reluctant to find any doubt in it.  In *Center For Fair Public Policy v. Maricopa County, Arizona* 336 F.3d 1153, 1168 (9th Cir. 2003) the court explained:

> The record here is hardly overwhelming, but it does not have to be. *See Alameda Books,* 535 U.S. at 451, 122 S.Ct. 1728, (Kennedy, J., concurring) ("very little evidence is required" to justify a secondary effects ordinance). The question is whether the Arizona legislature relied on evidence "reasonably believed to be relevant" in demonstrating a connection between its stated rationale and the protected speech, and we hold that it has done that here. The Arizona Senate and House held public hearings at which lawmakers heard citizen testimony concerning the late night operation of sexually-oriented businesses, and were briefed on several studies documenting secondary effects, and two of those studies were specific to late night operations. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925 (reasonable for regulators to rely on experiences and studies of other cities, as well as legal decisions upholding similar regulations). That evidence is both reasonable and relevant, and compares favorably with the evidence presented in other cases. . . .
> A legislative body can act without first acquiring irrefutable proof. In other words, lawmakers need not bury each piece of described trash before acting to combat litter, or confirm each honking horn before acting to abate noise levels. Instead, a legislative body, acting in furtherance of the public interest, is entitled to rely on whatever evidence it reasonably believes to be relevant to the problem at hand.

The teaching of *Renton*, *Alameda Books*, and *Center for Fair Public Policy* is that the Municipality's evidence on adverse effects of adult businesses <u>need not prove the</u>

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 16 of 23

Municipality's ultimate conclusion.  So long as the evidence supports that conclusion, by

showing it has some basis in fact, that is enough.  The fact that Sands North may produce

contrary evidence does not suffice to "cast direct doubt on [the city's] rationale" under

*Alameda Books*.  It only means that the Municipality, faced with a choice between two

competing inferences, inferred that secondary effects do exist.

The Municipality has collected more than enough evidence to satisfy the standard

discussed in *Renton*, *Alameda Books*, and *Center for Fair Public Policy*.  The Assembly

collected citizen testimony, a series of studies, innumerable court cases, and also applied

its own common experience.  Sands North has failed to "cast doubt" on the City's

rationale, as that term is construed in *Alameda Books* and its progeny.

**The evidence proffered by Dr. Hanna and Dr. Linz has already been rejected in the Ninth Circuit**.

The evidence that Sands North offers from Dr. Judith Hanna was reviewed in

detail and rejected in *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Cir. 1998).  In that

case, the court considered virtually the same contention that Dr. Hanna raises here :

> [Appellants] assert that proximity itself-the distance, or lack thereof,
> between the dancer and the patron-is integral to the message conveyed by
> table dancing. This message is entirely different, they contend, than the
> message conveyed by stage dancers.
> In support of this contention, appellants proffered the testimony of cultural
> anthropologist Judith Hanna, a Senior Research Scholar at the University of
> Maryland. . . . Hanna asserts that table dancers seek to send a message that
> is entirely different from that sent by stage dancers . . . .
> Hanna concluded that close proximity between the dancer and the patron is
> an integral and essential part of the message itself. This is so, according to
> Hanna, not only because of the message of personal interest sent by the
> dancer's physical presence but also by other nonverbal communication that
> is only possible in close quarters. Specifically, Hanna testified that

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 17 of 23

> "proximity permits eye contact and awareness of indicators of attraction and satisfaction such as the mouth position, eye brightness, pupil dilation and expansion, facial color, breath, perfume, and body odors."

*Id.*, at 558-9 (Reinhardt, Circuit Judge, dissenting).

Although Judge Reinhardt bought into Dr. Hanna's theory, the majority in *Colacurcio* did not. They explained: "[a]ssuming arguendo that table dancing is a unique form of expression, precedent indicates that uniqueness, alone, is insufficient to trigger separate First Amendment protection. *Id.*, at 555. The court concluded that "table dancing in private nightclubs, with documented links to prostitution and drug dealing, is a highly unlikely candidate for special protection under the First Amendment." *Id.*, at 556.

Similarly, the evidence offered by Dr. Linz – i.e., studies that do not find a link between adult business and averse effects - has been rejected in several courts. See, e.g., *G.M. Enterprises, Inc. v. Town of St. Joseph, Wis.*, 350 F.3d 631, at 636; (7th Cir. 2003); *Abilene Retail #30, Inc. v. Board of Com'rs of Dickinson County, Kan.*, 402 F.Supp.2d 1285, 1292 (D.Kan. 2005); *Fantasyland Video, Inc. v. County of San Diego*, 373 F.Supp.2d 1094, 1132 (S.D.Cal. 2005); *Annex Books, Inc. v. City of Indianapolis*, 333 F.Supp.2d 773, 786-7 (S.D.Ind. 2004).

Simply put, while Dr. Linz offers evidence for a point of view opposite to that of the Assembly, it does not mean the Assembly is required to accept it. Invocation of academic studies said to indicate that the threatened harms are not real is insufficient to cast doubt on the experience of the local government. *City of Erie v. Pap's A.M.*, 529 U.S. at 300, 120 S.Ct. at 1397. "*Alameda Books* does not require a court to re-weigh the

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 18 of 23

evidence considered by a legislative body, nor does it empower a court to substitute its judgment in regards to whether a regulation will best serve a community, so long as the regulatory body has satisfied the *Renton* requirement that it consider evidence 'reasonably believed to be relevant to the problem' addressed." *G.M. Enterprises,* 350 F.3d at 639-640 (citing to *Alameda Books,* 535 U.S. at 445, 122 S.Ct. 1728, and *Renton,* 475 U.S. at 51-52, 106 S.Ct. 925.

The evidence offered by Dr. Hanna and Dr. Linz has been rejected by other courts. This Court should do the same.

**<u>Sands North's equal protection claim fails as a matter of law</u>**.

On the subject of equal protection, Sands North's argument fails. The objectionable classification – adult business licenses versus liquor licenses – does not trigger heightened scrutiny, because sexually oriented businesses are not a suspect class under equal protection doctrine. See *Isbell v. City of San Diego*, 258 F.3d 1108, 1116 (9th Cir. 2001); *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.2002). The characteristic at issue – Sands North's status as an adult business – is one that Sands North can change if it wants to. Characteristics that can be adopted or abandoned by choice are not entitled to heightened protection under the Equal Protection Clause. See *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990). Finally, to the extent that Sands North alleges an unequal treatment of its <u>First Amendment</u> rights, this is not an equal protection claim at all, but a First Amendment claim in disguise. In these circumstances Sands North "can fare no better under the

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 19 of 23

Equal Protection Clause than under the First Amendment itself." See *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 55 n. 4, 106 S.Ct. 925, 933 n. 4 (1986).

Since no heightened scrutiny applies, the Municipality need articulate only a rational basis for its distinction, and it has done so. The Municipality excluded liquor establishments from its regulation, because the State already regulates alcohol-related businesses, and the Municipality felt it would be redundant to do so itself. Sands North's equal protection claim fails as a matter of law.

### Sands North's freedom of association claim adds nothing to the analysis.

Sands North's freedom of association claim fails, because there is no constitutional right of association in this context. The Constitution does not recognize a generalized right of social association. *City of Dallas v. Stanglin,* 490 U.S. 19, at 25, 109 S.Ct. 1591, at 1595 (1989). The right generally will not apply, for example, to business relationships, *see Roberts v. United States Jaycees,* 468 U.S. 609, 620-22, 104 S.Ct. 3244, at 3251 (1984); chance encounters in dance halls, *see City of Dallas v. Stanglin,* 490 U.S. at 24-26, 109 S.Ct. at 1595, paid rendezvous with escorts, *see IDK, Inc. v. Clark County,* 836 F.2d 1185, 1193 (9th Cir.1988) or patrons using a motel room, *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, at 237, 110 S.Ct. 596, at 610-11 (1990).

To the extent that Sands North claims a right to associate for the purpose of engaging in expression, this is (again) nothing but a First Amendment claim in disguise, and Sands North can fare no better than it would under the First Amendment itself:

> Because protection of the right to associate evolves from the First
> Amendment's guarantees of speech, assembly, petition, and free exercise,

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 20 of 23

the scope of protection for association corresponds to the constitutional
solicitude afforded to the mode of First Amendment expression in which a
particular group seeks collectively to engage. . . .

So viewed, the right to expressive association does not confer a generalized
freedom for individuals or entities collectively to engage in activity that is
otherwise regulable when undertaken by a single individual or entity. . . . .
[T]he Court has tended to view the right of association as dependent on
underlying individual rights of expression; there is no right of association in
the abstract. . . . . Thus, [Plaintiff] must demonstrate that [the challenged
ordinance] unduly curtails its associational right to engage in activities
protected by the First Amendment.   Elsewise, it cannot prevail on its
associational claim.

*Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, at 50 (1st Cir. 2005)

(citations omitted).

Sands North's freedom of association claim fails as a matter of law, because there

is no constitutional right of association in this context.

### Sands North has failed to show that AMC 10.40.050 impacts out of state commerce, thus its Commerce Clause claim fails.

Sands North's discussion of Commerce Clause issues fails to make the required

threshold showing, i.e., that AMC 10.40.050 is "designed to benefit in-state economic

interests by burdening out-of-state competitors."  See *Dickerson v. Bailey*, 336 F.3d 388,

396 (5th Cir. 2003).    The two cases cited by Sands North that specifically relate to

Internet use, *American Booksellers Foundation v. Dean*, 342 F.3d 96 (2nd Cir. 2003) and

*ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) actually undercut Sands North's claim.

Both of these cases show that the regulation must affect out-of-state conduct in order to

trigger a dormant commerce clause issue.  See, *American Booksellers*, 342 F.2d at 103;

*ACLU v. Johnson*, 194 F.3d at 1161.   In both of these cases, the regulation at issue

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 21 of 23

prohibited dissemination via Internet of material harmful to minors, which meant that a non-resident sending material to a minor in the regulated state would come within the statutes' purview. See, *id*. By contrast, AMC 10.40.050 only prohibits broadcasting activity <u>within the Municipality</u>, so persons outside the state are not affected. There is no Commerce Cause claim here.

## V.    Conclusion

Sands North has failed to rebut the arguments in the Municipality's Motion for Partial Summary Judgment. It has failed to demonstrate that AMC 10.40.050 impairs a substantial amount of constitutionally protected expression. AMC 10.40.050 passes the requisite intermediate scrutiny standard. This case does not affect any rights protected under equal protection doctrine, freedom of association, or the Commerce Clause. For these reasons, the Municipality's motion for partial summary judgment should be granted.

Respectfully submitted this 3rd day of November, 2006.

JAMES N. REEVES
Municipal Attorney


By:    s/    Thomas    M.    McDermott
Assistant Municipal Attorney
P.O. Box 196650
Anchorage, AK  99519-6650
(907) 343-4545
(907) 343-4550 – fax
uslit@muni.org
Alaska Bar No. 9910050

The undersigned hereby certifies that on November 3, 2006 a
true and correct copy of the *Reply in Support of Motion for Partial*

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 22 of 23

*Summary Judgment* was served on:

- Kenneth P. Jacobus
- Allan S. Rubin

by electronic means through the ECF system
as indicated on the Notice of Electronic Filing

<u>s/ Patricia A. Karella</u>
Patricia A. Karella, Legal Secretary
Municipal Attorneys Office

Reply in Support of Motion for Partial Summary Judgment
Sands North v. MOA  3:05-cv-00256 (TMB)
Page 23 of 23