IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SANDS NORTH, INC., d/b/a
FANTASIES ON 5TH AVENUE, an
Alaska Corporation,

               Plaintiff,

   vs.

THE CITY OF ANCHORAGE,
ALASKA, an Alaska Municipal
Corporation,

               Defendant.

Case No. 3:05-cv-256-TMB

**O R D E R**
**RE: Motion for Partial Summary Judgment**

Plaintiff Sands North, Inc., d/b/a/ Fantasies on 5th Avenue, filed a Complaint for Declaratory and Injunctive Relief, Damages and Attorney Fees pursuant to 42 U.S.C. §§ 1983, 1988 and 2201, as well as pendant state law claims. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), and 2202.

Defendant seeks Partial Summary Judgment[1], as well as Judgment on the Pleadings.[2] This matter has been fully briefed by the parties,[3] and the Court heard oral argument on November 29, 2006.

## BACKGROUND

According to the Complaint, Plaintiff opened its current business on or about August 30, 1990. Plaintiff's establishment has featured the presentation of what is commonly referred to as

---

[1]Docket 41.

[2]Docket 43. An Order regarding the Motion for Judgment on the Pleadings will issue separately.

[3]Docket nos. 42, 53, 58, 44, 55 & 59.

1

nude and topless entertainment.  Plaintiff does not serve alcoholic beverages, and therefore has employees and customers who are age 18 and over.

Defendant ("the Municipality") has adopted an ordinance codified at § 10.40.050 of the Anchorage Municipal Code, which was amended on October 11, 2005.  The ordinance governs the manner in which "adult-oriented establishments" may conduct business.  The relevant portions of §10.40.050 are as follows:

> A. *Definitions.* For the purpose of this section, the following words and phrases shall have the meanings indicated in this subsection:
>
> *Adult-oriented establishment, or adult business,* shall include, but is not limited to, adult bookstores, adult motion picture theaters, adult mini-motion picture establishments, adult cabarets, physical culture studios, massage parlors, escort services, or similar type businesses where, by the nature of the business, minors under the age of 18 are denied entry, or businesses which are prohibited by law from having minors or unaccompanied minors on the premises for reasons other than the sale of liquor. If a premises, whose primary business is overnight lodging, offers adult movies via a cable, closed circuit or pay per view system, in the absence of any other adult entertainment activities, the availability of such movies, does not render the business an adult-oriented establishment for the purposes of this section.
> . . .
>
> *Adult cabaret* means a cabaret which features topless dancers, strippers, male or female impersonators, or similar entertainers. An adult cabaret does not include an establishment licensed for sale of alcoholic beverages.
> . . .
>
> *Specified sexual activities means simulated or actual:*
>
> >    a. Showing of human genitals in a state of sexual stimulation or arousal.
> >
> >    b. Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.
> >
> >    c. Fondling or touching of human genitals, pubic region, buttock, anus or female breasts.[4]
> >
> >    d. The intrusion of any object into the genital or anal opening regardless of whether the act was consensual.
> >
> >    e. A separation of a minimum of four feet shall be maintained between entertainers, dancers and/or strippers and patrons.[5]
> . . .
>
> I. *Revocation of license.*

---

[4]The parties refer to this provision of the Ordinance as the "No Touch" provision.

[5] The parties refer to the four-foot requirement as "the buffer zone."

     1. The municipal clerk may revoke or suspend a license or permit for any of the following reasons:

. . .

         g. Any of the following offenses are committed by any person at the location to which an adult business license has been issued:

         . . .

         (3) Allowing any person on the premises to engage in any of the specified sexual activities listed in 10.40.050A.

. . .

J. Physical condition of premises; sanitation requirements.

. . .

         3. Exterior.

         . . .

         d. No adult entertainment shall be open to view from outside the licensed premises, or broadcast to any site outside the licensed premises. Permanent barriers shall be installed and maintained at each entrance and exit to screen the interior of the premises from public view. Exterior windows shall be covered with opaque covering at all times.

It is undisputed that Plaintiff operates as an "adult-oriented establishment," and is licensed as an "adult cabaret." The 2005 amendments imposed additional restrictions on such establishments, including a requirement that "a separation of a minimum of four (4) feet shall be maintained between entertainers, dancers and/or strippers and patrons," (the "No Touch" provision) as well as a restriction prohibiting "broadcasting to any site outside the licensed premises." In addition, the 2005 Amendments added language allowing revocation of a business license in the event that any licensee or its employees allows "any person on the premises to engage in any of the specified sexual activities listed in 10.40.050A."[6]

---

[6]AMC § 10.40.050(I)(1)(g)(3).

Plaintiff complains that the ordinance, as amended, is in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 5, 7 and 22 of the Alaska Constitution, because "it bans or unlawfully infringes on constitutionally protected dance entertainment in Anchorage."[7]  Plaintiff further complains that the definitions set forth in the ordinance are "unconstitutionally vague and overbroad."[8]  Plaintiff alleges that "the ordinance is an unconstitutional prior restraint on constitutionally protected expression which is not supported by any evidence of 'adverse secondary effects.'"[9]  Plaintiff further alleges a violation of the Equal Protection Clause of the Fourteenth Amendment (as well as the corollary provisions of the Alaska Constitution), violation of the Commerce Clause, and a deprivation of the lawful use of property without due process.[10]

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[11]

---

[7]Docket 1 at 12.

[8]*Id*.

[9]*Id*.

[10]Docket 1 at 12-13.

[11]Fed. R. Civ. P. 56(c).

4

The moving party bears the initial burden of proof for showing that no fact is in dispute.[12]   If the moving party meets that burden, then it falls upon the non-moving party to refute with facts which would indicate a genuine issue of fact for trial.[13]   Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative.[14]

## DISCUSSION
### Defendant's Motion for Partial Summary Judgment[15]

Defendant seeks summary judgment on five of Plaintiff's claims, arguing that they are insufficient as a matter of law under both Federal and State analyses. Specifically, Defendant seeks summary judgment regarding Plaintiff's claims that:    1) the Municipality's four foot rule unconstitutionally infringes on protected expression;[16] 2) AMC 10.40.050 violates the equal protection doctrine;[17]  3) AMC 10.40.050 is unconstitutionally overbroad;[18]  4) AMC 10.40.050  is

---

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[14]*Id.* at 249-50*, See also, In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[15]Docket 41.

[16] *See* Complaint at ¶¶ 32 & 43( c), (e), (m) (g) & (h).

[17] See Complaint at ¶¶ 36 & 43(n).

[18] See Complaint at ¶¶ 33 & 43(b).

unconstitutionally vague;[19] and 5) the broadcasting restriction of AMC 10.40.050 violates the Commerce Clause of the United States Constitution.[20]

### Protected Expression

Paragraph 43(c) of the Complaint alleges that AMC 10.40.050 is a content-based restriction on speech. Paragraph 43(e) alleges "there are no facts that would support the claim that an 'adult cabaret' . . . causes any adverse secondary effects that Anchorage has a right to regulate." Paragraph 43(g) alleges that AMC 10.40.050 "[is] not narrowly tailored nor are the restrictions contained reasonably related to any legitimate and/or substantial government interest." Paragraph 43(h) alleges that the ordinance is not supported by any evidence that it would be effective in furthering any substantial government interest. Paragraph 43(m) alleges that AMC 10.40.050 "attempts to impose unconstitutional conditions on one's right to engage in constitutionally protected activities."

The Municipality argues that AMC 10.40.050 only regulates conduct that is not constitutionally protected; that constitutional principles do not require that AMC 10.40.050 be "narrowly tailored" to serve a government interest; that the ordinance need only be substantially related to a legitimate government goal, and it meets this standard; that there are abundant facts in the Municipality's legislative record and in the decisions of other courts that adverse secondary effects exist; and that AMC 10.40.050 does not infringe upon constitutionally protected activity, nor are the restrictions it imposes

---

[19] *See* Complaint at ¶¶ 33 & 43(p).

[20] *See* Complaint at ¶¶ 38 & 43(i).

unconstitutional. Because the Federal and Alaska analyses differ with respect to protected expression, they will be examined separately.

### - *Federal Analysis*

"[F]ive members of the Supreme Court have agreed that nude dancing is expressive conduct protected by the First Amendment, albeit only at the 'outer ambit' of the Amendment's protection."[21] "The level of constitutional protection and the type of analysis we apply to nude dancing regulations differs depending upon the type and purpose of the restriction. In all situations, however, the government has the burden of proof to justify burdening freedom of expression. "[22]

Extensive briefing was devoted to the determination of whether strict or intermediate scrutiny of the ordinance is appropriate in this matter. Plaintiff argues that the ordinance should be subject to strict scrutiny, as the amendments were drafted solely to prohibit a particular type of expression. The Municipality, however, suggests that intermediate scrutiny is appropriate, arguing that the amendments are nothing more than "time, place and manner restrictions."

The Ninth Circuit has held that "Restrictions upon nude dancing are considered content-neutral because they are aimed at the so-called secondary effects of nude dancing and not at expressive conduct. 'The State's interest in preventing harmful secondary effects is not related to the suppression of expression. In trying to control the secondary effects of nude dancing, the ordinance seeks to deter crime

---

[21] *Clark v. City of Lakewood*, 259 F.3d 996, 1004-05 (9th Cir. 2001), (citing *City of Erie v. Pap's A.M.,* 529 U.S. 277, 289 (2000); *Colacurcio v. City of Kent,* 163 F.3d 545, 549 (9th Cir. 1998)).

[22] *Id.*

and the other deleterious effects caused by the presence of such an establishment in the neighborhood.'"[23]  For example, the Supreme Court has held that a zoning ordinance prohibiting adult movie theaters from locating within 1,000 feet of "sensitive locations" was properly analyzed as a "time, place, and manner regulation," as it did not ban adult theaters altogether.[24]  Similarly, in this case, nude dancing is not banned altogether.  Rather, the "place and manner" of the dancing are impacted by the four-foot buffer zone.

The Supreme Court in *Alameda Books* went on to explain: "we next considered whether the ordinance was content neutral or content based.  If the regulation were content based, it would be considered presumptively invalid and subject to strict scrutiny."[25]  The Supreme Court noted that the ordinance in *Renton* was aimed not at the <u>content</u> of the films shown at adult theaters, but rather at the <u>secondary effects</u> of such theaters on the surrounding community.  Therefore, the *Renton* ordinance was deemed content neutral.[26]

It has been suggested, however, that "virtually all regulation of adult businesses is content-based."[27]  Acknowledging that content-based regulations are normally subject to strict scrutiny, the

---

[23]*Clark*, 259 F.3d at 1004-05 (quoting *Pap's A.M.,* 529 U.S. at 289-93).

[24]*City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 434 (2002) (citing *Renton v. Playtime Theatres,* 475 U.S. 41, 46 (1986)).

[25]*Id.*

[26]*Id.*

[27]*Gammoh v. City of La Habra*, 395 F.3d 1114, 1123 (9th Cir. 2005) (citing *Alameda Books*, 535 U.S. at 448 (Kennedy, J., concurring)).

Ninth Circuit noted that "content-based regulations may be analyzed under intermediate scrutiny if two conditions are met: 1) the ordinance regulates speech that is sexual or pornographic in nature; and 2) the primary motivation behind the regulation is to prevent secondary effects."[28]

There is no dispute here that the ordinance regulates speech that is sexual in nature, but the parties disagree as to the "primary motivation behind the regulation." Plaintiff complains that the 2005 amendments were made without the Assembly making appropriate legislative findings.[29] Specifically, Plaintiff complains that despite Defendant's argument that the 2005 amendments (including the "buffer zone") were enacted to eliminate the risk of prostitution, sexual assaults, and sexually transmitted diseases, the Assembly made no such findings. In support of its position, Plaintiff presents affidavits of expert witnesses containing testimony contradicting the argument that adult establishments generate unwanted "secondary effects" such as prostitution, drug sales, and the transmittal of sexually transmitted diseases.[30] Affidavits of the owners of Sands North, Inc., as well as those of employees, indicate that no prostitution or other illegal activity takes place at Plaintiff's establishment.[31] Plaintiff's expert has conducted an analysis of crime in the Anchorage for the past five years and has concluded that adult

---

[28]*Id.*

[29]Docket 53 at 12.

[30]Docket 53 at 17-20.

[31]Docket 53 at 20-23.

businesses *in Anchorage* are not associated with an increase in crime or other secondary effects.[32] Rather, argues Plaintiff, the amendments were drafted solely to prohibit a particular type of expression.

The Municipality asserts that the Anchorage Assembly considered direct eyewitness testimony, academic studies, findings from other jurisdictions, and decided caselaw in amending the ordinance to prevent secondary effects such as prostitution, drug use, drug sales, and other illegal activities that historically occur near adult-oriented businesses. Defendant has presented evidence that such secondary effects were acknowledged when the Assembly approved a previous version of the ordinance in 1994.[33] The four-foot restriction is justified by the Municipality as a reasonable time, place and manner restriction to prevent potential drug transactions and solicitations for prostitution, noting that the Ninth Circuit Court of Appeals repeatedly has upheld "buffer zone" requirements like the one in AMC 10.40.050.[34] Defendant contends that although Sands North has produced evidence tending to disprove the link between adult businesses and adverse secondary effects, this evidence is not sufficient to cast doubt on the Municipality's rationale for passing its ordinance. Indeed, the Ninth Circuit has held that

---

[32] Docket 53, Ex. D, ¶'s 79-83.

[33] "[A]dult businesses have been determined, by court accepted independent studies, to produce secondary impacts on surrounding land uses. The impacts include a decline in property values, and increase in the level of criminal activity including prostitution, rape, and assaults in the vicinity of these types of enterprises . . ." Docket 42, Exhibit 1.

[34] *See Kev, Inc. v. Kitsap County*, 793 F.2d 1053 (9th Cir. 1986) (ten foot buffer zone did not significantly burden First Amendment Rights), *BSA, Inc. v. King County*, 804 F.2d 1104 (9th Cir. 1986) (six-foot buffer zone upheld); *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Cir. 1998) (ten-foot buffer zone upheld); *Gammoh v. City of La Habra*, 395 F.3d 1114 (9th Cir. 2005) (two-foot buffer zone upheld).

there is no authority requiring that a legislative body must function like a court of law every time it considers legislation that may implicate the First Amendment.[35]  The Supreme Court has explained:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.[36]

Here, the court finds that although the ordinance may be content-based under the rationale in *Gammoh*, the Municipality sought to regulate speech that is sexual or pornographic in nature, and  the primary motivation behind the regulation was to prevent secondary effects.  Accordingly, the ordinance may be analyzed under intermediate scrutiny.

A statute will survive intermediate scrutiny if it: 1) is designed to serve a substantial government interest; 2) is narrowly tailored to serve that interest; and 3) leaves open alternative avenues of communication.[37]

The cases cited herein have universally agreed that a government's interest in curbing the secondary effects associated with adult entertainment establishments is substantial.[38]  "Municipalities may reasonably find that separation requirements serve the interest of reducing the secondary effects

---

[35]*BSA, Inc.,* 804 F.2d at 1112.

[36]*Renton*, 475 U.S. at 51-2.

[37]*Gammoh*, 395 F.3d at 1125-26. *See also Alameda Books, Inc.,* 535 U.S. at 434*; Renton,* 475 U.S. at 51-53.

[38]*See Gammoh*, 395 F.3d at 1126; *BSA, Inc.,* 804 F.2d at 1111.

11

of adult establishments. 'Buffers' between patrons and performers prevent the exchange of money for prostitution or drug transactions and allow enforcement of 'no touching' provisions, which would otherwise be virtually unenforceable."[39]

The narrow tailoring requirement is satisfied so long as the government's asserted interest "would be achieved less effectively absent the regulation."[40] As previously noted, the Ninth Circuit consistently has upheld buffer zones of various degrees,[41] and specifically has held that a "two-foot separation requirement is narrowly tailored to prevent the exchange of money or drugs and to allow enforcement of the 'no touching' provisions.[42] In *BSA, Inc., v. King County*, the Ninth Circuit upheld a six-foot buffer zone, noting that the complaining parties "failed to explain how the distance requirement impinges upon their First Amendment rights. The requirement does not prohibit nude entertainment. It also does not diminish the expressiveness of nude entertainment."[43]

Finally, the ordinance leaves open ample alternative avenues of communication, since the dancers are still free to engage in nude dancing. "The challenged Ordinance leaves dancers free to convey their erotic message as long as they are two feet away from patrons. Although the message may

---

[39] *Gammoh,* 395 F.3d at 1127.

[40] *Colacurcio,* 163 F.3d at 553.

[41] *See* fn. 34, *supra*.

[42] *Gammoh*, 395 F.3d at 1127-28.

[43] *BSA, Inc.*, 804 F.2d at 1111.

be slightly impaired from this distance, it cannot be said that a dancer's performance 'no longer conveys eroticism' from two feet away."[44]  "Erotic dancers still have reasonable access to their market."[45]

   - *State Analysis*

   In *Mickens v. Kodiak*, the Alaska Supreme Court specifically held that nude dancing is protected under the freedom of speech clause of the state constitution.[46]  The *Mickens* court found that an ordinance prohibiting nude dancing in establishments where alcohol was served could not survive scrutiny under the state constitution, because the ordinance was aimed at the content of the performances.[47]  The Alaska Supreme Court was not convinced that the ordinance was directed at suppressing criminal activity in the vicinity of the bars offering nude dancing, finding that "the city has offered no justification for distinguishing between entertainment involving nudity from other forms of entertainment as a means to prevent crowds from congregating in establishments where intoxicating liquor is sold.  Without such a justification, the ordinance cannot stand."[48]

   Plaintiff asserts the Anchorage Ordinance, as amended, similarly violates the Alaska Constitution. Plaintiff argues that unlike the U.S. Supreme Court, which has permitted the regulation of nudity on the basis of a showing of "secondary effects of adult entertainment," the Alaska Supreme

---

[44] *Gammoh*, 395 F.3d at 1128 (citing *Dream Palace*, 384 F.3d at 1021).

[45] *Kev Inc.*, 793 F.2d at 1061.

[46] *Mickens v. Kodiak*, 640 P.2d  818, 820 n.3 (Alaska 1982), (citing Alaska Constitution, Article I, § 5 ("Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."))

[47] *Id.* at 821-22.

[48] *Id.* at 822.

13

Court has stated that "it is absurd to punish a person 'because his neighbors have no self-control and cannot refrain from violence.'"[49] The *Mickens* court held that "it is not permissible to suppress constitutionally protected forms of expression in order to curb the lawless conduct of some of those who are reacting to it, unless other law enforcement techniques which do not infringe first amendment freedoms are unavailable or likely to be ineffective."[50] In this case, Plaintiff suggests that the government cannot meet its significant burden of demonstrating not only a compelling governmental reason to restrict performances before adult audiences who knowingly and willingly have come to view them, but also, that the means chosen to do so are not the most narrowly drawn means available to serve that interest. Plaintiff asserts that the municipality must demonstrate that a no sexual contact provision as found in the liquor code would not be sufficient to serve the government's interest or that a one-, two- or three-foot buffer zone would not suffice.

The *Mickens* case, however, is distinguishable from the case at hand. In *Mickens*, the City of Kodiak enacted an ordinance that prohibited nudity by waiters, waitresses and entertainers in establishments serving alcohol. The City justified the ordinance by citing an increase in police calls originating at the location of nude dancing. The Alaska Supreme Court found that "while this. . . may well be the result of nude dancing, there is no reason to suppose that other forms of entertainment, not involving nudity, would not also increase business and therefore police calls."[51] "Once a fundamental

---

[49]*Mickens*, 640 P.2d at 822.

[50]*Id.*

[51]*Id.*

14

right under the constitution of Alaska has been shown to be involved and it has been further shown that this constitutionally protected right has been impaired by governmental action, then the government must come forward and meet its substantial burden of establishing that the abridgment in question was justified by a compelling governmental interest. . . . [T]he adoption of the compelling interest standard best comports with the kind of ordered liberty which represents the core of Alaska's constitutional heritage."[52]

In the present case, nude dancing has not been prohibited.  Rather, a four-foot buffer zone has been mandated for the purpose of preventing drug transactions and solicitations for prostitution from taking place, both of which will be significantly less likely if entertainers and patrons maintain their distance from one another. The question, therefore, is whether the Municipality has sustained its "substantial burden" of establishing that the impairment of Plaintiff's rights is justified by a "compelling governmental interest."[53]  As discussed in the previous section, Federal caselaw has found that a government's interest in curbing the secondary effects associated with adult entertainment establishments is substantial,[54] and this Court finds that such a substantial interest is the equivalent of a "compelling interest" under the Alaska analysis.

---

[52]*Messerli v. State*, 626 P.2d 81, 84 (1980)(internal quotation omitted). .

[53]*Id.*

[54]*See Gammoh*, 395 F.3d at 1126; *BSA, Inc.,* 804 F.2d at 1111.

**Equal Protection**

Paragraph 43(n) of the complaint alleges that AMC 10.40.050 violates the equal protection doctrine under the United States and Alaska constitutions. Plaintiff complains that the ordinance seeks to impose regulations on its business which are greater than those imposed upon alcoholic serving establishments offering the identical type of entertainment as the Plaintiff. Plaintiff complains that businesses which offer similar entertainment as the Plaintiff, but which also hold a liquor license, are not required to be licensed, nor are they required to comply with the licensing and regulatory provisions, although no justification is found for this disparate treatment and no legislative findings are stated to support this distinction.[55]

> *- Federal Analysis*

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. . . . The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

> The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy-a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny

---

[55]Docket 53 at 12-13.

and will be sustained only if they are suitably tailored to serve a
compelling state interest. Similar oversight by the courts is due when
state laws impinge on personal rights protected by the Constitution.[56]

The Ninth Circuit has examined the issue of equal protection as it relates to adult-oriented

businesses, and has held that ordinances directed at the secondary effects of adult businesses, are

permissible time, place and manner regulations:

> So long as alternative avenues of expression are provided, a city may
> choose to treat adult businesses differently from other businesses, . . . and
> even may treat one category of adult businesses differently from other
> categories of adult businesses. . . . A regulation of secondary effects of
> adult businesses is not a regulation of content; a classification of adult
> businesses therefore does not impinge on a fundamental right, nor does
> it involve a suspect classification. The ordinance may therefore survive
> an equal protection challenge if it has a rational basis. [57]

Accordingly, the Municipality need articulate only a rational basis for its distinction. The

Municipality states that it excluded liquor establishments from its regulation because the State already

regulates alcohol-related businesses, and the Municipality felt it would be redundant to do so itself.

Although somewhat arbitrary, the U.S. Supreme Court has acknowledged that legislation of this sort

is not an exact science:

> The problem of legislative classification is a perennial one, admitting of
> no doctrinaire definition. Evils in the same field may be of different
> dimensions and proportions, requiring different remedies. Or so the
> legislature may think. . . . Or the reform may take one step at a time,

---

[56]*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (internal citations omitted).

[57]*Isbell v. City of San Diego*, 258 F.3d 1108, 1116 (9th Cir. 2001) (citing *Renton*, 475 U.S. at 51-53).

17

> addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . . The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.[58]

"Invidious discrimination is an engine of oppression, subjugating a disfavored group to enhance or maintain the power of the majority."[59]  Finding no invidious discrimination here, Sands North's federal equal protection claim fails as a matter of law.

### - State Analysis

Article I, section 1 of the Alaska Constitution mandates "equal treatment of those similarly situated."  The Alaska Supreme Court has stated:

> In reviewing equal protection claims we view the enactment in question as creating, by its differential treatment, separate groups.... This separation by different legal treatment is referred to as a 'classification.' We ordinarily review a classification under Alaska's equal rights clause by asking whether *a legitimate reason* for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a *fair and substantial relationship* to that reason.[60]

Minimal scrutiny under Alaska's constitution, therefore, may be more demanding than under the federal constitution.[61]  "We have long recognized that [this clause] affords greater protection to individual rights than the United States Constitution's Fourteenth Amendment. To implement Alaska's

---

[58]*Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 489 (1955) (internal citations omitted).

[59]*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 243 (1995) (Stevens, J., dissenting).

[60]*Stanek v. Kenai Peninsula Borough*, 81 P.3d 268, 270 (Alaska 2003) (emphasis added).

[61]*Id.* at 272 (internal quotation and citation omitted).

18

more stringent equal protection standard, we have adopted a three-step, sliding-scale test that places a progressively greater or lesser burden on the state, depending on the importance of the individual right affected by the disputed classification and the nature of the governmental interest at stake....'"[62]

Alaska's sliding scale approach involves the following process:

First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review.... Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.[63]

Even applying the highest form of scrutiny to the classification in this instance, the Court finds no equal protection violation here. As previously discussed, the Municipality's interest in

---

[62]*Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska, 2005)(internal citations and quotations omitted).

[63] *Id.* at 789.

curbing the secondary effects associated with adult entertainment establishments is a substantial interest under Federal law, the functional equivalent of a "compelling interest" under the Alaska analysis. The "fit between means and ends" must be very close, and "if the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated."[64]

Although it is true that alcohol establishments are exempt from AMC 10.40.050, the Municipality aptly points out that alcohol establishments are extensively regulated by the State of Alaska, under Title 4 of the Alaska Statutes and Title 13 Chapter 104 of the Alaska Administrative Code. State regulations differ in some respects from the Municipal ordinance, but they still prohibit sexual contact between customers and patrons.[65] Since alcohol establishments are regulated by the State, the Municipal Assembly saw no need to extend its regulations to bars, lest the establishments serving alcohol may find themselves subject to conflicting State and Municipal regulations.

The Court is not persuaded that the State's *failure* to regulate nude dancing in juice bars should prevent the Municipality from regulating such activity at all for fear of violating equal protection. The four-foot buffer rule is a limitation that is specifically tailored to prevent specific activities, such as drug transactions or solicitations for prostitution. The ordinance satisfies the strictest end of the spectrum of the the of the state analysis.

The Alaska Supreme Court held in *Mickens* that "it is not permissible to suppress constitutionally protected forms of expression in order to curb the lawless conduct of some of those

---

[64]*Id.*

[65]13 AAC 104.180(a)(3).

who are reacting to it, unless other law enforcement techniques which do not infringe first amendment freedoms are unavailable or likely to be ineffective."[66]  However, *Mickens* prevented a wholesale ban on nude dancing absent clear reasons for the ban.  *Mickens* did not, however, address the extent to which nude dancing could be regulated without totally banning the activity.  Plaintiff asserts that the Municipality must demonstrate that a no sexual contact provision as found in the liquor code would not be sufficient to serve the government's interest or that a one-, two- or three-foot buffer zone would not suffice.   This Court disagrees.  The difference between a one-foot and a four-foot buffer zone is *de minimis.*  Furthermore, there is no evidence in the record that the four-foot buffer zone is more restrictive than the "no sexual contact" provision of the State liquor code.

A duly enacted law or rule, including a municipal ordinance, is presumed to be constitutional. Courts should construe enactments to avoid a finding of unconstitutionality to the extent possible.[67]  The Court finds no equal protection violation under Alaska law.

**Vagueness and Overbreadth**

Paragraph 43(b) of the Complaint alleges that AMC 10.40.050 is unconstitutionally overbroad. Paragraph 43(p) alleges that "some or all of the definitions contained in the Ordinance are vague and facially overbroad."

---

[66]640 P.2d at 822.

[67]*Treacy v. Municipality of Anchorage*, 91 P.3d 252, 260 (Alaska. 2004).

*- Vagueness*

Plaintiff complains that the definitions of "specified sexual activities" and "adult business" are vague, and the use of the word "simulated" renders other definitions vague, requiring enforcement based upon the "subjective viewpoint of others," which has been deemed unconstitutional.[68]  The Municipality argues that if the ordinance is found to be vague in any respect, it is entitled to resolve the problem by narrowing the construction of its terms.

When a statute is challenged on constitutional grounds, "it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."[69] A statute should not be declared unconstitutional unless it "could not be construed so as to avoid all constitutional difficulties."[70]

"To survive a vagueness challenge, a regulation must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

---

[68]*See Free Speech Coalition v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (holding a provision that criminalized sexually explicit images that "appear to be a minor" or "convey the impression" that a minor is depicted unconstitutionally vague because it was unclear "whose perspective defines the appearance of a minor, or whose impression that a minor is involved leads to criminal prosecution").

[69]*U.S. v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369 (1971).

[70]*Id.*

22

manner that does not encourage arbitrary and discriminatory enforcement.'"[71]  "The fact that the regulation will necessarily alter the dancers' conduct does not make it vague.[72]

The Supreme Court has observed that:

> [T]he more important aspect of [the] vagueness doctrine is not actual notice but the other principal element of the doctrine - the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . . Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policeman, prosecutors, and juries to pursue their personal predilections.[73]

Plaintiff further suggests that the amendments to the Ordinance are examples of poor drafting.  It notes that the "buffer zone" requirement is articulated as part of the *definition* section of AMC 10.40.50A.  "Thus, the first question that arises is whether this provision is a regulatory provision at all, or rather is that a term which is merely definitional without any regulatory impact."[74]  Plaintiff suggests that  precision in draftsmanship is the touchstone of constitutionality for a regulation which impacts upon First Amendment rights, and cites this Ordinance as an example of poor draftsmanship that rises to the level of unconstitutionality.[75]

---

[71]*Gammoh,* 395 F.3d at 1119 (citations omitted).

[72]*Id., at 1120.*

[73]*Kolender v. Lawson*, 461 U.S. 352, 358 (internal citations and quotations omitted).

[74]Docket 53 at 49.

[75]Docket 53 at 38, *citing Keyishian v. Board of Regents*, 385 U.S. 589, 603-04 (1967).

23

The Court agrees with Plaintiff that the amendments to the ordinance are poorly drafted.

Specifically, the Court is puzzled by the definition of "Specified sexual activities."

*Specified sexual activities means simulated or actual:*

> a. Showing of human genitals in a state of sexual stimulation or arousal.

> b. Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus.

> c. Fondling or touching of human genitals, pubic region, buttock, anus or female breasts.[76]

> d. The intrusion of any object into the genital or anal opening regardless of whether the act was consensual.

> e. A separation of a minimum of four feet shall be maintained between entertainers, dancers and/or strippers and patrons.[77]

At oral argument, the Municipality specifically stated that it did not intend to enforce the ordinance with respect to "simulated" activities. Severance of the word "simulated" from the ordinance would appear to remedy any concerns regarding "subjective interpretation" of the prohibited activities, without altering the apparent regulatory intent of the ordinance to prohibit actual sexual activities. Having stated on the record that the Municipality does not intend to enforce the "simulated" aspect of the provision, the Court presumes that the word "simulated" will be severed from the Ordinance.

---

[76]The parties refer to this provision of the Ordinance as the "No Touch" provision.

[77]§10.40.050(A).

24

More puzzling is subsection "e" which, as Plaintiffs have discussed, is a regulatory provision encapsulated in a definitional section of the Ordinance. While the provision, "A separation of a minimum of four feet shall be maintained between entertainers, dancers and/or strippers and patrons," is not vague standing alone, its presence tagged on to the end of the definition of *"Specified sexual activities"* appears misplaced. The prohibitive language clearly does not define a sexual activity. Nevertheless, the Assembly put teeth in the Ordinance in §10.40.050(I)(1)(5)(3), which allows the municipal clerk to revoke or suspend an adult business license if any person at the location to which an adult business license has been issued allows any person on the premises to engage in any of the specified sexual activities listed in 10.40.050A. While the drafting may be inartful, the prohibited activities are not vague.

### *- Overbreadth*

Plaintiff further complains that the definition of "specified sexual activities" is overbroad. A law is overbroad under the First Amendment if it "reaches a substantial number of impermissible applications" relative to the law's legitimate sweep.[78]  "The overbreadth doctrine exists 'to prevent the chilling of future protected expression.' . . . Therefore, any law imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down."[79] However, "the mere fact that one can conceive of some impermissible applications of a statute is not

---

[78]*New York v. Ferber*, 458 U.S. 747, 771 (1982).

[79]*Deja Vu of Nashville, Inc., v. Metropolitan Gov't of Nashville and Davidson County, Tenn.,* 274 F.3d 377, 387 (6th Cir. 2001*) (*citing *Staley v. Jones*, 239 F.3d 769, 779 (6th Cir. 2001)).

sufficient to render it susceptible to an overbreadth challenge."[80]   While it is true that "[t]he

Constitution gives significant protection from overbroad laws that chill speech within the First

Amendment's vast and privileged sphere,"[81] a finding of overbreadth does not mean the ordinance

would automatically be struck down.  The Supreme Court has held:

> The scope of the First Amendment overbreadth doctrine, like most
> exceptions to established principles, must be carefully tied to the
> circumstances in which facial invalidation of a statute is truly
> warranted. Because of the wide-reaching effects of striking down a
> statute on its face at the request of one whose own conduct may be
> punished despite the First Amendment, we have recognized that the
> overbreadth doctrine is "strong medicine" and have employed it with
> hesitation, and then "only as a last resort." We have, in consequence,
> insisted that the overbreadth involved be "substantial" before the
> statute involved will be invalidated on its face.[82]

 If the statute or ordinance is overbroad and is not subject to a narrowing construction, it

should not be struck down on its face if it is severable.[83]

Defendant argues that AMC 10.40.050 is not overbroad, because it does not reach any

constitutionally protected conduct. Even if the ordinance were overbroad, it is not overbroad as

applied to Sands North, because sexual touching of nude dancers by patrons is conduct that may be

---

[80]*Gammoh,* 395 F.3d at 1121.

[81] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).

[82]*Ferber*, 458 U.S. at 769.

[83]*Id*. at n. 24 (citing *Thirty-seven Photographs*, 402 U.S. 363).

26

legitimately proscribed.[84]   Finally, Defendant argues that any part of the ordinance that proves to be

irreparably overbroad is severable.

Finding that a statute prohibiting child pornography was not overbroad, the Supreme Court

stated:

> We consider this the paradigmatic case of a state statute whose
> legitimate reach dwarfs its arguably impermissible applications. New
> York, as we have held, may constitutionally prohibit dissemination of
> material specified in [the statute].  While the reach of the statute is
> directed at the hard core of child pornography, the Court of Appeals
> was understandably concerned that some protected expression,
> ranging from medical textbooks to pictorials in the National
> Geographic would fall prey to the statute. How often, if ever, it may
> be necessary to employ children to engage in conduct clearly within
> the reach of [the statute] in order to produce educational, medical, or
> artistic works cannot be known with certainty. Yet we seriously doubt,
> and it has not been suggested, that these arguably impermissible
> applications of the statute amount to more than a tiny fraction of the
> materials within the statute's reach. Nor will we assume that the New
> York courts will widen the possibly invalid reach of the statute by
> giving an expansive construction to the proscription on "lewd
> exhibition[s] of the genitals." Under these circumstances, [the statute]
> is "not substantially overbroad and ... whatever overbreadth may exist
> should be cured through case-by-case analysis of the fact situations to
> which its sanctions, assertedly, may not be applied."[85]

In light of *Ferber*, the Court sees no legitimate concern of overbreadth under the Ordinance

in this case.

---

[84] The Court need not address this standing argument.  "'The overbreadth doctrine constitutes an exception to traditional rules of standing' and allows claimants to assert the rights of parties not before the court."  *Deja Vu of Nashville, Inc.*, 274 F.3d at 387 (citing *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir. 1994)).

[85]*Ferber*, 458 U.S. at 773-74 *(*citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615-616 (1973).

**Broadcast Restriction**

Paragraph 43(i) of the Complaint alleges that the ordinance violates the Commerce Clause of

the United States Constitution. Pursuant to the Amended Ordinance:

> No adult entertainment shall be open to view from outside the licensed
> premise, **or broadcast to any site outside the licensed premise**.
> Permanent barriers shall be installed and maintained at each entrance
> and exit to screen the interior of the premise from public view.
> Exterior windows shall be covered with opaque covering at all times.

Plaintiff complains that the language which prohibits the broadcast of entertainment from

inside the premises to any other location violates not only the Commerce Clause, but also the First

Amendment, Art. I, Sec. 5 of the Alaska Constitution.

### *- Commerce Clause*

In this case, the Ordinance in question prohibits the broadcasting of adult entertainment from

inside the premises to locations outside the premises.  The Municipality argues that AMC 10.40.050

does not violate Commerce Clause doctrine, because it simply does not discriminate against out of

state commerce.

> The dormant implication of the Commerce Clause prohibits state ...
> regulation ... that discriminates against or unduly burdens interstate
> commerce and thereby imped[es] free private trade in the national
> marketplace. . . .   The unique nature of the Internet highlights the
> likelihood that a single actor might be subject to haphazard,
> uncoordinated, and even outright inconsistent regulation by states that

the actor never intended to reach and possibly was unaware were being accessed.[86]

In *American Booksellers Foundation v. Dean*, the Second Circuit considered a Vermont statute which prohibited the use of the internet to distribute sexually explicit materials to minors.[87] The Court observed that "the Constitution permits a state to impose restrictions on a minor's access to material considered harmful to minors even if the material is not obscene with respect to adults, but such restrictions aimed at minors may not limit non-obscene expression among adults."[88] The Court ultimately found that the Vermont law burdened protected speech and was not sufficiently narrowly tailored.[89] The Court explained that the dormant Commerce Clause protects against state regulations that "erect barriers against interstate trade."[90] "State regulations may burden interstate commerce 'when a statute (i) shifts the costs of regulation onto other states, permitting in-state lawmakers to avoid the costs of their political decisions, (ii) has the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction, or (iii) alters the interstate flow of the goods in question, as distinct from the impact on companies trading in those goods.'"[91] In

---

[86] *ACLU v. Johnson*, 194 F.3d 1149, 1160-61 (10th Cir. 1999)(internal quotations and citations omitted).

[87] *American Booksellers Foundation v. Dean*, 342 F.3d 96, 98-99 (2nd Cir. 2003).

[88] *Id.* at 101 (citation omitted).

[89] *Id.* at 102.

[90] *Id.* (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980)).

[91] *Id.* (internal quotations and citations omitted).

*Dean*, the Second Circuit observed that although Vermont aimed to protect only Vermont minors, the rest of the nation would be forced to comply with Vermont's regulation or risk prosecution.[92]

The Ordinance here presents the inverse situation.  The cost of the ordinance is not shifted to other states; out-of-state commerce is not conducted at Anchorage's direction; the interstate flow of goods is not impacted.  The Court finds that AMC 10.40.050 only prohibits broadcasting activity from *within* the Municipality by entities that are *governed by* the Municipality.  There is no dormant Commerce Clause issue here.

### - *First Amendment*[93]

The Municipality argues that although Plaintiff characterizes its proposed internet usage as "broadcasting," internet use is not included in the definition of broadcasting under federal or state law.[94]  It further argues that Plaintiff is not prohibited from displaying nudity over the internet, "it simply cannot do so from the premises of an adult cabaret, because no adult entertainment may be open to view from outside the licensed premises."  The Municipality takes irreconcilable positions on this issue.  If, as it argues, internet usage is not "broadcasting," then the broadcast restriction in the Ordinance does not apply to Plaintiff's proposed internet use.  If, on the other hand, it intends to

---

[92]*Id.* at 103.

[93]The Municipality did not seek summary judgment on the issue of whether the broadcast restriction violates the First Amendment.  Plaintiff raised this argument for the first time in its Opposition to the Motion for Summary Judgment.

[94]*See* 47 U.S.C. § 153(6); AS § 44.21.290(2).  The Court notes that AS § 44.21.290(2) states that public broadcasting "includes, but is not limited to, television and radio transmission," etc.

restrict the broadcasting of activities from inside an adult cabaret (via the internet or otherwise), then the Municipal Ordinance prohibits speech based solely upon its content, and must pass First Amendment scrutiny.

Plaintiff argues that the broadcast restriction is no different than those found to be unconstitutional in *Playboy,*[95] *Ashcroft,*[96] *Reno,*[97] *and Turner.*[98] This Court agrees. In *Reno*, the Supreme Court indicated that First Amendment scrutiny should be applied to the internet as to any other medium.[99] Since the Ordinance is a content-based speech restriction, it can stand only if it satisfies strict scrutiny.[100] "If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."[101]

When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.[102] "Content-based regulations are presumptively invalid, and the

---

[95]*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000).

[96]*Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002).

[97]*Reno v. ACLU*, 521 U.S. 844 (1997).

[98]*Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622 (1994)

[99]*Reno*, 521 U.S. at 870.

[100]*Playboy Entertainment Group, Inc.*, 529 U.S. at 813, (citing *Sable Communications of Cal., Inc. v. F.C.C.,* 492 U.S. 115, 126 (1989)).

[101]*Id. (*citing *Reno*, 521 U.S. at 874).

[102]*Id.* at 816.

Government bears the burden to rebut that presumption."[103]   Plaintiff argues that the legislative record in this case is devoid of such evidence and the Defendant has not offered any here.  The Court agrees.  The Municipality has not presented any evidence that its blanket ban on broadcasting is narrowly tailored to promote a compelling Government interest.

## CONCLUSION

Defendant seeks summary judgment regarding Plaintiff's claims that:  1) the Municipality's four foot rule unconstitutionally infringes on protected expression;[104] 2) AMC 10.40.050 violates the equal protection doctrine;[105] 3) AMC 10.40.050 is unconstitutionally overbroad;[106] 4) AMC 10.40.050  is unconstitutionally vague;[107] and 5) the broadcasting restriction of AMC 10.40.050 violates the Commerce Clause of the United States Constitution.[108]  Defendant is entitled to Summary Judgment as to these five specific claims.  Defendant's Motion for Partial Summary Judgment at Docket 41 is GRANTED.

Accordingly, the causes of action in the Complaint at paragraphs 33, 36, 38, 43(b), (e), (i), (n), & (p), and 49(b), (e), (i), (n), & (p) are DISMISSED WITH PREJUDICE.

---

[103]*Id.* at 817 (quotations and citation omitted).

[104] *See* Complaint at ¶¶ 32, 43(c), (e),(g) (h) & (m) and corresponding subsections of ¶ 49 .

[105] See Complaint at ¶¶ 36, 43(n) & 49(n).

[106] See Complaint at ¶¶ 33, 43(b) & 49(b).

[107] *See* Complaint at ¶¶ 33, 43(p) & 49(p).

[108] *See* Complaint at ¶¶ 38, 43(I) & 49(i).

To the extent that paragraphs 32, 43(c), (g), (h) & (m) and 49(c), (g), (h) & (m) seek redress for First Amendment violations due to the broadcast restriction, they are not dismissed.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 15th day of November, 2007.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge