IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SANDS NORTH, INC., d/b/a FANTASIES ON 5TH AVENUE, an Alaska Corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE CITY OF ANCHORAGE, ALASKA, an Alaska Municipal Corporation,<br><br>　　　　　Defendant. | Case No. 3:05-cv-256-TMB<br><br>**O R D E R**<br><br>**Re: Motion for Judgment on the Pleadings** |

　　　Plaintiff Sands North, Inc., d/b/a/ Fantasies on 5th Avenue, filed a Complaint for Declaratory and Injunctive Relief, Damages and Attorney Fees pursuant to 42 U.S.C. §§ 1983, 1988 and 2201, as well as pendant state law claims.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), and 2202.

　　　Defendant seeks Partial Summary Judgment[1], as well as Judgment on the Pleadings.[2]  This matter has been fully briefed by the parties,[3] and the Court heard oral argument on November 29, 2006.

### BACKGROUND

　　　The Court incorporates by reference the background information discussed in the Order Regarding Motion for Partial Summary Judgment at Docket 62.

---

　　　[1]Docket 41.  An order on the Motion for Partial Summary Judgment has been issued separately.

　　　[2]Docket 43.

　　　[3]Docket nos. 42, 53, 58, 44, 55 & 59.

1

**STANDARD OF REVIEW**

Judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, there are no issues of material fact and the moving party is entitled to judgment as a matter of law.[4] Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Where Fed. R. Civ. Pro. 12(c) is used to raise the defense of failure to state a claim, the motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6). That is, the Court dismisses Plaintiff's claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."[5] In deciding this motion, not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff.[6]

**DISCUSSION**

Defendant has moved that any claims not addressed by the motion for partial summary judgment be resolved under the standard that applies for judgment on the pleadings.

*- Prior Restraint*

**Paragraph 43(a)** of the Complaint states that AMC 10.40.050 "is a prior restraint on constitutionally protected speech activities . . . ." **Paragraph 43(d)** alleges that AMC 10.40.050 "fails to provide the procedural guarantees required . . . in *Freedman v. Maryland*, 380 U.S. 51 (1965) and *FW/PBS v. City of Dallas*, [493] U.S. 215 (1990)."

---

[4]*Heliotrope General, Inc. v. Ford Motor Co.,* 189 F.3d 971, 979 (9 Cir. 1999); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

[5]*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[6]*NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834-35 (9th Cir. 1980).

Regulations enacted for the purpose of restraining expression on the basis of its *content* are presumptively invalid.[7] A "prior restraint" exists when speech is conditioned upon the prior approval of public officials.[8] Although prior restraints "are not unconstitutional *per se*," they come to court bearing a heavy presumption against their validity.[9] Prior restraints are presumptively invalid because they typically involve "two evils that will not be tolerated": (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license.[10]

In this case, the Municipality argues as a jurisdictional issue that Sands North has failed to allege any injury, and therefore lacks standing. It notes that Fantasies' adult entertainment license already has been issued, so the claim of prior restraint is moot. The Court disagrees.

> In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. . . . Standing is recognized in such cases because of the . . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.[11]

Sands argues that the relevant question is not whether Plaintiff already possesses a license, but rather whether the ordinance delegates overbroad discretion to *revoke or suspend* that license.

In *City of Lakewood v. Plain Dealer Pub. Co.*, the United States Supreme Court found that:

> The regulatory scheme in the present case contains two features which, at least in combination, justify the allowance of a facial challenge. First, Lakewood's ordinance requires that the Newspaper

---

[7] *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986).

[8] *See, e.g., Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

[9] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (citations omitted).

[10] *Id.* at 225-27.

[11] *Freedman v. Maryland*, 380 U.S. 51, 56 (1965) (quotation omitted).

3

>apply annually for newsrack licenses. Thus, it is the sort of system in which an individual must apply for multiple licenses over time, or periodically renew a license. When such a system is applied to speech, or to conduct commonly associated with speech, the licensor does not necessarily view the text of the words about to be spoken, but can measure their probable content or viewpoint by speech already uttered. . . . A speaker in this position is under no illusion regarding the effect of the "licensed" speech on the ability to continue speaking in the future. Yet demonstrating the link between "licensed" expression and the denial of a later license might well prove impossible. While perhaps not as direct a threat to speech as a regulation allowing a licensor to view the actual content of the speech to be licensed or permitted, . . . a multiple or periodic licensing requirement is sufficiently threatening to invite judicial concern.[12]

Here, renewal of the license is required annually.[13] Revocation of the license is possible under various circumstances.[14] Under *Freedman* and *City of Lakewood*, Plaintiff has adequate standing to bring a prior restraint claim.[15]

On the merits, the Municipality argues that Sands North has failed to show that AMC 10.40.050 is an unconstitutional prior restraint. The Court agrees.

The United States Supreme Court determined that "three procedural safeguards were necessary to ensure expeditious decision making by the motion picture censorship board: (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available;

---

[12] 486 U.S. 750, 759-60 (1988) (citations omitted).

[13] AMC §10.40.050(H).

[14] AMC § 10.40.050(I).

[15] The Court notes that the Supreme Court found that the parties lacked standing in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 233 (1990), under very specific circumstances not present in this case.

and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court."[16]

Plaintiff seeks to stretch these procedural safeguards to include all ordinances which regulate the operation of sexually oriented businesses. However, the Supreme Court specifically declined to deem a licensing scheme that regulates adult businesses a prior restraint where 1) ordinary court procedural rules and practices provide reviewing courts with judicial tools sufficient to avoid delay-related First Amendment harm; 2) there is no reason to doubt state judges' willingness to exercise these powers wisely so as to avoid serious threats of delay-induced First Amendment harm; and 3) the ordinance does not seek to censor material, but instead applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display.[17] "[N]othing in *FW/PBS* or in *Freedman* requires a city or State to place judicial review safeguards [directly] in the city ordinance that sets forth a licensing scheme."[18] Indeed, the Supreme Court noted that "many cities and towns lack the state-law legal authority to impose deadlines on state courts."[19] The *Littleton* Court held that the state's "ordinary rules of judicial review are adequate-at least for purposes of this facial challenge to the ordinance. Where . . . the regulation simply conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria . . . and does not seek to censor content, an adult business is not entitled to an unusually speedy judicial decision of the *Freedman* type."[20] With respect to the censorship aspect, the *Littleton* Court found:

---

[16]*FW/PBS*, 493 U.S. at 227 (citing *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)). *See also City of Littleton v. ZJ Gifts D-4 LLC*, 541 U.S. 774, 779 (2004).

[17]*City of Littleton*, 541 U.S. at 782-83.

[18]*Id.* at 784.

[19]*Id.*

[20]*Id.*

> [T]he ordinance at issue here does not seek to *censor* material. And its licensing scheme applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display. The ordinance says that an adult business license "*shall*" be denied if the applicant (1) is underage; (2) provides false information; (3) has within the prior year had an adult business license revoked or suspended; (4) has operated an adult business determined to be a state law "public nuisance" within the prior year; (5) (if a corporation) is not authorized to do business in the State; (6) has not timely paid taxes, fees, fines, or penalties; (7) has not obtained a sales tax license . . . ; or (8) has been convicted of certain crimes within the prior five years.[21]

The Anchorage Municipal Code provision is substantially similar to the Colorado ordinance at issue in *Littleton*. Renewal of an adult business license under the Anchorage ordinance is accomplished by the filing of an application not later than 60 days before the license expires. The application for renewal requires the following information be provided under oath: 1) Name and address; 2) Written proof that the individual is at least 18 years of age; 3) The address of the adult-oriented establishment and the name of the business to be operated by the applicant; and 4) If the applicant is a corporation, the name of the corporation, the date and state of incorporation, the name and address of the registered agent and the name and address of all shareholders owning more than five percent of the stock in the corporation and all officers and directors of the corporation. A license renewal fee of $300.00 is required. The Ordinance notes: "If the municipal police department, health and human services, or other departments are aware of any information bearing on the operator's qualifications, or that of the applicant's employees, that information shall be filed in writing with the municipal clerk. Approval or clearance by the municipal police department is not a prerequisite to the issuance of a license under this chapter." Renewal may be denied on the same grounds that may support revocation of a license.

The municipal clerk may revoke or suspend a license or permit for any of the following reasons:

> a. Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

---

[21] *Id.* at 783.

      b.  The operator violates any provision of subsection J. or K. of this section or any rule or regulation adopted pursuant to this section.[22]
      c.  The operator becomes ineligible to obtain a license or permit.
      d.  Any cost or fee required to be paid by this section is not paid.
      e.  Any intoxicating liquor or other alcoholic beverage is transported onto the premises, or served or consumed on the premises of the adult-oriented establishment by any person, where the licensee knew or reasonably should have known.
      f.  Any person under the age of 18 is permitted to enter or remain upon the premises.
      g.  Any of the following offenses are committed by any person at the location to which an adult business license has been issued:
      (1)  Any of the offenses described in chapter 8.65 involving or related to prostitution;
      (2)  Any of the offenses described in chapter 8.50 involving sexual exhibition, dissemination of indecent material, or sexual exploitation harmful to minors; or
      (3)  Allowing any person on the premises to engage in any of the specified sexual activities listed in 10.40.050A.
      h.  Any of the reasons set forth in Section 10.10.035.[23]

Accordingly, under the rationale set forth in *Littleton*, this Court finds that the renewal and revocation portions of the ordinance simply condition the operation of an adult businesses on compliance with neutral and nondiscretionary criteria, and do not seek to censor content. Given *Littleton*'s finding that "ordinary rules of judicial review are adequate-at least for purposes of this facial challenge to the ordinance,"[24] Sands North has failed to show that AMC 10.40.050 is an unconstitutional prior restraint. Defendant is entitled to Judgment on the Pleadings with respect to paragraphs 43(a) and (d) and 49(a) and (d) of the Complaint.

    *- Reasonable Opportunity to Open and Operate*

**Paragraph 43(f)** of the Complaint alleges that AMC 10.40.050 " . . . fails to provide a reasonable opportunity for an adult business to open and operate . . . ." The Municipality argues

---

[22]Section "J" addresses physical condition of the premises and sanitation requirements. Section "K" explains responsibilities of the operator, including the exclusion of minors, gambling restrictions, and record-keeping requirements.

[23]This provision addresses grounds for revoking or suspending a business license, including false statements made in connection with application for the license, violation of terms of the license, selling or conveying the license, etc.

[24]*City of Littleton,* 541 U.S. at 784.

that because Fantasies currently is open and operating, this claim is moot.  Plaintiff opposes dismissal of this claim, reiterating its equal protection argument.  Plaintiff alleges that by treating the Plaintiff in a disparate manner from similar situated entertainment facilities, (i.e. bars),  the Defendant denies the Plaintiff a reasonable opportunity to engage in expression and to operate its business.

This Court already has dismissed Plaintiff's equal protection claims.  With respect to the ability to open and operate, the Ninth Circuit has held that adverse economic impact is irrelevant to First Amendment analysis.[25]  The relevant test requires "an examination of whether a challenged provision prohibits entry into a market where the aggrieved party might exercise her rights, and distinguishes this inquiry from any examination of success within the market at issue."[26]  "[I]n the absence of any absolute bar to the market . . . it is irrelevant whether [a regulation] will result in lost profits, higher overhead costs, or even prove to be commercially unfeasible for an adult business."[27]  As the Municipality observes, "Fantasies *could* operate under the current regulations, because Fantasies admittedly *is* doing so."  Plaintiff's "reasonable opportunity to open and operate" claim fails.

### - *Takings Claims*

**Paragraph 43(j)** alleges that AMC 10.40.050 constitutes a taking of property without just compensation.   Specifically, Plaintiff alleges that Ordinance interferes with Plaintiff's use of its property by rendering an area, within four feet of any entertainer, unusable. In addition, Plaintiff claims that the regulation interferes with Plaintiff's investment-based expectations.  The Municipality argues that this claim fails to state a *prima facie* case, because Sands North has not identified any protected property interest that has been taken.

---

[25] *Spokane Arcade, Inc. v. City of Spokane,* 75 F.3d 663, 665 (9th Cir.1996).

[26] *Id.* at 666.

[27] *Id.* (citation omitted).

"The takings clause of the Fifth Amendment protects *private property* from being taken for public use without just compensation. 'In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected.'"[28]

*Gammoh* is dispositive on the four-foot issue. Considering the argument that a two-foot buffer could result in economic losses if patrons were unwilling to pay for dances, the Ninth Circuit noted "[a]ppellants have not here pointed to a 'property interest' interfered with by the City of La Habra's regulation of the dancers' conduct."[29]

Regarding takings in general, the Supreme Court has noted that it has been "unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. . . . Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely 'upon the particular circumstances [in that] case.'"[30] However, the Supreme Court has provided "guidance to courts confronted with deciding whether a particular government action goes too far and effects a regulatory taking."[31]

> First, we have observed, with certain qualifications . . . that a regulation which "denies all economically beneficial or productive use of land" will require compensation under the Takings Clause. . . . Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.[32]

---

[28] *Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir. 2005) (citation omitted).

[29] *Id.*

[30] *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 123-24 (1978).

[31] *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

[32] *Id.* (citations omitted).

The purpose of the Takings Clause is to prevent the government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[33]  While the United States Supreme Court has concluded that a regulation that substantially furthers important public policies may so interfere with investment-backed expectations that it amounts to a "taking,"[34] not every regulation that impacts investment-backed expectations is considered a "taking."

> Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,. . . and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values. . . .
>
> More importantly for the present case, in instances in which a state tribunal reasonably concluded that the health, safety, morals, or general welfare would be promoted by prohibiting particular contemplated uses of land, this Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests. [35]

A land use regulation does not constitute a taking if the regulation does not deny a landowner all economically viable use of the property and if the regulation substantially advances a legitimate government interest.[36]  Clearly, the Ordinance here does not deny all economically viable use of the property.  As this Court discussed in the Order at docket 62, the regulation at issue here is designed to substantially advance a legitimate government interest: diminishing secondary effects associated with adult entertainment.  Plaintiff's bare assertion that "the regulation interferes with Plaintiff's investment-based expectations" is inadequate to survive a motion for judgment on the pleadings.

---

[33] *Id.* at 617-18 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

[34] *Penn Central Trans. Co.,* 438 U.S. at 127.

[35] *Id.* at 124-25 (internal quotations and citations omitted).

[36] *Hotel & Motel Ass'n of Oakland v. City of Oakland,* 344 F.3d 959, 965 (9th Cir. 2003)(internal citations and quotations omitted).

### *- Lack of Evidence to Support Adoption of the Ordinance*

**Paragraph 43(l)** alleges that the ordinance "was not enacted on a constitutionally sufficient basis." The Municipality suggests that a conclusory allegation of this nature is insufficient to survive a motion for judgment on the pleadings. Plaintiff's response relies on its argument elsewhere that the Ordinance allegedly violates various Federal and Alaskan Constitutional provisions.

The Court previously has addressed Plaintiff's Constitutional arguments, and has dismissed some claims and declined to dismiss others. Paragraph 43(l), however, adds nothing to the Complaint and is entirely conclusory.

### *- Remaining Counts of the Complaint*

**Paragraph 43(k)** alleges that the ordinance "violates Plaintiff's substantive and procedural due process rights." Such conclusory allegations are insufficient to survive a motion for judgment on the pleadings.[37]

**Paragraph 43(o)** alleges that the restrictions on dance entertainment are greater then those permitted by the United States Supreme Court in *City of Erie v. Paps A.M.*,[38] and such further restrictions on dance entertainment in connection with constitutionally protected expression are not supported by any evidence of negative secondary effects, are a prior restraint on constitutionally protected expression and are unconstitutionally overbroad.

Defendant notes that the *City of Erie* case upheld an ordinance that completely prohibited nudity in public places, forcing the nude dancing establishments in the city to shut down altogether. Plaintiff failed to respond to this argument in its briefing at docket 55. In this Court's Order at docket 62, the Court explicitly found evidence of negative secondary effects, and determined that the Ordinance is not unconstitutionally overbroad. In this Order, the Court has determined that the Ordinance does not act as a "prior restraint." Accordingly, paragraph 43(o) is subject to dismissal.

---

[37]*See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988).

[38]529 U.S. 277 (2000).

**Paragraph 43(q)** alleges that the ordinance "impairs upon other rights not yet known, but will or may become known through course of discovery." This is not a legally cognizable claim. Should Plaintiff discover additional information in the future, it may move to amend its Complaint.

## CONCLUSION

In light of the foregoing, Defendant's Motion for Judgment on the Pleadings at **Docket 43** is GRANTED. The counts of the Complaint at paragraphs 43(a), (d), (f), (j), (k), (l), (o) and (q), and the corresponding counts at paragraph 49 are DISMISSED WITH PREJUDICE.

Dated at Anchorage, Alaska, this 15th day of November, 2007.

/s/ Timothy Burgess

Timothy M. Burgess
United States District Judge